**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/24/2023

---

EMELIKE NWOSUOCHA,

                    Plaintiff,

             - against -

DONALD MCKINLEY GLOVER, II,
JEFFEREY LAMAR WILLIAMS, LUDWIG
EMIL TOMAS GÖRANSSON, KOBALT
MUSIC PUBLISHING AMERICA, INC. d/b/a/
SONGS OF KOBALT MUSIC PUBLISHING,
RCA RECORDS, SONY MUSIC
ENTERTAINMENT, YOUNG STONER LIFE
PUBLISHING LLC, THEORY
ENTERTAINMENT LLC d/b/a 300
ENTERTAINMENT, ATLANTIC RECORDING
CORPORATION, ROC NATION PUBLISHING
LLC d/b/a SONGS OF ROC NATION, SONGS
OF UNIVERSAL, INC., WARNER MUSIC
GROUP CORP., and WARNER-TAMERLANE
PUBLISHING CORP.,

                    Defendants.

21 Civ. 04047(VM)

**DECISION AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

     Plaintiff Emelike Nwosuocha ("Nwosuocha") brings this action against defendants Donald McKinley Glover, II ("Glover"), Jeffrey Lamar Williams ("Williams"), Ludwig Emil Tomas Göransson ("Göransson"), Kobalt Music Publishing America, Inc. d/b/a/ Songs of Kobalt Music Publishing ("Kobalt Music"), RCA Records, Sony Music Entertainment ("Sony Music"), Young Stoner Life Publishing, LLC ("YSL"), 300 Entertainment LLC f/k/a Theory Entertainment LLC d/b/a 300 Entertainment ("300 Entertainment"), Atlantic Recording

Corporation ("Atlantic"), Roc Nation Publishing d/b/a Songs of Roc Nation ("Roc Nation"), Songs of Universal, Inc. ("Universal"), Warner Music Group Corp., and Warner-Tamerlane Publishing Corp. ("Warner-Tamerlane") (collectively, "Defendants").[1] The complaint alleges that Defendants engaged in direct, contributory, and vicarious copyright infringement of Nwosuocha's copyright in his song titled, "Made in America," via the song titled "This is America," in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq*. (See "Complaint," Dkt. No. 1.)

Now pending before the Court is Defendants' Joint Motion to Dismiss Nwosuocha's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See "Motion," Dkt. No. 93.) For the reasons set forth below, the Motion is **GRANTED**, and Nwosuocha's Complaint is dismissed with prejudice to leave to amend.

---

[1] Defendants RCA Records and Warner Music Group Corp. were voluntarily dismissed without prejudice from this action on April 28, 2022. (See Dkt. No. 78.) They are therefore excluded from the definition of "Defendants."

2

## I.   BACKGROUND

A.   FACTS[2]

1.   Nwosuocha Writes "Made in America" and Obtains a Sound Recording Copyright Registration

In or about early September 2016, Nwosuocha, who performs under the pseudonym "Kidd Wes," wrote the song titled "Made in America" ("Plaintiff's Composition"). On September 11, 2016, Nwosuocha uploaded Plaintiff's Composition to Soundcloud, an online music streaming platform, where it was available to the public for listening. Nwosuocha uploaded a music video of Plaintiff's Composition to YouTube on November 9, 2016, where it was also available to the public to be viewed and listened to. Nwosuocha registered his then unpublished album, "Eleven: The Junior Senior Year," which included Plaintiff's Composition, with the United States Copyright Office (the "Copyright Office") on May 24, 2017. Nwosuocha was then issued a Sound Recording registration, United States Copyright Registration No. SRu 1-301-922. (See Dkt. No. 1-2.) Nwosuocha subsequently published Plaintiff's Composition as a purchasable lead single to "Eleven: The Junior Senior Year" on June 8, 2017.

---

[2] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II below.

2.  Glover, Williams, and Göransson Write and Release "This is America"

In 2018, Glover, Williams, and Göransson wrote the song titled "This is America" ("the Challenged Composition"). The Challenged Composition was publicly released on May 6, 2018, when Glover performed the song while hosting the television show Saturday Night Live. At or around the same time, a music video of the Challenged Composition was uploaded and made publicly available on Glover's official YouTube channel, and the song was otherwise made available for streaming and purchase. Kobalt Music, RCA Records, Sony Music, YSL, 300 Entertainment, Atlantic, Roc Nation, Universal, Warner Music Group Corp., and Warner-Tamerlane, as publishers and distributers of the Challenged Composition, facilitated and assisted with its distribution, promotion, and sale.

The Challenged Composition was an immediate and continuing success. The song received critical acclaim, including winning the 2019 Grammy Award for Record of the Year. Commercially, the Challenged Composition debuted at number one on the Billboard Hot 100 chart after selling 78,000 copies and garnering 65.3 million streams in the United States within the first week of its release. The Challenged Composition would go on to have 3,000,000 certified sales in the United States alone. Glover also went on the international

"This is America Tour," and performed the Challenged Composition between thirty and thirty-five times at concerts throughout the world.

### 3. Nwosuocha Notifies Defendants of "This is America's" Infringement on "Made in America"

Nwosuocha's counsel sent a letter to Glover, Williams, Göransson, Sony Music, and RCA Records, on December 7, 2020, objecting to the Challenged Composition's infringement on Plaintiff's Composition. Nwosuocha's counsel received only a non-substantive response from Glover's counsel, who asked for materials supporting Nwosuocha's claims. Nwosuocha's counsel sent Glover's counsel a cease-and-desist letter on February 16, 2021, after Glover demonstrated no intent to cure or mitigate the Challenged Composition's alleged infringement.

### B. PROCEDURAL HISTORY

Nwosuocha initiated this action on May 6, 2021. (See Complaint.) Defendants then wrote a pre-motion letter to Plaintiff in anticipation of filing a motion to dismiss. (See Dkt. No. 72-1.) The parties exchanged three further letters, after which Defendants informed the Court that the parties had concluded their pre-motion exchange pursuant to the Section II.B.2 of the Court's Individual Practices and had failed to avoid motion practice at this point. (See Dkt. Nos. 72, 72-1.)

The parties subsequently opted to file supplemental briefing, including a joint filing by Defendants. (See Dkt. Nos. 81-83, 86-88.) Accordingly, Defendants filed a joint Motion to Dismiss the Complaint (the "Motion"), with an accompanying Memorandum of Law in Support (the "Memorandum"). (See Dkt. Nos. 93-95.) Nwosuocha filed his Memorandum of Law in Opposition to the Motion (the "Opposition"), which was followed by Defendants' joint Reply Memorandum of Law in Support of the Motion (the "Reply"). (See Dkt. Nos. 96-97.) Nwosuocha subsequently requested leave to file a sur-reply, which the Court denied. (See Dkt. Nos. 98-99.)

## II.  LEGAL STANDARD

A. MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations

sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013).

In this context, the Court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). The requirement that a court accept the factual allegations in the complaint as true

does not extend to legal conclusions. See Iqbal, 556 U.S. at
678.

### B. COPYRIGHT INFRINGEMENT

Under the Copyright Act, "no civil action for
infringement of the copyright in any United States work shall
be instituted until preregistration or registration of the
copyright claim has been made in accordance with [Title 17,
Copyrights.]" 17 U.S.C. § 411(a). Specifically, a potential
claimant must "apply for registration and receive the
Copyright Office's decision on [the] application before
instituting suit." Fourth Estate Pub. Benefit Corp. v. Wall-
Street.com, LLC, 139 S. Ct. 881, 891 (2019).

"The mere fact that a work is copyrighted does not mean
that every element of the work may be protected," rather, the
"law regulates only the copying of the plaintiff's *original
expression*." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499
U.S. 340, 348 (1991); see McDonald v. West, 138 F. Supp. 3d
448, 454 (S.D.N.Y. 2015) aff'd 669 F. App'x 59 (2d Cir. 2016)
(emphasis in original). To be original means that "the work
was independently created by the author (as opposed to copied
from other works), and that it possess at least some minimal
degree of creativity. . . no matter how crude, humble or
obvious it might be." Feist, 499 U.S. at 345 (internal

8

quotation marks omitted). Copyright protection is limited in this way because the law recognizes that "all creative works draw on the common wellspring that is the public domain." Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 132 (2d Cir. 2003).

Thus, "copyright protects only that which is original," and "does not protect ideas, only their expression." McDonald, 138 F. Supp. 3d at 455. "This principle excludes from copyright the raw materials of art, like colors, letters, descriptive facts, and standard geometric forms, as well as previous creative works that have fallen into the public domain," and "[i]t likewise excludes the basic building blocks of music, including tempo and individual notes." Id. at 454 (collecting cases). Further, "words and short phrases, including titles and slogans, rarely if ever exhibit sufficient originality to warrant copyright protection," and "[l]onger phrases are also not protectable if they are common or cliché." Id. Similarly, "common rhythms, song structures, and harmonic progressions are not protected" and "[t]hemes fall into the category of uncopyrightable ideas." Id. at 454-55. Still, "a work may be copyrightable even though it is entirely a compilation of unprotectible elements," because "the original way in which the author has selected,

9

coordinated, and arranged the elements of his or her work" is protectible. Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1003-04 (2d Cir. 1995) (internal quotation marks omitted).

A district court may dismiss a copyright infringement claim on a Rule 12(b)(6) motion "either when the similarity concerns only noncopyrightable elements of plaintiff['s] work, or when no reasonable trier of fact could find the works substantially similar." Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986); see also Peter F. Gaito Architecture, LLC v. Simone Development Corp., 602 F.3d 57, 64 (2d Cir. 2010)). "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." Peter F. Gaito, 602 F.3d at 64 (internal quotation marks and citations omitted). Accordingly, "no discovery or fact-finding is typically necessary, because what is required is only a visual [or aural] comparison of the works." Id. (internal quotations marks omitted).

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them,

and regard the aesthetic appeal as the same." Id. at 66
(internal quotation marks and alterations in original
omitted). In other words, the test considers "whether an
average lay observer would recognize the alleged copy as
having been appropriated from the copyrighted work." Id.
(internal quotation marks omitted). Where the infringement of
music is at issue, the ordinary observer test considers
whether the "defendant took from plaintiff's works so much of
what is pleasing to the ears of lay listeners, who comprise
the audience for whom such . . . music is composed, that
defendant wrongfully appropriated something which belongs to
the plaintiff." Repp v. Webber, 132 F.3d 882, 889 (2d Cir.
1997) (alteration in original) (quoting Arnstein v. Porter,
154 F.2d 464, 473 (2d Cir. 1946)).

If the works at issue "have both protectible and
unprotectible elements, [the] analysis must be more
discerning, and [the court] instead must attempt to extract
the unprotectible elements from [] consideration and ask
whether the protectible elements, standing alone, are
substantially similar." Peter F. Gaito, 602 F.3d at 66
(internal quotation marks and citations omitted).

Under either analysis, however, a court is not "required
to dissect the works into their separate components, and

compare only those elements which are in themselves copyrightable." Id. (alteration omitted). "Instead, [a court is] principally guided by comparing the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by [the court's] good [ears] and common sense." Id. (internal quotation marks and citations omitted). Thus, a court "must make sure to engage in a holistic comparison of the two works, looking for substantial similarity that is apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of unprotectible components—are considered in relation to one another." McDonald, 138 F. Supp. at 456 (quoting Peter F. Gaito, 602 F.3d at 66) (internal quotation marks and alterations omitted).

### III. DISCUSSION

Defendants move to dismiss Nwosuocha's sole claim that Defendants engaged in direct, contributory, and vicarious copyright infringement of Nwosuocha's copyright in Plaintiff's Composition, via the Challenged Composition, in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq*. For the reasons explained below, the Court grants Defendants'

Motion and dismisses the Complaint with prejudice to leave to
amend.

A.    COPYRIGHT REGISTRATION

       The Complaint alleges that "Nwosuocha is the sole and
exclusive owner of the U.S. Copyright in all rights, titles,
and interests in the Copyrighted Work, 'Made in America,'"
and that the "Infringing Work[, "This is America,"] copies
quantitatively and qualitatively distinct, important, and
recognizable portions and/or elements of the Copyrighted
Work." (See Complaint ¶¶ 75, 80.) Specifically, the Complaint
alleges that the

> distinctive flow employed in Defendant Glover's recorded
> performance of the Infringing Work's chorus, which is
> the musical centerpiece of the Infringing Work and forms
> the namesake for the Infringing Work's song title, is
> unmistakably similar, if not practically identical, to
> the distinct and unique flow that was employed by
> Nwosuocha in recording his vocal performance of his
> rapping of the hook to his Copyrighted Work,

and "the lyrical theme, content, and structure of the
identically-performed choruses are also glaringly similar."
(Id. ¶¶ 39-40.) Accordingly, the "Defendants' unauthorized
reproduction, distribution, public performance, display,
creation of derivative works, and other exploitation and/or
misappropriation of the Copyrighted Work infringes
Nwosuocha's exclusive rights in violation of the Copyright
Act, 17 U.S.C. § 101 et seq." (Id. ¶ 76.)

13

Defendants argue that Nwosuocha's copyright claim fails as a matter of law because Nwosuocha failed to register a copyright for his composition of Plaintiff's Composition (Memorandum at 1-2.) Defendants note that Nwosuocha's Certificate of Registration is for a sound recording of Plaintiff's Composition, not for its musical composition, meaning he cannot assert a copyright claim that the composition has been infringed. (Id.; Dkt. No. 1-2.)

Nwosuocha responds that he is able to maintain a case because the Copyright Office permits the submission of a single recording to register copyrights in the sound recordings and compositions of the submission, and that he "used one *sound recording* registration to register his collective work of sound recordings and underlying compositions, filed the registration as sole claimant *and* sole author of the collective work, and effectuated a valid registration for the collective work extending to all musical compositions therein, including for 'Made in America.'" (See Opposition at 1-2.) Nwosuocha argues further that under the Supreme Court's holding in Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., even if his registration contains inaccurate information, presumably such as not identifying Nwosuocha as creating the composition as well as the sound recording, the

14

registration is nonetheless valid because Nwosuocha did not
know of the inaccuracies. 142 S. Ct. 941, 945 (2022); (see
Opposition at 1-2.)

The Court finds that Nwosuocha's copyright claim fails
as a matter of law because Nwosuocha does not possess a
copyright registration for the musical composition of
Plaintiff's Composition, only a registration for a sound
recording of the song. As other courts in this District have
explained, "[c]opyright protection extends to two distinct
aspects of music: (1) the musical composition, which is itself
usually composed of two distinct aspects—music and lyrics;
and (2) the physical embodiment of a particular performance
of the musical composition, usually in the form of a master
recording." Pickett v. Migos Touring, Inc., 420 F. Supp. 3d
197, 205 (S.D.N.Y. 2019) (quoting Ulloa v. Universal Music &
Video Distribution Corp., 303 F. Supp. 2d 409, 412 (S.D.N.Y.
2004)). Here, the Complaint does not allege that Defendants
incorporated "the physical embodiment" or sound recording of
Plaintiff's Composition. Rather, the Complaint claims that
Defendants infringed on the composition of Plaintiff's
Composition, including the "lyrical theme, content, and
structure," elements that go to the composition of the songs.
(Complaint ¶¶ 39-40.)

15

Nwosuocha's arguments that he possesses a copyright registration for the composition of Plaintiff's Composition are without merit. First, Nwosuocha claims that he "used one *sound recording* registration to register his collective work of sound recordings and underlying compositions . . . including for [Plaintiff's Composition]." (See Opposition at 1-2 (emphasis in original)). Nwosuocha is correct that a single recording may be submitted to the Copyright Office to register for both a sound recording registration and a musical composition registration provided that "the composition and the sound recording are embodied in the same phonorecord, (2) the author is the only performer featured in the recording, and (3) the author is the only copyright owner of both works." (See Copyright Office Circular 56, Dkt. No. 96-2.) To obtain both registrations, however, qualified applicants must mark or detail in their applications that they are seeking both types of copyright. (See id.)

For instance, if applicants use Form SR, which "should be used when the copyright claim is limited to the sound recording itself," but "may also be used where the same copyright claimant is seeking simultaneous registration of the underlying musical, dramatic, or literary work embodied in the phonorecord," they must "include the appropriate

16

authorship terms for reach author, for example 'words,' 'music,' 'arrangement of music,' or 'text.'" (See Dkt. No. 96-5.)

That the Copyright Office allows one submission to register for both a sound recording registration and a musical composition registration, however, does not mean that Nwosuocha's submission did so. Indeed, Nwosuocha's Certificate of Registration is only for a sound recording. (See Dkt. No. 1-2.) Thus, Nwosuocha did not obtain both a sound recording and a compositional copyright registration with a single registration submission and lacks the copyright registration necessary to his claims.

Second, Unicolors does not alter Nwosuocha's failure to register a copyright for the composition of Plaintiff's Composition. Unicolors addressed whether a certificate of registration would remain valid despite containing inaccurate information. 142 S. Ct. at 945. Here, there is no dispute about the validity of Nwosuocha's sound recording registration and Unicolors does not otherwise support Nwosuocha's attempt to retroactively expand the scope of his existing copyright registration. See id. Accordingly, dismissal of Nwosuocha's Complaint is warranted.

17

Regarding the scope of such dismissal, Nwosuocha's failure to register a compositional copyright prior to filing suit cannot be cured through amendment. See Malibu Media, LLC v. Doe, No. 18 Civ. 10956, 2019 WL 1454317, at *2-3 (S.D.N.Y. Apr. 2, 2019) (explaining how post-registration amendment and relation-back would make a "meaningless formality" of the requirement under 17 U.S.C. Section 411(a) that the copyright registration be in place before a plaintiff's bringing suit for infringement). As noted previously, Section 411(a) prohibits a civil action for copyright infringement from being "instituted until preregistration or registration of the copyright has been made in accordance with [Title 17]." 17 U.S.C. § 411(a). An action is "instituted by the origination of formal proceedings, such as the filing of an initial complaint." United States ex rel. Wood v. Allergan, Inc., 899 F.3d 163, 172 (2d Cir. 2018). Thus, Nwosuocha cannot cure this defect by now obtaining a compositional registration and amending the complaint.

B.   COPYRIGHT PROTECTION AND SUBSTANTIAL SIMILARITY

Even if Nwosuocha had a copyright registration for the composition of Plaintiff's Composition, however, dismissal would be warranted here because the elements of Plaintiff's Composition purportedly infringed upon are insufficiently

18

original to warrant protection, or because they are not substantially similar to the Challenged Composition.

As touched upon previously, the Complaint alleges that the

> distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern," or "flow," "employed in Donald Glover's recorded performance of the Infringing Work's chorus, which is the musical centerpiece of the Infringing Work and forms the namesake for the Infringing Work's song title, is unmistakably substantially similar, if not practically identical, to the distinct and unique flow that was employed by Nwosuocha in recording his vocal performance of his rapping of the hook to his Copyrighted Work.

(Complaint ¶ 39.) The Complaint further alleges that "the lyrical theme, content, and structure of the identically-performed choruses[3] are also glaringly similar," specifically highlighting the following song portions:

| Made in America | This is America |
|---|---|
| [I'm] Made in America<br>Flex on the radio<br>Made me a terrorist<br>Pessimistic n\*\*\*as<br>You should just cherish this | This is America<br>Guns in my area<br>I got the strap<br>I gotta carry 'em<br>– or –<br>This is America<br>Don't catch you slippin' now<br>Don't catch you slippin' now<br>Look what I'm whippin' now |

---

[3] The exact portion of the songs that constitute the referenced "chorus" or "hook" are not specified, and the Complaint uses these terms inconsistently. The terms first refer solely to the titular lyrics of the songs, but then are used to refer to a larger portion of each song, with the hook or the chorus having a "central lyrical refrain" for instance. (Complaint ¶¶ 39, 40.)

(Id. ¶ 40.)[4]

Additionally, the parties agree, and the Court concurs, that the Complaint does not allege infringement of the "overall structure of the songs, order, and number of verse and chorus sections," or the "instrumentation," "musical notes," or "musical production."[5] (See Opposition at 2-6; Memorandum at 4-6; Complaint ¶¶ 39-40.)

The Court finds that the "distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern" or "flow" as well as the "lyrical theme" and "structure" of the chorus in Plaintiff's Composition lack sufficient originality alone, or as combined, to merit compositional copyright protection or are categorically ineligible for copyright protection. (Complaint ¶ 39.) For instance, Nwosuocha asserts copyright over the "lyrical theme" of Plaintiff's Composition, but a lyrical theme is simply an idea, and ideas are not protectable. Moreover, the

_____

[4] The Court notes that the lyrics for Plaintiff's Composition in the Complaint and the musicologist report attached to the Complaint are notably incomplete. (See Dkt. Nos. 1, 1-4.) Nwosuocha says the word "I'm" before saying "made in America," and thus the lyrics should be presented as "I'm made in America." The Court further notes that the musicologist report entirely failed to consider or analyze any prior art, such as other songs that use "total triplet flow." (See Dkt. No. 1-4.)

[5] As referenced in the parties' briefing, "musical production" here refers to the selection and use of instruments, singing, rapping, and background vocals, including choir and samples. (See Memorandum at 5; Opposition at 3-4 (referring to this as "overall melodic 'impression'").)

idea of a boastful rapper is certainly not original to Nwosuocha.

The Court further finds that although the "content" of the chorus of Plaintiff's Composition, which the Court understands to mean the lyrics, bears sufficient originality to merit compositional protection, a cursory comparison with the Challenged Composition reveals that the content of the choruses is entirely different and not substantially similar.[6] As noted previously, the "question of substantial similarity is by no means exclusively reserved for resolution by a jury" and the Second Circuit has "repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Peter F. Gaito, 602 F.3d at 63. Here, no reasonable jury, properly instructed, could find that the lyrics of the chorus of Plaintiff's Composition and the chorus of the Challenged Composition are substantially similar.

---

[6] This holds true under either observer standard or when assessing the songs holistically.

Returning to the songs, as Defendants detail in their
Memorandum, "Plaintiff's Composition is a short, simple,
self-aggrandizing proclamation with Plaintiff stating
repeatedly: 'I'm made in America,' [] alert[ing] rappers of
Plaintiff's arrival [] and his success," "attribut[ing] his
success, and the envy it creates to his record sales" but
"recogniz[ing] his celebrity and swagger pose dangers from
the" police. (Memorandum at 5.) By contrast, "the Challenged
Composition is not about a rapper, but" "addresses
contemporary America, what America means and how it is
perceived," and is "anchored by the common phrase 'This is
America.'" (Id.)

More could be said on the ways these songs differ, but
no more airtime is needed to resolve this case.

**IV.  ORDER**

For the reasons stated above, it is hereby

**ORDERED** that the motion filed by defendants Donald
McKinley Glover, II, Jeffrey Lamar Williams, Ludwig Emil
Tomas Göransson, Kobalt Music Publishing America, Inc. d/b/a/
Songs of Kobalt Music Publishing, Sony Music Entertainment,
Young Stoner Life Publishing, LLC, 300 Entertainment LLC
f/k/a Theory Entertainment LLC d/b/a 300 Entertainment,
Atlantic Recording Corporation, Roc Nation Publishing d/b/a

22

Songs of Roc Nation, Songs of Universal, Inc., and Warner-Tamerlane Publishing Corp. to dismiss the Complaint of plaintiff Emelike Nwosuocha (Dkt. No. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED** with prejudice to leave to amend. The Clerk of Court is respectfully directed to terminate the Motion to Dismiss at Dkt. No. 93 as well as any other pending motions and close the case.

**SO ORDERED.**

Dated:    New York, New York
          24 March 2023

                                    _____
                                         Victor Marrero
                                           U.S.D.J.