# No. 23-703

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

---

EMELIKE NWOSUOCHA,

*Plaintiff-Appellant*,

v.

DONALD MCKINLEY GLOVER, II, SONY MUSIC ENTERTAINMENT,
YOUNG STONER LIFE PUBLISHING LLC, KOBALT MUSIC PUBLISHING
AMERICA, INC., D/B/A SONGS OF KOBALT MUSIC PUBLISHING, THEORY
ENTERTAINMENT LLC, D/B/A 300 ENTERTAINMENT, ATLANTIC
RECORDING CORPORATION, ROC NATION PUBLISHING LLC, D/B/A
SONGS OF ROC NATION, SONGS OF UNIVERSAL, INC.,
WARNERTAMERLANE PUBLISHING CORP., LUDWIG EMIL TOMAS
GORANSSON, JEFFEREY LAMAR WILLIAMS,

*Defendant-Appellees*,

v.

RCA RECORDS LABEL, WARNER MUSIC GROUP CORP.,

*Defendants*,

---

On Appeal from the United States District Court
for the Southern District of New York
No. 1:21-cv-04047-VM
Hon. Victor Marrero, United States District Judge

---

### APPELLANT'S APPENDIX

---

Imran H. Ansari
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
IAnsari@AidalaLaw.com

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

*Attorneys for Appellant*

**Volume I**
**(Pages 1 JA 1 to 1 JA 196)**

| ECF | Description | Page |
|-----|-------------|------|
| 0 | [2023-08-04]  PACER Docket Sheet | 1 JA 4 |
| 1 | [2021-05-06]  Complaint | 1 JA 17 |
| 1-2 | [2021-05-06]  Compl Ex. B | 1 JA 50 |
| 1-3 | [2021-05-06]  Compl Ex C | 1 JA 54 |
| 1-4 | [2021-05-06]  Compl Ex D - Expert Report | 1 JA 58 |
| 1-5 | [2021-05-06]  Compl Ex E | 1 JA 75 |
| 1-6 | [2021-05-06]  Compl Ex F | 1 JA 86 |
| 1-7 | [2021-05-06]  Compl Ex G | 1 JA 88 |
| 1-8 | [2021-05-06]  Compl Ex H | 1 JA 95 |
| 1-9 | [2021-05-06]  Compl Ex I | 1 JA 98 |
| 5 | [2021-05-06]  Notice of Technical Error | 1 JA 102 |
| 6 | [2021-05-06]  Compl Ex A | 1 JA 104 |
| 72 | [2022-02-18]  Letter Motion to Dismiss | 1 JA 109 |
| 72-1 | [2022-02-18]  Pre-Motion Correspondence | 1 JA 112 |
| 77 | [2022-04-26]  Voluntary Dismissal | 1 JA 140 |
| 78 | [2022-04-28]  Voluntary Dismissal | 1 JA 141 |
| 93 | [2022-09-20]  Notice of Motion to Dismiss | 1 JA 142 |
| 95 | [2022-09-20]  Motion to Dismiss Memorandum | 1 JA 144 |

| ECF | Description | | Page |
|---|---|---|---|
| 96 | [2022-09-20] | Opposition to Motion to Dismiss | 1 JA 152 |
| 96-1 | [2022-09-20] | Copyright Registration | 1 JA 160 |
| 97 | [2022-09-23] | Motion to Dismiss Reply | 1 JA 164 |
| 100 | [2023-03-24] | Decision and Order Dismissing Case | 1 JA 169 |
| 101 | [2023-03-24] | Clerk's Entry of Judgment | 1 JA 192 |
| 106 | [2023-04-21] | Notice of Appeal.pdf | 1 JA 194 |

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21−cv−04047−VM

Nwosuocha v. Glover II et al
Assigned to: Judge Victor Marrero
Cause: 17:501 Copyright Infringement

Date Filed: 05/05/2021
Date Terminated: 03/24/2023
Jury Demand: Plaintiff
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**Emelike Nwosuocha**

represented by **Imran H. Ansari**
Aidala Bertuna & Kamins PC
546 Fifth Avenue
Ste 6th Floor
New York, NY 10036
212−486−0011
Fax: 212−750−8297
Email: iansari@aidalalaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Donald McKinley Glover II**

represented by **Jonathan David Davis**
Jonathan D. Davis, P.C.
1 Rockefeller Plaza
Suite 1712
New York, NY 10020
212−687−5464
Email: Jdd@Jddavispc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
Jonathan D. Davis, P.C.
1 Rockefeller Plaza
Suite 1712
New York, NY 10020
212−687−5464
Fax: 212−697−2521
Email: daw@jddavispc.com
*TERMINATED: 06/21/2022*

**Defendant**

**RCA Records**
*TERMINATED: 04/28/2022*

represented by **Jonathan David Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Sony Music Entertainment**

represented by **Jonathan David Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

1 JA 4

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Young Stoner Life Publishing LLC**  represented by **Jonathan David Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Kobalt Music Publishing America, Inc.** represented by **Jonathan David Davis**
*doing business as*
Songs of Kobalt Music Publishing
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Theory Entertainment LLC**  represented by **Jonathan David Davis**
*doing business as*
300 Entertainment
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Atlantic Recording Corporation**  represented by **Jonathan David Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Roc Nation Publishing LLC**  represented by **Alex Spiro**
*doing business as*
Songs of Roc Nation
Quinn Emanuel Urquhart & Sullivan
(NYC)
51 Madison Avenue
New York, NY 10010
212–849–7000
Fax: 212–849–7100
Email: alexspiro@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Paul Brian Maslo**
Quinn, Emanuel, Urquhart & Sullivan,
LLP
711 Louisiana Street
Suite 500
Houston, TX 77002
713–221–7130

Email: paulmaslo@quinnemanuel.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Songs of Universal, Inc.**      represented by **Donald S. Zakarin**
Pryor Cashman LLP
7 Times Square
New York, NY 10036
212 326 0108
Fax: 212 326 0806
Email: DZakarin@pryorcashman.com
*ATTORNEY TO BE NOTICED*

**Ilene Susan Farkas**
Pryor Cashman LLP
7 Times Square
New York, NY 10036
212–421–4100
Fax: 212–326–0806
Email: ifarkas@pryorcashman.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Warner Music Group Corp.**
*TERMINATED: 04/28/2022*      represented by **Jonathan David Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Warner–Tamerlane Publishing Corp.**      represented by **Jonathan David Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Ludwig Emil Tomas Goransson**      represented by **Jonathan David Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

**Defendant**

**Jefferey Lamar Williams**      represented by **Jonathan David Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Derek Andrew Williams**
(See above for address)
*TERMINATED: 06/21/2022*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/06/2021 | 1 | COMPLAINT against Atlantic Recording Corporation, LUDWIG EMIL GRANSSON, Donald McKinley Glover II, KOBALT MUSIC PUBLISHING AMERICA, INC. d/b/a/ SONGS OF KOBALT MUSIC PUBLISHING, RCA Records, ROC NATION PUBLISHING LLC d/b/a SONGS OF ROC NATION, Songs of Universal, Inc., Sony Music Entertainment, THEORY ENTERTAINMENT LLC d/b/a 300 ENTERTAINMENT, JEFFEREY LAMAR WILLIAMS, Warner Music Group Corp., Warner–Tamerlane Publishing Corp., YOUNG STONER LIFE PUBLISHING LLC. (Filing Fee $ 402.00, Receipt Number ANYSDC–24499999)Document filed by Emelike Nwosuocha. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I).(Ansari, Imran) (Entered: 05/06/2021) |
| 05/06/2021 | 2 | CIVIL COVER SHEET filed..(Ansari, Imran) (Entered: 05/06/2021) |
| 05/06/2021 | 3 | AO 121 FORM COPYRIGHT – NOTICE OF SUBMISSION BY ATTORNEY. AO 121 Form Copyright for case opening submitted to court for review..(Ansari, Imran) (Entered: 05/06/2021) |
| 05/06/2021 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Imran H. Ansari. The party information for the following party/parties has been modified: YOUNG STONER LIFE PUBLISHING LLC, THEORY ENTERTAINMENT LLC d/b/a 300 ENTERTAINMENT, JEFFEREY LAMAR WILLIAMS, ROC NATION PUBLISHING LLC d/b/a SONGS OF ROC NATION, KOBALT MUSIC PUBLISHING AMERICA, INC. d/b/a/ SONGS OF KOBALT MUSIC PUBLISHING, LUDWIG EMIL GRANSSON. The information for the party/parties has been modified for the following reason/reasons: party name was entered in all caps; alias party name was omitted;. (pc) (Entered: 05/06/2021) |
| 05/06/2021 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above–entitled action is assigned to Judge Victor Marrero. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district–judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf–related–instructions..(pc) (Entered: 05/06/2021) |
| 05/06/2021 | | Magistrate Judge Robert W. Lehrburger is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018–06/AO–3.pdf. (pc) (Entered: 05/06/2021) |
| 05/06/2021 | | Case Designated ECF. (pc) (Entered: 05/06/2021) |
| 05/06/2021 | 4 | AO 121 FORM COPYRIGHT – CASE OPENING – SUBMITTED. In compliance with the provisions of 17 U.S.C. 508, the Register of Copyrights is hereby advised that a court action has been filed on the following copyright(s) in the U.S. District Court Southern District of New York. Form e–mailed to Register of Copyrights..(pc) (Entered: 05/06/2021) |
| 05/06/2021 | 5 | LETTER addressed to Judge Victor Marrero from Imran H. Ansari dated 05/06/2021 re: Systems error affecting Exhibit A to Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 05/06/2021) |
| 05/06/2021 | 6 | NOTICE of Exhibit A to Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 05/06/2021) |
| 07/30/2021 | 7 | LETTER MOTION for Extension of Time *to Serve Complaint* addressed to Judge Victor Marrero from Imran H. Ansari dated 07/30/21. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 07/30/2021) |

| | | |
|---|---|---|
| 08/02/2021 | 8 | ORDER granting 7 Letter Motion for Extension of Time. Request GRANTED. Plaintiff's request for a 60 day enlargement of the time for service is hereby granted. SO ORDERED. (Signed by Judge Victor Marrero on 8/2/2021) (ate) (Entered: 08/02/2021) |
| 09/16/2021 | 9 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Atlantic Recording Corporation, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 10 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Songs of Universal, Inc., re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 11 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to RCA Records, Inc., re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 12 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Sony Music Entertainment, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 13 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Warner Music Group, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 14 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Warner–Tamerlane Publishing Corp., re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 15 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Theory Entertainment LLC d/b/a 300 Entertainment, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 16 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Young Stoner Life Publishing, LLC, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 17 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Roc Nation Publishing LLC d/b/a Songs of Roc Nation, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 18 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to EMIL TOMAS GRANSSON, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 19 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Donald McKinley Glover II, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/16/2021 | 20 | **FILING ERROR – DEFICIENT SUMMONS REQUEST – PDF ERROR** REQUEST FOR ISSUANCE OF SUMMONS as to Kobalt Music Publishing America, Inc. d/b/a Songs of Kobalt Music Publishing, re: 1 Complaint. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/17/2021 (sj). (Entered: 09/16/2021) |
| 09/17/2021 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Imran H. Ansari to RE–FILE** |

| | | |
|---|---|---|
| | | **Document No. 17 Request for Issuance of Summons, 16 Request for Issuance of Summons, 19 Request for Issuance of Summons, 13 Request for Issuance of Summons, 14 Request for Issuance of Summons, 18 Request for Issuance of Summons, 20 Request for Issuance of Summons, 10 Request for Issuance of Summons, 11 Request for Issuance of Summons, 9 Request for Issuance of Summons, 15 Request for Issuance of Summons, 12 Request for Issuance of Summons. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the issuance of summons is not correct; Plaintiff's attorney information was omitted on PDF. Please note that you may file separate summonses or file one summons form with a rider/addendum attached listing all Defendants and addresses. Re–file the document using the event type Request for Issuance of Summons found under the event list Service of Process – select the correct filer/filers – and attach the correct summons form PDF. (sj)** (Entered: 09/17/2021) |
| 09/17/2021 | 21 | REQUEST FOR ISSUANCE OF SUMMONS as to Kobalt Music Publishing America, Inc. d/b/a Songs of Kobalt Music Publishing, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 22 | REQUEST FOR ISSUANCE OF SUMMONS as to Donald McKinley Glover II, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 23 | **FILING ERROR – DEFICIENT PLEADING – SUMMONS REQUEST PDF and AS TO ERROR –** REQUEST FOR ISSUANCE OF SUMMONS as to EMIL TOMAS GORANSSON, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) Modified on 9/20/2021 (gp). (Entered: 09/17/2021) |
| 09/17/2021 | 24 | REQUEST FOR ISSUANCE OF SUMMONS as to Roc Nation Publishing LLC d/b/a Songs of Roc Nation, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 25 | REQUEST FOR ISSUANCE OF SUMMONS as to Young Stoner Life Publishing, LLC, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 26 | REQUEST FOR ISSUANCE OF SUMMONS as to Theory Entertainment LLC d/b/a 300 Entertainment, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 27 | REQUEST FOR ISSUANCE OF SUMMONS as to Warner–Tamerlane Publishing Corp., re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 28 | REQUEST FOR ISSUANCE OF SUMMONS as to Warner Music Group, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 29 | REQUEST FOR ISSUANCE OF SUMMONS as to Sony Music Entertainment, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 30 | REQUEST FOR ISSUANCE OF SUMMONS as to RCA Records, Inc., re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 31 | REQUEST FOR ISSUANCE OF SUMMONS as to Songs of Universal, Inc., re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/17/2021 | 32 | REQUEST FOR ISSUANCE OF SUMMONS as to Atlantic Recording Corporation, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/17/2021) |
| 09/20/2021 | 33 | ELECTRONIC SUMMONS ISSUED as to Donald McKinley Glover II..(gp) (Entered: 09/20/2021) |

| 09/20/2021 | 34 | ELECTRONIC SUMMONS ISSUED as to Kobalt Music Publishing America, Inc...(gp) (Entered: 09/20/2021) |
|---|---|---|
| 09/20/2021 | 35 | ELECTRONIC SUMMONS ISSUED as to Roc Nation Publishing LLC..(gp) (Entered: 09/20/2021) |
| 09/20/2021 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Imran H. Ansari to RE–FILE Document No. 23 Request for Issuance of Summons. The filing is deficient for the following reason(s): party name on the TO section of the PDF and docket entry does not match the entire name of the party on the pleading and case. Re–file the document using the event type Request for Issuance of Summons found under the event list Service of Process – select the correct filer/filers – and attach the correct summons form PDF. (gp) (Entered: 09/20/2021) |
| 09/20/2021 | 36 | ELECTRONIC SUMMONS ISSUED as to Young Stoner Life Publishing LLC..(gp) (Entered: 09/20/2021) |
| 09/20/2021 | 37 | ELECTRONIC SUMMONS ISSUED as to Theory Entertainment LLC..(gp) (Entered: 09/20/2021) |
| 09/20/2021 | 38 | ELECTRONIC SUMMONS ISSUED as to Warner–Tamerlane Publishing Corp...(gp) (Entered: 09/20/2021) |
| 09/20/2021 | 39 | ELECTRONIC SUMMONS ISSUED as to Warner Music Group Corp...(gp) (Entered: 09/20/2021) |
| 09/20/2021 | 40 | ELECTRONIC SUMMONS ISSUED as to RCA Records..(gp) (Entered: 09/20/2021) |
| 09/20/2021 | 41 | ELECTRONIC SUMMONS ISSUED as to Atlantic Recording Corporation..(gp) (Entered: 09/20/2021) |
| 09/20/2021 | 42 | ELECTRONIC SUMMONS ISSUED as to Songs of Universal, Inc...(gp) (Entered: 09/20/2021) |
| 09/20/2021 | 43 | ELECTRONIC SUMMONS ISSUED as to Sony Music Entertainment..(gp) (Entered: 09/20/2021) |
| 09/20/2021 | 44 | REQUEST FOR ISSUANCE OF SUMMONS as to LUDWIG EMIL TOMAS GORANSSON, re: 1 Complaint,,. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/20/2021) |
| 09/21/2021 | 45 | ELECTRONIC SUMMONS ISSUED as to Ludwig Emil Tomas Goransson. (sj) (Entered: 09/21/2021) |
| 09/29/2021 | 46 | WAIVER OF SERVICE RETURNED EXECUTED. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/29/2021) |
| 09/30/2021 | 47 | AFFIDAVIT OF SERVICE. Theory Entertainment LLC served on 9/24/2021, answer due 10/15/2021. Service was accepted by Nancy Dougherty. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/30/2021) |
| 09/30/2021 | 48 | AFFIDAVIT OF SERVICE. Warner Music Group Corp. served on 9/24/2021, answer due 10/15/2021. Service was accepted by Nancy Dougherty. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/30/2021) |
| 09/30/2021 | 49 | LETTER MOTION for Extension of Time *to Serve Complaint* addressed to Judge Victor Marrero from Imran H. Ansari dated 9/30/21. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 09/30/2021) |
| 10/01/2021 | 50 | ORDER granting 49 Letter Motion for Extension of time to serve the Complaint in this matter upon the Defendants Jefferey Lamar Williams and RCA Records. So Ordered. Service due by 11/29/2021. (Signed by Judge Victor Marrero on 10/1/2021) (js) (Entered: 10/01/2021) |
| 10/04/2021 | 51 | AFFIDAVIT OF SERVICE. Roc Nation Publishing LLC served on 9/27/2021, answer due 10/18/2021. Service was accepted by Katie DiLorenzo. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |

| 10/04/2021 | 52 | AFFIDAVIT OF SERVICE. Sony Music Entertainment served on 9/23/2021, answer due 10/14/2021. Service was accepted by Judy Carkner, Authorized Agent. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
|---|---|---|
| 10/04/2021 | 53 | AFFIDAVIT OF SERVICE. Kobalt Music Publishing America, Inc. served on 9/23/2021, answer due 10/14/2021. Service was accepted by Judy Carkner, Authorized Agent. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
| 10/04/2021 | 54 | AFFIDAVIT OF SERVICE. Service was accepted by Nancy Dougherty, Authorized Agent, Secretary of State. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
| 10/04/2021 | 55 | AFFIDAVIT OF SERVICE. Service was accepted by Nancy Dougherty, Authorized Agent, Secretary of State. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
| 10/04/2021 | 56 | AFFIDAVIT OF SERVICE. Young Stoner Life Publishing LLC served on 9/27/2021, answer due 10/18/2021. Service was accepted by Christy Drabeck, Authorized Agent. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
| 10/04/2021 | 57 | WAIVER OF SERVICE RETURNED EXECUTED. Ludwig Emil Tomas Goransson waiver sent on 9/21/2021, answer due 11/22/2021. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
| 10/04/2021 | 58 | AFFIDAVIT OF SERVICE. Songs of Universal, Inc. served on 9/30/2021, answer due 10/21/2021. Service was accepted by Christopher Boyd, Authorized Agent. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
| 10/04/2021 | 59 | AFFIDAVIT OF SERVICE. Warner–Tamerlane Publishing Corp. served on 9/30/2021, answer due 10/21/2021. Service was accepted by Christopher Boyd, Authorized Agent. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
| 10/04/2021 | 60 | AFFIDAVIT OF SERVICE. Atlantic Recording Corporation served on 9/30/2021, answer due 10/21/2021. Service was accepted by Christopher Boyd, Authorized Agent. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/04/2021) |
| 10/05/2021 | 61 | WAIVER OF SERVICE RETURNED EXECUTED. Donald McKinley Glover II waiver sent on 9/21/2021, answer due 11/22/2021. Document filed by Emelike Nwosuocha..(Ansari, Imran) (Entered: 10/05/2021) |
| 10/07/2021 | 62 | NOTICE OF APPEARANCE by Alexander Benjamin Spiro on behalf of Roc Nation Publishing LLC..(Spiro, Alexander) (Entered: 10/07/2021) |
| 10/07/2021 | 63 | NOTICE OF APPEARANCE by Paul Brian Maslo on behalf of Roc Nation Publishing LLC..(Maslo, Paul) (Entered: 10/07/2021) |
| 10/14/2021 | 64 | LETTER MOTION for Extension of Time *to Respond to Complaint* addressed to Judge Victor Marrero from Jonathan D. Davis dated October 14, 2021. Document filed by Donald McKinley Glover II. (Attachments: # 1 Text of Proposed Order Stipulation and Order).(Davis, Jonathan) (Entered: 10/14/2021) |
| 10/18/2021 | 65 | STIPULATION TO EXTEND DEFENDANTS' TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND TO THE COMPLAINT: NOW, THEREFORE, Plaintiff and Defendants, by and through their undersigned counsel or agents, hereby stipulate as follows: 1. Defendants shall answer, move, or otherwise respond to the Complaint on or before Wednesday, December 8, 2021. 2. Defendants preserve all of their respective challenges, defenses, and responses to the Complaint, except they shall not raise the defense of improper service of process. 3. This stipulation may be signed in counterparts, and any facsimile/PDF/electronic signatures shall be deemed original signatures. Atlantic Recording Corporation answer due 12/8/2021; Donald McKinley Glover II answer due 12/8/2021; Ludwig Emil Tomas Goransson answer due 12/8/2021; Kobalt Music Publishing America, Inc. answer due 12/8/2021; RCA Records answer due 12/8/2021; Roc Nation Publishing LLC answer due 12/8/2021; Songs of Universal, Inc. answer due 12/8/2021; Sony Music Entertainment answer due 12/8/2021; Theory Entertainment LLC answer due 12/8/2021; Warner Music Group Corp. answer due 12/8/2021; Warner–Tamerlane Publishing Corp. answer due 12/8/2021; Young Stoner Life Publishing LLC answer due 12/8/2021. (Signed by |

| | | Judge Victor Marrero on 10/18/2021) (tg) (Entered: 10/18/2021) |
|---|---|---|
| 11/17/2021 | 66 | SECOND LETTER MOTION for Extension of Time *to Respond to Complaint* addressed to Judge Victor Marrero from Jonathan D. Davis dated November 17, 2021. Document filed by Donald McKinley Glover II. (Attachments: # 1 Text of Proposed Order Stipulation and Order).(Williams, Derek) (Entered: 11/17/2021) |
| 11/18/2021 | 67 | STIPULATION TO FURTHER EXTEND DEFENDANTS' TIME TO ANSWER, MOVE, OR OTHERWISE RESPOND TO THE COMPLAINT: NOW, THEREFORE, Plaintiff and the Served Defendants, along with Williams (collectively, "Defendants"), by and through their undersigned counsel or agents, hereby stipulate as follows: Defendants shall answer, move, or otherwise respond to the Complaint on or before Wednesday, December 22, 2021. Defendants preserve all of their respective challenges, defenses, and responses to the Complaint, except they shall not raise the defense of improper service of process. This stipulation may be signed in counterparts, and any facsimile/PDF/electronic signatures shall be deemed original signatures. So Ordered. Atlantic Recording Corporation answer due 12/22/2021; Donald McKinley Glover II answer due 12/22/2021; Ludwig Emil Tomas Goransson answer due 12/22/2021; Kobalt Music Publishing America, Inc. answer due 12/22/2021; RCA Records answer due 12/22/2021; Roc Nation Publishing LLC answer due 12/22/2021; Songs of Universal, Inc. answer due 12/22/2021; Sony Music Entertainment answer due 12/22/2021; Theory Entertainment LLC answer due 12/22/2021; Warner Music Group Corp. answer due 12/22/2021; Warner–Tamerlane Publishing Corp. answer due 12/22/2021; Jefferey Lamar Williams answer due 12/22/2021; Young Stoner Life Publishing LLC answer due 12/22/2021. (Signed by Judge Victor Marrero on 11/18/2021) (js) (Entered: 11/18/2021) |
| 12/22/2021 | 68 | NOTICE OF APPEARANCE by Jonathan David Davis on behalf of Atlantic Recording Corporation, Donald McKinley Glover II, Ludwig Emil Tomas Goransson, Kobalt Music Publishing America, Inc., RCA Records, Sony Music Entertainment, Theory Entertainment LLC, Warner Music Group Corp., Warner–Tamerlane Publishing Corp., Jefferey Lamar Williams, Young Stoner Life Publishing LLC..(Davis, Jonathan) (Entered: 12/22/2021) |
| 12/22/2021 | 69 | NOTICE OF APPEARANCE by Derek Andrew Williams on behalf of Atlantic Recording Corporation, Donald McKinley Glover II, Ludwig Emil Tomas Goransson, Kobalt Music Publishing America, Inc., RCA Records, Sony Music Entertainment, Theory Entertainment LLC, Warner Music Group Corp., Warner–Tamerlane Publishing Corp., Jefferey Lamar Williams, Young Stoner Life Publishing LLC..(Williams, Derek) (Entered: 12/22/2021) |
| 12/23/2021 | 70 | NOTICE OF APPEARANCE by Ilene Susan Farkas on behalf of Songs of Universal, Inc...(Farkas, Ilene) (Entered: 12/23/2021) |
| 12/23/2021 | 71 | NOTICE OF APPEARANCE by Donald S. Zakarin on behalf of Songs of Universal, Inc...(Zakarin, Donald) (Entered: 12/23/2021) |
| 02/18/2022 | 72 | LETTER addressed to Judge Victor Marrero from Jonathan D. Davis dated February 18, 2022 re: Defendants' Contemplated Motion to Dismiss the Complaint. Document filed by Atlantic Recording Corporation, Donald McKinley Glover II, Ludwig Emil Tomas Goransson, Kobalt Music Publishing America, Inc., RCA Records, Sony Music Entertainment, Theory Entertainment LLC, Warner Music Group Corp., Warner–Tamerlane Publishing Corp., Jefferey Lamar Williams, Young Stoner Life Publishing LLC. (Attachments: # 1 Letters exchanged between counsel regarding Defendants' contemplated motion to dismiss the Complaint).(Williams, Derek) (Entered: 02/18/2022) |
| 02/23/2022 | 73 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Kobalt America Holdings, Inc. for Kobalt Music Publishing America, Inc.. Document filed by Kobalt Music Publishing America, Inc...(Williams, Derek) (Entered: 02/23/2022) |
| 02/23/2022 | 74 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Sony Corporation for Sony Music Entertainment. Document filed by Sony Music Entertainment..(Williams, Derek) (Entered: 02/23/2022) |

| | | |
|---|---|---|
| 02/23/2022 | 75 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent AI Entertainment Holdings LLC for Atlantic Recording Corporation, Theory Entertainment LLC, Warner Music Group Corp., Warner–Tamerlane Publishing Corp.. Document filed by Atlantic Recording Corporation, Theory Entertainment LLC, Warner Music Group Corp., Warner–Tamerlane Publishing Corp...(Williams, Derek) (Entered: 02/23/2022) |
| 03/15/2022 | 76 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Universal Music Group, N.V. for Songs of Universal, Inc.. Document filed by Songs of Universal, Inc...(Farkas, Ilene) (Entered: 03/15/2022) |
| 04/26/2022 | 77 | NOTICE OF VOLUNTARY DISMISSAL pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and or their counsel(s), hereby give notice that the above–captioned action is voluntarily dismissed, without prejudice against the defendant(s) RCA Records, Warner Music Group Corp.. Document filed by Emelike Nwosuocha. **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers)**...(Ansari, Imran) (Entered: 04/26/2022) |
| 04/27/2022 | | **\*\*\*NOTICE TO COURT REGARDING NOTICE OF VOLUNTARY DISMISSAL Document No. 77 Notice of Voluntary Dismissal, was reviewed and referred to Judge Victor Marrero for approval for the following reason(s): the plaintiff(s) filed their voluntary dismissal and it did not dismiss all of the parties or the action in its entirety. (tp)** (Entered: 04/27/2022) |
| 04/28/2022 | 78 | NOTICE OF VOLUNTARY DISMISSAL, WITHOUT PREJUDICE, PURSUANT TO FED. R. CIV. P. 41(a)(1)(A)(i): Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Plaintiff Emelike Nwosuocha and his counsel of record, hereby give notice that the above–captioned action is voluntarily dismissed, without prejudice, against only defendants RCA Records and Warner Music Group Corp. An electronic PDF signature shall be deemed an original for the purposes of this notice. Defendants RCA Records and Warner Music Group Corp. are hereby dismissed from this action. SO ORDERED. RCA Records and Warner Music Group Corp. terminated. (Signed by Judge Victor Marrero on 4/28/2022) (jca) (Entered: 04/28/2022) |
| 06/17/2022 | 79 | MOTION for Derek A. Williams to Withdraw as Attorney . Document filed by Atlantic Recording Corporation, Donald McKinley Glover II, Ludwig Emil Tomas Goransson, Kobalt Music Publishing America, Inc., RCA Records, Sony Music Entertainment, Theory Entertainment LLC, Warner Music Group Corp., Warner–Tamerlane Publishing Corp., Jefferey Lamar Williams, Young Stoner Life Publishing LLC..(Davis, Jonathan) (Entered: 06/17/2022) |
| 06/21/2022 | 80 | MEMO ENDORSEMENT granting 79 MOTION for Derek A. Williams to Withdraw as Attorney. ENDORSEMENT: Attorney Derek Williams's request to withdraw as counsel of record for defendants is hereby GRANTED. SO ORDERED. Attorney Derek Andrew Williams terminated. (Signed by Judge Victor Marrero on 6/21/2022) (jca) (Entered: 06/21/2022) |
| 06/24/2022 | 81 | ORDER: Upon review of all pre–motion letters, the Court is not persuaded that a pre–motion conference or further briefing is necessary to resolve the parties' dispute. In accordance with this Court's Individual Practices and Rule 7.1 of the Court's Local Rules, Defendants may file a motion to dismiss which shall not exceed three pages in length (single spaced, twelve–point font), unless, upon a party's request, the Court authorizes a larger number. The substance of such motion may not deviate materially from the basis for dismissal that Defendants stated in its initial pre–motion letter. In response, within seven (7) days of the filing of Defendants' motion, Nwosuocha may file its opposition, which may similarly not exceed three pages (single spaced, twelve–point font), opposing the motion. Defendants may file a three–page reply within seven (7) days of the filing of Nwosuocha's response. SO ORDERED. (Signed by Judge Victor Marrero on 6/24/2022) (ama) (Entered: 06/24/2022) |
| 07/19/2022 | 82 | LETTER addressed to Judge Victor Marrero from Jonathan D. Davis dated July 19, 2022 re: Reqest to File Enlarged Motion. Document filed by Donald McKinley Glover II..(Davis, Jonathan) (Entered: 07/19/2022) |
| 07/20/2022 | 83 | MEMO ENDORSEMENT on re: 82 Letter filed by Donald McKinley Glover II. ENDORSEMENT: Defendants' request to submit a joint motion brief which shall not |

| | | |
|---|---|---|
| | | exceed six pages in length (single spaced, twelve–point font) is hereby GRANTED. In response, plaintiff may file an opposition, which similarly shall not exceed six pages in length (single spaced, twelve–point font). Defendants may file a three–page reply. SO ORDERED. (Signed by Judge Victor Marrero on 7/20/2022) (jca) (Entered: 07/20/2022) |
| 07/28/2022 | 84 | LETTER addressed to Judge Victor Marrero from Jonathan D. Davis dated July 28, 2022 re: Request for Approval of Motion Briefing Schedule. Document filed by Donald McKinley Glover II..(Davis, Jonathan) (Entered: 07/28/2022) |
| 07/29/2022 | 85 | MEMO ENDORSEMENT on re: 84 Letter filed by Donald McKinley Glover II. ENDORSEMENT: The parties in this action are directed to submit an agreed upon joint briefing schedule for defendants' anticipated motion to dismiss. SO ORDERED. (Signed by Judge Victor Marrero on 7/29/2022) (jca) (Entered: 07/29/2022) |
| 08/10/2022 | 86 | ORDER: In light of recent Second Circuit opinions, the parties are directed to advise the Court whether they consent for the Court to deem the briefing as set forth in the July 20 Order as a fully briefed motion and rule on the basis of the forthcoming limited briefs, or whether the parties request supplemental or full briefing on Defendants' motion. If the parties request supplemental or full briefing, they shall submit a proposed briefing schedule within one week of the date of this order. (Signed by Judge Victor Marrero on 8/10/2022) (ate) (Entered: 08/10/2022) |
| 08/14/2022 | 87 | PROPOSED STIPULATION AND ORDER. Document filed by Donald McKinley Glover II..(Davis, Jonathan) (Entered: 08/14/2022) |
| 08/15/2022 | 88 | STIPULATION AND ORDER EXTENDING DEADLINE TO ANSWER, MOVE, OR OTHERWISE RESPOND TO THE COMPLAINT AND ASSOCIATED BREIFING SCHEDULE: NOW, THEREFORE, Plaintiff and Defendants, by and through their undersigned counsel, hereby agree as follows: 1. Defendants shall file the Motion to Dismiss on September 9, 2022. 2. Plaintiff's opposition to the Motion to Dismiss shall be filed on or before September 16, 2022. 3. Defendants shall file a reply, if any, on or before September 23, 2022. 4. This stipulation may be signed in counterparts, and facsimile/PDF/electronic signatures shall be deemed original signatures. IT IS SO ORDERED. (Signed by Judge Victor Marrero on 8/15/2022) ( Motions due by 9/9/2022., Responses due by 9/16/2022, Replies due by 9/23/2022.) (ks) (Entered: 08/15/2022) |
| 09/09/2022 | 89 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Young Stoner Life Publishing LLC..(Davis, Jonathan) (Entered: 09/09/2022) |
| 09/09/2022 | 90 | **FILING ERROR – WRONG EVENT TYPE SELECTED FROM MENU –** MOTION to Dismiss *Complaint*. Document filed by Donald McKinley Glover II. (Attachments: # 1 Exhibit Ex. A – Plaintiff's Complaint, # 2 Exhibit Ex. B – Copyright Registration, # 3 Exhibit Ex. C – Copyright Registration, # 4 Exhibit Ex. D – Copyright Registration, # 5 Exhibit Ex. E – Copyright Registration, # 6 Exhibit Ex. F – Copyright Registration, # 7 Exhibit Ex. G – Copyright Registration, # 8 Exhibit Ex. H – Copyright Registration, # 9 Exhibit Ex. I – Plaintiff's Lyrics, # 10 Exhibit Ex. J – Glover's Lyrics).(Davis, Jonathan) Modified on 9/19/2022 (db). (Entered: 09/09/2022) |
| 09/09/2022 | 91 | **FILING ERROR – DEFICIENT DOCKET ENTRY** – MEMORANDUM OF LAW in Support re: 90 MOTION to Dismiss *Complaint*. . Document filed by Donald McKinley Glover II. (Davis, Jonathan) Modified on 9/19/2022 (db). (Entered: 09/09/2022) |
| 09/16/2022 | 92 | **FILING ERROR – DEFICIENT DOCKET ENTRY** – MEMORANDUM OF LAW in Opposition re: 90 MOTION to Dismiss *Complaint*. . Document filed by Emelike Nwosuocha. (Attachments: # 1 Exhibit A – Copyright Registration, # 2 Exhibit B – USCO Circular 56A, # 3 Exhibit C – USCO Compendium (3d ed. 2014), # 4 Exhibit D – USCO Compendium (3d ed. 2014), # 5 Exhibit E – Pre–Motion Correspondence).(Ansari, Imran) Modified on 9/19/2022 (db). (Entered: 09/16/2022) |
| 09/19/2022 | | **\*\*\*NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – EVENT TYPE ERROR. Notice to Attorney Jonathan David Davis to RE–FILE Document 90 MOTION to Dismiss *Complaint*. Use the event type Declaration in Support of** |

| | | |
|---|---|---|
| | | **Motion found under the event list Replies, Opposition and Supporting Documents. \*\*\*REMINDER\*\*\* – MOTION to Dismiss WAS NOT FILED. First file Motion, then file and link any supporting documents. (db)** (Entered: 09/19/2022) |
| 09/19/2022 | | **\*\*\*NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Jonathan David Davis to RE–FILE Document 91 Memorandum of Law in Support of Motion. ERROR(S): Document linked to filing error. (db)** (Entered: 09/19/2022) |
| 09/19/2022 | | **\*\*\*NOTICE TO ATTORNEY TO RE–FILE DOCUMENT – DEFICIENT DOCKET ENTRY ERROR. Notice to Attorney Imran H. Ansari to RE–FILE Document 92 Memorandum of Law in Opposition to Motion. ERROR(S): Document linked to filing error. (db)** (Entered: 09/19/2022) |
| 09/20/2022 | 93 | MOTION to Dismiss *Complaint*. Document filed by Donald McKinley Glover II..(Davis, Jonathan) (Entered: 09/20/2022) |
| 09/20/2022 | 94 | DECLARATION of Jonathan D. Davis in Support re: 93 MOTION to Dismiss *Complaint*.. Document filed by Donald McKinley Glover II. (Attachments: # 1 Exhibit Plaintiff's Complaint, # 2 Exhibit Ex. B – Copyright Registration, # 3 Exhibit Ex. C – Copyright Registration, # 4 Exhibit Ex. D – Copyright Registration, # 5 Exhibit Ex. E – Copyright Registration, # 6 Exhibit Ex. F – Copyright Registration, # 7 Exhibit Ex. G – Copyright Registration, # 8 Exhibit Ex. H – Copyright Registration, # 9 Exhibit Ex. I – Plaintiff's Lyrics, # 10 Exhibit Ex. J – Glover's Lyrics).(Davis, Jonathan) (Entered: 09/20/2022) |
| 09/20/2022 | 95 | MEMORANDUM OF LAW in Support re: 93 MOTION to Dismiss *Complaint*. . Document filed by Donald McKinley Glover II..(Davis, Jonathan) (Entered: 09/20/2022) |
| 09/20/2022 | 96 | MEMORANDUM OF LAW in Opposition re: 93 MOTION to Dismiss *Complaint*. . Document filed by Emelike Nwosuocha. (Attachments: # 1 Exhibit A – Copyright Registration, # 2 Exhibit B – USCO Circular 56A, # 3 Exhibit C – USCO Compendium (3d ed. 2014), # 4 Exhibit D – USCO Compendium (3d ed. 2014), # 5 Exhibit E – Pre–Motion Correspondence).(Ansari, Imran) (Entered: 09/20/2022) |
| 09/23/2022 | 97 | REPLY MEMORANDUM OF LAW in Support re: 93 MOTION to Dismiss *Complaint*. . Document filed by Donald McKinley Glover II..(Davis, Jonathan) (Entered: 09/23/2022) |
| 09/28/2022 | 98 | LETTER MOTION for Leave to File SURREPLY addressed to Judge Victor Marrero from Imran H. Ansari dated 09/28/22. Document filed by Emelike Nwosuocha. (Attachments: # 1 Exhibit A – Pre–Motion Letter).(Ansari, Imran) (Entered: 09/28/2022) |
| 09/29/2022 | 99 | ORDER denying 98 Letter Motion for Leave to File Document. Request DENIED. The Court will not consider any new arguments, legal theories or other matters raised by defendants for the first time in reply. SO ORDERED. (Signed by Judge Victor Marrero on 9/29/2022) (jca) (Entered: 09/29/2022) |
| 03/24/2023 | 100 | DECISION AND ORDER granting 93 Motion to Dismiss. For the reasons stated above, it is hereby ORDERED that the motion filed by defendants Donald McKinley Glover, II, Jeffrey Lamar Williams, Ludwig Emil Tomas Gransson, Kobalt Music Publishing America, Inc. d/b/a/ Songs of Kobalt Music Publishing, Sony Music Entertainment, Young Stoner Life Publishing, LLC, 300 Entertainment LLC f/k/a Theory Entertainment LLC d/b/a 300 Entertainment, Atlantic Recording Corporation, Roc Nation Publishing d/b/a Songs of Roc Nation, Songs of Universal, Inc., and Warner–Tamerlane Publishing Corp. to dismiss the Complaint of plaintiff Emelike Nwosuocha (Dkt. No. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED with prejudice to leave to amend. The Clerk of Court is respectfully directed to terminate the Motion to Dismiss at Dkt. No. 93 as well as any other pending motions and close the case. SO ORDERED. (Signed by Judge Victor Marrero on 3/24/2023) (jca) Transmission to Orders and Judgments Clerk for processing. (Entered: 03/24/2023) |

| 03/24/2023 | 101 | CLERK'S JUDGMENT re: 100 Order on Motion to Dismiss in favor of Atlantic Recording Corporation, Kobalt Music Publishing America, Inc., Roc Nation Publishing LLC, Songs of Universal, Inc., Sony Music Entertainment, Theory Entertainment LLC, Warner–Tamerlane Publishing Corp., Young Stoner Life Publishing LLC, Donald McKinley Glover II, Jefferey Lamar Williams, Ludwig Emil Tomas Goransson against Emelike Nwosuocha. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Decision and Order dated March 24, 2023, the motion filed by defendants Donald McKinley Glover, II, Jeffrey Lamar Williams, Ludwig Emil Tomas Gransson, Kobalt Music Publishing America, Inc. d/b/a 300 Entertainment, Atlantic Recording Corporation, Roc Nation Publishing d/b/a Songs of Roc Nation, Songs of Universal, Inc., and Warner–Tamerlane Publishing Corp. to dismiss the Complaint of plaintiff Emelike Nwosuocha (Dkt. No. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED with prejudice to leave to amend; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 3/24/2023) (Attachments: # 1 Appeal Package) (km) (Entered: 03/24/2023) |
|---|---|---|
| 03/24/2023 | 102 | AO 121 FORM COPYRIGHT – CASE TERMINATED– SUBMITTED. In compliance with the provisions of 17 U.S.C. 508, the Register of Copyrights is hereby advised that a final decision was rendered on 3/24/2023 in a court action filed on the following copyright(s) in the U.S. District Court Southern District of New York. Form e–mailed to Register of Copyrights.(km) (Entered: 03/24/2023) |
| 03/31/2023 | 103 | LETTER addressed to Judge Victor Marrero from Jonathan D. Davis dated March 31, 2023 re: Extend Time to File Section 505 Fees/Costs Motion. Document filed by Donald McKinley Glover II..(Davis, Jonathan) (Entered: 03/31/2023) |
| 04/03/2023 | 104 | MEMO ENDORSEMENT on re: 103 Letter filed by Donald McKinley Glover II ENDORSEMENT: Defendants' time to file a motion for costs is hereby extended pursuant to the above. SO ORDERED. (Signed by Judge Victor Marrero on 4/3/2023) (ks) (Entered: 04/03/2023) |
| 04/21/2023 | 105 | **FILING ERROR – DEFICIENT DOCKET ENTRY – NOTICE OF APPEAL** from 100 Order on Motion to Dismiss,,,,. Document filed by Emelike Nwosuocha. Filing fee $ 505.00, receipt number ANYSDC–27638440. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Ansari, Imran) Modified on 4/21/2023 (tp). (Entered: 04/21/2023) |
| 04/21/2023 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT APPEAL. Notice to attorney Imran Ansari to RE–FILE Document No. 105 Notice of Appeal. The filing is deficient for the following reason(s):the order and judgment mentioned were not selected. Re–file the appeal using the event type Notice of Appeal found under the event list Appeal Documents – attach the correct signed PDF – select the correct named filer/filers – select the correct order and judgment being appealed – Do Not Pay the Appeal Fee Again. (tp)** (Entered: 04/21/2023) |
| 04/21/2023 | 106 | NOTICE OF APPEAL from 100 Order on Motion to Dismiss,,,, 101 Clerk's Judgment,,,,,. Document filed by Emelike Nwosuocha. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Ansari, Imran) (Entered: 04/21/2023) |
| 04/21/2023 | | Appeal Fee Paid electronically via Pay.gov for: 106 Notice of Appeal. Filing fee $ 505.00. Pay.gov receipt number ANYSDC–27638440, paid on 4/21/2023. (tp) (Entered: 04/21/2023) |
| 04/21/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 106 Notice of Appeal. (tp) (Entered: 04/21/2023) |
| 04/21/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 106 Notice of Appeal filed by Emelike Nwosuocha were transmitted to the U.S. Court of Appeals. (tp) (Entered: 04/21/2023) |

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------X

EMELIKE NWOSUOCHA,                          :

                Plaintiff,          :

       against                          :          **COMPLAINT**

DONALD MCKINLEY GLOVER, II,          :          JURY TRIAL DEMANDED
JEFFEREY LAMAR WILLIAMS, LUDWIG
EMIL TOMAS GÖRANSSON, KOBALT
MUSIC PUBLISHING AMERICA, INC. d/b/a/
SONGS OF KOBALT MUSIC PUBLISHING,
RCA RECORDS, SONY MUSIC
ENTERTAINMENT, YOUNG STONER LIFE
PUBLISHING LLC, THEORY
ENTERTAINMENT LLC d/b/a 300
ENTERTAINMENT, ATLANTIC RECORDING
CORPORATION, ROC NATION PUBLISHING
LLC d/b/a SONGS OF ROC NATION, SONGS
OF UNIVERSAL, INC., WARNER MUSIC
GROUP CORP., and WARNER-TAMERLANE
PUBLISHING CORP.

              Defendants.          :

-------------------------------X

Plaintiff Emelike Nwosuocha ("Nwosuocha"), by and through his attorneys, Aidala, Bertuna &

Kamins P.C., for his Complaint against defendants Donald McKinley Glover, II ("Glover"),

Jefferey Lamar Williams ("Williams"), Ludwig Emil Tomas Göransson ("Göransson"), Songs of

Kobalt Music Publishing ("Kobalt Music"), RCA Records ("RCA"), Sony Music Entertainment

("Sony Music"), Young Stoner Life Publishing LLC ("YSL"), Theory Entertainment LLC d/b/a

300 Entertainment ("300"), Atlantic Recording Corporation ("Atlantic"), Warner Music Group

Corp. ("WMG"), Roc Nation Publishing LLC d/b/a Songs of Roc Nation ("Roc Nation"), Songs

of Universal, Inc. ("Universal"), and Warner-Tamerlane Publishing Corp ("Warner-Tamerlane")

(collectively, "Defendants"), alleges, on knowledge as to his own actions, and otherwise on information and belief, as follows:

<u>PRELIMINARY STATEMENT</u>

1.　　Nwosuocha brings this action seeking injunctive and monetary relief for Defendants' infringement via direct and/or indirect copying of Nwosuocha's copyright in Nwosuocha's song entitled "Made in America" (the "Copyrighted Work"), which Nwosuocha registered with the U.S. Copyright Office on May 24, 2017 and owns full copyright in.

2.　　The crux of the claims in this action brought pursuant to the to the Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq*. is that there are substantial similarities between the Copyrighted Work and the song "This is America," which was released pseudonymously by Defendant Glover under his musical stage name, Childish Gambino. Specifically, the substantial similarities between both songs include, but are not limited to, nearly-identical unique rhythmic, lyrical, and thematic compositional and performance content contained in the chorus – or "hook" – sections that are the centerpieces of both songs.

3.　　Defendants are the writers, producers, performers, record labels, publishers, distributors, managers, administrators, and/or distributors of the infringing work "This is America" (the "Infringing Work").

4.　　In or about early September, 2016 Nwosuocha wrote and created the Copyrighted Work. Nwosuocha subsequently displayed the Copyrighted Work to the public on September 11, 2016 by uploading it to popular streaming platform Soundcloud, where end users were allowed to listen to the song on the Soundcloud platform as a free stream. Nwosuocha later again publicly displayed the Copyrighted Work by uploading it, accompanied by a music video, to YouTube on or about November 9, 2016, where end users were allowed to listen to the song on the YouTube

1 JA 18

platform as a free stream. A screenshot reflecting these initial two public displays of the Copyrighted Work by Nwosuocha is annexed hereto as **EXHIBIT A**.

5. Subsequent to publicly displaying the Copyrighted Work on Soundcloud and YouTube, Nwosuocha registered his full and exclusive copyright in the Copyrighted Work with the U.S. Copyright Office on May 24, 2017 in advance of the Copyrighted Work's first publication. The Copyrighted Work would be published for the first time as the lead single for his then-unpublished album entitled "Eleven: The Junior Senior Year" (the "Album"), which he also owns full copyright to. The Certificate of Copyright reflecting the foregoing registration is annexed hereto as **EXHIBIT B**. Nwosuocha is the owner of all copyrights in the Copyrighted Work.

6. Since creating the Copyrighted Work and fixing it to a tangible medium, Nwosuocha has published, distributed, advertised, licensed, performed, publicly displayed, and sold the Copyrighted Work in the United States by, among other means, uploading the Copyrighted Work to all major music streaming platforms, including YouTube, Apple Music, Spotify, Tidal, and Soundcloud, and by selling downloadable digital copies of the Copyrighted Work.

7. All of the claims asserted herein arise out of and are based on Defendants' copying, reproduction, distribution, public display, performance, sale, licensing, marketing, promotion and/or other exploitation of the Copyrighted Work without Nwosuocha's consent. Nwosuocha sues for copyright infringement under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 *et seq*.

1 JA 19

8. Nwosuocha seeks all remedies afforded to him by the Copyright Act, including preliminary and permanent injunctive relief, Nwosuocha's damages and Defendants' profits from Defendants' infringing conduct, and other monetary relief.

## JURISDICTION AND VENUE

9. This court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act. Federal Courts have exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

10. This court has personal jurisdiction over the enumerated Defendants because they have directed their infringing activities with respect to the Infringing Work to New York residents, and New York residents are able to purchase, download, and stream the Infringing Work and works that are derivative of the Infringing Work.

11. Defendants have engaged in systematic and continuous business activities, including those relating to the Infringing Works, in New York. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction.

12. Defendants are, at minimum, constructively aware of their continuous and substantial commercial interactions with New York residents.

13. Defendant Glover has performed, and he and the other Defendants have authorized, organized, and promoted performances of the Infringing Work in New York.

14. The Defendants have generated touring and recording revenues from the unauthorized and unlawful exploitation of the infringing work, including receiving substantial revenue from such exploitation in New York. They have advertised the Infringing Works to New York residents.

1 JA 20

15. The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing works in New York.

16. New York has a considerable interest in adjudicating disputes wherein New York residents are the target of the harm resulting from exploitation of the infringing work

17. Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(a) because Defendants maintain offices in and are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this judicial district, and because a substantial part of the events giving rise to the within claims occurred in this judicial district.

## PARTIES

18. Nwosuocha is an individual who resides in and is a citizen of Miami-Dade County, Florida. Nwosuocha is a musician, singer, vocalist, songwriter, and producer who disseminates and/or performs his musical works under the pseudonym/stage name "Kidd Wes." Nwosuocha is further engaged in, among other things, conducting the business of publicly performing, distributing, selling, marketing, licensing, promoting, and/or otherwise exploiting his musical works.

19. Upon information and belief, Defendant Glover resides in Los Angeles County, California. Among other ventures, Defendant Glover is an American singer, songwriter, and rapper who releases music under the stage name Childish Gambino, and who caused the public release of the Infringing Work on May 6th, 2018, and who has since then has caused the Infringing Work to be widely published distributed, performed, licensed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon further information and belief, Defendant Glover has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

1 JA 21

20.     Upon information and belief, Defendant Kobalt Music is a Delaware corporation in the business, among others, of music publishing, with a principal place of business in New York, New York. Upon further information and belief, Kobalt Music is one of the publishers of the Infringing Work, has been responsible for, among other things, coordinating publishing, administrative, and creative support services with respect to the Infringing Work. Upon further information and belief, Defendant Kobalt Music has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

21.     Upon information and belief, Defendant Sony Music is a major global music company that produces, manufactures, publishes, licenses, distributes, administers, markets, and/or exploits prerecorded music, among other business ventures. Upon further information and belief, Defendant Sony Music is the parent entity that owns Defendant RCA. Upon further information and belief, Defendant Sony Music has assisted in and/or directly facilitated, among other things, the publication, licensing, promotion, reproduction, sale and/or exploitation of the Infringing Work. Upon further information and belief, Defendant Sony Music conducts systematic and continuous business in this district and has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

22.     Upon information and belief, Defendant RCA is an unincorporated division of Sony Music that does regular business in New York and maintains an office in New York. Defendant RCA is the record label entity to which Defendant Glover is signed for the purposes of creating, producing, manufacturing, publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his stage name Childish Gambino, including the Infringing Work. Upon information and belief, Defendant RCA has assisted in and/or directly facilitated, among other

1 JA 22

things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant RCA has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

23.     Upon information and belief, Defendant Williams resides in Fulton County, Georgia. Among other ventures, Defendant Williams is an American singer, songwriter, and rapper who releases music under the stage name Young Thug, who regularly does business in New York, and who is credited as a writer of the Infringing Work and who vocally performs on the Infringing Work. Defendant Williams has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Defendant Williams has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

24.     Upon information and belief, Defendant YSL is a Georgia limited liability company whose principal and sole member is Defendant Williams, and which functions as Defendant Williams' publishing imprint. Upon further information and belief, Defendant YSL has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited, and has derived substantial revenues and/or profits therefrom.

25.     Upon information and belief, Defendant 300 is a Delaware limited liability company doing regular business in New York, and with a principal place of business in New York, New York. Upon further information and belief, Defendant 300 is the record label to which Defendant Williams is signed for the purposes of creating, producing, manufacturing,

publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his stage name Young Thug, including the Infringing Work, and is the record label that has acted as the distributor for music released and/or published through Defendant YSL's imprint. Upon further information and belief, Defendant 300 has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant 300 has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

26. Upon information and belief, Defendant Atlantic is a Delaware corporation with offices in, and doing regular business in, the State of New York. Upon further information and belief, Defendant Atlantic has acted as the distributor of all music distributed by and through Defendant 300, including the Infringing Work. Upon further information and belief, Defendant Atlantic has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Atlantic has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

27. Upon information and belief, Defendant WMG is a major global music corporation organized under the laws of Delaware with its principal offices in New York, New York. Defendant Upon further information and belief, WMG is the parent company Defendant

1 JA 24

Atlantic, and Defendant WMG has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant WMG has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

28.     Upon information and belief, Defendant Göransson resides in Los Angeles County, California. Among other ventures, Defendant Göransson is a music producer who is credited as a writer of the Infringing Work, whose composition and performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, Defendant Göransson has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Defendant Göransson has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

29.     Upon information and belief, Defendant Roc Nation is a Delaware limited liability company doing regular business in New York, and with a principal place of business in New York, New York. Upon further information and belief, Defendant Roc Nation is the record label to which Defendant Göransson is signed for the purposes of creating, producing, manufacturing, publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his given name, including the Infringing Work. Upon further information and belief, Defendant Roc Nation has assisted in and/or directly facilitated, among other things, the publication, reproduction,

9

licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Roc Nation has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

30.     Upon information and belief, Defendant Universal is a corporation organized under the laws of the State of California registered and doing regular business in the State of New York as a foreign business corporation. Upon further information and belief, Defendant Universal has acted as the distributor of music distributed and/or published by and through Defendant Roc Nation that includes the Infringing Work. Upon further information and belief, Defendant Universal has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Universal has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

31.     Upon information and belief, Defendant Warner-Tamerlane is a corporation organized under the laws of the State of California registered and doing regular business in the State of New York as a foreign business corporation. Upon further information and belief, Defendant Warner-Tamerlane has acted as the publisher and/or distributor of music published and/or distributed by and through Defendant Roc Nation and Defendant Atlantic, including the Infringing Work. Upon further information and belief, Defendant Warner-Tamerlane has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration,

1 JA 26

distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Warner-Tamerlane has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

### FACTS

**A.** **Plaintiff and his Copyrighted Work**

32.     Nwosuocha wrote the Copyrighted Work, and thereafter fixed it to a tangible medium by recording his performance of the Copyrighted Work, in or about early September of 2016. Nwosuocha has since then continued to retain ownership of the full and exclusive copyright in the Copyrighted Work, and registered his full ownership of copyright in the Copyrighted work with the U.S. Copyright Office on May 24th, 2017, prior to its publication. Nwosuocha accomplished registering his full copyright ownership in the Copyrighted Work by registering on May 24th, 2017 his full copyright ownership of the entirety of his then-unpublished album entitled "Eleven: The Junior Senior Year" (the "Album"), on which the Copyrighted Work was included.

33.     Subsequent to registering his full copyright to the entirety of the fully-unpublished Album on May 24th, 2017, Nwosuocha made the first publication of the Copyrighted Work as a purchasable lead single to the Album. This initial publication of the Copyrighted Work occurred on or about June 8th, 2017.

34.     As a result of the foregoing, Nwosuocha owns any and all copyright rights in the Copyrighted Work.

1 JA 27

35.     The Copyrighted Work is wholly original, and Nwosuocha is the lawful exclusive owner of all rights, title, and interest, including all rights under copyright, in the Copyrighted Work.

36.     Nwosuocha is the owner of valid and subsisting United States Copyright Registration No. SRu 1-301-922 for the Copyrighted Work, issued by the United States Copyright Office on May 24th, 2017. *See* **Ex. B**.

37.     As previously set forth, Nwosuocha has published, distributed, licensed, displayed, sold, performed, promoted, marketed and/or otherwise exploited the Copyrighted Work by, among other means, uploading the Copyrighted Work to all major music streaming platforms, including YouTube, Apple Music, Spotify, Tidal, and Soundcloud, and by selling copies of the Copyrighted Work.

### B.     Defendants' Infringing Conduct

38.     Defendants Glover, Williams, and Göransson are credited as the writers of the Infringing Work, "This is America," which publicly-accessible records filed by and/or on behalf of the Defendants affirmatively state was created in 2018.

39.     The Infringing Work, which won the 2019 Grammy for Record of the year and has continuously generated massive amounts of revenue, praise, and publicity since its initial public release, is centered on a chorus, or "hook," wherein Defendant Glover recorded his vocal performance of the rapping of the chorus' lyrics while employing a distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern – or  a "flow," as the various elements making up a vocal performance are known and referred to in the realm of hip-hop music. The distinctive flow employed in Defendant Glover's recorded performance of the Infringing Work's chorus, which is the musical centerpiece of the Infringing Work and forms the

1 JA 28

namesake for the Infringing Work's song title, is unmistakably substantially similar, if not practically identical, to the distinct and unique flow that was employed by Nwosuocha in recording his vocal performance of his rapping of the hook to his Copyrighted Work.

40.     In addition to the substantially similar unique "flow" employed first in the Copyrighted Work and almost two years later in the Infringing Work, the lyrical theme, content, and structure of the identically-performed choruses are also glaringly similar. In the chorus to the Copyrighted Work, as first made available by Nwosuocha on major streaming platforms for widespread public listening as early as September 11th, 2016, Nwosuocha's lyrical refrain is:

> *"Made in America*
> *Flex on the radio*
> *Made me a terrorist*
> *Pessimistic n***as*
> *You should just cherish this"*

Similarly, in the later-released Infringing Work, as created in 2018 and released on May 6th, 2018, the hook's central lyrical refrain, which is repeated and reincorporated throughout the song with occasional minor variances in the specific words rapped is:

> *"This is America*
> *Guns in my area*
> *I got the strap*
> *I gotta carry 'em"*
>
> - or -
>
> *"This is America*
> *Don't catch you slippin' now*
> *Don't catch you slippin' now*
> *Look what I'm whippin' now"*

41.     The unmissable substantial similarity of the two flows used in the songs' respective hooks, as augmented by the two hooks' substantially similar structure and lyrical content, is striking to an extent beyond coincidence and is accordingly audible to the average lay

1 JA 29

person who listens to both songs. Indeed, a number of end users from the general public who have listened to the Copyrighted Work as uploaded by Nwosuocha to major streaming platforms have left comments on the Copyrighted Work explicitly noting their opinions as members of the disinterested listening general public that the Infringing Work represents a clear infringement of the Copyrighted Work. For example, on major streaming platform SoundCloud, one listener commented on Nwosuocha's posting of the Copyrighted Work for public streaming: "*Gambino ripped this shit off you G.*" Other examples, which appear in the comment section of Nwosuocha's upload of the Copyrighted Work's music video to YouTube for public streaming, include one listener commenting "*Childish gambino gotta give you creds for the flow and everything*" and another listener commenting "*anyone gonna ask Childish Gambino about this song???*" Annexed hereto as **<u>EXHIBIT C</u>** are screenshots containing the relevant portions of the comment sections of Kidd Wes' "Made in America," as uploaded to SoundCloud and YouTube, reflecting the foregoing examples of comments made by the listening public.

42. Beyond the fact that the striking substantial similarities between the Copyrighted Work and the Infringing Work are manifestly audible to listening lay persons of the general public, the striking substantial similarities are also qualifiable and quantifiable from a scientific perspective. Esteemed University of Miami Musicologist Dr. Brent Swanson ("Dr. Swanson") has undertaken an investigation into the similarities between the Copyrighted Work and the Infringing Work and concluded in his investigation's report as follows:

> "*This report has detailed the thematic, lyrical, visual, rhythmic, and melodic similarities between the music videos 'Made in America'" by Kidd Wes, and 'This is America,' by Childish Gambino. The videos and lyrics share the themes of gun violence, and oppression of African-Americans and People of Color by police, the political establishment, conservative organizations (in particular the NRA and the GOP), White nationalism (Charleston shooting), and racist structures in the U.S. They also use of imagery related to Blackface Minstrelsy (Jim Crow, Coon, and Uncle Tom), and deride stereotypical Black culture in an ironic way to poke fun*

*at and bring attention to the aforementioned racist power structures in the U.S or Whiteness. There are distinct similarities in melodic contour, rhythmic triplet flow in each performance, and the lines 'Made in America' and 'This is America' line-up nearly perfectly in time despite being different tempos. They also both use rhythmic utterances in their performances.* **It is authors' opinion that these similarities are likely not coincidences."**

*See* Dr. Swanson's Report annexed hereto as **<u>EXHIBIT D</u>** at 15. (emphasis added).

43.     In arriving at the above expert conclusion, Dr. Swanson, among other things, conducted an in-depth forensic sonic analysis and comparison of the audio making up the two songs. Based on his analysis and comparison of the two songs' audio using a number of scientific methods of audio analysis, Dr. Swanson determined that the songs' hooks are substantially similar from a scientific qualifiable and quantifiable perspective. *See id*. at 9-15.

44.     When viewed in light of the fact that the Copyrighted Work had been made continuously widely publicly accessible by Nwosuocha significantly before the Infringing Work was created and/or released, the clearly audible (and scientifically-confirmed) substantial similarity between the Copyrighted Work and the Infringing Work cannot be reasonably ascribed to mere coincidence. Indeed, as has been opined by Dr. Swanson and a number of commenting members of the disinterested listening general public, the clear substantial similarity between the works is most reasonably ascribable to Defendants' willful unauthorized infringement of the Copyrighted Work that was widely and continuously publicly accessible, and copyrighted, well before the Infringing Work was ever released to the public.

45.     Despite the foregoing unauthorized copying of the Copyrighted Work in the Infringing Work, on or about May 6th, 2018, the Infringing Work was publicly released for the first time when: (a) Defendant Glover performed it on television while hosting Saturday Night Live; and (b) simultaneously, or soon thereafter, upon information and belief, Defendants Glover, Kobalt Music, Sony Music and RCA, as administrators and/or managers of Defendant

<div align="center">15</div>

Glover's music, caused a music video (the "Infringing Work Music Video") derivative of and accompanying the Infringing Work to be uploaded to his "Donald Glover" official YouTube channel for public streaming.

46.     The Infringing Work and the derivative Infringing Work Music Video were an instant sensation of historical proportions. In an article published online on May 9th, 2018 Billboard reported that the Infringing Work Music Video had been viewed nearly one million times on the "Donald Glover" YouTube channel within the first hour of its public release, had amassed 12.9 million views within the first twenty-four hours of its initial release, and had reached over 50 million views at the time of reporting (just a few days after the initial release). Nerisha Penrose, "*Childish Gambino's Record-Breaking 'This Is America' Video Hits 50 Million Views in Mere Days*," Billboard, May 9, 2018, https://www.billboard.com/articles/columns/hip-hop/8455253/childish-gambino-breaks-his-youtube-record-this-is-america-video.

47.     As of the date of the within, the Infringing Work Music Video remains uploaded to the Donald Glover YouTube channel for public streaming and has a total view count of approximately 772.4 million views since its upload on May 6th, 2018.

48.     Beyond the unprecedented astronomical number of streams that the Infringing Work and the Infringing Work Music Video garnered instantly after Defendants Glover, Kobalt Music Sony Music, and RCA first publicly released both, the Infringing Work quickly began receiving widespread critical acclaim that often specifically referenced and praised the infringing flow, structure, and/or lyrical content and themes of the Infringing Work's hook. For example, in a glowing song review of the Infringing Work published on May 7th, 2018 by Pitchfork (one of the best-known and most influential music review outlets in the world), contributor Stephen Kearse noted of the sonics of Defendant Glover's vocal performance in the Infringing Work that:

> *"'This Is America,' then, is a bit of a reset. Here, [Glover] uses the ambivalent reception of black art to represent the tightrope of being black. Built on the sharp contrast between jolly, syncretic melodies and **menacing trap cadences**, the song presents Childish Gambino as confident and cutting. 'This is America!' **he chants** as the song swings between harmony and discord ... **Glover's voice** bridges the two worlds, dropping to an austere deadpan for his rapping and ascending to a syrupy coo for his singing. 'Don't catch you slippin' up,' Glover warns as he pulls off the balancing act with ease ..."*

Stephen Kearse, "*Childish Gambino - This is America*," Pitchfork, May 7, 2019, https://pitchfork.com/reviews/tracks/childish-gambino-this-is-america/ (emphasis added).

49.     Similarly, writing for Vulture (one of the world's foremost entertainment news outlets), and echoing Dr. Swanson's descriptions of certain unique lyrical/thematic/vocal elements from the Copyrighted Work that he found were strikingly substantially copied in the Infringing Work, Frank Guan specifically commented on the lyrics, thematic elements, and vocal performances embodied in the Infringing Work:

> *"... **with its cash-grabbing, fashion-mongering, gun-waving, drug-slinging rhetoric delivered in a clipped triplet flow**, the song is a trap number in all but name. The incongruousness of Glover, raised middle-class and a NYU graduate, bragging about his Mexican drug supplier and threatening to have you gunned down, is intentional: it's a tribute to the cultural dominance of trap music **and a reflection on the ludicrous social logic** that made the environment from which trap emerges, **the logic where money makes the man, and every black man is a criminal**."*

Frank Guan, "*What It Means When Childish Gambino Says 'This Is America,'*" Vulture, May 8, 2018, https://www.vulture.com/2018/05/what-it-means-when-childish-gambino-says-this-is-america.html (emphasis added).

50.     The Infringing Work reportedly debuted at number one in the Billboard Hot 100 chart after selling 78,000 downloadable copies and garnering 65.3 million U.S. streams within its first week of release, remained number one on the Billboard Hot 100 for two weeks, and remained in the top ten of the Billboard Hot 100 for a total of five weeks.

1 JA 33

51.     The immediate sensation of the Infringing Work and the derivative Infringing Work Music Video spanned well beyond the United States in scope and extent. As reported by Billboard in an article published on August 2nd, 2018, many derivative works, or "remixes," of the Infringing Work and/or the Infringing Work Music Video began to be disseminated on a global scale by musicians hailing from countries all over the world in the few months following the initial public release of the Infringing Work and the Infringing Work Music Video. *See* **EXHIBIT E** annexed hereto, Gil Kaufman, *"This Is Earth: Watch 12 Global Remixes of Childish Gambino's 'This Is America',"* Billboard, Aug. 2, 2018, https://www.billboard.com/articles/columns/hip-hop/8468356/this-is-america-global-remixes-childish-gambinos-india-brazil-iraq-india.

52.     In keeping with the prevailing musical custom for "remixes" within the hip-hop music genre (to which both the Copyrighted Work and the Infringing Work belong), the vast majority of these international derivative works remixing the Infringing Work have substantially featured identical copies of the compositional and performance elements embodied in the Infringing Work - including those the Defendants copied from the Copyrighted Work without authorization - except that in many instances the specific words in the Infringing Work's lyrics were swapped out in the remixes for the international remixers own chosen words.

53.     Indeed, in a number of the more well-known examples of these international derivative remix works, the international remixers/rappers who created and disseminated their own remixes of the Infringing Work rapped over substantially the exact backing instrumental (or "beat," in hip-hop parlance) of the Infringing Work, and did so deliberately employing the same distinct and unique cadences, delivery (or deliveries), and/or phrasing(s) of the vocal performance(s) embodied in the original recording of the Infringing Work, including those

distinct and important vocal elements copied without authorization from the Copyrighted Work. The central musical idea underlying these examples of the international derivative remixes was to substantially sonically remake the Infringing Work but to do so rapping lyrics specifically referencing the remixer's own home country instead of America. Each of any such derivative remix of the Infringing Works has thus been, by design, patently referential to and promotional of the Infringing Work, and has also necessarily constituted a widespread international public distribution and/or exploitation of the Infringing Work.

54.   For all intents and purposes, the phenomena of these international derivative remixes, including the attendant major media outlet coverage, has functioned as a massively effective low-budget global advertisement campaign for the Infringing Work and Defendants' various lucrative infringing endeavors with respect to the Infringing Work.

55.   In addition to globally promoting, advertising, and/or otherwise facilitating the Defendants' continuing infringement of the Copyrighted Work, because many of the international derivative remixes, by design, used the same vocal elements wrongfully and unlawfully copied by Defendants from the Copyrighted Work, those international derivative remixes themselves represent infringements of the Copyrighted Work.

56.   Some examples of the infringing international derivative remixes described in the foregoing have garnered significant streams and international fame in their own rights. For instance, Nigerian rapper Falz's infringing derivative remix "This is Nigeria" has been streamed on YouTube approximately 20.1 million times to date, and has been reported on by NPR and CNN, amongst other preeminent global news outlets. In another example, Dubai-based Iraqi rapper I-NZ's infringing derivative remix "THIS IS IRAQ" has been streamed on YouTube approximately 7.9 million times to date, has been reported to have amassed 350 million streams

overall, and has been the subject of reports by Newsweek, amongst other notable major media outlets. As further evidence highlighting the direct benefits Defendants have enjoyed as a direct result of these infringing derivative remixes of their Infringing Work, on the popular major online music streaming/purchase platform BandCamp, "THIS IS IRAQ" is made available by the rapper I-NZ for free streaming and for digital download with an express acknowledgement and disclaimer from I-NZ that "All rights to the musical composition belong to Childish Gambino and the record label GlassNote Records," and additionally includes the name Childish Gambino in the posting's tagline. A screenshot of "THIS IS IRAQ," as uploaded to BandCamp by I-NZ, reflecting the foregoing is annexed hereto as **EXHIBIT F**.

57.     Upon information and belief, none of the Defendants have caused any of the more popular/widely-consumed examples of the international derivative remixes to be removed from YouTube. Upon further information and belief, all of the Defendants have possessed the presumptive ability to cause the aforesaid international derivative remixes to be taken down from YouTube, pursuant to YouTube's DMCA copyright takedown policy, because the Defendants are all either: (a) parties with registered writing and/or publishing interests in and to the Infringing Work; and/or (b) are major parent record corporations, distribution companies, and/or publishing companies who are responsible for the administration and/or management of the Infringing Work and the registered writing and/or publishing interest therein.

58.     As a further testament to the tremendous global scale on which the Infringing Work has been disseminated and exploited, to date the Infringing Work has been reportedly been Certified:

      a.   three-times Platinum in the U.S. (3,000,000 Certified Units/Sales);

      b.   three-times Platinum in Australia (210,000 Certified Units/Sales);

1 JA 36

c. three-times Platinum in Canada (240,000 Certified Units/Sales);

d. Platinum in Poland (20,000 Certified Units/Sales);

e. Gold in France (100,000 Certified Units/Sales);

f. Gold in New Zealand (15,000 Certified Units/Sales); and

g. Gold in the United Kingdom (40,000 Certified Units/Sales).

59. In addition to garnering massive numbers of streams and/or sales, as well as spawning a swath of infringing derivative international works that furthered the Infringing Work's dissemination and themselves generated significant streams and/or sales, upon information and belief, the Infringing Work has also been exploited by the Defendants via other means, such as via live performance and via audiovisual synchronization licensing.

60. For example, in a notable instance of audiovisual synchronization licensing of the Infringing Work, the Infringing Work, including its infringing hook, can be heard prominently featured as a musical score appearing in the 2019 film "Guava Island," which was/is distributed by Amazon Prime Video, stars Defendant Glover alongside global pop phenom Rihanna, has been the subject of much widespread publicity and promotion, and remains widely streamable by the public via Amazon Prime's streaming service. Upon information and belief, since the date of its public release in the U.S., "Guava Island" has also been accessible for public streaming in numerous foreign countries including Brazil, Germany, Singapore, France, and Canada, among others. Upon further information and belief, as parties who possess and/or control and/or administrate the registered writing and publishing interests in the Infringing Work, all of the Defendants have reaped significant revenues and profits derived from this international synchronization license.

61.     Though the exact extent to which Defendants Glover, Williams, and/or Göransson have individually and/or jointly publicly participated in live performances of the Infringing Work may not be fully ascertainable by Nwosuocha until discovery in this action is complete, it is presently known that, in 2018 through 2019, Defendant Glover went on the international "This is America Tour." During the tour, which was named/branded after the Infringing Work, upon information and belief as well as publicly-available setlists/recordings, Defendant Glover gave live performances of the Infringing Work approximately thirty to thirty-five separate times at concerts dates spanning the United States and various locations in Canada, Australia, England, and France.

62.     It is not yet known to Nwosuocha precisely how many total concert tickets were sold during the entire span of the This is America Tour, or precisely how much gross revenue was generated from the total sales from the entire span of the tour. Nonetheless, publicly-available concert box office data reported by Billboard, which **does not include** sales/revenue data for the majority of the venues where Defendant Glover performed during the tour, makes presently knowable that the This is America Tour garnered approximately 190,707 total concert ticket sales, resulting in a total gross revenue of $16,286,160.00, from the tour performances that occurred in just twelve out of the thirty total venues that hosted the tour. Because the foregoing astronomical $16,286,160.00 gross revenue figure represents roughly just 40% (12 out of 30 tour venues) of the entire tour, it is reasonable to assume that the tour's total gross revenue, derived in significant part from Defendants' infringing use of the Copyrighted Work in the Infringing Work, far exceeds this figure. Upon further information and belief, as the parties who possess and/or control and/or administrate the writing and publishing interests in the Infringing Work, all of the Defendants have reaped significant revenues and profits derived from the tour.

1 JA 38

63. Upon information and belief, the Infringing Work was also merchandised in tour merchandise sold during the tour, and Defendants have derived revenue from this merchandising.

64. Upon information and belief, the Infringing Work has also been performed live outside the context of the This is America Tour, including, but not necessarily limited to, at the 2018 BET Awards.

65. Upon information and belief, Defendants Kobalt Music, RCA, Sony Music, YSL, 300, Atlantic, WMG, Roc Nation, Universal, and Warner-Tamerlane (collectively, the "Label Defendants") have individually and jointly been responsible for the continuing administration, display, reproduction, distribution, performance, sale, marketing, promotion, and/or other exploitation of the Infringing Work. Upon further information and belief, the Label Defendants' joint and individual infringing conduct in this regard extends to conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples infringing conduct described above. For instance, as just one example of Defendant RCA's, and its parent company Defendant Sony Music's, role in carrying out and furthering the continuing infringement of Nwosuocha's Copyrighted Work is a press release dated May 6th, 2018 posted publicly to Defendant RCA's official website, wherein Defendant RCA: directly promotes both the Infringing Work and the derivative Infringing Work Music Video; explicitly solicits public streaming of both the Infringing Work and the derivative Infringing Work Music Video; and explicitly solicits the public to *purchase* copies of the Infringing Work. *See* the May 6th, 2018 RCA online press release annexed hereto as **EXHIBIT G**. In other examples, which are but two of numerous examples where Defendant Roc Nation's overtly has furthered the continuing infringement, Roc Nation's website directs visitors specifically to stream the "Guava Island" film prominently

1 JA 39

containing the Infringing Work and features a "news" update of the Infringing Work's Grammy award. Indeed, upon information and belief, all of the Label Defendants, personally and/or through their subsidiaries, have overtly promoted and marketed multiple instances of the continuing infringing use of the Copyrighted Material by way of its unauthorized inclusion in the Infringing Work.

66.     Upon further information and belief, the Label Defendants are individually and jointly responsible for the administration and/or distribution of the various streams of revenue derived from conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct described above.

67.     Upon information and belief, Defendants Glover, Williams, and Göransson, as the three parties credited with writing the Infringing Work, have continuously derived significant financial and professional benefits directly resulting from conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct described above.

68.     Further, Defendants Williams and Göransson both took affirmative public steps to advance their financial interests as credited writers of the Infringing Work by promoting, encouraging, and/or soliciting the widespread global dissemination of the Infringing Work. Illustrative examples of such conduct by Defendants Williams and Göransson include, but are not limited to, Defendant Williams doing a promotional video piece for major streaming platform Spotify publicly released on or about May 8th, 2018 that solicited end users to stream the Infringing Work on Spotify, and Defendant Göransson championing the Infringing Work as a song that "speaks to people; it connects right to your soul. It calls out injustice, celebrates life

and reunites us all at the same time" directly to the countless viewers of his highly-televised acceptance speech for the Grammy given to the Infringing Work.

69.     Upon information and belief, as a direct result of the streaming, licensing, sale, derivative streaming/licensing/sale/exploitation, synchronization licensing, live performance, reproduction, marketing, promotion, and/or other exploitation of the Infringing Work, all Defendants have wrongfully benefited, and continue to wrongfully benefit, from their continued wrongful uses of Infringing Work and/or the derivative Infringing Work Music Video that both include material to which Nwosuocha owns full copyrights. Because the foregoing sets forth only that portion of Defendants' infringing conduct that has been reasonably discoverable and ascertainable to Nwosuocha in the time since the Defendants' infringing conduct first became public on May 6th, 2018, the foregoing likely may only represent a portion of the totality of the infringing conduct for which Defendants are liable to Nwosuocha either on individual and/or joint bases.

70.     On December 7th, 2020 Nwosuocha's undersigned counsel sent a letter to Defendants Glover, Williams, Göransson, Sony, and RCA in order to put the Defendants on formal notice of Nwosuocha's objection to the Defendants' unauthorized and infringing reproduction, publication, promotion, distribution, license, public display, sale and/or exploitation of the Copyrighted Work. The letter also, in good-faith, sought to provide the Defendants an opportunity to discuss a pre-suit resolution to the issue of their continuing infringement that may have avoided the need for Nwosuocha's within resort to the courts. Annexed hereto as **EXHIBIT H** is a true and correct copy of Nwosuocha's counsel's December 7th, 2020 letter to Defendants.

1 JA 41

71.     Nwosuocha's counsel received no response to the December 7th, 2020 letter from any of the Defendants except Defendant Glover, whose counsel, Jonathan D. Davis, Esq. ("Mr. Davis"), reached out to the undersigned to ask for materials supporting Nwosuocha's copyright claims, such as Dr. Swanson's report, for Defendant Glover's review. On February 16th, 2021, given that Defendant Glover had opened the lines of communication but still had failed to demonstrate an intent to cure, or even temporarily mitigate, the continuing global infringement of Nwosuocha's Copyrighted Work, the undersigned sent Mr. Davis a cease and desist letter demanding that Defendant Glover immediately cease all of his infringing conduct with respect to the Copyrighted Work, destroy all infringing materials in his possession, custody, and control, and provide Nwosuocha  with a full accounting of all proceeds he derived from the Infringing Work. Annexed hereto as **EXHIBIT I** is a true and correct copy of Nwosuocha's counsel's February 16th, 2021 cease and desist letter. In good-faith, and hoping to convince Defendant Glover to begin abating the continuing infringement of the Copyrighted Work as soon as possible, Nwosuocha also soon thereafter provided Mr. Davis with the corroborative materials he requested for Glover's review.

72.     Despite the foregoing two letters sent by Nwosuocha's counsel, as well as Nwosuocha's counsel's good-faith communications with and informal document disclosure to Glover's counsel, to date none of the Defendants have communicated to Nwosuocha any intention on their parts to cease, desist, and/or otherwise cure any of their continuing willful infringing conduct with respect to the Copyrighted Work. Nwosuocha is not aware of any evidence otherwise demonstrating that any of the Defendants have or will cease, desist, and/or otherwise cure their massive ongoing global infringement of the Copyrighted Work. Given that the notice provided by Nwosuocha was received by Defendants Glover, Williams, Göransson,

1 JA 42

Sony, and RCA, the remaining co-defendants (as Defendants Glover's, Williams', and Göransson's publishers and/or record labels and/or distributors, and/or parent corporations thereof) had reasonable opportunity and cause to learn of Nwosuocha's notice from Defendants Glover, Williams, Göransson, Sony Music, and/or RCA. Accordingly, because Nwosuocha's notice clearly set forth his objection to the Defendants' continuing infringement, the Defendants' continuing infringement after that notice is evidence of the willfulness with which they continue to engage in their infringement.

73.     As a result of Defendants' actions described above, Nwosuocha has been directly damaged, and is continuing to be damaged, by Defendants' willful unauthorized and infringing reproduction, publication, promotion, distribution, license, public display, sale and/or exploitation of the Copyrighted Work. Defendants have never accounted to or otherwise paid Nwosuocha for their unauthorized use of the Copyrighted Work.

**FIRST CAUSE OF ACTION**
**(DIRECT, CONTRIBUTORY, AND VICARIOUS COPYRIGHT INFRINGEMENT**
**AGAINST ALL DEFENDANTS)**
**(17 U.S.C. § 101, *et seq*.)**

74.     Nwosuocha repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

75.     Nwosuocha is the sole and exclusive owner of the U.S. Copyright in all rights, titles, and interests in the Copyrighted Work, "Made in America" as written and recorded by Nwosuocha.

76.     The Defendants' unauthorized reproduction, distribution, public performance, display, creation of derivative works, and other exploitation and/or misappropriation of the Copyrighted Work infringes Nwosuocha's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

1 JA 43

77. The Defendants did not seek or receive permission to copy and/or interpolate any portion of the Copyrighted Work into the Infringing Work, "This is America."

78. The Defendants' conduct has at all times been knowing, willful, and with complete disregard for Nwosuocha's rights.

79. As a direct and/or proximate cause of the Defendants' wrongful conduct, Nwosuocha has been irreparably harmed.

80. The Infringing Work copies quantitatively and qualitatively distinct, important, and recognizable portions and/or elements of the Copyrighted Work.

81. Specifically, the Infringing Work copies distinctive and important vocal elements of the composition and performance embodied in the Copyrighted Work.

82. The central inclusion of the foregoing important vocal elements from the Copyrighted Work in the Infringing Work has greatly enhanced the musical and financial value of the Infringing Work.

83. From the date of the creation of the Infringing Work, all of the Defendants have infringed Nwosuocha's copyright interest in the Copyrighted Work including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing the Infringing Work at radio, live concerts, and on film, video, television, and otherwise; (b) by authorizing and/or playing a role in the facilitation of the reproduction, distribution and sale of records and digital downloads containing the Infringing Work through the execution of licenses, and/or actually selling, manufacturing, and/or distributing the Infringing Work through various sources; (c) by substantially copying and participating in the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in and

1 JA 44

furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of elements of the Copyrighted Work in and as part of the Infringing Work, packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including via radio, streaming services, concerts, film, video, television, and/or otherwise.

84. Nwosuocha has received no songwriter credit and no copyright ownership interests in and for any exploitations of the Infringing Work or any of the works associated with the Infringing Work.

85. The infringement by the Defendants has been, and continues to be, willful and knowing.

86. With knowledge of the infringement, the Defendants have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

87. The Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that the Defendants should be found vicariously liable.

88. The infringement is continuing, as the Infringing Work continues to be sold, licensed, performed, displayed, merchandised, and/or otherwise used and/or exploited by the Defendants or their agents.

89. As a direct and proximate result of the conduct of the Defendants, Nwosuocha has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, while Defendants have profited in the amount of hundreds of millions of dollars and to be determined at trial from their infringement.

90.     Pursuant to 17 U.S.C. § 504(b), Nwosuocha is entitled to damages including the substantial profits of the Defendant, as will be proven at trial.

91.     In the alternative, pursuant to 17 U.S.C. § 504(c), Nwosuocha is entitled to the maximum statutory damages of $150,000 per infringement, since the Defendants' willful and continuing infringement occurred after Nwosuocha's full-owned copyrights in the Copyrighted Work were registered and after the Copyrighted Work had been published and made widely publicly-accessible.

92.     Nwosuocha is entitled to his costs, including reasonably attorneys' fees, pursuant to 17 U.S.C. § 505.

93.     Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Nwosuocha irreparable injury that cannot be fully compensated or measured in monetary terms. Nwosuocha has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Nwosuocha is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work, including all derivatives thereof, in any and all formats, configurations and/or media.

## RELIEF REQUESTED

**WHEREFORE**, Nwosuocha respectfully requests that judgment be entered against the enumerated Defendants, as follows:

A.      A declaration that Defendants have willfully infringed Nwosuocha's Copyrighted Work in violation of the Copyright Act;

B.      A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

1 JA 46

C.      A permanent injunction requiring Defendants and their agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and directly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Nwosuocha's rights protected by the Copyright Act;

D.      An award of damages pursuant to 17 U.S. § 504(b), including actual damages, and the profits of the Defendants as will be proven at trial, including all profits and damages from exploitation of the Copyrighted Work domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

(1)     Record sales;
(2)     Downloads;
(3)     Ringtones;
(4)     Ringback tones;
(5)     Public performance revenues;
(6)     Digital revenue;
(7)     Streaming revenue;
(8)     Synchronization licensing;
(9)     Merchandising;
(10)    Public appearances;
(11)    Endorsements;
(12)    Sponsorships;
(13)    Spokesperson work;
(14)    Touring revenue;
(15)    Advertising revenue;
(16)    Appearance fees;
(17)    Name and likeness income and increase in value;
(18)    Rights of publicity income and increase in value;
(19)    Increased value in all Defendants' publishing and/or record company and/or companies;
(20)    Increased value of all Defendants' catalogues;
(21)    Increased value of music publishing and/or record royalties and rights;
(22)    Increased value of social media rights, accounts and value;
(23)    Increased goodwill;
(24)    Promotional value;
(25)    Increased value of royalty rate for record deals;

1 JA 47

(26) Increased value in distribution deals, negotiating power and reduction in costs;

(27) Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;

(28) Value of obtaining better terms for record company advances and terms and multi-record deals;

(29) Value of obtaining better terms of publishing and/or recorded master deals for the existing catalogue and for future works of Defendants Glover, Williams, and Göransson;

(30) Increased value in negotiating 360 deals with record companies and/or publishers;

(31) Sheet music sales and sheet folio income;

(32) Any and all music publisher income;

(33) Any and all record master income;

(34) Any and all record income;

(35) Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;

(36) Any and all producer royalty income;

(37) Any and all arrangement income;

(38) Any and all income derived from any existing medium or any medium hereinafter developed worldwide;

(39) Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;

(40) Any and all income from any society to which any Defendant belongs or joins in the future;

(41) Any and all income and/or residuals from SAG-AFTRA;

(42) Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services; and

(43) Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the infringing song in the service.

E.    In the alternative, an award of statutory damages, pursuant to 17 U.S. § 504(c), in the amount of $150,000 for each act of infringement;

F.    An award of compensatory and special damages in accordance with proof at trial;

G.    An award of attorneys' fees and full costs pursuant to 17 U.S. § 505 and under other applicable law;

H.    For pre-judgment and post-judgment interest according to law, as applicable; and

I.    For such other and further relief as this Court may deem just and proper.

## <u>REQUEST FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nwosuocha demands a

trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this

Complaint.

Dated: New York, New York
     May 5, 2021

                             Respectfully submitted,

                             **AIDALA, BERTUNA & KAMINS, P.C.**
By:    /s/ Imran H. Ansari
                             Imran H. Ansari, Esq.
                             546 Fifth Avenue, 6th Floor
                             New York, NY 10036
                             T: (212) 486-0011
                             F: (212) 750-8297
                             iansari@aidalalaw.com

                             *and*

                             **MIAMI ENTERTAINMENT LAW GROUP**
By:    /s/ La'Shawn N. Thomas
                             La'Shawn N. Thomas, Esq.
                             261 North University Drive, Suite 500
                             Plantation, Florida 33324
                             T: (305) 417-6450
                             F: (305) 417-6452
                             LThomas@MiamiEntertainmentLawGroup.com
                             *Pro Hac Vice Application Forthcoming*


                             *Attorneys for Plaintiff Emelike Nwosuocha*

1 JA 49

# EXHIBIT B

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## SRu 1-301-922

**Effective Date of Registration:**
May 24, 2017

---

## Title

**Title of Work:** Eleven: The Junior Senior Year

## Completion/Publication

**Year of Completion:** 2017

## Author

- **Author:** Emelike Wesley Nwosuocha
  **Pseudonym:** Kidd Wes
  **Author Created:** sound recording
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1987
  **Pseudonymous:** Yes

## Copyright Claimant

**Copyright Claimant:** Emelike Wesley Nwosuocha
2237 NE 42nd Ave, Homestead, FL, 33033, United States

## Rights and Permissions

**Name:** Emelike Wesley Nwosuocha
**Email:** kiddwes@gmail.com
**Telephone:** (786)531-4022
**Alt. Telephone:** (786)525-8939
**Address:** 2237 NE 42nd Ave
Homestead, FL 33033 United States

## Certification

1 JA 51

Registration #:    SRu001301922
Service Request #:    1-5219288781

Emelike Wesley Nwosuocha
2237 NE 42nd Ave
Homestead, FL 33033 United States

```
Type of Work:        Sound Recording

Registration Number / Date:
                     SRu001301922 / 2017-05-24

Application Title: Eleven: The Junior Senior Year.

Title:               Eleven: The Junior Senior Year.

Description:         Electronic file (eService)

Copyright Claimant:
                     Emelike Wesley Nwosuocha, 1987-  .

Date of Creation: 2017

Authorship on Application:
                     Kidd Wes, pseud. of Emelike Wesley Nwosuocha, 1987-
                     (author of pseudonymous work); Domicile: United States;
                     Citizenship: United States. Authorship: sound recording.

Rights and Permissions:
                     Emelike Wesley Nwosuocha, 2237 NE 42nd Ave, Homestead, FL,
                     33033, United States, (786) 531-4022, (786) 525-8939,
                     kiddwes@gmail.com

Copyright Note:      Basis for Registration: Unpublished collection

Names:               Nwosuocha, Emelike Wesley, 1987-
                     Wes, Kidd, pseud., 1987-

================================================================================
```

1 JA 53

# EXHIBIT C







Kidd Wes

**Kidd Wes-Made In America (prod. by Mindlabs) VIDEO IN DESCRIPTION**

4 years ago

# Hip-hop & Rap



0:36                                                                                          3:39

Write a comment

85.6K    405    170



Kidd Wes

👥 3,517    🎚 37

Follow

🚩 Report

Fuck 2016 Rappers

Official Video:

youtu.be/C7zL_OE7gnM

# Kidd Wes    # Trump    # Clinton    # Drake    # 40
# YesJulz    # Trap

💬 134 comments

LUNAR! at 0:35:                                          2 years ago
Gambino ripped this shit off you G

Dj wakach at 1:43:                                      3 years ago
i fw the bass

girls away at 1:40:                                     3 years ago
loving it already

phelp hawk at 1:09:                                     3 years ago
i want it on itunes and spotify

KelseysKicksMusic at 3:10:                              4 years ago
MADE IN AMERICA, FLEX MADE ME A
TERRORIST :) REPOST!!

Nolan J Jackman at 3:00:                                4 years ago
Wonderfool voice

mark m fleetwood at 0:11:                               4 years ago
Great job blue flame

## Related tracks                              View all

Southside Matt
SSG (Trilla & Southside Matt) - No ...
38.5K   1,057   160   104

VK Rz
Gramtalk freestyle
1,406   70   24   11

LLOSTconcept
F****D UP
5,421   17   41

## In playlists                               View all

DigitalTraphouse
Best of the Week Vol. 10
2   1

DigitalTraphouse
Best of the Month Vol. 3 - Septemb...
3   1

Jules Marchisio
trap us

💚 405 likes                                    View all



🔁 170 reposts                                 View all

 Kidd Wes
Kidd Wes–Made In America (pro...

0:36                              3:39


1 JA 57

# EXHIBIT D

# The Similarities Between Kidd Wes's "Made in America" and Childish Gambino's "This is America."

Dr. Brent Swanson (Lead Investigator)
Marcus Grant (Associate)

## Introduction

In 2016, the rapper Kidd Wes (Emelike Nwosuacha) produced a music video titled "Made in America," in which he explores African-American identity and its relationship with the 2016 political campaign between Hillary Clinton and Donald Trump. In 2018, Childish Gambino (Donald Glover) released a similar music video titled "This is America." In addition to the analogous titles, aspects of Gambino's performance are strikingly comparable to Wes's performance thematically, lyrically, visually, melodically, and rhythmically. The aim of this report to detail the similarities between Kidd Wes's "Made in America," and Gambino's "This is America."[1]

## Visual and Lyrical Themes

Since MTV first launched into suburban homes in the 1980s, the music video transitioned from a "representation" of a live performance to another medium through which artists could express themselves. No longer were issues of gender, race, religion, sexuality, etc., confined to and negotiated in sonic material, lyrics, album art and other merchandise. These short films were now broadcast to millions of televisions in the United States. Artists like Madonna, The Eurythmics, and Twisted Sister negotiated gender scripts, while artists like Michael Jackson hired famous horror director John Landis to produce his thirteen minute long masterpiece "Thriller." In other words, the music video became another type of "text" the artists implicitly (sometimes explicitly) encouraged (even demanded) the audience to interpret. Despite the fact that today MTV rarely shows music videos, the genre continues through online streaming platforms such as YouTube, Vevo, and Dailymotion.

In the case of Kidd Wes and Childish Gambino, the videos are integral to the meaning each artist intends to convey. Like most hip-hop lyrics, the meaning in the video is coded (based on metaphorical and literal associations) rather than a distinct narrative. This requires one to either base the visuals and words on their own experiences or be "in-the-know" (privy to the artist's intentions). One can argue that the visual content of both of these artists' videos have little to no distinct narrative, but are a series of images juxtaposed in a dadaesque fashion that, when played in real-time along with the lyrics and sonic material, require the listener to put the pieces of the "puzzle" together.

---

[1] For the purposes of this report, the authors use the artists' stage names rather than their legal names.

The lyrics of Gambino's song contain no story or plot line, nor do they give the audience any major clues as to the narrative of the song. However, the video is filled with various images referencing the history of racist behavior towards African-Americans. The artist makes visual references to the "Coon Face" from the infamous Coon Chicken Inn Menu (0:41) and Jim Crow pose (0:51) used in Blackface Minstrelsy. Furthermore, he references the murder of members of the Emmanuel AME church in Charleston by White Supremacist/Nationalist Dylan Roof in 2015 (1:50-1:57). Each of these is expressed ironically. Gambino poses as Jim Crow (See Figures 1 and 2), a witty trickster character, just before shooting a guitarist (playing kora-like arpeggiated patterns in a major mode – often associated with "happiness" or "positivity") in a chair with a handgun.[2] Just before this violent act, he dances shirtless with different expressions on his face. Sometimes he is smiling, while other times he has a scowl or pensive facial features. He makes the aforementioned "Coon Face" (See Figures 2 and 3) at this time. Further, the "Charleston choir" members are all smiling and singing "Oooh, got to tell somebody. Grandma told me 'Get your money, Black man'" just before Gambino guns them down. The gun is immediately placed in a red cloth (as was the original gun he used to kill the guitarist), which symbolizes caring for the gun more than the people that were just killed. This is of particular interest as it alludes to conservative support for the NRA, which is considered a corrupt organization by Black Lives Matter as well as many Progressive politicians and voters. In this case, the NRA and conservatism are White structures that oppress African-Americans and People of Color.[3] The fact that the cloth is red, the color of the GOP and Donald Trump's MAGA hats, reinforces the links to conservatism. These critiques are aimed at the structure of Whiteness (existing power structures mostly perpetuated by White men and women), which is rooted in America's racist past, one of which Black bodies have been derided and demonized while simultaneously serving as the main source of entertainment.[4]

---

[2] The kora is a multi-string zither played by the Jali of the Mandinka and related cultures. The majority of slaves in the United States were brought from the Senegambia region of West Africa, where Mandinka culture is most prevalent. The Jali are known as oral historians and keepers of Mandika culture.

[3] In this report, the term People of Color refers to non-White minorities who do not consider themselves African-American, while Black refers to all non-White minorities, including African-Americans.

[4] In this article, Whiteness does not only refer to White men and women, but those who support racist structures that have traditionally benefitted White men and women and oppressed African-Americans and People of Color.

1 JA 60



Figure 1. Thomas Daddy Rice in Blackface posing as Jim Crow.[5]

---

[5] Source: https://en.wikipedia.org/wiki/Jim_Crow_(character)#/media/File:Thomas-D-Rice-1832.jpg



Figure 2. Childish Gambino in a Jim Crow Pose.[6]

---

[6] All images of Childish Gambino are screenshots from his official music video on YouTube.



Figure 3. "Coon Face" from the original Coon Chicken Inn menu.[7]

---

[7] Source: http://edan.si.edu/slideshow/viewer/?eadrefid=NMAH.AC.1153_ref272



Figure 4. Childish Gambino making a "Coon Face."

1 JA 64

Similarly, Kidd Wes's video critiques Whiteness through mocking the choices of the 2016 election. Much of the imagery comprises people dressed in caricature costumes of Hillary Clinton and Donald Trump juxtaposed against clowns and gangster figures with guns. The lyrics consist of typical boasting/toasting by a rapper (one in which a rapper boasts about his accomplishments), but other than "Make America Great Again," in the last line of the song, there are no outstanding political references. It is the imagery that holds the narrative together, and, like Gambino's video, much of those lyrics and images are presented ironically.

The video begins with Kidd Wes staring incredulously at TV images of news Headlines about Clinton's emails, Trump mocking a disabled reporter, and James Comey pronouncing Clinton's innocence, which is followed by an image of a man in a clown suit (0:06-14). Next, a person in a Trump costume, after staring at a photo of himself with a likely underage girl (an allusion to Trump's pedophilic statement about his willingness to have sex with his daughter Ivanka if they weren't related), is kidnapped by gangsters because a security guard was distracted by a call on his cellular phone (1:30-36). A person in a Clinton costume is then seen looking at "Classified" emails on her Gmail account (a reference to her use of official email correspondence on a non-government server), and is subsequently kidnapped by the same group of gangsters (1:43-48). They place her in the same car as Donald Trump. At 2:01, a person in a clown mask is seen with a gun to their forehead. The political caricatures juxtaposed against clowns is a statement about the ridiculousness of politics, but those politicians also represent power, and, in particular, Whiteness.

As previously mentioned, the lyrics contain little political material, however, they are as ironic as the images. Wes raps in a boastful manner typical of rappers in hip-hop:

Black and white Benz, I'm making a chess move (Unh)
I'm running the city, I'm making my next move (Whoa)

And got a tight grip and there won't be no evidence
How funny I OJ'ed the game and it seems to make
Oh what a relevance
Pessimist niggas, you should just cherish this
2016 Rappers?
(yeah) you should beware of this

In these lines, Wes is jeering at stereotypical rappers and himself by referring to himself as OJ (an Uncle Tom figure) to describe his rise to the top (besting other rappers), while simultaneously warning them to take him (Wes) seriously. The images and the lyrics coincide here. The politicians are clowns, but they need to be taken seriously because they represent Whiteness and America's racist past. Wes concludes these thoughts with the lines "Heads up for the bullets that's coming from the Jakes. Making America great again, baby that's all it takes." The term "Jakes" is code for the police, whose harsh tactics have been lauded by Trump and his supporters. Much of Trump's popularity is related to his promise of tougher punishment for criminals. These tactics and Trump's political platform have been criticized by the Black Lives Matter movement

and those on the left side of the political spectrum. This is also the case for Hillary Clinton, who is known for her past support of harsh mandatory minimum sentences that disproportionally affected (and still affect) Black Americans.

Childish Gambino also alludes to oppression of African-Americans in the justice system through an image of a young Black man behind a bridge with "bars" holding a cellphone. This is accompanied by the ambiguous line "this a celly" (referring to both a cellphone and a jail cell – 2:29). Further, Gambino is running away from a White mob at the end of the video while the following ironic words are sung by Young Thug (3:34):

> You just a black man in this world
> You just a barcode, ayy
> You just a black man in this world
> Drivin' expensive foreigns, ayy
> You just a big dawg, yeah
> I kenneled him in the backyard
> No proper life to a dog
> For a big dog

The lyrics deride Black culture in the U.S., and even mention stereotypes such as premium cars with the line "Drivin' expensive foreigns." Like Kidd Wes's performance, this is not a literal derision, but a satire about how White Americans deride Black culture. In his video, Kidd Wes also mentions his "Benz," which is code for a Mercedes Benz, an expensive foreign car.

Another comparable image is the use of placing a bag over the head of a musician. In Gambino's video, the bag appears over the guitarists head just before shooting him. In Wes's video, the gangster authorities place a bag over a rappers head before they kidnap him (2:28). Each of these acts represents two themes: First, the silencing (representing Black power movements or revolutionary politicians who want rapid and drastic change) of those who do nothing to protest inequality and Whiteness. This is apparent in Gambino's video when the guitarist is playing arpeggios in a major key (often associatied with happiness) accompanying the plastic lyrics "We just want to party, party just for you." In Wes's video, the rapper, who is talking on the phone in coded language, represents one of the stereotypical rappers the artist (Wes) consistently toys with in his abovementioned boasting. Second, the criminal acts against the guitarist in Gambino's video and the rapper in Wes's video can be seen as an execution (representing Whiteness or existing political system prejudiced against African-Americans and People of Color) of those who have agency to unite and motivate larger groups of people against the establishment.

In sum, each of these rappers uses ironic images and lyrics to protest White hegemony in the United States. The term America here is a metaphor for both the history of oppressive racism towards Black bodies as well as the hope that African-Americans and other People of Color have the ability (freedom) to rise up against Whiteness in the U.S.

# Rhythmic and Melodic Themes

Rappers in hip-hop tend to focus on rhythm rather than specificity of pitch (e.g., being perfectly – or near perfectly – in-tune with a certain key or modality – such as opera or classical performance practice). This not to say that rappers pay no mind to a key or modality, they do. However, the pitches are usually "in the ballpark" rather than consistently singing/rapping specific pitches (i.e., A – 440 Hz). This focus on rhythm over specific melodic pitches is known as an MC's (rapper's) "flow." According to scholar Adam Krims "The rhythmic style of MCing, or "flows," are among the central aspects of rap production and reception, and any discussion of rap production that takes musical poets seriously demands a vocabulary of flow…. It thus cannot be separated from an exposition of rap genres and styles" (Krims 2000, 48). In the case of Kidd Wes and Childish Gambino, they both use what Ben Duiker calls *total triplet flow* (Duiker 2019). The author defines this as "complete formal units (such as verses) – or rarer, entire songs – where the MC uses nothing but triplets in their flow" (Ibid. 427). Figure 5 below demonstrates the similarities in flow to Wes's "Made in America" (transposed up one whole-step to match the same starting pitch as Gambino) and Gambino's line "This is America." This is but one example of a plethora of times the artists employ *total triplet flow*.



Figure 5. *Total triplet flow* of Gambino's "This is America" and Wes's "Made in America."

In addition to the use of *total triplet flow* by both artists in their respective phrases (and in subsequent phrases), the performance of these phrases by each rapper are nearly identical in timing despite a significant difference in tempo. Wes's song is performed at 140 BPM (beats per minute) while Gambino's song is at 120 BPM. The following figures visualize the similarities and differences in flow and tempo in waveform. Figure 6 is a waveform of each audio file (vocals only) of Wes's and Gambino's respective songs at their original tempo. Figure 7 is a waveform of each audio file with Kidd Wes's song slowed down to 120 BPM, and Figure 8 is a zoomed in

waveform of the phrases "Made in America" and "This is America" by Wes and Gambino respectively in their original tempo.[8]



Figure 6. Waveform of Gambino's verse on "This is America" and Wes's "Made in America" in their original tempos.



Figure 7. Waveform of Gambino's verse on "This is America" and Wes's "Made in America" in the same tempo.

---

[8] The authors obtained isolated vocals for "Made In America" from Emelike Nwosuacha and for "This is America" from this YouTube page uploaded by MS Project:
https://www.youtube.com/watch?v=ZZN1ZnPKrVQ&feature=youtu.be.



Figure 8. Zoomed in waveform of the phrases "Made in America" by Wes and "This is America" by Gambino.

Figure 6 demonstrates that while the two waveforms line-up in the beginning, Gambino's the subsequent phrases "don't catch you slippin' now" and "look what I'm whippin' up" come in much later than Wes's phrases. Figure 7 demonstrates that by slowing down Wes's vocals to 120 BPM, the subsequent phrases are much closer together. However, Figure 8 demonstrates that despite the significant difference in tempo, the flows of each rapper line up almost exactly; there is only a .004 second difference. This is not discernable to the human ear in real time. In sum, the flow of each rapper is nearly identical despite a 20 BPM difference in tempo.

Another rhythmic device that is part of each rappers flow is the use of rhythmic "utterances," usually a "yeah," "uh," "ah," or "whoa" after each line. Figure 9 and 10 demonstrate these rhythmic utterances in waveform. The main difference between the two is pitch. Wes's is a lower pitch while Gambino's is a higher pitch and possibly performed by another artist.



Figure 9. Gambino rhythmic utterance.



Figure 10. Wes's rhythmic utterance.

In terms of melody, neither rapper is perfectly in-tune, but their melodic contour is very similar. Childish Gambino's "tonal center" is ambiguous for his verse,[9] as the only specific pitches in the accompaniment are in the synthesized bass, which alternates between a D and Eb. Kidd Wes's backing track is distinctly in the key of Cm, one whole-step down from Gambino's. Relatively speaking, the starting pitches begin a perfect fifth above the tonal center (A for Gambino and G for Wes). For the purposes of this report, the authors have transposed Wes's track up one whole-step for a better visual comparison. Figures 11 and 12 are spectrographic images of the melodic contour for "This is America" by Gambino and "Made in America" generated by the SPEAR program, while Figures 13 and 14 are colored spectrographic 2D images.

---

[9] The term verse here is used loosely, as there is no distinct "chorus" in this song. It is more of a sectional form (A B C D) with the "verse" being the B section.



Figure 11. Melodic contour of "Made in America" by Kidd Wes.



Figure 12. Melodic contour of "This is America" by Childish Gambino.



Figure 13. Colored spectrogram showing melodic contour of "Made in America" by Kidd Wes.



Figure 14. Colored spectrogram showing melodic contour of "This is America" by Childish Gambino.

In each of these spectrograms, the red line shows the general melodic contour for each respective song. In the colored spectrograms, the yellow and red points show the amplitude of each fundamental (outlined in red) and overtones. Because of the subtle timbral differences between Wes and Gambino, as well as the articulation of phonemes ("t" and "s" in "This is America" and "mm," "ih," and "nn" in Made in America), the density of the overtones fluctuates even if the fundamental frequencies are similar.

1 JA 72

The spectrograms uncover several important details. First, each rapper is never perfectly "on-pitch." For example, in Wes's song, the first three notes on "A," which in a typical Western scale should be 220 Hz, are preceded by a vocal scoop from the "m" of made (starting around 131 Hz) up to the first "A" (213 Hz – 7 Hz below an "on pitch" A). And even though I previously notated these first three notes as A in Figure 5, they vary in frequency from 203 to 221 Hz. Gambino's performance is not much different. While he doesn't have the long vocal scoop up to "This," his first "A" is at 230 Hz, almost a Bb. And in contrast to the transcription in Figure 5, his descending line is far less marked. In other words, specificity of pitch is an inadequate measurement in terms of detailing the contour of the melody. What these spectrograms do demonstrate is that the contours of each melody have much more in common than they do differences.

## Conclusion

This report has detailed the thematic, lyrical, visual, rhythmic, and melodic similarities between the music videos "Made in America," by Kidd Wes, and "This is America," by Childish Gambino. The videos and lyrics share the themes of gun violence, and oppression of African-Americans and People of Color by police, the political establishment, conservative organizations (in particular the NRA and the GOP), White nationalism (Charleston shooting), and racist structures in the U.S. They also use of imagery related to Blackface Minstrelsy (Jim Crow, Coon, and Uncle Tom), and deride stereotypical Black culture in an ironic way to poke fun at and bring attention to the aforementioned racist power structures in the U.S or Whiteness. There are distinct similarities in melodic contour, rhythmic *triplet flow* in each performance, and the lines "Made in America" and "This is America" line-up nearly perfectly in time despite being different tempos. They also both use rhythmic utterances in their performances. It is authors' opinion that these similarities are likely not coincidences.

## Works Cited

Duinker, Ben. 2019. "Good Things Come in Threes: Triplet Flow in Recent Hip-Hop Music." *Popular Music*. Vol.38(3), pp.423-456.

Glover, Donald. "This is America (Official Video)." https://www.youtube.com/watch?v=VYOjWnS4cMY. Last Accessed December, 30, 2019.

Krims, Adam. 2000. *Rap Music and the Poetics of Identity*. Cambridge University Press. Cambridge, UK.

Smithsonian Institute. "Coon Chicken Inn Records and Graham Family Papers." http://edan.si.edu/slideshow/viewer/?eadrefid=NMAH.AC.1153_ref272. Last Accessed December 30, 2019.

Wes, Kidd. "Kidd Wes-Made In America [Official Music Video] (Shot by Gfxkid Films)." https://www.youtube.com/watch?v=C7zL_OE7gnM. Last Accessed December 30, 2019.

Wikipedia Commons. "Picture from 1832 Playbill of Thomas D. Rice as 'Jim Crow'." https://en.wikipedia.org/wiki/File:Thomas-D-Rice-1832.jpg. Last Accessed December 30, 2019.

# EXHIBIT E

Case 23-703, Document 83, 08/17/2023, 3558143, Page76 of 197

  


HIP-HOP

# This Is Earth: Watch 12 Global Remixes of Childish Gambino's 'This Is America'

By **Gil Kaufman**

8/2/2018

![]

TOP ARTISTS   VIEW ALL

TOP CHARTS  HOT 100 SONGS  BILLBOARD 200 VIEW ALL

ARTIST MENTIONED



**Childish Gambi...**

# From China to Iraq, Brazil and Nigeria, the world has given the tune its own spin.

When Donald Glover dropped the powerful "This Is America" video back in early May the surprise Childish Gambino track immediately racked up way more YouTube views than any of the rapper/actor's other videos. But in addition to making a stark, funky statement on the state of the nation, the unapologetically blunt images of gun violence and allusions to racial profiling also opened a Pandora's box of catharsis for budding rappers across the globe to use "America" as a template to dance through their own pain and strife.

On Wednesday's (Aug. 1) edition of PRI's *The World,* some of the most striking remixed versions of the song and video from Iraq, Sierra Leone, Nigeria and France were profiled as a doorway into how Gambino's mixture of elegant beats and in-your-face imagery has inspired artists around the world. From "This Is Nigeria," which weaves some traditional instruments over lyrics about political and police corruption to the violence against women in "This Is South Africa" and the war-torn chaos of "This Is Iraq," each video and song uses the song as a template to speak on national issues.

Donald Glover Doesn't Want to Say What 'This Is America' Is About

**billboard**

  


like pointed parodies than political statements) speaks to the song's universal message, but the power of each remake is in the artist's inspiration to speak through the melody of Gambino's world-beat-infused track.

Check out 12 of the best "America" remixes below.

**This Is Sierra Leone**

**This Is Nigeria**







VIEW ALL



HOT 100 SONGS



BILLBOARD 200

VIEW ALL

Childish Gambino's 'This is America' is YouTube's Biggest First Week Debut This Year

## This Is Brazil

## This Is Iraq



**billboard**

1 JA 79

**TOP ARTISTS**

  

VIEW ALL

**TOP CHARTS**



HOT 100 SONGS

BILLBOARD 200

VIEW ALL

## This Is Malaysia

## This Is South Africa



billboard

1 JA 80







HOT 100 SONGS

BILLBOARD 200

Childish Gambino's 'This Is America' Is A Stunning Statement on Brutality, Gun Control: Watch

## This Is Afghanistan

## This Is Uganda



billboard

1 JA 81

   

## This Is Ghana

## This Is France



**billboard**

1 JA 82





TOP ARTISTS

VIEW ALL

TOP CHARTS


HOT 100 SONGS


BILLBOARD 200

VIEW ALL

This Is India

By **Gil Kaufman**

8/2/2018




https://www

## WATCH NOW



1 JA 83

TOP ARTISTS    VIEW ALL

TOP CHARTS  HOT 100 SONGS  BILLBOARD 200 VIEW ALL

## VIDEOS

## Pete Davidson Recalls His Talk With Eminem After Impersonating Him on 'SNL' | Billboard News

6 hours ago



## FOLLOW BILLBOARD

     

## THE DAILY

A daily briefing on what matters in the music industry

Enter Your Email

SUBMIT ›



 billboard

1 JA 84

THREE SIXTY

TOP ARTISTS



VIEW ALL

TOP CHARTS

HOT 100 SONGS

BILLBOARD 200
VIEW ALL

Subscribe

Careers

Terms of Use

Billboard Events

FAQ

Privacy Policy

Shop

Accessibility Statement

AdChoices

Contact Us

Sitemap

California Privacy Rights

Media Kit

Do Not Sell My Personal Information



© 2021 Billboard Media, LLC. All rights reserved. BILLBOARD is a registered trademark of Billboard IP Holdings, LLC



# EXHIBIT F

 **bandcamp**

Search and discover music

community

# This Is Iraq
by I-NZ



00:00 / 03:16

**Digital Track**
Streaming + Download

**Free Download**

I-NZ - This Is Iraq (Remix to Childish Gambino - This Is America)

Disclaimer

All rights to the musical composition belong to Childish Gambino and the record label GlassNote Records.

This video is a representation of Iraq's reality over the past 12 years and does not support, promote, nor condone violence in any shape or form.

Credits

Written by I-NZ (@official_inz)

Vocal Support by Alicia Renee and Warren Young

Follow I-NZ on his social media accounts below:

Instagram - www.instagram.com/official_inz
Facebook - www.facebook.com/OfficialINZ
Twitter - twitter.com/Official_INZ
Soundcloud - soundcloud.com/officialinz

Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away

This is not a party
Party just for you
We just wanna live
Live for more than a few
We're the only terror
Label us the fame
We just want the freedom
Keep asking in vein
This is not a party
Party just for you
We just wanna live
Live for more than a few
We're the only terror
Label us the fame
We just want the freedom
Keep asking in vein

This is Iraq
Look at us blowin' up
Nobody showin' up
Nobody ownin' up
Hathal Iraq (woo) – This is Iraq (woo)



**I-NZ**
Auckland, New Zealand

Follow

I-NZ is a New Zealand rap MC.
Born in Scotland to Iraqi parents, his cultural diversity shines throughout his... more

discography



I-NZ - Hey Trump (Russ Remix)
Feb 2020



Dollars & Dinars
Sep 2019



Let Me Love
Jan 2019

more releases...

contact / help

Contact

1 JA 87

# EXHIBIT G

🔍 **06** MAY 2018          back to news          

prev article

next article



   

Download Full
Press Release  

# Childish Gambino Releases New Song And Video "This Is America"

**CLICK HERE TO LISTEN AND WATCH THE VIDEO DIRECTED BY HIRO MURAI**

[New York, NY – May 6, 2018] Today, Grammy, Golden Globe and Emmy Award winning recording artist, actor and producer **Childish Gambino** (né Donald Glover) releases a new song and video entitled **"This Is America."** Click here to listen and watch the captivating video directed by Hiro Murai.

1 JA 89

Earlier this week, **Childish Gambino** announced new tour dates with **Vince Staples**, which will follow the first leg of his previously announced tour with **Rae Sremmurd**. Produced by Live Nation in partnership with Wolf + Rothstein, the tour will now visit 19 cities across North America, kicking off in Atlanta on September 6 and wrapping in Nashville, TN on October 12. See below for updated tour dates.

Gambino's successful live music production PHAROS, returns for its second installation this year in New Zealand on November 23, 24 and 25. More information and tickets are available now through the Pharos Earth mobile app https://pharos.earth.

Childish Gambino with special guests Rae Sremmurd and Vince Staples tour dates:

09-06 Atlanta, GA – Infinite Energy Arena $

09-08 Chicago, IL – United Center $

09-10 Toronto, Ontario – Air Canada Centre $

09-12 Boston, MA – TD Garden $

09-14 New York, NY – Madison Square Garden $

1 JA 90

09-15 New York, NY – Madison Square Garden $

09-18 Philadelphia, PA – Wells Fargo Center $

09-19 Washington, DC – Capital One Arena $

09-22 Houston, TX – Toyota Center $

09-23 Dallas, TX – American Airlines Center $

09-26 Inglewood, CA – The Forum $

09-27 Oakland, CA – Oracle Arena $

09-29 Seattle, WA – Key Arena $

09-30 Vancouver, British Columbia – Rogers Arena $

10-02 San Jose, CA – SAP Center at San Jose ^

10-03 Inglewood, CA – The Forum ^

10-05 Glendale, AZ – Gila River Arena ^

10-09 Denver, CO – Pepsi Center ^

10-12 Nashville, TN – Bridgestone Arena ^

\$ with Rae Sremmurd" with Vince Staples

**Stream/purchase "This Is America"** –
http://smarturl.it/TcIgA

***"This Is America" is <u>not</u> the first official single from Childish Gambino's upcoming album on Wolf + Rothstein/RCA Records.***

<u>**Keep up with Childish Gambino:**</u>

http://childishgambino.com

http://facebook.com/donaldglover

http://instagram.com/childishgambino

http://twitter.com/donaldglover

related articles



## 22

MAR 2020 📄PDF

**Donald Glover Presents "3.15.20"**

## 07

DEC 2018 📄PDF

**Childish Gambino Receives 5 Grammy Nominations Including Record Of the Year, Song Of the Year And Best Music Video For "This Is America"**

## 11

JUL 2018 📄PDF

**Childish Gambino Releases A Summer Pack Of New Music: "Summertime Magic" And "Feels Like Summer"**

## 31

MAY 2018 📄PDF

**Childish Gambino's "This Is America" Certified Platinum By The RIAA**

## 14

MAY 2018 📄PDF

**Childish Gambino Debuts At #1 On The Billboard Hot 100 Chart With "This Is America"**

---

## Pssst!

## Get the latest news, updates & more, sign up for our newsletter

Your email address

sign up



artists    news    videos    releases    @rcarecords

Visit www.OnGuardOnline.gov for social networking safety tips for parents and youth. © 2021 Sony Music Entertainment. All Rights Reserved.

Send Us Feedback | Privacy Policy/Your Privacy Rights | Do Not Sell My Personal Information | Your California Privacy Rights | Terms and Conditions | Why Music Matters

   

For RCA Records Press Inquiries:
publicity@rcarecords.com

1 JA 94

# EXHIBIT H

LAW OFFICES OF

*Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
ANDREA M. ARRIGO
DIANA FABI SAMSON

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118-13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

December 7, 2020

*Via Certified Mail*
Sony Music Entertainment
c/o Business & Legal Affairs
25 Madison Avenue
New York, NY 10010

RCA Records
25 Madison Avenue
New York, NY 10010

Donald McKinley Glover, II
c/o Ziffren Brittenham LLP
1801 Century Park W.
Los Angeles, CA 90067

Jefferey Lamar Williams
c/o United Talent Agency
9336 Civic Center Drive
Beverly Hills, CA 90210

Ludwig Emil Tomas Göransson
c/o Amos Newman
William Morris Endeavor Entertainment
9601 Wilshire Blvd, 8th Fl
Beverly Hills, CA 90210

Re:    Infringement of Copyright Owned by Emelike Nwosuocha

Dear Sir or Madam:

Please be advised that our firm represents Emelike Nwosuocha, a professional recording artist who performs under the stage name "Kidd Wes." Mr. Nwosuocha has retained our firm to investigate and pursue a copyright infringement claim against you in regard to the unauthorized use of protected elements of Mr. Nwosuocha's copyrighted sound recording entitled "Made in America" for the purposes of composing and recording the 2018 Childish Gambino song entitled "This is America."

Child Gambino's "This is America" contains certain distinct thematic, lyrical, rhythmic, and melodic central elements that are strikingly similar to those found in Mr. Nwosuocha's "Made in America," which was composed, recorded, widely publicly-distributed, and

1 JA 96

copyrighted well-before "This is America." The glaring similarities between unique shared central elements of the two songs - especially, but not only, unmistakable in the songs' respective chorus sections - are blatant to a degree beyond coincidence; no listener comparing the two songs, whether layperson or musicologist, could reasonably conclude otherwise.

There is no question but that these materials are substantially similar to the copyright-protected work of Mr. Nwosuocha, and that you had access to Mr. Nwosuocha's work, which has been continually available for public access on YouTube, among other major streaming platforms, since as early as November 9th, 2016. Furthermore, Mr. Nwosuocha has reserved all of its rights in its works under copyright and has not authorized you to reproduce, publish, provide, distribute, transmit, display, publicly perform, or otherwise make any use of such works. Therefore, your use of these works is a clear infringement of Mr. Nwosuocha's copyrights in violation of Sections 106 and 501 of the federal Copyright Act.

As a result of your unauthorized use of Mr. Nwosuocha's copyright, Mr. Nwosuocha has suffered significant damages. Because Mr. Nwosuocha's copyrights were registered prior to your infringing activity, his damages also include those statutorily provided for under the Copyright Act.

Prior to commencing a court proceeding, we are herein affording you an opportunity to discuss a pre-suit resolution so that both parties may avoid the need for lengthy, and likely costly, litigation and public scrutiny.

Please contact our office to discuss further. Should we fail to hear from you or your legal representative within ten (10) business days of the date of this letter, we will assume that you are not interested in resolving this matter; we will proceed without further notice, and take all necessary measures to protect our client's rights and interests under the law.

The above is not an exhaustive statement of all the relevant facts and law, and Mr. Nwosuocha expressly reserves all of his equitable and legal rights and remedies, including the right to seek injunctive relief and recover monetary damages.

Very Truly Yours,

/s/ Imran H. Ansari
Imran H. Ansari, Esq.

2

1 JA 97

# EXHIBIT I

LAW OFFICES OF

# Aidala, Bertuna & Kamins, P.C.

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
ANDREA M. ARRIGO
DIANA FABI SAMSON

───────

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118-13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

───────

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

February 16, 2021

**VIA EMAIL**

Jonathan D. Davis, P.C.
Jonathan Davis, Esq.
10 Rockefeller Plaza, Suite 1015
New York, New York 10020
jdd@jddavispc.com

**Re:    Cease and Desist - Infringement of Copyright Owned by Emelike Nwosuocha**

Dear Mr. Davis:

I write as counsel for Emelike Nwosuocha, a professional recording artist who performs under the stage name "Kidd Wes," in follow-up to a letter I sent you, dated December 7, 2020, to put you on notice of Mr. Nwowsuocha's retention of this firm to investigate and pursue a copyright infringement claim against you regarding the unauthorized use of protected elements of Mr. Nwosuocha's copyrighted sound entitled "Made in America" for the purposes of composing and recording the 2018 Childish Gambino (Donald Glover) song entitled "This is America." That previous letter's stated purpose was to afford you an opportunity to discuss a pre-suit resolution in good-faith, enabling both parties to avoid the need for lengthy, and likely costly, litigation and public scrutiny. We look forward to discussing this with you, but we also would like to reiterate our client's position prior to our discussion.

Mr. Nwowsuocha herein demands that Donald Glover, et al, immediately cease the infringing activity with regard to his copyright, desist from such infringing activity in the future and comply with Mr. Nwowsuocha's other requirements set forth in this letter.

As stated in my previous letter, Mr. Nwowsuocha composed, recorded, widely publicly-distributed, and copyrighted the infringed work, entitled "Made in America," well-before the infringing work, "This is America," was produced and/or publicly distributed. Mr. Nwowsuocha has exclusive rights per US copyright in the infringed work, which has been widely distributed by Mr. Nwowsuocha through YouTube, Apple Music, Spotify, Soundcloud, and Tidal, among other platforms, and is of substantial value to Mr. Nwowsuocha. Mr. Nwowsuocha has registered the copyright in the infringed work, "Made in America," with the US Copyright Office.

1 JA 99

Mr. Glover, et al, have published, distributed, transmitted, disseminated, and publicly performed materials that incorporate substantial portions of Mr. Nwowsuocha copyright work. Specifically, as you know, the infringing work, "This is America," contains certain unique distinct thematic, lyrical, rhythmic, and melodic central elements that are strikingly and unmistakably similar to those found in Mr. Nwosuocha's "Made in America" to a degree clearly beyond coincidence. No listener comparing the two songs, whether layperson or musicologist, will reasonably conclude otherwise.

There is no question but that "This is America" is substantially similar to the copyright-protected works of Mr. Nwowsuocha, and that Mr. Glover, et al, had access to Mr. Nwowsuocha's infringed work that has been publicly accessible on all major music streaming platforms since significantly prior to production and/or wide public dissemination of infringing work "This is America." Furthermore, Mr. Nwowsuocha's has reserved all of its rights in his infringed work under copyright and has not authorized anyone to copyright, to reproduce, publish, provide, distribute, transmit, display, publicly perform, or otherwise make any use of such infringed work. Therefore, the continued use of Mr. Nwowsuocha's copyright work is a clear infringement of Mr. Nwowsuocha's copyrights in violation of Sections 106 and 501 of the Copyright Act.

Moreover, the extent of practically-identical copying from elements of Mr. Nwowsuocha's copyrighted work establishes that the infringement was knowing and intentional. Because Mr. Nwowsuocha's copyright was registered prior to Mr. Glover's infringing activity, he may be liable for significant statutory damages for each instance of infringement, in addition to attorneys' fees and other costs incurred by Mr. Nwowsuocha to enforce his rights.

Mr. Nwowsuocha treats copyright infringement as a very serious matter and fully enforces his rights against those who infringe. However, Mr. Nwowsuocha is currently still prepared to try to resolve this matter amicably – provided, however, that Mr. Glover, et al, cooperate fully with Mr. Nwowsuocha and establish to his satisfaction that this was an error of judgment and not a systematic effort by you, as a significant player in the music industry, to attempt to profit from infringing upon the intellectual property of Mr. Nwowsuocha as an independent artist.

Giving the foregoing, we demand that Mr. Glover, et al:

1.      Immediately cease and desist from all further production, reproduction, publishing, provision, distribution, transmission, display, performance, advertising, licensing, and sale of materials that infringe Mr. Nwowsuocha's works;

2.      Destroy all such materials in inventory or otherwise in its possession or control, including all copies in electronic or printed form; and

3.      Provide Mr. Nwowsuocha with a full accounting of all copies sold, licensed, or otherwise distributed and all proceeds therefrom.

Aidala, Bertuna & Kamins, P.C. • 546 Fifth Avenue, New York, NY, 10036 • T: 212-486-0011 • F: 212-750-8297 • www.aidalaw.com

1 JA 100

Mr. Glover, et al, are specifically advised that any failure or delay in complying with these demands will likely compound the damages for which they may be liable. The above is not an exhaustive statement of all the relevant facts and law, and Mr. Nwowsuocha expressly reserves all of its equitable and legal rights and remedies, including the right to seek injunctive relief and recover monetary damages.

Very Truly Yours,

/s/ Imran H. Ansari
Imran H. Ansari, Esq.

Aidala, Bertuna & Kamins, P.C. • 546 Fifth Avenue, New York, NY, 10036 • T: 212-486-0011 • F: 212-750-8297 • www.aidalalaw.com

1 JA 101

LAW OFFICES OF

## *Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
ANDREA M. ARRIGO
DIANA FABI SAMSON

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118-13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

May 6, 2021

**VIA ECF**

Hon. Victor Marrero
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

   Re:  *Nwosuocha v. Glover II et al.*, No. 1:21-cv-04047-VM

Dear Judge Marrero:

   The undersigned writes the Court on behalf of Plaintiff Emelike Nwosuocha ("Nwosuocha") to advise the Court as to a confirmed courthouse systems error affecting **Exhibit A** (ECF No. 1-1) to the Complaint filed by Plaintiff in this action. Specifically, as confirmed to the undersigned's office this afternoon in a phone call with staff member Gladys of the Court's Case Openings department, a systems error is apparently causing some computers (including a number of those used by personnel within the Court's ECF Support and Computer Systems departments) to be unable to access **Exhibit A** from the docket, while other computers within the Court's system seem to be able access **Exhibit A** from the docket without incident. The Court's Cases Openings, ECF Support, and Computer Systems departments have confirmed that the issue affecting **Exhibit A** is not a filing issue, but rather a "browser issue."

   Despite that the issue has been confirmed to be a systems issue, rather than an issue with Plaintiff's filing, out of an abundance of caution, and pursuant to advice given to the undersigned's

office by Gladys of the Case Openings department, the undersigned will again file **Exhibit A** onto the docket in the form of a Notice of Exhibit. Plaintiff will file that **Notice of Exhibit A** directly subsequent to the filing of the within.

Respectfully Submitted,

/s/ Imran H. Ansari
Imran H. Ansari, Esq.

Aidala, Bertuna & Kamins, P.C. • 546 Fifth Avenue, New York, NY, 10036 • T: 212-486-0011 • F: 212-750-8297 • www.aidalalaw.com

1 JA 103

# EXHIBIT A

SOUNDCLOUD Home Stream Library Search for artists, bands, tracks, podcasts Sign in Create account Up

Kidd Wes

# Kidd Wes-Made In America (prod. by Mindlabs) VIDEO IN DESCRIPTION

4 years ago

# Hip-hop & Rap

0:00 3:39

Write a comment

Like Repost Share Add to Next up More ▶ 85.6K ♥ 405 170

Kidd Wes
3,518 37
Follow

Report

Follow Kidd Wes and others on SoundCloud.

Create a SoundCloud account Sign in

Fuck 2016 Rappers

Official Video:

youtu.be/C7zL_OE7gnM

# Kidd Wes # Trump # Clinton # Drake # 40 # YesJulz # Trap

134 comments

LUNAR! at 0:35: 2 years ago
Gambino ripped this shit off you G

Dj wakach at 1:43: 3 years ago
i fw the bass

girls away at 1:40: 3 years ago
loving it already

phelp hawk at 1:09: 3 years ago
i want it on itunes and spotify

KelseysKicksMusic at 3:10: 4 years ago
MADE IN AMERICA, FLEX MADE ME A TERRORIST :) REPOST!!

Nolan J Jackman at 3:00: 4 years ago
Wonderfool voice

mark m fleetwood at 0:11: 4 years ago
Great job blue flame

ccbutterfield1 at 0:24: 4 years ago
it!!!!! Masterpiece!

User 151735024 at 3:00: 4 years ago
uper bra låt?? Keep up the god work !

Related tracks

Cease
MothaFucker
▶ 9,088 ♥ 97 2 3

VK Rz
Gramtalk freestyle
▶ 1,407 ♥ 70 24 11

pedknows
Tastyer - Pedknows
▶ 3,670 ♥ 31 8 6

In playlists

DigitalTraphouse
Best of the Week Vol. 10
♥ 2 1

DigitalTraphouse
Best of the Month Vol. 3 - Sep
♥ 3 1

Jules Marchisio
trap us

405 likes

170 reposts

Go mobile

Download on the App Store GET IT ON Google pla

Legal - Privacy - Cookie Policy - Cookie Ma

5/5/21, 11:40 AM

randychetsingh1960 at 0:09    4 years ago
Blue the music is banging as always

c g mcdavid68 at 0:51    4 years ago
Is great song for my.

neiljeremyhudson17 at 2:38    4 years ago
Love it blue

D G Linney at 2:36    4 years ago
Soo much talent...~~!!~

edforelli at 3:37    4 years ago
this song is amazing , i like

Blair T x Panasik at 1:33    4 years ago
I look froward! I love this song!

ydimirybe at 3:15    4 years ago
Great song and awesome smile emoticon

philiphypaoli1988 at 3:03    4 years ago
Amazing, it really is

yqomibonu58 at 2:14    4 years ago
sneakers on point

pat s a cooper at 2:58    4 years ago
So excited for you! Good luck!

eqokabyvugi at 0:15    4 years ago
uper bra låt?? Keep up the god work !

CPBrooks at 3:21    4 years ago
I love this song ***

trentnobriggs6 at 2:50    4 years ago
it!!!!! Masterpiece!

arebylukiwi at 1:52    4 years ago
A great song! Wish you all

F z Gossett3 at 1:03    4 years ago
very nice!!!Love it!

IJGormley3 at 1:55    4 years ago
Great song and awesome smile emoticon

joshlcrook at 2:13    4 years ago
My ambition was always my favorite

ocimakiwew56 at 3:22    4 years ago
It's fantastic!! ;D <333

uhabezuraty at 2:03    4 years ago
one word AMAZING

J L Forrester75 at 0:41    4 years ago
good luck guys you deserve it~@#

c d webber7 at 0:28    4 years ago
Great job blue flame

SlWregget at 0:33    4 years ago
I love this song

Silas D D Emmery at 2:25    4 years ago
Wonderfool voice

1 JA 106

punutuw92 at 0:09
Loved the song was good

4 years ago

rossenadeau4 at 2:47
perfect song. one of my favourites

4 years ago

jacob fritshaw92 at 3:37
Beautiful song well song

4 years ago

ragubuxefi at 3:00
So excited for you! Good luck!

4 years ago

austinbescobedo1983 at 1:41
Again and again I Loved it

4 years ago

ywimepycyw1964 at 3:29
My one and only voice...Love this voice

4 years ago

Jasmine at 2:33
bad ass rap <3

4 years ago

Sheila at 1:50
Lyrical GENIUS

4 years ago





▶  0:00 ————————————————————————————— 3:39  🔊   Kidd Wes
Kidd Wes–Made In America (prod. b...

1 JA 107



≡ YouTube   kidd wes made in america   🔍  🎤        ⊞ ⋮  👤 SIGN IN

Kidd Wes-Made In America [Official Music Video] (Shot by Gfxkid Films)

122,560 views • Nov 9, 2016

👍 1K   👎 119   ↪ SHARE   ⊕ SAVE   •••

Kidd Wes
379 subscribers

SUBSCRIBE

Kidd Wes- MADE IN AMERICA

Follow Me:

SHOW MORE

**Prince Riley - "Brothers" (Official Video Shot By |...**
PRINCE RILEY RFMG ♪
165K views • 3 years ago
4:08

**Kidd Wes- Blvd Dreams (Official Video) [Directed by Roberto...**
Kidd Wes
15K views • 5 years ago
2:57

**03. Memoirs of a Gold Chain (prod. by Mikey Beatz)**
Kidd Wes
693 views • 6 years ago
3:01

**Kidd Wes- Made in America [Behind the Scenes**
Kidd Wes
17K views • 4 years ago
1:43

**morray - quicksand (official music video)**
Morray
65M views • 6 months ago
3:47

**E-40 "I STAND ON THAT" FT. JOYNER LUCAS & T.I. (MUSIC...**
E40TV
7.6M views • 1 month ago
4:54

**2000s r&b playlist to get you in your feels reupload**
Ahmad-Xv
612K views • 3 months ago
56:58

**RUN DMC - Walk This Way (Official HD Video) ft. Aerosmith**
Run DMC ♪
90M views • 11 years ago
4:04

**O4L Jigg - SHOOTA SHOOTA**
O4L Jigg
1K views • 4 years ago
2:48

**JokaaG - Heart (Official Music Video) Shot By @HoldUpTV**
HoldUpTV
73K views • 2 years ago
2:39

**NLE Choppa - Final Warning (Official Video)**
NLE CHOPPA ♪
6.7M views • 4 days ago
New

**Polo G - RAPSTAR (Official Video)**
Polo G ♪
49M views • 3 weeks ago

**Eminem - Godzilla ft. Juice WRLD (Directed by Cole...**
Lyrical Lemonade ✓
363M views • 1 year ago

**Pooh Shiesty - Back In Blood (feat. Lil Durk) [Official Music...**
Pooh Shiesty
130M views • 4 months ago

**21 Savage - a lot (Official Video) ft. J. Cole**
21 Savage ♪
365M views • 2 years ago

**Yung Bleu - You're Mines Still (feat. Drake) [Official Video]**
Yung Bleu ♪
108M views • 4 months ago

**Mac Miller - Self Care (Official Music Video)**
Mac Miller ♪
281M views • 2 years ago

**06. In Between the Lines Ft. Ca$he & DJ Fly Guy (prod. by...**
Kidd Wes
35 views • 6 years ago

**Bblasian - Change (Official Video)**
Lil Zayo
690K views • 3 years ago

**Childish Gambino - Feels Like Summer**
Donald Glover ♪
223M views • 2 years ago

1 JA 108

# JONATHAN D. DAVIS, P.C.

### ATTORNEYS AT LAW

1 ROCKEFELLER PLAZA
SUITE 1712
NEW YORK, NEW YORK 10020

TEL: (212) 687-5464
FAX: (212) 697-2521
WWW.JDDAVISPC.COM

February 18, 2022

**VIA ECF**

The Honorable Victor Marrero
United States District Court Judge
United States District Court
500 Pearl Street, Suite 1610
New York, New York 10007

Re: Nwosuocha v. Glover, et al. (Civ. Action No. 21-cv-04047)

Dear Judge Marrero:

We are writing on behalf of all Defendants in the above-referenced action to inform the Court, in accordance with Paragraph II.B.2. of your Honor's Individual Practices, that the parties were unable to resolve all of the disputes regarding the appropriateness of Defendants' contemplated motion to dismiss.[1]

This action is for copyright infringement under the U.S. Copyright Act (the "Act"). Plaintiff Emelike Nwosuocha claims his purported copyright interest in the musical composition titled "Made in America" (the "Plaintiff's Composition") is infringed by the musical composition titled "This is America" (the "Challenged Composition"). Plaintiff's infringement claim concerns *only* the musical compositions at issue. The Complaint does not allege any infringement claim concerning the video or recording of Plaintiff's Composition.[2]

The parties have exchanged the following letters, which are attached in accordance with your Honor's Individual Practices: (1) Jonathan D. Davis's letter on behalf of the Initiating

---

[1] Although we are writing on behalf of all Defendants, Jonathan D. Davis, P.C. is counsel of record only for: Defendants Donald McKinley Glover, II, Ludwig Emil Tomas Göransson, Jeffery Lamar Williams, Kobalt Music Publishing America, Inc. d/b/a Songs of Kobalt Music Publishing, RCA Records ("RCA"), Sony Music Entertainment, Young Stoner Life Publishing, LLC, Theory Entertainment LLC d/b/a 300 Entertainment, Atlantic Recording Corporation, Warner Music Group Corp. ("WMG"), and Warner-Tamerlane Publishing Corp. (collectively, the "Initiating Defendants"). Pryor Cashman LLP is counsel of record for Songs of Universal, Inc., and Quinn Emanuel Urquhart & Sullivan, LLP is counsel of record for Roc Nation Publishing LLC ("Roc Nation", and together with the Initiating Defendants and Songs of Universal, Inc., the "Defendants").

[2] Plaintiff's Composition and the Challenged Composition are available on SoundCloud and may be accessed using the following Internet addresses: https://soundcloud.com/kiddwesischurch/made-in-america-prod-by (the Plaintiff's Composition) (last visited Feb. 18, 2022) and https://soundcloud.com/childish-gambino/this-is-america (the Challenged Composition) (last visited Feb. 18, 2022).

The Honorable Victor Marrero
February 18, 2022
Page 2

Defendants to Imran H. Ansari, Plaintiff's counsel, dated December 22, 2021; (2) Ilene S. Farkas's letter on behalf of Defendant Songs of Universal, Inc. to Mr. Ansari, dated December 22, 2021; (3) Paul B. Maslo's letter on behalf of Defendant Roc Nation to Mr. Ansari, dated December 22, 2021; (4) Mr. Ansari's letter to Mr. Davis, dated January 12, 2022; (5) Mr. Davis's letter on behalf of all Defendants to Mr. Ansari, dated January 18, 2022; and (6) Mr. Ansari's letter to Mr. Davis, dated February 8, 2022.

Defendants' letters contend that the Complaint is subject to dismissal for the following reasons: (1) Plaintiff lacks standing to sue for copyright infringement because he lacks the requisite registration for Plaintiff's Composition; (2) Plaintiff inadequately alleges "access" and actionable copying; (3) Plaintiff fails to plead plausible contributory and vicarious infringement claims; and (4) Plaintiff named two improper parties, namely Defendants RCA and WMG.

Plaintiff disputes the grounds for dismissal with one exception. Mr. Ansari's February 8, 2022 letter states that "[s]hould the Defendants provide evidentiary proof and an affidavit in support of its (sic) contention that WMG and RCA are improper Defendants[,] then Plaintiff will consider withdrawing the claims [against them]." Pl.'s Feb. 8, 2022 Ltr. at 3. WMG and RCA are endeavoring to present information that will persuade Mr. Ansari to dismiss them from this action.

Dismissal of the Complaint based on Plaintiff's lack of registration and lack of standing is warranted here. First, the Act's registration requirement for Plaintiff's Composition is not met by registering certain unpublished sound recordings as a collective work. Plaintiff's legal construction of the Act and its regulations would defeat the purpose of registration, which is to provide notice to the public of copyright ownership.

Second, Plaintiff's SR registration does not register the musical composition at issue in this case. When registering sound recordings and musical compositions together, an applicant must explicitly elect to expand the scope of an SR registration to include a musical composition embodied in the same phonorecord. *See* 37 C.F.R. § 202.3(b)(1) (May 24, 2017) (describing classes of works for registration including Class SR for sound recordings); Code of Federal Regulations, https://www.ecfr.gov (last visited Feb. 18, 2022) (permitting access to historical regulations). According to the controlling regulations, "[c]laims to copyright in … musical works embodied in phonorecords may also be registered in th[e] [SR] class under paragraph (b)(4) of this section [covering unpublished collections, among other things] if: (A) *Registration is sought on the same application for both a recorded … musical work and a sound recording*; (B) The recorded … musical work and the sound recording are embodied in the same phonorecord; and (C) The same claimant *is seeking registration of both the recorded … musical work and the sound recording*." 37 C.F.R. § 202.3(b)(1)(iv) (May 24, 2017) (emphasis added). These regulations were reflected in the Form SR instructions when Plaintiff filed his registration. The instructions required an applicant to include appropriate authorship terms to cover an underlying musical composition. And U.S. Copyright Circular 56A (rev. 2/2012) includes the following information in a chart to assist applicants:

The Honorable Victor Marrero
February 18, 2022
Page 3

| What is being registered | What the author created |
|---|---|
| **Performing arts work** | |
| Song or other musical composition | Music and words *or* Music |
| **Sound recording** | |
| Sound recording only | Sound recording |
| Musical composition and sound recording | Music and sound recording *or* Music, words, and sound recording |

But Plaintiff's registration does not cover any musical composition because it explicitly states only: "Author Created: sound recording." [ECF Dkt. No. 1, Ex. B.] Because the copyright claim in Plaintiff's registration does not extend to Plaintiff's Composition, that work has not been registered and, accordingly, Plaintiff's claim should be dismissed for failure to meet a basic statutory prerequisite for bringing suit for copyright infringement. *See, e.g., Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (stating "registration is akin to an administrative exhaustion requirement … before suing to enforce ownership rights").[3]

A motion to dismiss is also warranted because Plaintiff has not alleged a plausible theory of "access" to his work, and because under the "ordinary observer test" – which this Court applies on a motion to dismiss – any lay listener would conclude, as a matter of law, that the Challenged Composition is not "substantially similar" – let alone "strikingly similar" – to Plaintiff's Composition. The musical compositions could not be more different, and the use of one non-protectable lyric – "America" – cannot support a claim for infringement. Accordingly, the Complaint should be dismissed.

Lastly, a motion to dismiss is warranted because Plaintiff fails to recognize that his conclusory allegations of contributory and vicarious infringement do not state plausible infringement claims. These claims should be dismissed as well.

We await the Court's instructions with respect to any further compliance with the pre-motion procedures and are available for a pre-motion conference at the Court's convenience.

Respectfully submitted,

*/s/ Jonathan D. Davis*

Jonathan D. Davis

Attachments
cc:  All Counsel (Via ECF)

---

[3] Although Defendants contend that the sound recording for Plaintiff's Composition is also *excluded* from the registration because it was a *published* work when the purportedly *unpublished collection* of sound recordings was submitted for registration, Plaintiff has not alleged any infringement claim concerning the *sound recording* of Plaintiff's Composition.

**JONATHAN D. DAVIS, P.C.**

ATTORNEYS AT LAW

10 ROCKEFELLER PLAZA
SUITE 1015
NEW YORK, NEW YORK 10020

TEL: (212) 687-5464
FAX: (212) 697-2521
WWW.JDDAVISPC.COM

December 22, 2021

**VIA FIRST-CLASS MAIL/EMAIL/PDF**

Imran H. Ansari, Esq.
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, New York 10036

Re: <u>Nwosuocha v. Glover, et al. (Civ. Action No. 21-cv-04047)</u>

Dear Mr. Ansari:

We write to you on behalf of our clients in the above-referenced action and pursuant to Paragraph II.B. of the Individual Practices of U.S. District Judge Victor Marrero to "set[] forth the specific … pleading deficiencies in the complaint and other reasons or controlling authorities" we contend "would warrant dismissal and that, if properly rectified, could avoid the filing of the motion."[1] This letter is in lieu of a filed response to the Complaint.

The Complaint has the following fatal deficiencies: (1) lack of standing to sue for copyright infringement of the musical composition "Made in America" ("<u>Plaintiff's Composition</u>");[2] (2) failure to plead access or "substantial similarity" between the works at issue; and (3) improperly including RCA Records ("<u>RCA</u>") and Warner Music Group Corp. ("<u>WMG</u>") as defendants.

**I.  <u>Plaintiff Lacks Standing to Sue for Copyright Infringement</u>**

A copyright registration is an indispensable prerequisite for standing to sue for copyright infringement. *See* 17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (stating "registration is akin to an administrative exhaustion requirement … before suing to enforce ownership rights"). Musical compositions, sound recordings, and audiovisual works each require registration.

Plaintiff cannot pursue infringement claims against Defendants without a valid registration. The Complaint identifies only one registration, which is limited to an *unpublished* collection of *sound recordings*. ECF No. 1, ¶ 5, Ex. B. That registration does not cover Plaintiff's Composition. *See* U.S. Copyright Circular 56A; *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc*., 75 F. Supp. 2d 242, 247 (S.D.N.Y. 1999). Moreover, the sound recording embodying Plaintiff's

---

[1] We represent all Defendants except for Roc Nation Publishing LLC and Songs of Universal, Inc.

[2] The Complaint does not allege that the music *video* for "This is America" (the "<u>Challenged Composition</u>") infringes Plaintiff's music video. Nor can it be read to allege a sampling claim. Such claims would nonetheless be dismissed for lack of a valid registration.

1 JA 112

Imran H. Ansari, Esq.
December 22, 2021
Page 2

Composition is *excluded* from that registration because it was not an *unpublished* composition when the registration was filed or issued. *See Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 230 (S.D.N.Y. 2012); *see also Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016). The Complaint alleges that a recording of Plaintiff's Composition was uploaded to SoundCloud and YouTube before registration. ECF No. 1, ¶¶ 4, 40, 41 (alleging commercial exploitation on the Internet in 2016). This conduct constitutes publication. 17 U.S.C. § 101; *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) (uploading content to Internet constitutes publication); *see also Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1364 (S.D. Fla. 2011) (music file published when posted on Internet).

## II.   **Plaintiff Has Not Alleged Access or Actionable Copying**

Copyright infringement requires copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Where no direct evidence of actual copying exists, a plaintiff must allege access with facts sufficient to allow an inference of copying. Here, Plaintiff's allegation that his song was available "on major streaming platforms for widespread public listening" fails to plead "access" as a matter of law. ECF No. 1, ¶ 40; *Clanton v. UMG Recordings, Inc.*, 20-cv-5841 (LJL), 2021 WL 3621784, at *3 (S.D.N.Y. Aug. 16, 2021) (dismissing claim because posting a song on the "internet is insufficient on its own to show [access through] 'wide dissemination'").

In addition, copying requires the works to be "substantially similar." But under the "ordinary observer" test – where a district court must compare the songs' "total concept and overall feel" without considering unprotectable expression the songs may share – the songs at issue lack "substantial similarity" as a matter of law. *Edwards v. Raymond*, 22 F. Supp. 3d 293, 297-301 (S.D.N.Y. 2014). In applying the test, a plaintiff's characterization of the songs is immaterial.

The minimal alleged similarities between the songs at issue lack the requisite protectability. The common proper noun "America" is unprotectable. *McDonald v. West*, 138 F. Supp. 3d 448, 456 (S.D.N.Y. 2015) ("Made in America" not protectible); 37 C.F.R. § 202.1(a). Likewise, any alleged similarity in the cadence/rhythm of the lyrical/rap delivery – such as the alleged use of "triplets" – is also unprotectable. *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018); *Rose v. Hewson,* No. 17cv1471 (DLC), 2018 WL 626350, at *7 (S.D.N.Y. Jan. 30, 2018). Aside from these unprotectable similarities, there is nothing to support Plaintiff's copyright claim.

Indeed, the music is different in each song at issue. As any lay listener will observe, the Challenged Composition's music is unlike Plaintiff's Composition. Plaintiff entirely raps his song in a C# minor key in a faster tempo. The Challenged Composition contains rapping *and* singing by multiple performers, is primarily in F major, and has a slower tempo. The differences in the production and instrumentals also reflect different concepts and overall feels.

In addition, the structure of each song is substantially different. Plaintiff's Composition has an intro, outro, and two verses that are sandwiched between choruses. The Challenged Composition has an intro, two verses that are preceded by both a pre-chorus and chorus, a final pre-chorus and an outro.

1 JA 113

Imran H. Ansari, Esq.
December 22, 2021
Page 3

Furthermore, themes and ideas are not protectable as a matter of law, and here, other than a reference to the generic lyric "America," the themes of each song, and their lyrics, are entirely dissimilar. Plaintiff's Composition is a short, simple, self-aggrandizing proclamation, with Plaintiff stating repeatedly: "I'm made in America." His mantra alerts rappers of Plaintiff's arrival ("2016 rappers? (Yeah") You should beware of this"), and his success ("I'm running the city … I'm making a milestone … You hearing my name though? Well don't wear it out … I'm killing the game … I somersault the flow, pick up any ho / On any street).

In contrast, the Challenged Composition is not about a rapper's arrival/success, but is a complex clashing of the American landscape, anchored to the common phrase "This is America." It references facets of America, such as having fun and making money ("We just wanna party / Party just for you / We just want the money / Money just for you"); police misconduct ("Police be trippin' now"); gun culture ("Guns in my area … / I got the strap (ayy, ayy) / I gotta carry 'em"); materialism ("I'm so fitted … I'm on Gucci"); race and familial truth-telling ("Grandma told me / Get your money, Black man …"); and drugs ("Contraband, contraband, contraband … I got the plug in Oaxaca"). The works share no protectable expression and are not substantially similar.

## III.    The Contributory and Vicarious Infringement Claims Are Not Plausible

Because no plausible direct copyright infringement claim exists, Plaintiff's claims for contributory and vicarious infringement cannot survive a motion to dismiss. *Alexander v. Murdoch*, No. 10 Civ. 5613(PAC)(JCF), 2011 WL 2802899, at *17 (S.D.N.Y. May 27, 2011). Additionally, the allegations for those claims are conclusory and thus fail to state plausible claims. *Compare* ECF No. 1, ¶¶ 86-87 *with Hartmann v. Amazon.com, Inc.*, 20 Civ. 4928 (PAE), 2021 WL 3683510, at *9 (S.D.N.Y. Aug. 19, 2021) (dismissing conclusory vicarious liability claims).

## IV.    RCA and WMG Are Improper Parties

Plaintiff has improperly sued RCA, a business unit of Defendant Sony Music Entertainment ("SME"). RCA lacks a separate corporate existence and thus cannot be sued. Because claims against RCA are claims against SME, RCA is an improper party and should be dismissed. *See Currin v. Williams*, Case. No. 3:07-CV-1069(RNC), 2009 WL 10676977 (D. Conn. May 12, 2009) (sustaining dismissal of "RCA Records Label" because it is a business unit, not a separate corporate entity, finding "claims … against RCA are in fact claims against Sony BMG").

Plaintiff also improperly sued WMG, the indirect corporate parent of Defendants Atlantic Recording Corporation and Warner-Tamerlane Publishing Corp. WMG has no interest in the Challenged Composition. Also, the allegations against WMG are conclusory, mandating its dismissal. ECF No. 1, ¶ 27 (alleging WMG "has assisted in and/or directly facilitated" various acts and "caused copies" to be exploited). *Cohen v. Hertz Corp.*, No. 13 Civ. 1205(LTS)(AJP), 2013 WL 9450421, at *5 n.7 (S.D.N.Y. Nov. 26, 2013) (dismissing corporate parents which were not alleged to be "responsible for the wrongdoings that [plaintiff] suffered"); *see also Hartmann*, 2021 WL 3683510, at *9.

Imran H. Ansari, Esq.
December 22, 2021
Page 4

                                        Very truly yours,

                                        */s/ Jonathan D. Davis*

                                        Jonathan D. Davis

JDD:hs

cc:  The Honorable Victor Marrero (Via Fax)
     Paul Maslo, Esq. (Via Email/PDF)
     Alex Spiro, Esq. (Via Email/PDF)
     Donald S. Zakarin, Esq. (Via Email/PDF)
     Ilene S. Farkas, Esq. (Via Email/PDF)



# PRYOR CASHMAN LLP

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569  Tel: 212-421-4100  Fax: 212-326-0806          www.pryorcashman.com

**Ilene S. Farkas**
Partner

Direct Tel: 212-326-0188
Direct Fax: 212-798-6382
IFarkas@PRYORCASHMAN.com

December 22, 2021

**VIA E-MAIL**

Imran H. Ansari, Esq.
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, New York 10036

> Re:    **Nwosuocha v. Glover, et al. (Civ. Action No. 21-cv-04047)**

Dear Mr. Ansari:

We represent Songs of Universal, Inc. in the above-referenced action.

We write to you on behalf of our client and pursuant to Paragraph II.B. of the Individual Practices of The Honorable U.S. District Judge Victor Marrero.  We have reviewed the letter of Jonathan Davis of today's date on behalf of the remaining defendants, and our client hereby incorporates by reference and joins in the reasons stated therein that "would warrant dismissal and that, if properly rectified, could avoid the filing of the motion." This letter is in lieu of a response to the Complaint at this time pursuant to the Judge's Rules.

Sincerely,

Ilene S. Farkas

cc:    The Honorable Victor Marrero *(via fax 212-805-6382)*
       Paul Maslo, Esq. *(via email)*
       Alex Spiro, Esq. *(via email)*
       Donald S. Zakarin, Esq. *(via email)*
       Jonathan D. Davis, Esq. *(via email)*

6088077

1 JA 116

**quinn emanuel** trial lawyers | new york

711 Louisiana St., Suite 500, Houston, TX 77002 . Tel (713) 221-7000 . Fax (713) 221-7100

WRITER'S DIRECT DIAL NO.
**(214) 447-0066**

WRITER'S EMAIL ADDRESS
**paulmaslo@quinnemanuel.com**

December 22, 2021

**VIA EMAIL AND FEDEX**
Imran H. Ansari
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue, 6th Floor
New York, NY 10036

**Re:     Nwosuocha v. Glover, et al., No. 21-cv-04047-VM**

Dear Mr. Ansari:

        We represent Roc Nation Publishing LLC ("Roc Nation"). Pursuant to Section II(B) of the Individual Practices of United States District Judge Victor Marrero, we write to "set[] forth the . . . pleading deficiencies in the complaint and other reasons or controlling authorities that defendant contends would warrant dismissal[.]" Specifically, Roc Nation adopts and incorporates by reference the arguments made in the December 22, 2021 pre-motion letter of Jonathan D. Davis, submitted on behalf of other Defendants.

Sincerely,

*/s/ Paul B. Maslo*

Paul B. Maslo

cc:     The Honorable Victor Marrero (via fax)
        Counsel for all parties (via email)

**quinn emanuel urquhart & sullivan, llp**

AUSTIN | BOSTON | BRUSSELS | CHICAGO | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MUNICH |
NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY |
STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

LAW OFFICES OF

*Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
HON. JOHN LEVENTHAL (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
DIANA FABI SAMSON
ANDREA M. ARRIGO
MICHAEL DIBENEDETTO
TAYLOR FRIEDMAN

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

January 12, 2022

***VIA EMAIL***
Jonathan D. Davis, Esq.
Jonathan D. Davis, P.C.
10 Rockefeller Plaza, Suite 1015
New York, New York 10020

Re:     ***Nwosuocha v. Glover II et al.*, No. 1:21-cv-04047-VM**

Dear Mr. Davis:

I write on behalf of my client in response to your December 22, 2021, pre-motion letter served in lieu of a filed response to the Complaint pursuant to paragraph II.B of Judge Marrero's Individual Rules ("Pre-Motion Letter"), which was joined by all Defendants to this action.

The Pre-Motion letter asserts the following as "fatal deficiencies" in the Complaint: (1) a lack of standing to sue for copyright infringement of the musical composition "Made in America" ("Plaintiff's Composition"); (2) failure to plead access or "substantial similarity" between the works at issue; and (3) improperly including RCA Records ("RCA") and Warner Music Group Corp. ("WMG") as defendants. For the reasons that follow, Plaintiff disagrees with your characterization of these as deficiencies in the Complaint, much less "fatal" deficiencies that "would warrant dismissal."

## I.     <u>Plaintiff Has Standing to Sue for Copyright Infringement</u>

The Pre-Motion Letter's first erroneously alleged "fatal deficiency" in the Complaint is the Plaintiff's purported lack of standing to sue for copyright infringement. The flawed premise of this point is that Plaintiff's copyright registration does not cover Plaintiff's Composition due to the registration's designation as pertaining to a "sound recording" that is "unpublished." Defendants' reasoning appears to neglect that the U.S. Copyright Office allows compositional registrations to subsume into "sound recording" registrations, and that the mere act of uploading a song to SoundCloud or YouTube prior to registration does not fall within the U.S. Copyright Office's definition of "publication" for the purposes of registration.

The U.S. Copyright Office permits unpublished sound recordings *and* their underlying compositions to be registered simultaneously under the "Sound Recording" designation, pursuant to Copyright Office Circular 56A. Per official Copyright Office guidance, one can accomplish such simultaneous registration where: (a) the claimant is the author of both the sound recording and the work embodied in the recording, or the owner of the copyright in both; (b) the claimant

1 JA 118

checks "Sound Recording" under the "Author Created" section of the registration, or uses the Form SR (as in "Sound Recording") if submitting a paper application; and (c) the claimant submits a phonorecord containing both the sound recording and the musical composition embodied in that recording. *See* Copyright Office Circular 56A. Plaintiff's registration satisfied all three of these criteria, and thus represents a correctly submitted simultaneous registration of both the sound recordings in the collection and their respective underlying musical compositions, including Plaintiff's Composition.

Furthermore, Plaintiff's Composition was not "published" for the purposes of copyright registration by sheer virtue of having been uploaded to SoundCloud and YouTube prior to registration. Copyright Office Circular 66 instructs that streaming is a performance that, in and of itself, does not constitute publication "because, as a practical matter, the end user does not retain a copy of the work when the performance ends." *See* Copyright Office Circular 66. Defendants fail to raise a "fatal deficiency" in this regard by citing authority standing precisely for the proposition that digital publication of a work requires offering end users a retainable copy of the work. *See Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002) (holding webpage's source code published where, "by merely accessing a webpage, an Internet user acquires the ability to make a copy of that webpage . . . that is, in fact, indistinguishable in every part from the original."); *Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355 (holding a song published where creator admitted uploading the song to an internet magazine and making it available for download).

## II.   **Plaintiff Has Alleged Access and Actionable Copying**

The Pre-Motion Letter erroneously alleges that Plaintiff has failed to plead the element of access as a matter of law. The premise of the Pre-Motion Letter's mistaken point in this regard is that the Complaint's assertion of widespread public access to Plaintiff's Composition on major streaming platforms is insufficient to make out access. However, this argument neglects that the Second Circuit permits a showing of striking similarity as a substitute for proof of access. *See Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 56 (2d Cir. 2003)("We have held that where the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.'")(quoting *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir.1995)).

Plaintiff has plead the striking similarity between the subject songs with requisite specificity, offering a musicological scientific analysis of such similarity by Dr. Brent Swanson of the University of Miami. On the basis of scientifically recognized methods of musicological analysis including, but not limited to, spectral analysis of both songs, Dr. Swanson concludes that the songs are similar to an extent unlikely to be coincidence. *See* Swanson Report (ECF No. 1-4) at 10-17. Plaintiff asserts that these objectively measurable similarities are readily presentable to and audible by lay persons. Defendants do not, as a matter of law, defeat Plaintiff's well-plead, specific allegations of scientifically-corroborated striking similarities between the songs simply by making conclusory allegations that "any lay listeners will *observe*" to the contrary.

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 212-750-8297 • WWW.AIDALA

1 JA 119

### III.    WMG Is a Proper Party

Defendants concede in the Pre-Motion Letter that Defendant WMG is the corporate parent of Defendants Atlantic Recording Corporation and Warner-Tamerlane Publishing Corp., but allege that WMG nonetheless has no interest in the Challenged Composition. Defendants further allege that Plaintiff's pleading as against WMG is conclusory, and do so by selectively citing only the extent of Plaintiff's Complaint alleging that WMG "has assisted in and/or directly facilitated" the infringement. In this regard, Defendants omit the extent of the Complaint alleging that WMG is vicariously liable because, as the parent corporation to entities directly responsible for distributing the infringing Challenged Composition, "Defendant WMG has derived substantial revenues and/or profits from the exploitation of the Infringing Work" and "had the right and ability to control other infringers." ECF. No. 1 ¶ 27, 87. This Circuit has long recognized that vicarious copyright infringement liability may be premised on a party's status as a beneficiary of an infringing act and its ability to control an infringer, and Plaintiff has accordingly sufficiently plead WMG's vicarious liability on the basis of its ability to control its infringing subsidiaries and the benefits it has derived from the Challenged Composition. *See Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)("When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright [] is being impaired—the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation.")(internal citations omitted).

Furthermore, RCA is the record label entity to which Defendant Glover is signed and through which the Challenged Composition was produced, distributed, marketed, and promoted, amongst other things. Despite Defendants assertions concerning the nature of RCA's corporate existence, RCA has interposed answers on its own behalf alongside Sony Music Entertainment ("SME") in copyright infringement suits naming both entities as defendants and postdating RCA's reported merger with SME, including in *Yours, Mine and Ours Music v. Sony Music Entertainment, et al.*, No. 2:16-cv-08056 (C.D. Cal. 2016). As such, Defendant RCA is a properly named party at this stage of the action in addition to Defendant WMG.

Very Truly Yours,

**AIDALA, BERTUNA & KAMINS, P.C.**

By:    /s/ Imran H. Ansari
Imran H. Ansari, Esq.
546 Fifth Avenue, 6th Floor
New York, NY 10036
T: (212) 486-0011
F: (212) 750-8297
iansari@aidalalaw.com

cc:    The Honorable Victor Marrero (Fax)
Paul Maslo, Esq. (Email)
Alex Spiro, Esq. (Email)
Donald S. Zakarin, Esq. (Email)
Ilene S. Farkas, Esq. (Email)

- 3 -

1 JA 120

JONATHAN D. DAVIS, P.C.

ATTORNEYS AT LAW

10 ROCKEFELLER PLAZA
SUITE 1015
NEW YORK, NEW YORK 10020

TEL: (212) 687-5464
FAX: (212) 697-2521
WWW.JDDAVISPC.COM

January 18, 2022

**VIA FIRST-CLASS MAIL/EMAIL/PDF**

Imran H. Ansari, Esq.
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, New York 10036

      Re: <u>Nwosuocha v. Glover, et al. (Civ. Action No. 21-cv-04047)</u>

Dear Mr. Ansari:

      We write on behalf of all Defendants in response to your January 12, 2022 letter and in furtherance of the procedures described in Paragraph II.B. of Judge Marrero's Individual Practices. For the reasons set out below, and in our prior letter, we urge your client to reconsider pursuing his baseless copyright infringement claims, as continuing to pursue them will likely subject him to the payment of Defendants' reasonable attorney's fees and costs under 17 U.S.C. § 505.

      Addressing your client's technical standing problem, your response to Plaintiff's lack of standing, including your argument that his registration for a collection of purportedly unpublished sound recordings also covers his purported copyright in the composition at issue misunderstands copyright registration requirements. While Form SR may be used to register copyright claims in both a sound recording and an underlying musical work, obtaining coverage for both works requires a description of the "Nature of Authorship" that *explicitly* covers each separate work.

      Indeed, Form SR explains in its "LINE-BY-LINE INSTRUCTIONS" the descriptions needed to encompass both works in a sound recording registration:

> **Nature of Authorship**: Sound recording authorship is the performance, sound production, or both, that is fixed in the recording deposited for registration. Describe this authorship in space 2 as "sound recording." *If the claim also covers the underlying work(s), include the appropriate authorship terms for each author, for example, "words," "music," "arrangement of music," or "text."*

Form SR (rev. 05/2019) (the current version) (emphasis added); *see also* Form SR (rev.12/2016) (same); and Form SR (rev. 05/2012) (same). Copies are attached. U.S. Copyright Circular 56A also makes this point clear by using a chart and showing that if the application seeks to register the musical composition *and* the sound recording, then the description of what the author created *must*

<div align="right">1 JA 121</div>

Imran H. Ansari, Esq.
January 18, 2022
Page 2

*reflect both works*. U.S. COPYRIGHT OFFICE, CIRCULAR NO. 56A. *Copyright Registration of Musical Compositions and Sound Recordings* (2021), *available at* https://www.copyright.gov/circs/circ56a.pdf, at 2. In addition, Circular 56A explains that "[c]opyright in a sound recording is not the same as, or a substitute for, copyright in the underlying musical composition" and that "[t]o register a single claim in both works, [an applicant must] give information about the author(s) of both the musical composition and the sound recording." *Id.* at 1.

Because Plaintiff's Certificate of Registration limits his authorship to "sound recording" without the additional description needed to claim a copyright in the musical composition, such as "words," "music," or "words and music", the registration, at most, can only protect the sound recording for "Made in America." To pursue an infringement claim concerning a "composition," the registration must reflect, in accordance with the above requirements, that it specifically covers the composition. Here, the registration is silent regarding that particular work.

But the sound recording for "Made in America" is not at issue in this case because your client has not alleged – and cannot allege – a sampling claim. The claim here is not that the sound recording of Plaintiff's work was duplicated by the sound recording of "This is America." There is no dispute that it is not. What purportedly is at issue is Plaintiff's composition – a work that is not currently protected by a copyright registration. You may be under the misimpression that one can register a copyright in a musical composition by submitting a sound recording to the Copyright Office as the deposit copy for a sound recording application. But that is incorrect and it does not satisfy the requirements of the Copyright Office.

Because there is no copyright claim regarding your client's "sound recording," the issue of whether the "Made in America" sound recording has been published is immaterial to your client's purported infringement claims. Nevertheless, and purely to address here a non-relevant issue of copyright law, we disagree with your contention that a work is only published if a copy can be retained by the user. The Copyright Act's definition of publication is not circumscribed in the manner you contend in your letter. *See* 17 U.S.C. § 101 (stating publication includes "offering to distribute … phonorecords to a group of persons for purposes of further distribution, public performance, or public display").

The example you cite from Circular 66, titled "Copyright Registration of Websites and Website Content," addresses a work "made available only by streaming" and provides that streaming "in and of itself" does not constitute publication. U.S. COPYRIGHT OFFICE, CIRCULAR NO. 66. *Copyright Registration of Website and Website Content* (2021), *available at* https://www.copyright.gov/circs/circ66.pdf, at 5. But the Complaint alleges more than just streaming "in and of itself." It alleges that phonorecords were offered to multiple on-line services for public display/performance, which acts "constitute[] publication." 17 U.S.C. § 101; *see also*

1 JA 122

Imran H. Ansari, Esq.
January 18, 2022
Page 3

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES §1906.1 (3d ed. 2021) (explaining publication occurs when, for example, a movie is offered to groups of theaters or TV networks for exhibition or broadcasting, *or phonorecords are offered to radio stations for purpose of broadcasting songs and sound recordings embodied therein*). In any event, when Plaintiff uploaded his recording of "Made in America" to SoundCloud, the service permitted users to copy and download songs for use offline. *See Introducing SoundCloud Go,* SOUNDCLOUD, https://blog.soundcloud.com/2016/03/29/introducing-soundcloud-go/ (last visited Jan. 18, 2022) (introducing SoundCloud Go on March 29, 2016, a service that provides users the ability to "**listen offline** … without a cell signal or internet connection" so that "[w]hether you're down in the subway, 30-thousand feet overhead or completely off the grid, with SoundCloud Go, **you'll have access to all your favorites offline**") (emphasis in original). So even if publication under the Copyright Act requires a user's ability to copy and retain a recording – *which it does not* – any such requirement has been satisfied here.

Turning to the substance of your infringement claim, your response to Plaintiff's failure to allege access misses the point. Plaintiff cannot simply rely on his allegations that the works at issue are "strikingly similar," when any lay listener could readily determine they are neither "strikingly similar" nor "substantially similar." Perhaps you believe that offering a conclusory assertion of striking similarity will enable Plaintiff to avoid a dismissal at the outset of a case. That is a mistaken view. Plaintiff has made no showing that the works at issue share any actionable similarity – let alone a striking similarity – and the copyright law does not forgive establishing "access" merely by alleging striking similarity. There still must be a reasonable basis for access and, as a matter of law, there is none here. In any event, any characterization of the works by counsel, or a purported expert, cannot change what is observable by a lay person who listens to the works. The works control the analysis, not a description by Plaintiff, his counsel, or anyone else. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (stating "[i]n copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings").

Your response to our argument for dismissal of WMG is unavailing. WMG is the indirect corporate parent of Defendants Atlantic Recording Corporation and Warner-Tamerlane Publishing Corp. WMG has no ownership in the challenged composition. Moreover, Plaintiff's allegations against WMG are conclusory and do not support any copyright infringement claim against an indirect parent company.

Finally, we do not understand your refusal to drop RCA from the case. RCA is not an entity, but an unincorporated business unit owned directly by SME, *i.e.*, there are no intervening layers of ownership between RCA and SME. In the case identified in your letter, *Yours, Mine and Ours Music v. Sony Music Entertainment*, 16-cv-08056-RSWL-SK (C.D. Cal. filed Oct. 28, 2016),

1 JA 123

Imran H. Ansari, Esq.
January 18, 2022
Page 4

RCA Records was incorrectly sued as "RCA Records, Inc." The lawsuit was voluntarily dismissed. So, the mere filing of that Answer is not indicative of whether RCA is a proper party here, which it is not.

       Because your client has no standing or meritorious claims against Defendants, we urge Plaintiff to promptly withdraw this lawsuit before Defendants incur additional attorney's fees and costs that will be pursued against him.

                              Very truly yours,

                              */s/ Jonathan D. Davis*

                              Jonathan D. Davis

JDD:hs

cc:  Paul Maslo, Esq.
     Alex Spiro, Esq.
     Donald S. Zakarin, Esq.
     Ilene S. Farkas, Esq.
     (All Via Email/PDF)



# Form SR

*Detach and read these instructions before completing this form.*
*Make sure all applicable spaces have been filled in before you return this form.*

## BASIC INFORMATION

**When to Use This Form:** Use Form SR for registration of published or unpublished sound recordings. Form SR should be used when the copyright claim is limited to the sound recording itself, and it may also be used where the same copyright claimant is seeking simultaneous registration of the underlying musical, dramatic, or literary work embodied in the phonorecord.

With one exception, "sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds. The exception is for the audio portions of audiovisual works, such as a motion picture soundtrack or an audio cassette accompanying a filmstrip. These are considered a part of the audiovisual work as a whole.

**Unpublished works:** This form may be used to register one unpublished work. This form cannot be used to register a "collection" of two or more unpublished works. Any paper application submitted with more than one unpublished work may be refused. To register multiple unpublished works, you must use the online application for "A Group of Unpublished Works." For information about the online application, see *Multiple Works* (Circular 34).

**Deposit to Accompany Application:** An application for copyright registration must be accompanied by a deposit consisting of phonorecords representing the entire work for which registration is to be made.

**Unpublished Work:** Deposit one complete phonorecord.

**Published Work:** Deposit two complete phonorecords of the best edition, together with "any printed or other visually perceptible material" published with the phonorecords.

**Work First Published Outside the United States:** Deposit one complete phonorecord of the first foreign edition.

**Contribution to a Collective Work:** Deposit one complete phonorecord of the best edition of the collective work.

**The Copyright Notice:** Before March 1, 1989, the use of copyright notice was mandatory on all published works, and any work first published before that date should have carried a notice. For works first published on and after March 1, 1989, use of the copyright notice is optional. For more information about copyright notice, see *Copyright Notice* (Circular 3).

**For Further Information:** To speak to a Copyright Office staff member, call (202) 707-3000 or 1-877-476-0778. Recorded information is available 24 hours a day. Order forms and other publications from Library of Congress, Copyright Office-COPUBS, 101 Independence Avenue SE, Washington, DC 20559 or call (202) 707-9100 or 1-877-476-0778 (toll free). Access and download circulars and other information from the Copyright Office website at *www.copyright.gov*.

**PRIVACY ACT ADVISORY STATEMENT Required by the Privacy Act o  1974 (P.L. 93-579)**
  he authority  or requesting this in ormation is title 17 U S C  §409 and §410   urnishing the requested in ormation is voluntary  But i  the in ormation is not  urnished, it may be necessary to delay or re use registration and you may not be entitled to certain relie , remedies, and benefits provided in chapters 4 and 5 o  title 17 U S C
  he principal uses o  the requested in ormation are the establishment and maintenance o  a public record and the examination o  the application  or compliance with the registration require-ments o  the copyright code
  Other routine uses include public inspection and copying, preparation o  public indexes, prepara-tion o  public catalogs o  copyright registrations, and preparation o  search reports upon request
  NO  E  No other advisory statement will be given in connection with this application  Please keep this statement and re er to it i  we communicate with you regarding this application

## LINE-BY-LINE INSTRUCTIONS

*Please type or print using black ink. The form is used to produce the certificate.*

### 1 SPACE 1: Title

**Title of This Work:** Every work submitted for copyright registration must be given a title to identify that particular work. If the phonorecords or any accompanying printed material bears a title (or an identifying phrase that could serve as a title), transcribe that wording completely and exactly on the application. Indexing of the registration and future identification of the work may depend on the information you give here.

**Previous, Alternative, or Contents Title:** Complete this space if there are any previous or alternative titles for the work under which someone searching for the registration might be likely to look, or under which a document pertaining to the work might be recorded. You may also give the individual contents titles, if any, in this space or you may use a Continuation Sheet (Form CON). Circle the term that describes the titles given.

### 2 SPACE 2: Author(s)

**General Instructions:** After reading these instructions, decide who are the "authors" of this work for copyright purposes. Then, unless the work is a "collective work," give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to this version of the work. If you need further space, use additional Continuation Sheets. In the case of a collective work such as a collection of previously published or registered sound recordings, give information about the author of the collective work as a whole. If you are submitting this Form SR to cover the recorded musical, dramatic, or literary work as well as the sound recording itself, it is important for space 2 to include full information about the various authors of all of the material covered by the copyright claim, making clear the nature of each author's contribution.

**Name of Author:** The fullest form of the author's name should be given. Unless the work was "made for hire," the individual who actually created the work is its "author." In the case of a work made for hire, the statute provides that "the employer or other person for whom the work was prepared is considered the author."

**What Is a "Work Made for Hire"?** A "work made for hire" is defined as: (1) "a work prepared by an employee within the scope of his or her employment"; or (2) "a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." If you have checked "Yes" to indicate that the work was "made for hire," you must give the full legal name of the employer (or other person for whom the work was prepared). You may also include the name of the employee along with the name of the employer (for example: "Elster Record Co., employer for hire of John Ferguson").

**"Anonymous" or "Pseudonymous" Work:** An author's contribution to a work is "anonymous" if that author is not identified on the copies or phonorecords of the work. An author's contribution to a work is "pseudonymous" if that author is identified on the copies or phonorecords under a fictitious name. If the work is "anonymous" you may: (1) leave the line blank; or (2) state "anonymous" on the line; or (3) reveal the author's identity. If the work is "pseudonymous" you may: (1) leave the line blank; or (2) give the pseudonym and identify it as such (for example: "Huntley Haverstock, pseudonym"); or (3) reveal the author's name, placing it after or before the pseudonym and identifying this name as the "real name." Give the country in which the pseudonym (for example: "Judith Barton, whose pseudonym is Madeline Elster"). However, the citizenship or domicile of the author *must* be given in all cases.

**Dates of Birth and Death:** If the author is dead, the statute requires that the year of death be included in the application unless the work is anonymous or pseudonymous. The author's birth date is optional, but is useful as a form of identification. Leave this space blank if the author's contribution was a "work made for hire."

**Author's Nationality or Domicile:** Give the country in which the author is a citizen, or the country in which the author is domiciled. Nationality or domicile *must* be given in all cases.

**Nature of Authorship:** Sound recording authorship is the performance, sound production, or both, that is fixed in the recording deposited for registration. Describe this authorship in space 2 as "sound recording." If the claim also covers the underlying work(s), include the appropriate authorship terms for each author, for example, "words," "music," "arrangement of music," or "text."

Generally, for the claim to cover both the sound recording and the underlying work(s), every author should have contributed to both the sound recording *and* the underlying work(s). If the claim includes artwork or photographs, include the appropriate term in the statement of authorship.

1 JA 125

# 3 SPACE 3: Creation and Publication

**General Instructions:** Do not confuse "creation" with "publication." Every application for copyright registration must state "the year in which creation of the work was completed." Give the date and nation of first publication only if the work has been published.

**Creation:** Under the statute, a work is "created" when it is fixed in a copy or phonorecord for the first time. If a work has been prepared over a period of time, the part of the work existing in fixed form on a particular date constitutes the created work on that date. The date you give here should be the year in which the author completed the particular version for which registration is now being sought, even if other versions exist or if further changes or additions are planned.

**Publication:** The statute defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; a work is also "published" if there has been an "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." Give the full date (month, date, year) when, and the country where, publication first occurred. If first publication took place simultaneously in the United States and other countries, it is sufficient to state "U.S.A."

# 4 SPACE 4: Claimant(s)

**Name(s) and Address(es) of Copyright Claimant(s):** Give the name(s) and address(es) of the copyright claimant(s) in the work even if the claimant is the same as the author. Copyright in a work belongs initially to the author of the work (including, in the case of a work made for hire, the employer or other person for whom the work was prepared). The copyright claimant is either the author of the work or a person or organization to whom the copyright initially belonging to the author has been transferred.

**Transfer:** The statute provides that, if the copyright claimant is not the author, the application for registration must contain "a brief statement of how the claimant obtained ownership of the copyright." If any copyright claimant named in space 4a is not an author named in space 2, give a brief statement explaining how the claimant(s) obtained ownership of the copyright. Examples: "By written contract"; "Transfer of all rights by author"; "Assignment"; "By will." Do not attach transfer documents or other attachments or riders.

# 5 SPACE 5: Previous Registration

**General Instructions:** The questions in space 5 are intended to show whether an earlier registration has been made for this work and, if so, whether there is any basis for a new registration. As a rule, only one basic copyright registration can be made for the same version of a particular work.

**Same Version:** If this version is substantially the same as the work covered by a previous registration, a second registration is not generally possible unless: (1) the work has been registered in unpublished form and a second registration is now being sought to cover this first published edition; or (2) someone other than the author is identified as copyright claimant in the earlier registration and the author is now seeking registration in his or her own name. If either of these two exceptions applies, check the appropriate box and give the earlier registration number and date. Otherwise, do not submit Form SR. Instead, write the Copyright Office for information about supplementary registration or recordation of transfers of copyright ownership.

**Changed Version:** If the work has been changed and you are now seeking registration to cover the additions or revisions, check the last box in space 5, give the earlier registration number and date, and complete both parts of space 6 in accordance with the instructions below.

**Previous Registration Number and Date:** If more than one previous registration has been made for the work, give the number and date of the latest registration.

# 6 SPACE 6: Derivative Work or Compilation

**General Instructions:** Complete space 6 if this work is a "changed version," "compilation," or "derivative work," and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain, or sound recordings that were fixed before February 15, 1972. A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." A "derivative work" is "a work based on one or more preexisting works." Examples of derivative works include recordings reissued with substantial editorial revisions or abridgments of the recorded sounds, and recordings republished with new recorded material, or "any other form in which a work may be recast, transformed, or adapted." Derivative works also include works "consisting of editorial revisions, annotations, or other modifications" if these changes, as a whole, represent an original work of authorship.

**Preexisting Material (space 6a):** Complete this space *and* space 6b for derivative works. In this space identify the preexisting work that has been recast, transformed, or adapted. The preexisting work may be material that has been previously published, previously registered, or that is in the public domain. For example, the preexisting material might be: "1970 recording by Sperryville Symphony of Bach Double Concerto."

**Material Added to This Work (space 6b):** Give a brief, general statement of the *additional* new material covered by the copyright claim for which registration is sought. In the case of a derivative work, identify this new material. Examples: "Recorded performances on bands 1 and 3"; "Remixed sounds from original multitrack sound sources"; "New words, arrangement, and additional sounds." If the work is a compilation, give a brief, general statement describing both the material that has been compiled *and* the compilation itself. Example: "Compilation of 1938 recordings by various swing bands."

# 7,8,9 SPACE 7, 8, 9: Fee, Correspondence, Certification, Return Address

**Deposit Account:** If you maintain a deposit account in the Copyright Office, identify it in space 7a. Otherwise, leave the space blank and send the filing fee with your application and deposit. (See space 8 on form.) **Note:** Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

**Correspondence (space 7b):** Give the name, address, area code, telephone number, fax number, and email address (if available) of the person to be consulted if correspondence about this application becomes necessary.

**Certification (space 8):** This application cannot be accepted unless it bears the date and the *signature* of the author or other copyright claimant, or the owner of exclusive right(s), or the duly authorized agent of the author, claimant, or owner of exclusive right(s).

**Address for Return of Certificate (space 9):** The address box must be completed legibly since the certificate will be returned in a window envelope.

---

## MORE INFORMATION

**"Works":** "Works" are the basic subject matter of copyright; they are what authors create and copyright protects. The statute draws a sharp distinction between the "work" and "any material object in which the work is embodied."

**"Copies" and "Phonorecords":** These are the two types of material objects in which "works" are embodied. In general, "copies" are objects from which a work can be read or visually perceived, directly or with the aid of a machine or device, such as manuscripts, books, sheet music, film, and videotape. "Phonorecords" are objects embodying fixations of sounds, such as audio tapes and phonograph disks. For example, a song (the "work") can be reproduced in sheet music ("copies") or phonograph disks ("phonorecords"), or both.

**"Sound Recordings":** These are "works," not "copies" or "phonorecords." "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work." Example: When a record company issues a new release, the release will typically involve two distinct "works": the "musical work" that has been recorded, and the "sound recording" as a separate work in itself. The material objects that the record company sends out are "phonorecords": physical reproductions of both the "musical work" and the "sound recording."

## Should You File More Than One Application?

If your work consists of a recorded musical, dramatic, or literary work and if both that "work" and the sound recording as a separate "work" are eligible for registration, the application form you should file depends on the following:

**File Only Form SR if:** The copyright claimant is the same for both the musical, dramatic, or literary work and for the sound recording, and you are seeking a single registration to cover both of these "works."

**File Only Form PA (or Form TX) if:** You are seeking to register only the musical, dramatic, or literary work, not the sound recording. Form PA is appropriate for works of the performing arts; Form TX is for nondramatic literary works.

**Separate Applications Should Be Filed on Form PA (or Form TX) and on Form SR if:** (1) The copyright claimant for the musical, dramatic, or literary work is different from the copyright claimant for the sound recording; or (2) you prefer to have separate registrations for the musical, dramatic, or literary work and for the sound recording.



**Clear Form**

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

# Form SR
### For a Sound Recording
#### UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

SR       SRU

EFFECT VE DATE OF REG STRAT ON

Month    Day    Year

**Privacy Act Notice:** Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼

PREVIOUS, ALTERNATIVE, OR CONTENTS TITLES (CIRCLE ONE) ▼

**2**

**a** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NOTE**

Under the law, the "author o a "work made or hire is generally the employer, not the employee (see instructions) or any part o this work that was "made or hire, check "Yes in the space provided, give the employer (or other person or whom the work was prepared) as "Author o that part, and leave the space or dates o birth and death blank

**b** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
Year ▶
This in ormation must be given in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this in ormation ONLY i this work has been published.
Month ▶    Day ▶    Year ▶
Nation ▶

**4**

**a** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

See instructions be ore completing this space

**b** TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPL CAT ON RECE VED

ONE DEPOS T RECE VED

TWO DEPOS TS RECE VED

FUNDS RECE VED

DO NOT WRITE HERE OFFICE USE ONLY

**MORE ON BACK ▶**    • Complete all applicable spaces (numbers 5-9) on the reverse side o this page
   • See detailed instructions    • Sign the orm at line 8

DO N

Page 1 o    pages

1 JA 127

| EXAMINED BY | FORM SR |
| --- | --- |
| CHECKED BY | |
| CORRESPONDENCE ❏ Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

❏ **Yes** ❏ **No**  If your answer is "Yes," why is another registration being sought? (Check appropriate box)▼

**a.** ❏ This work was previously registered in unpublished form and now has been published for the first time.

**b.** ❏ This is the first application submitted by this author as copyright claimant.

**c.** ❏ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**
**Preexisting Material**  Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**Material Added to This Work**  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**6**

See instructions be ore completing this space

**DEPOSIT ACCOUNT**  If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.
**Name** ▼                              **Account Number** ▼

**a**

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

**b**

Area code and daytime telephone number          (          )                    Fax number          (          )

Email

**7**

**CERTIFICATION\***  I, the undersigned, hereby certify that I am the

Check only one ▼

❏ author                              ❏ owner of exclusive right(s)

❏ other copyright claimant          ❏ authorized agent of _____
                                    Name o  author or other copyright claimant, or owner o  exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼  If this application gives a date of publication in space 3, do not sign and submit it before that date.

_____          Date _____

Signature ▼

_____

**8**

| Certificate will be mailed in window envelope to this address: | Name ▼ | **9** |
| --- | --- | --- |
| | Number/Street/Apt ▼ | |
| | City/State/Zip ▼ | |

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application  orm
2. Nonrefundable filing fee in check or mon-ey order payable to U S  Copyright Office
3. Deposit material

**MAIL TO:**
Library o  Congress
U S  Copyright O fice-SR
101  ndependence Avenue SE
Washington, DC 20559-6000

*17 U S C  §506(e)  Any person who knowingly makes a  alse representation o  a material  act in the application  or copyright registration provided  or by section 409, or in any written statement fi  with the application, shall be fined not more than $2,500

 orm SR-  ull   Rev  05/2019   Printed on recycled paper

1 JA 128



# Form SR

*Detach and read these instructions before completing this form.*
*Make sure all applicable spaces have been filled in before you return this form.*

BASIC INFORMATION

**When to Use This Form:** Use Form SR for registration of published or unpublished sound recordings. Form SR should be used when the copyright claim is limited to the sound recording itself, and it may also be used where the same copyright claimant is seeking simultaneous registration of the underlying musical, dramatic, or literary work embodied in the phonorecord.

With one exception, "sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds. The exception is for the audio portions of audiovisual works, such as a motion picture soundtrack or an audio cassette accompanying a filmstrip. These are considered a part of the audiovisual work as a whole.

**Deposit to Accompany Application:** An application for copyright registration must be accompanied by a deposit consisting of phonorecords representing the entire work for which registration is to be made.

**Unpublished Work:** Deposit one complete phonorecord.

**Published Work:** Deposit two complete phonorecords of the best edition, together with "any printed or other visually perceptible material" published with the phonorecords.

**Work First Published Outside the United States:** Deposit one complete phonorecord of the first foreign edition.

**Contribution to a Collective Work:** Deposit one complete phonorecord of the best edition of the collective work.

**The Copyright Notice:** Before March 1, 1989, the use of copyright notice was mandatory on all published works, and any work first published before that date should have carried a notice. For works first published on and after March 1, 1989, use of the copyright notice is optional. For more information about copyright notice, see Circular 3, *Copyright Notices.*

**For Further Information:** To speak to a Copyright Office staff member, call (202) 707-3000 or 1-877-476-0778. Recorded information is available 24 hours a day. Order forms and other publications from Library of Congress, Copyright Office-COPUBS, 101 Independence Avenue SE, Washington, DC 20559 or call (202) 707-9100 or 1-877-476-0778 (toll free). Access and download circulars and other information from the Copyright Office website at *www.copyright.gov.*

**PRIVACY ACT ADVISORY STATEMENT Required by the Privacy Act of 1974 (P.L. 93-579)**

he authority or requesting this in ormation is title 17 U S C §409 and §410 urnishing the requested in ormation is voluntary But i the in ormation is not urnished, it may be necessary to delay or re use registration and you may not be entitled to certain relie , remedies, and benefits provided in chapters 4 and 5 o title 17 U S C

he principal uses o the requested in ormation are the establishment and maintenance o a public record and the examination o the application or compliance with the registration requirements o the copyright code

Other routine uses include public inspection and copying, preparation o public indexes, preparation o public catalogs o copyright registrations, and preparation o search reports upon request

NO E No other advisory statement will be given in connection with this application Please keep this statement and re er to it i we communicate with you regarding this application

LINE-BY-LINE INSTRUCTIONS

*Please type or print neatly using black ink. The form is used to produce the certificate.*

## 1 SPACE 1: Title

**Title of This Work:** Every work submitted for copyright registration must be given a title to identify that particular work. If the phonorecords or any accompanying printed material bears a title (or an identifying phrase that could serve as a title), transcribe that wording completely and exactly on the application. Indexing of the registration and future identification of the work may depend on the information you give here.

**Previous, Alternative, or Contents Titles:** Complete this space if there are any previous or alternative titles for the work under which someone searching for the registration might be likely to look, or under which a document pertaining to the work might be recorded. You may also give the individual contents titles, if any, in this space or you may use a Continuation Sheet (Form CON). Circle the term that describes the titles given.

## 2 SPACE 2: Author(s)

**General Instructions:** After reading these instructions, decide who are the "authors" of this work for copyright purposes. Then, unless the work is a "collective work," give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to this version of the work. If you need further space, use additional Continuation Sheets. In the case of a collective work such as a collection of previously published or registered sound recordings, give information about the author of the collective work as a whole. If you are submitting this Form SR to cover the recorded musical, dramatic, or literary work as well as the sound recording itself, it is important for space 2 to include full information about the various authors of all of the material covered by the copyright claim, making clear the nature of each author's contribution.

**Name of Author:** The fullest form of the author's name should be given. Unless the work was "made for hire," the individual who actually created the work is its "author." In the case of a work made for hire, the statute provides that "the employer or other person for whom the work was prepared is considered the author."

**What Is a "Work Made for Hire"?** A "work made for hire" is defined as: (1) "a work prepared by an employee within the scope of his or her employment"; or (2) "a

work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." If you have checked "Yes" to indicate that the work was "made for hire," you must give the full legal name of the employer (or other person for whom the work was prepared). You may also include the name of the employee along with the name of the employer (for example: "Elster Record Co., employer for hire of John Ferguson").

**"Anonymous" or "Pseudonymous" Work:** An author's contribution to a work is "anonymous" if that author is not identified on the copies or phonorecords of the work. An author's contribution to a work is "pseudonymous" if that author is identified on the copies or phonorecords under a fictitious name. If the work is "anonymous" you may: (1) leave the line blank; or (2) state "anonymous" on the line; or (3) reveal the author's identity. If the work is "pseudonymous" you may: (1) leave the line blank; or (2) give the pseudonym and identify it as such (for example: "Huntley Haverstock, pseudonym"); or (3) reveal the author's name, making clear which is the real name and which is the pseudonym (for example: "Judith Barton, whose pseudonym is Madeline Elster"). However, the citizenship or domicile of the author *must* be given in all cases.

**Dates of Birth and Death:** If the author is dead, the statute requires that the year of death be included in the application unless the work is anonymous or pseudonymous. The author's birth date is optional, but is useful as a form of identification. Leave this space blank if the author's contribution was a "work made for hire."

**Author's Nationality or Domicile:** Give the country in which the author is a citizen, or the country in which the author is domiciled. Nationality or domicile *must* be given in all cases.

**Nature of Authorship:** Sound recording authorship is the performance, sound production, or both, that is fixed in the recording deposited for registration. Describe this authorship in space 2 as "sound recording." If the claim also covers the underlying work(s), include the appropriate authorship terms for each author, for example, "words," "music," "arrangement of music," or "text."

Generally, for the claim to cover both the sound recording and the underlying work(s), every author should have contributed to both the sound recording *and* the underlying work(s). If the claim includes artwork or photographs, include the appropriate term in the statement of authorship.

## 3 SPACE 3: Creation and Publication

**General Instructions:** Do not confuse "creation" with "publication." Every application for copyright registration must state "the year in which creation of the work was completed." Give the date and nation of first publication only if the work has been published.

**Creation:** Under the statute, a work is "created" when it is fixed in a copy or phonorecord for the first time. If a work has been prepared over a period of time, the part of the work existing in fixed form on a particular date constitutes the created work on that date. The date you give here should be the year in which the author completed the particular version for which registration is now being sought, even if other versions exist or if further changes or additions are planned.

**Publication:** The statute defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; a work is also "published" if there has been an "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." Give the full date (month, date, year) when, and the country where, publication first occurred. If first publication took place simultaneously in the United States and other countries, it is sufficient to state "U.S.A."

## 4 SPACE 4: Claimant(s)

**Name(s) and Address(es) of Copyright Claimant(s):** Give the name(s) and address(es) of the copyright claimant(s) in the work even if the claimant is the same as the author. Copyright in a work belongs initially to the author of the work (including, in the case of a work made for hire, the employer or other person for whom the work was prepared). The copyright claimant is either the author of the work or a person or organization to whom the copyright initially belonging to the author has been transferred.

**Transfer:** The statute provides that, if the copyright claimant is not the author, the application for registration must contain "a brief statement of how the claimant obtained ownership of the copyright." If any copyright claimant named in space 4a is not an author named in space 2, give a brief statement explaining how the claimant(s) obtained ownership of the copyright. Examples: "By written contract"; "Transfer of all rights by author"; "Assignment"; "By will." Do not attach transfer documents or other attachments or riders.

## 5 SPACE 5: Previous Registration

**General Instructions:** The questions in space 5 are intended to show whether an earlier registration has been made for this work and, if so, whether there is any basis for a new registration. As a rule, only one basic copyright registration can be made for the same version of a particular work.

**Same Version:** If this version is substantially the same as the work covered by a previous registration, a second registration is not generally possible unless: (1) the work has been registered in unpublished form and a second registration is now being sought to cover this first published edition; or (2) someone other than the author is identified as copyright claimant in the earlier registration and the author is now seeking registration in his or her own name. If either of these two exceptions applies, check the appropriate box and give the earlier registration number and date. Otherwise, do not submit Form SR. Instead, write the Copyright Office for information about supplementary registration or recordation of transfers of copyright ownership.

**Changed Version:** If the work has been changed and you are now seeking registration to cover the additions or revisions, check the last box in space 5, give the earlier registration number and date, and complete both parts of space 6 in accordance with the instructions below.

**Previous Registration Number and Date:** If more than one previous registration has been made for the work, give the number and date of the latest registration.

## 6 SPACE 6: Derivative Work or Compilation

**General Instructions:** Complete space 6 if this work is a "changed version," "compilation," or "derivative work," and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain, or sound recordings that were fixed before February 15, 1972. A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." A "derivative work" is "a work based on one or more preexisting works." Examples of derivative works include recordings reissued with substantial editorial revisions or abridgments of the recorded sounds, and recordings republished with new recorded material, or "any other form in which a work may be recast, transformed, or adapted." Derivative works also include works "consisting of editorial revisions, annotations, or other modifications" if these changes, as a whole, represent an original work of authorship.

**Preexisting Material (space 6a):** Complete this space *and* space 6b for derivative works. In this space identify the preexisting work that has been recast, transformed, or adapted. The preexisting work may be material that has been previously published, previously registered, or that is in the public domain. For example, the preexisting material might be: "1970 recording by Sperryville Symphony of Bach Double Concerto."

**Material Added to This Work (space 6b):** Give a brief, general statement of the *additional* new material covered by the copyright claim for which registration is sought. In the case of a derivative work, identify this new material. Examples: "Recorded performances on bands 1 and 3"; "Remixed sounds from original multitrack sound sources"; "New words, arrangement, and additional sounds." If the work is a compilation, give a brief, general statement describing both the material that has been compiled *and* the compilation itself. Example: "Compilation of 1938 recordings by various swing bands."

## 7,8,9 SPACE 7, 8, 9: Fee, Correspondence, Certification, Return Address

**Deposit Account:** If you maintain a deposit account in the Copyright Office, identify it in space 7a. Otherwise, leave the space blank and send the filing fee with your application and deposit. (See space 8 on form.) **Note:** Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

**Correspondence (space 7b):** Give the name, address, area code, telephone number, fax number, and email address (if available) of the person to be consulted if correspondence about this application becomes necessary.

**Certification (space 8):** This application cannot be accepted unless it bears the date and the *handwritten signature* of the author or other copyright claimant, or of the owner of exclusive right(s), or of the duly authorized agent of the author, claimant, or owner of exclusive right(s).

**Address for Return of Certificate (space 9):** The address box must be completed legibly since the certificate will be returned in a window envelope.

## MORE INFORMATION

**"Works":** "Works" are the basic subject matter of copyright; they are what authors create and copyright protects. The statute draws a sharp distinction between the "work" and "any material object in which the work is embodied."

**"Copies" and "Phonorecords":** These are the two types of material objects in which "works" are embodied. In general, "copies" are objects from which a work can be read or visually perceived, directly or with the aid of a machine or device, such as manuscripts, books, sheet music, film, and videotape. "Phonorecords" are objects embodying fixations of sounds, such as audio tapes and phonograph disks. For example, a song (the "work") can be reproduced in sheet music ("copies") or phonograph disks ("phonorecords"), or both.

**"Sound Recordings":** These are "works," not "copies" or "phonorecords." "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work." Example: When a record company issues a new release, the release will typically involve two distinct "works": the "musical work" that has been recorded, and the "sound recording" as a separate work in itself. The material objects that the record company sends out are "phonorecords": physical reproductions of both the "musical work" and the "sound recording."

**Should You File More Than One Application?** If your work consists of a recorded musical, dramatic, or literary work and if both that "work" and the sound recording as a separate "work" are eligible for registration, the application form you should file depends on the following:

**File Only Form SR if:** The copyright claimant is the same for both the musical, dramatic, or literary work and for the sound recording, and you are seeking a single registration to cover both of these "works."

**File Only Form PA (or Form TX) if:** You are seeking to register only the musical, dramatic, or literary work, not the sound recording. Form PA is appropriate for works of the performing arts; Form TX is for nondramatic literary works.

**Separate Applications Should Be Filed on Form PA (or Form TX) and on Form SR if:** (1) The copyright claimant for the musical, dramatic, or literary work is different from the copyright claimant for the sound recording; or (2) you prefer to have separate registrations for the musical, dramatic, or literary work and for the sound recording.

1 JA 130

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov,* write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

**Clear Form**

**Form SR**
For a Sound Recording
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

SR          SRU

EFFECT VE DATE OF REG STRAT ON

Month          Day          Year

**Privacy Act Notice:** Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1** TITLE OF THIS WORK ▼

PREVIOUS, ALTERNATIVE, OR CONTENTS TITLES (CIRCLE ONE) ▼

**2** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼

**a** Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ☐ Yes   ☐ No
Pseudonymous?  ☐ Yes   ☐ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NOTE**
Under the law, the "author o a "work made or hire is generally the employer, not the employee (see instructions) or any part o this work that was "made or hire, check "Yes in the space provided, give the employer (or other person or whom the work was prepared) as "Author o that part, and leave the space or dates o birth and death blank

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼

**b** Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ☐ Yes   ☐ No
Pseudonymous?  ☐ Yes   ☐ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼

**c** Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ☐ Yes   ☐ No
Pseudonymous?  ☐ Yes   ☐ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3** **a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
This in ormation must be given in all cases.
Year ▶

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this in ormation ONLY i this work has been published.
Month ▶ _____ Day ▶ _____ Year ▶
Nation ▶

**4** **a** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

APPL CAT ON RECE VED

ONE DEPOS T RECE VED

TWO DEPOS TS RECE VED

FUNDS RECE VED

DO NOT WRITE HERE
OFFICE USE ONLY

See instructions be ore completing this space

**b** TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side o this page
• See detailed instructions     • Sign the orm at line 8

DO N

Page 1 o _____ pages

| | |
|---|---|
| EXAMINED BY | FORM SR |
| CHECKED BY | |
| CORRESPONDENCE ❏ Yes | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

❏ **Yes** ❏ **No**   If your answer is "Yes," why is another registration being sought? (Check appropriate box)▼

**a.** ❏ This work was previously registered in unpublished form and now has been published for the first time.

**b.** ❏ This is the first application submitted by this author as copyright claimant.

**c.** ❏ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**

**a** **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**b** **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions before completing this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.

**a** **Name** ▼          **Account Number** ▼

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

**b**

Area code and daytime telephone number          (        )          Fax number          (        )

Email

**7**

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▼

❏ author

❏ other copyright claimant

❏ owner of exclusive right(s)

❏ authorized agent of _____

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

_____          Date _____

Handwritten signature ▼

_____

**8**

Certificate will be mailed in window envelope to this address:

Name ▼

Number/Street/Apt ▼

City/State/Zip ▼

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Library of Congress
Copyright Office-SR
101 Independence Avenue SE
Washington, DC 20559

**9**

*17 U S C  §506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed with the application, shall be fined not more than $2,500

1 JA 132



# Form SR

*Detach and read these instructions before completing this form.*
*Make sure all applicable spaces have been filled in before you return this form.*

BASIC INFORMATION

**When to Use This Form:** Use Form SR for registration of published or unpublished sound recordings. Form SR should be used when the copyright claim is limited to the sound recording itself, and it may also be used where the same copyright claimant is seeking simultaneous registration of the underlying musical, dramatic, or literary work embodied in the phonorecord.

With one exception, "sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds. The exception is for the audio portions of audiovisual works, such as a motion picture soundtrack or an audio cassette accompanying a filmstrip. These are considered a part of the audiovisual work as a whole.

**Deposit to Accompany Application:** An application for copyright registration must be accompanied by a deposit consisting of phonorecords representing the entire work for which registration is to be made.

Unpublished Work: Deposit one complete phonorecord.

Published Work: Deposit two complete phonorecords of the best edition, together with "any printed or other visually perceptible material" published with the phonorecords.

Work First Published Outside the United States: Deposit one complete phonorecord of the first foreign edition.

Contribution to a Collective Work: Deposit one complete phonorecord of the best edition of the collective work.

**The Copyright Notice:** Before March 1, 1989, the use of copyright notice was mandatory on all published works, and any work first published before that date should have carried a notice. For works first published on and after March 1, 1989, use of the copyright notice is optional. For more information about copyright notice, see Circular 3, *Copyright Notices.*

**For Further Information:** To speak to a Copyright Office staff member, call (202) 707-3000 or 1-877-476-0778. Recorded information is available 24 hours a day. Order forms and other publications from Library of Congress, Copyright Office-COPUBS, 101 Independence Avenue SE, Washington, DC 20559 or call the Forms and Publications Hotline at (202) 707-9100. Access and download circulars and other information from the Copyright Office website at *www.copyright.gov.*

**PRIVACY ACT ADVISORY STATEMENT Required by the Privacy Act o 1974 (P.L. 93-579)**

he authority or requesting this in ormation is title 17 U S C §409 and §410 urnishing the requested in ormation is voluntary But i the in ormation is not urnished, it may be necessary to delay or re use registration and you may not be entitled to certain relie , remedies, and benefits provided in chapters 4 and 5 o title 17 U S C

he principal uses o the requested in ormation are the establishment and maintenance o a public record and the examination o the application or compliance with the registration requirements o the copyright code

Other routine uses include public inspection and copying, preparation o public indexes, preparation o public catalogs o copyright registrations, and preparation o search reports upon request

NO E No other advisory statement will be given in connection with this application Please keep this statement and re er to it i we communicate with you regarding this application

LINE-BY-LINE INSTRUCTIONS

*Please type or print neatly using black ink. The form is used to produce the certificate.*

## **1** SPACE 1: Title

**Title of This Work:** Every work submitted for copyright registration must be given a title to identify that particular work. If the phonorecords or any accompanying printed material bears a title (or an identifying phrase that could serve as a title), transcribe that wording completely and exactly on the application. Indexing of the registration and future identification of the work may depend on the information you give here.

**Previous, Alternative, or Contents Titles:** Complete this space if there are any previous or alternative titles for the work under which someone searching for the registration might be likely to look, or under which a document pertaining to the work might be recorded. You may also give the individual contents titles, if any, in this space or you may use a Continuation Sheet (Form CON). Circle the term that describes the titles given.

## **2** SPACE 2: Author(s)

**General Instructions:** After reading these instructions, decide who are the "authors" of this work for copyright purposes. Then, unless the work is a "collective work," give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to this version of the work. If you need further space, use additional Continuation Sheets. In the case of a collective work such as a collection of previously published or registered sound recordings, give information about the author of the collective work as a whole. If you are submitting this Form SR to cover the recorded musical, dramatic, or literary work as well as the sound recording itself, it is important for space 2 to include full information about the various authors of all of the material covered by the copyright claim, making clear the nature of each author's contribution.

**Name of Author:** The fullest form of the author's name should be given. Unless the work was "made for hire," the individual who actually created the work is its "author." In the case of a work made for hire, the statute provides that "the employer or other person for whom the work was prepared is considered the author."

**What Is a "Work Made for Hire"?** A "work made for hire" is defined as: (1) "a work prepared by an employee within the scope of his or her employment"; or (2) "a

work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." If you have checked "Yes" to indicate that the work was "made for hire," you must give the full legal name of the employer (or other person for whom the work was prepared). You may also include the name of the employee along with the name of the employer (for example: "Elster Record Co., employer for hire of John Ferguson").

**"Anonymous" or "Pseudonymous" Work:** An author's contribution to a work is "anonymous" if that author is not identified on the copies or phonorecords of the work. An author's contribution to a work is "pseudonymous" if that author is identified on the copies or phonorecords under a fictitious name. If the work is "anonymous" you may: (1) leave the line blank; or (2) state "anonymous" on the line; or (3) reveal the author's identity. If the work is "pseudonymous" you may: (1) leave the line blank; or (2) give the pseudonym and identify it as such (for example: "Huntley Haverstock, pseudonym"); or (3) reveal the author's name, making clear which is the real name and which is the pseudonym (for example: "Judith Barton, whose pseudonym is Madeline Elster"). However, the citizenship or domicile of the author *must* be given in all cases.

**Dates of Birth and Death:** If the author is dead, the statute requires that the year of death be included in the application unless the work is anonymous or pseudonymous. The author's birth date is optional, but is useful as a form of identification. Leave this space blank if the author's contribution was a "work made for hire."

**Author's Nationality or Domicile:** Give the country in which the author is a citizen, or the country in which the author is domiciled. Nationality or domicile *must* be given in all cases.

**Nature of Authorship:** Sound recording authorship is the performance, sound production, or both, that is fixed in the recording deposited for registration. Describe this authorship in space 2 as "sound recording." If the claim also covers the underlying work(s), include the appropriate authorship terms for each author, for example, "words," "music," "arrangement of music," or "text."

Generally, for the claim to cover both the sound recording and the underlying work(s), every author should have contributed to both the sound recording *and* the underlying work(s). If the claim includes artwork or photographs, include the appropriate term in the statement of authorship.

## 3  SPACE 3: Creation and Publication

**General Instructions:** Do not confuse "creation" with "publication." Every application for copyright registration must state "the year in which creation of the work was completed." Give the date and nation of first publication only if the work has been published.

**Creation:** Under the statute, a work is "created" when it is fixed in a copy or phonorecord for the first time. If a work has been prepared over a period of time, the part of the work existing in fixed form on a particular date constitutes the created work on that date. The date you give here should be the year in which the author completed the particular version for which registration is now being sought, even if other versions exist or if further changes or additions are planned.

**Publication:** The statute defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; a work is also "published" if there has been an "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." Give the full date (month, date, year) when, and the country where, publication first occurred. If first publication took place simultaneously in the United States and other countries, it is sufficient to state "U.S.A."

## 4  SPACE 4: Claimant(s)

**Name(s) and Address(es) of Copyright Claimant(s):** Give the name(s) and address(es) of the copyright claimant(s) in the work even if the claimant is the same as the author. Copyright in a work belongs initially to the author of the work (including, in the case of a work made for hire, the employer or other person for whom the work was prepared). The copyright claimant is either the author of the work or a person or organization to whom the copyright initially belonging to the author has been transferred.

**Transfer:** The statute provides that, if the copyright claimant is not the author, the application for registration must contain "a brief statement of how the claimant obtained ownership of the copyright." If any copyright claimant named in space 4a is not an author named in space 2, give a brief statement explaining how the claimant(s) obtained ownership of the copyright. Examples: "By written contract"; "Transfer of all rights by author"; "Assignment"; "By will." Do not attach transfer documents or other attachments or riders.

## 5  SPACE 5: Previous Registration

**General Instructions:** The questions in space 5 are intended to show whether an earlier registration has been made for this work and, if so, whether there is any basis for a new registration. As a rule, only one basic copyright registration can be made for the same version of a particular work.

**Same Version:** If this version is substantially the same as the work covered by a previous registration, a second registration is not generally possible unless: (1) the work has been registered in unpublished form and a second registration is now being sought to cover this first published edition; or (2) someone other than the author is identified as copyright claimant in the earlier registration and the author is now seeking registration in his or her own name. If either of these two exceptions applies, check the appropriate box and give the earlier registration number and date. Otherwise, do not submit Form SR. Instead, write the Copyright Office for information about supplementary registration or recordation of transfers of copyright ownership.

**Changed Version:** If the work has been changed and you are now seeking registration to cover the additions or revisions, check the last box in space 5, give the earlier registration number and date, and complete both parts of space 6 in accordance with the instructions below.

**Previous Registration Number and Date:** If more than one previous registration has been made for the work, give the number and date of the latest registration.

## 6  SPACE 6: Derivative Work or Compilation

**General Instructions:** Complete space 6 if this work is a "changed version," "compilation," or "derivative work," and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain, or sound recordings that were fixed before February 15, 1972. A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." A "derivative work" is "a work based on one or more preexisting works." Examples of derivative works include recordings reissued with substantial editorial revisions or abridgments of the recorded sounds, and recordings republished with new recorded material, or "any other form in which a work may be recast, transformed, or adapted." Derivative works also include works "consisting of editorial revisions, annotations, or other modifications" if these changes, as a whole, represent an original work of authorship.

**Preexisting Material (space 6a):** Complete this space *and* space 6b for derivative works. In this space identify the preexisting work that has been recast, transformed, or adapted. The preexisting work may be material that has been previously published, previously registered, or that is in the public domain. For example, the preexisting material might be: "1970 recording by Sperryville Symphony of Bach Double Concerto."

**Material Added to This Work (space 6b):** Give a brief, general statement of the *additional* new material covered by the copyright claim for which registration is sought. In the case of a derivative work, identify this new material. Examples: "Recorded performances on bands 1 and 3"; "Remixed sounds from original multitrack sound sources"; "New words, arrangement, and additional sounds." If the work is a compilation, give a brief, general statement describing both the material that has been compiled *and* the compilation itself. Example: "Compilation of 1938 recordings by various swing bands."

## 7,8,9  SPACE 7, 8, 9: Fee, Correspondence, Certification, Return Address

**Deposit Account:** If you maintain a deposit account in the Copyright Office, identify it in space 7a. Otherwise, leave the space blank and send the filing fee with your application and deposit. (See space 8 on form.) **Note:** Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

**Correspondence (space 7b):** Give the name, address, area code, telephone number, fax number, and email address (if available) of the person to be consulted if correspondence about this application becomes necessary.

**Certification (space 8):** This application cannot be accepted unless it bears the date and the *handwritten signature* of the author or other copyright claimant, or of the owner of exclusive right(s), or of the duly authorized agent of the author, claimant, or owner of exclusive right(s).

**Address for Return of Certificate (space 9):** The address box must be completed legibly since the certificate will be returned in a window envelope.

### MORE INFORMATION

**"Works":** "Works" are the basic subject matter of copyright; they are what authors create and copyright protects. The statute draws a sharp distinction between the "work" and "any material object in which the work is embodied."

**"Copies" and "Phonorecords":** These are the two types of material objects in which "works" are embodied. In general, "copies" are objects from which a work can be read or visually perceived, directly or with the aid of a machine or device, such as manuscripts, books, sheet music, film, and videotape. "Phonorecords" are objects embodying fixations of sounds, such as audio tapes and phonograph disks. For example, a song ("work") can be reproduced in sheet music ("copies") or phonograph disks ("phonorecords"), or both.

**"Sound Recordings":** These are "works," not "copies" or "phonorecords." "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work." Example: When a record company issues a new release, the release will typically involve two distinct "works": the "musical work" that has been recorded, and the "sound recording" as a separate work in itself. The material objects that the record company sends out are "phonorecords": physical reproductions of both the "musical work" and the "sound recording."

**Should You File More Than One Application?** If your work consists of a recorded musical, dramatic, or literary work and if both that "work" and the sound recording as a separate "work" are eligible for registration, the application form you should file depends on the following:

**File Only Form SR if:** The copyright claimant is the same for both the musical, dramatic, or literary work and for the sound recording, and you are seeking a single registration to cover both of these "works."

**File Only Form PA (or Form TX) if:** You are seeking to register only the musical, dramatic, or literary work, not the sound recording. Form PA is appropriate for works of the performing arts; Form TX is for nondramatic literary works.

**Separate Applications Should Be Filed on Form PA (or Form TX) and on Form SR if:** (1) The copyright claimant for the musical, dramatic, or literary work is different from the copyright claimant for the sound recording; or (2) you prefer to have separate registrations for the musical, dramatic, or literary work and for the sound recording.

1 JA 134

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at *www.copyright.gov,* write the Copy-
right Office, or call (202) 707-3000.



**Form SR**
For a Sound Recording
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

SR          SRU

EFFECT VE DATE OF REG STRAT ON

Month          Day          Year

**Privacy Act Notice:** Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**  TITLE OF THIS WORK ▼

PREVIOUS, ALTERNATIVE, OR CONTENTS TITLES (CIRCLE ONE) ▼

**2**

**a**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❑ Yes
❑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o  Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ❑ Yes  ❑ No
Pseudonymous?  ❑ Yes  ❑ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NOTE**
Under the law, the "author o  a "work made or hire  is generally the employer, not the employee (see instructions)  or any part o  this work that was "made  or hire, check "Yes in the space provided, give the employer (or other person or whom the work was prepared) as "Author o  that part, and leave the space  or dates o  birth and death blank

**b**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❑ Yes
❑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o  Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ❑ Yes  ❑ No
Pseudonymous?  ❑ Yes  ❑ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❑ Yes
❑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o  Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ❑ Yes  ❑ No
Pseudonymous?  ❑ Yes  ❑ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a**  YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
This in ormation must be given in all cases.
Year ▶

**b**  DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this in ormation ONLY i  this work has been published.
Month ▶          Day ▶          Year ▶
Nation ▶

**4**

**a**  COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

See instructions be ore completing this space

**b**  TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPL CAT ON RECE VED

ONE DEPOS T RECE VED

TWO DEPOS TS RECE VED

FUNDS RECE VED

DO NOT WRITE HERE
OFFICE USE ONLY

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side o  this page
• See detailed instructions  • Sign the  orm at line 8

DO N

Page 1 o ___ pages

1 JA 135

| EXAMINED BY | | FORM SR |
|---|---|---|
| CHECKED BY | | |
| CORRESPONDENCE ❏ Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

❏ **Yes** ❏ **No** If your answer is "Yes," why is another registration being sought? (Check appropriate box)▼

**a.** ❏ This work was previously registered in unpublished form and now has been published for the first time.

**b.** ❏ This is the first application submitted by this author as copyright claimant.

**c.** ❏ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼    **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**
**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**6**

See instructions be ore completing this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.
**Name** ▼    **Account Number** ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼

**b**

Area code and daytime telephone number    (        )    Fax number    (        )

Email

**7**

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▼

❏ author
❏ other copyright claimant
❏ owner of exclusive right(s)
❏ authorized agent of _____
Name o  author or other copyright claimant, or owner o  exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

_____    Date _____

Handwritten signature ▼

**8**

| Certificate will be mailed in window envelope to this address: | Name ▼ | **9** |
|---|---|---|
| | Number/Street/Apt ▼ | |
| | City/State/Zip ▼ | |

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
**1.** Application  orm
**2.** Nonrefundable filing fee in check or mon-ey order payable to Register of Copyrights
**3.** Deposit material
**MAIL TO:**
Library o  Congress
Copyright O fice-SR
101  ndependence Avenue SE
Washington, DC 20559

*17 U S C  §506(e)  Any person who knowingly makes a  alse representation o  a material  act in the application  or copyright registration provided  or by section 409, or in any written statement fi with the application, shall be fined not more than $2,500

1 JA 136

LAW OFFICES OF

## *Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
HON. JOHN LEVENTHAL (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
DIANA FABI SAMSON
ANDREA M. ARRIGO
MICHAEL DIBENEDETTO
TAYLOR FRIEDMAN

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

February 8, 2022

**VIA EMAIL**

Jonathan D. Davis, Esq.
Jonathan D. Davis, P.C.
1 Rockefeller Plaza, Suite 1712
New York, New York 10020

      Re:    ***Nwosuocha v. Glover II et al.*, No. 1:21-cv-04047-VM**

Dear Mr. Davis:

I write on behalf of the Plaintiff in response to Defendants' January 18, 2022 supplemental letter ("Supplemental Letter") in furtherance of the procedures described in Paragraph II.B of Judge Marrero's Individual Practices. For the reasons set forth below, Plaintiff disagrees with Defendants' characterization of his claims in the Supplemental Letter as "baseless," and intends to pursue those claims.

## I.      Plaintiff Has Standing to Sue for Copyright Infringement.

The Supplemental Letter repeats Defendants' point from their initial letter that Plaintiff lacks "technical standing" to bring this action due to an alleged failure to register his copyright in the composition underlying "Made in America." Defendants maintain their position that Plaintiff has only registered a copyright in the sound recording for "Made in America." Defendants remain mistaken in this regard.

Defendants concede the point made in Plaintiff's January 12, 2022 reply letter ("Reply Letter") that sound recordings and compositions may be registered simultaneously on a Form SR (or its electronic equivalent), pursuant to U.S. Copyright Circular 56A. Defendants, however, argue that the registration applicable to "Made in America" failed to simultaneously register the underlying composition, allegedly because the registration's authorship description fails to include "words," "music," or "words and music." Assuming, *arguendo*, that Plaintiff's registration omitted a descriptor clarifying the full extent of his authorship, Defendants are nonetheless erroneous in their assertion that such an oversight by Plaintiff would be fatal to his standing. However, the nature of Plaintiff's registration is such that no further descriptors were required to register both the "Made in America" sound recording and its underlying composition.

- 1 -

1 JA 137

Plaintiff's registration is for an unpublished collective work of sound recordings including "Made in America." In the registration, Plaintiff claims sole rights and permissions in the collective work, which necessarily subsumes every creative contribution appearing in the entire collective work, including every compositional element. *See* U.S. Copyright Office Compendium 509. Plaintiff's registration, on its face, therefore claims the composition underlying "Made in America," because "Made in America" is one of the sound recordings appearing in the collective work for which the registration claims sole rights and permissions. In this context, neither the additional descriptors suggested by Defendants nor any other descriptors were required for Plaintiff to validly register the sound recording and composition "Made in America" simultaneously.

## II.   Uploading "Made in America" to SoundCloud was not publication.

The Supplemental Letter argues that, "[b]ecause there is no copyright claim regarding your client's 'sound recording,' the issue of whether the 'Made in America' sound recording has been published is immaterial to your client's purported infringement claims." Defendants then nonetheless go on to address the "non-relevant issue" of publication by, once again, inaccurately characterizing Plaintiff's upload of "Made in America" to SoundCloud as publication for the purposes of copyright law. In fact, in their in their initial letter Defendants failed to cite authority in favor of this erroneous contention, as pointed out in the Reply Letter. Now, unable to deny the plain language in Circular 66 stating that streaming is not publication, Defendants vaguely assert that Plaintiff's Complaint alleges "more than just streaming." Defendants contend that the Complaint alleges "phonorecords were offered to multiple on-line services for public display/performance, which constitute publication," but Defendants do not and cannot cite a single allegation in the Complaint supporting this contention.

The only specific act of publication that Defendants will commit to alleging is Plaintiff's upload of "Made in America" to SoundCloud. Defendants' SoundCloud theory is that Plaintiff published "Made in America" because SoundCloud Go, a paid subscription tier of the otherwise free SoundCloud, offered users the ability to stream songs offline. Defendants contend that this was publication because, in enabling offline listening, SoundCloud Go allowed users to "copy and download songs" for offline use. Defendants appear to misunderstand the nature of offline streaming in general. SoundCloud Go's offline streaming feature did not enable users to "copy and download songs." For offline streaming, SoundCloud Go users retain no copy of the song file and are required to stream the song through SoundCloud's platform. A user is nonetheless unable to access the song independent of SoundCloud. Indeed, if users retained their own copy of the file, it would have been redundant to refer to listening to songs on SoundCloud Go as "offline" listening, because listening to a personally retained song file does not require cellular data or internet access. In sum, Defendants' SoundCloud theory fails to evince that Plaintiff offered the public retainable copies of "Made in America" pre-registration.

## III.   Plaintiff Has Alleged Access and Actionable Copying.

The Supplemental Letter attempts to rebut the substantial similarity shown in Dr. Swanson's report with the conclusory statement that "any lay listener could readily determine [the songs at issue] are neither 'strikingly similar' nor 'substantially similar.'" As such, Defendants

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 212-750-8297 • WWW.AIDALA.COM

1 JA 138

raise a question for a trier-of-fact. Defendants' conclusory argumentation about whether lay listeners would agree with Dr. Swanson's scientific conclusion does not merit response. Furthermore, Defendants' assertion that Plaintiff has plead "conclusory" assertions of striking similarity in the report of Dr. Swanson is devoid of merit.

## IV. Plaintiff Will Consider Withdrawing Claims Against WMG and RCA.

Should the Defendants provide evidentiary proof and an affidavit in support of its contention that WMG and RCA are improper Defendants then Plaintiff will consider withdrawing the claims.

Very Truly Yours,

**AIDALA, BERTUNA & KAMINS, P.C.**

By:   /s/ Imran H. Ansari
Imran H. Ansari, Esq.
546 Fifth Avenue, 6th Floor
New York, NY 10036
T: (212) 486-0011
F: (212) 750-8297
iansari@aidalalaw.com

cc:   The Honorable Victor Marrero (Fax)
Paul Maslo, Esq. (Email)
Alex Spiro, Esq. (Email)
Donald S. Zakarin, Esq. (Email)
Ilene S. Farkas, Esq. (Email)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| EMELIKE NWOSUOCHA, | : |
|  | : |
| Plaintiff, | :   1:21-cv-04047 (VM) |
|  | : |
| v. | :   **NOTICE OF VOLUNTARY** |
|  | :   **DISMISSAL, WITHOUT** |
| DONALD MCKINLEY GLOVER, II, et al., | :   **PREJUDICE, PURSUANT TO** |
|  | :   <u>**FED. R. CIV. P. 41(a)(1)(A)(i)**</u> |
| Defendants. | : |
|  | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Plaintiff Emelike Nwosuocha and his counsel of record, hereby give notice that the above-captioned action is voluntarily dismissed, without prejudice, against only defendants RCA Records and Warner Music Group Corp. An electronic PDF signature shall be deemed an original for the purposes of this notice.

Dated:  April 19, 2022
      New York, New York

                                AIDALA BERTUNA & KAMINS PC.

                        By:    */s/ Imran H. Ansari*
                               Imran H. Ansari
                               546 Fifth Avenue, 6th Floor
                               New York, New York 10036
                               (212) 486-0011

                               *Attorneys for Plaintiff Emelike Nwosuocha*

1 JA 140

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
               :

EMELIKE NWOSUOCHA,      :
               :
        Plaintiff,    :   1:21-cv-04047 (VM)
               :
        v.        :   **NOTICE OF VOLUNTARY**
               :   **DISMISSAL, WITHOUT**
DONALD MCKINLEY GLOVER, II, et al.,  :   **PREJUDICE, PURSUANT TO**
               :   **FED. R. CIV. P. 41(a)(1)(A)(i)**
        Defendants.   :
               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Plaintiff Emelike

Nwosuocha and his counsel of record, hereby give notice that the above-captioned action is

voluntarily dismissed, without prejudice, against only defendants RCA Records and Warner Music

Group Corp. An electronic PDF signature shall be deemed an original for the purposes of this

notice.

Dated:  April 19, 2022
      New York, New York

                            AIDALA BERTUNA & KAMINS PC.

               By:    */s/ Imran H. Ansari*
                      Imran H. Ansari
                      546 Fifth Avenue, 6th Floor
                      New York, New York 10036
                      0011

                      *for Plaintiff Emelike Nwosuocha*

```
Defendants RCA Records and Warner Music Group
Corp. are hereby dismissed from this action.

SO ORDERED:

Dated: April 28, 2022
       New York, New York        Victor Marrero
                                 U.S.D.J.
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :

EMELIKE NWOSUOCHA,               :
                                        :

                   Plaintiff,       :     1:21-cv-04047 (VM)
                                        :

                   v.              :     **NOTICE OF MOTION**
                                      :

DONALD MCKINLEY GLOVER, II, et al.,    :
                                        :

                 Defendants.     :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      **PLEASE TAKE NOTICE** that upon this Notice of Motion, dated as of September 9, 2022, and the accompanying Declaration of Jonathan D. Davis, dated September 9, 2022, with exhibits, and the supporting memorandum of law, dated September 9, 2022, and upon all prior proceedings heretofore had herein, defendants, by their attorneys, Jonathan D. Davis, P.C., Pryor Cashman LLP, and Quinn Emanuel Urquhart & Sullivan LLP will move this Court, in accordance with the Order, dated June 22, 2022 (the "Order"), and Fed. R. Civ. P. 12(b)(6), before the Honorable Victor Marrero, at the United States District Courthouse, Courtroom 15B, 500 Pearl Street, New York, New York 10007, for an order: (1) dismissing the Complaint [Dkt. No. 1] because neither the musical composition "Made in America" ("Plaintiff's Composition"), nor the music video embodying Plaintiff's Composition, is registered with the United States Copyright Office, which is a prerequisite to filing a copyright claim; or, alternatively, (2) dismissing the copyright infringement claim for failure to adequately plead "access" or "substantial similarity" between Plaintiff's Composition and "This is America."

<div align="center">1</div>

1 JA 142

Answering declarations and memorandum of law, if any, shall be served in accordance with the Order.

Dated:  As of September 9, 2022
       New York, New York

JONATHAN D. DAVIS, P.C.

By:    */s/ Jonathan D. Davis*
       Jonathan D. Davis
       1 Rockefeller Plaza, Suite 1712
       New York, New York 10020
       (212) 687-5464
       *Attorneys for Defendants Donald McKinley Glover, II, Jefferey Lamar Williams, Kobalt Music Publishing America, Inc. d/b/a Songs of Kobalt Music Publishing, Sony Music Entertainment, Young Stoner Life Publishing, LLC, 300 Entertainment LLC (f/k/a Theory Entertainment LLC d/b/a 300 Entertainment), Atlantic Recording Corporation, and Warner-Tamerlane Publishing Corp.*

PRYOR CASHMAN LLP

By:    */s/ Ilene S. Farkas*
       Ilene S. Farkas
       7 Times Square
       New York, NY 10036
       (212) 326-0188
       *Attorneys for Defendants Songs of Universal, Inc.*

QUINN EMANUEL URQUHART & SULLIVAN LLP

By:    */s/ Alex Spiro*
       Alex Spiro
       Paul B. Maslo
       51 Madison Avenue, 22nd Floor
       New York, New York 10010
       (212) 849-7000
       *Attorneys for Defendant Roc Nation Publishing LLC d/b/a Songs of Roc Nation*

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

EMELIKE NWOSUOCHA,                :
                                           :

                    Plaintiff,         :     1:21-cv-04047 (VM)
                                           :

                         v.                   :
                                           :

DONALD MCKINLEY GLOVER, II, et al.,   :
                                           :

                    Defendants.     :
                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT

JONATHAN D. DAVIS, P.C.
1 Rockefeller Plaza, Suite 1712
New York, New York 10020
(212) 687-5464

*Attorneys for Defendants Donald McKinley Glover, II, Jefferey Lamar Williams, Kobalt Music Publishing America, Inc. d/b/a Songs of Kobalt Music Publishing, Sony Music Entertainment, Young Stoner Life Publishing, LLC, 300 Entertainment LLC (f//k/a Theory Entertainment LLC d/b/a 300 Entertainment), Atlantic Recording Corporation, and Warner-Tamerlane Publishing Corp.*

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 326-0188
*Attorneys for Defendants Songs of Universal, Inc.*

QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
*Attorneys for Defendant Roc Nation Publishing LLC d/b/a Songs of Roc Nation*

This memorandum of law is respectfully submitted, in accordance with the Order dated June 24, 2022, in support of Defendants' joint motion under Fed. R. Civ. P. 12(b)(6) for an order: (1) dismissing the Complaint [Dkt. No. 1] because neither the musical composition "Made in America" ("<u>Plaintiff's Composition</u>"), nor the music video embodying Plaintiff's Composition ("<u>Plaintiff's Video</u>"), is registered with the United States Copyright Office, which is a prerequisite to filing a copyright claim; or, alternatively, (2) dismissing the copyright infringement claim for failure to adequately plead "access" or "substantial similarity" between Plaintiff's Composition and "This is America" (the "<u>Challenged Composition</u>").[1]

Plaintiff alleges he composed and recorded Plaintiff's Composition in September 2016. Compl., ¶¶4, 32. On September 11, 2016, Plaintiff's Composition was released "for widespread public listening" through the "popular streaming platform Soundcloud, where end users were allowed to listen … as a free stream." *Id*., ¶4, 40. Plaintiff's Video was originally released on YouTube. *Id*., ¶4. In 2017, Plaintiff obtained a copyright registration for an *unpublished* collection of *sound recordings*, including a sound recording embodying Plaintiff's Composition ("<u>Plaintiff's Recording</u>"). *Id*., ¶¶1, 4-5, 32-36; Ex. B. On May 6, 2018, Defendant Glover allegedly released the Challenged Composition, *id.*, ¶19, and the music video embodying the Challenged Composition was subsequently "uploaded to [the] 'Donald Glover' official YouTube channel for public streaming." *Id*., ¶45.

The crux of Plaintiff's claim concerns Glover's "vocal performance of the rapping of the chorus' lyrics," which Plaintiff alleges "employ[s] a distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern – or a 'flow[.]'" *Id*., ¶¶39-41. The Complaint alleges the "distinctive flow employed in … the [Challenged Composition's] chorus … is unmistakably substantially similar, if not practically identical, to the distinct and unique flow that was employed by [Plaintiff] in recording his vocal performance of his rapping of the hook to [Plaintiff's Composition]." *Id.* Plaintiff cannot claim infringement of the performance elements in Plaintiff's Recording, as a sound recording infringement must be based on the copying of the sounds fixed in that recording, which is nowhere alleged here. 17 U.S.C § 114(b).

A complaint's dismissal is warranted if it fails to plead allegations which, if accepted as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In copyright infringement actions, Courts regularly examine the works at issue on a motion to dismiss to determine substantial similarity as a matter of law, as the works themselves supersede any contrary descriptions of them in the pleadings. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *McDonald v. West*, 138 F. Supp. 3d 448, 453 (S.D.N.Y. 2015), *aff'd*, No. 15-3489-cv (2d Cir. Oct. 7, 2016) (Summary Order).

## I.      Plaintiff Failed to Register the Copyright For His Composition Before Filing Suit

A copyright registration is an indispensable prerequisite to having the right to file a copyright infringement claim. 17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). Courts are compelled to dismiss copyright actions for failure to register. *See, e.g.*, *Howard v. 3, 6 Mafia*, 20-CV-6116 (LLS), 2021 WL 3146250

---

[1] Plaintiff alternates between alleging the works at issue have "substantial similarities" (Compl., ¶¶2, 39, 41, 43, 44, 52, 53, 83) and "striking similarities" or "strikingly substantial similarities" (Compl., ¶¶42, 49). Plaintiff's Video is available at https://www.youtube.com/watch?v=C7zL_OE7gnM. The music video embodying the Challenged Composition is available at https://www.youtube.com/watch?v=VYOjWnS4cMY. A copy of the Complaint is attached as Ex. A to the Declaration of Jonathan D. Davis ("Davis Decl.").

1 JA 145

(S.D.N.Y. July 23, 2021); *Xclusive-Lee, Inc. v. Hadid*, 19-CV-520 (PKC) (CLP), 2019 WL 3281013 (E.D.N.Y. July 18, 2019).

Plaintiff cannot sue for infringement because he failed to register the copyright for Plaintiff's Composition.[2] Plaintiff's Certificate of Registration (Complaint, Ex. B) is for a *sound recording* and thus limits his authorship to the "sound recording"; it lacks the additional description needed to claim a copyright in the underlying *musical composition.* The Certificate of Registration, at most, protects Plaintiff's Recording, and not the work alleged to be infringed – Plaintiff's Composition. Therefore, Plaintiff's claim should be dismissed.

## II.     Plaintiff Has Not Pled Actionable Copying

Plaintiff's infringement claim should also be dismissed because he has failed to allege actionable copying of constituent, original elements of Plaintiff's Composition. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Actual copying requires proof: (1) that defendant had access to the copyrighted work, and (2) that substantial similarities exist between *protectable elements* of the works at issue. *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020); *Pyatt v. Raymond*, No. 10 Civ. 8764(CM), 2011 WL 2078531, at *4-5 (S.D.N.Y. May 19, 2011), *aff'd*, F. App'x. 22 (2d Cir. 2012); *Arica Inst., Inc. v. Palmer*, 761 F. Supp. 1056, 1064 (S.D.N.Y. 1991); *see also Clanton v. UMG Recordings, Inc.,* 20-cv-5841 (LJL), 2021 WL 3621784, at *3 (S.D.N.Y. Aug. 16, 2021).

### A.     Plaintiff Fails to Allege Access

Plaintiff has failed to allege that any of the creators of the Challenged Composition had access to his work. No direct evidence of actual copying is alleged. Thus, Plaintiff must allege copying by detailing: (1) a particular chain of events by which a defendant gained access to his work, or (2) specific facts showing his work was widely disseminated. *Clanton*, 2021 WL 3621784, at *3. Access requires a "reasonable possibility" of one of the creators having listened to the work, not a "bare possibility," speculation or conjecture. *Id.*

But Plaintiff does not allege that any Defendant had access to his work. Rather, Plaintiff simply speculates that because his work was posted to streaming services, such as Spotify and YouTube (along with tens of millions of other works), that perhaps one of the Defendants may have listened to it. Courts have routinely held that the mere availability of a composition on the Internet is not sufficient to establish access to a work, *and this is Plaintiff's sole allegation of access*. *See Clanton*, 2021 WL 3621784, at *3 (dismissing claim because posting a song on the "internet is insufficient on its own to show [access through] 'wide dissemination'"); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008) ("[T]he mere fact that [plaintiff's] work was posted on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination."). Plaintiff's allegation that his work was available "on major streaming platforms for widespread public listening" to all "Defendants" fails to plead "access" as a matter of law. Compl., ¶40; *Clanton*, 2021 WL 3621784, at *3. This pleading failure alone mandates dismissal of the Complaint.

---

[2] Defendants describe in ECF Dkt. Nos. 72 and 72-1 why Plaintiff is barred from pursuing this action, namely the alleged registration covers only Plaintiff's Recording, and not Plaintiff's Composition. [ECF Dkt. No. 1, Ex. B.] Defendants incorporate those arguments herein.

## B.    The Works Are Not Substantially Similar

The Complaint should also be dismissed for lack of substantial similarity. A court "may evaluate a question of substantial similarity at the motion to dismiss stage … because what is required is only a visual [or aural] comparison of the works."[3] *McDonald*, 138 F. Supp. 3d at 454. Dismissal is warranted when "the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find … substantial[] similar[ity]." *Gaito*, 602 F.3d at 63; *see, e.g.*, *Buckman v. Citicorp*, No. 95 Civ. 0773 (MBM), 1996 WL 34158, at *3 (S.D.N.Y. Jan. 30, 1996); *Lane v. Knowles-Carter*, No. 14 Civ. 6798 (PAE), 2015 WL 6395940, at *4-7 (S.D.N.Y. Oct. 21, 2015); *Edwards*, 22 F. Supp. 3d at 298-301; *Pyatt*, 2011 WL 2078531, at *6-10.[4] Concepts or commonplace, unoriginal expression cannot be infringed as a matter of law. *See Guity v. Santos*, 18-cv-10387 (PKC), 2019 WL 6619217, at *5 (S.D.N.Y. Dec. 5, 2019), *recons. den.*, 18-cv-10387 (PKC), 2020 WL 4340417 (S.D.N.Y. July 28, 2020); *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991) (common song structures, harmonic progressions, and rhythms are unprotectable). Neither can the "basic buildings blocks of music, including tempo and individual notes[,]" nor "[w]ords and short phrases, including titles and slogans." *McDonald*, 138 F. Supp. 3d at 454.

Plaintiff's claim is based on the supposed lyrical, rhythmic, and thematic "similarities" between the songs at issue. Compl., ¶¶40-41. However, the alleged "similarities" are either starkly different (as in the lyrics) and/or consist of nothing more than non-copyrightable material.

First, a comparison of the lyrics identified by Plaintiff shows that the only similarity is the unprotectable word "America," but "[w]ords and short phrases such as names, titles and slogans" are not copyrightable. 37 C.F.R. §202.1(a); *see, e.g.*, *McDonald*, 138 F. Supp. 3d at 456, *aff'd*, 669 F. App'x. 59 (affirming dismissal of copyright claim based on the phrase "Made in America", which "is a well-known part of the national vernacular"); *Peters v. West*, 692 F.3d 629, 631, 635 (7th Cir. 2012) (affirming dismissal where phrase at issue was "repeatedly invoked in song lyrics over the past century"); *Chapman v. Universal Motown Records Grp.*, No. 08 Civ. 3255 (LAP), 2010 WL 517480, at *4 (S.D.N.Y. Feb. 4, 2010). Multiple songs have been titled or incorporated the lyrics "made in America" before Plaintiff's Composition. Davis Decl., ¶¶4-10; Exs. B, C, D, E, F, G, H. Nor is repetition of a common element in music protectible. *See, e.g.*, *Edwards*, 22 F. Supp. 3d at 300; *see also Hobbs v. John*, 722 F.3d 1089, 1096 (7th Cir. 2013); *Gray v. Perry*, No. 2:15-CV-05642-CAS-JCx, 2020 WL 1275221, at *5 (C.D. Cal. Mar. 16, 2020).

Second, Plaintiff's reliance on allegedly similar cadence, rhythm, "triplet flow," or vocal "utterances" performed within "20 beats per minute" of each other is insufficient to allege

---

[3] The "ordinary observer" test compares the "total concept and overall feel" of two songs "as instructed by [a judge's] good eyes and common sense[,]" *Edwards v. Raymond*, 22 F. Supp. 3d 293, 300-01 (S.D.N.Y. 2014), and "eliminate[s] the unprotectable elements from consideration and compar[es] only the protectable elements for substantial similarity." *Lone Wolf McQuade Assocs. v. CBS Inc.*, 961 F. Supp. 587, 592 (S.D.N.Y. 1997).

[4] Plaintiff's inability to plead direct copyright infringement requires dismissal of his purported claims for contributory and vicarious infringement. *See Alexander v. Murdoch*, No. 10 Civ. 5613 (PAC)(JCF), 2011 WL 2802899, at *17 (S.D.N.Y. May 27, 2011); *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005). Moreover, the allegations for these claims are conclusory, rendering them implausible claims. Compl., ¶¶86-87; *see, e.g.*, *Hartmann v. Amazon.com, Inc.*, 20 Civ. 4928 (PAE), 2021 WL 3683510, at * 9 (S.D.N.Y. Aug. 19, 2021).

1 JA 147

infringement.[5] Compl., Ex. D at 9, 11; *McDonald*, 138 F. Supp. 3d at 457-58 (finding no substantial similarity where songs at issue used vocal ad libs, a similar feel and tone, *tempos within three beats per minute of each other*, percussion, melisma, melodic eight-bar sections, and "made in America" or "we made it in America"). To the extent Plaintiff's claims are based on the vocal style or performance of the chorus, this non-compositional element is outside the scope of any compositional registration. *Rose v. Hewson*, 17cv1471 (DLC), 2018 WL 626350, at *7 (S.D.N.Y. Jan. 30, 2018) ("In … alleging infringement of a musical composition, a court … does not consider elements of performance of the composition"). Accordingly, no one can own a "flow."

An "ordinary observer" can also hear the differences in the rhythm of the respective choruses. Plaintiff's Composition begins with a pick-up note on the lyric "I'm." The words "made in America" (in the phrase "I'm made in America") are rapped starting on beat 4. The words "making America" (in the phrase "Making America great again") are rapped on beat 2. Davis Decl., Ex. I. In contrast, the entirely different lyrics "This is America" have no pick-up note and are rapped on beat 2. The chorus's first and third beat contain a full rest, with no words rapped.[6] Davis Decl., Ex. J. But even if the lyrical phrases were rapped identically, the performance technique of "triplet rhythm" is not protectable, not original to Plaintiff, common in trap music, and certainly not owned by Plaintiff.[7] *See Hewson,* 2018 WL 626350, at *7 ("general rhythmic style" not protectable); *Guity v. Santos, Edwards*, 22 F. *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018); *McDonald*, 138 F. Supp. 3d at 454; *Lane*, 2015 WL 6395940, at *5; *Intersong-USA*, 757 F. Supp. at 282 (common song structures, harmonic progressions, and rhythms are unprotectable); *Hobbs*, 722 F.3d at 1096 ; *Gray*, 2020 WL 1275221, at *5.

Third, the Complaint does not allege that either song's musical notes or instrumentation are substantially similar. Any "ordinary observer" can hear the marked differences in their overall musical impression. Plaintiff's Composition contains no melody, is entirely rapped with only a looped background track, and is intermixed with a sample from the movie *Carlito's Way*. It is performed in C minor and has a fast tempo. In contrast, the Challenged Composition is a combination of rapped verses and singing that is set to various melodies over more than three minutes. It is performed in F major and has a slower tempo. *See, e.g., McDonald*, 138 F. Supp. 3d at 460; *Lane*, 2015 WL 6395940, at *8 (granting dismissal where "there [exist] a variety of beats,

---

[5] Compl., ¶¶2, 39, 41-42, and Ex. D at 15. A "triplet" is a "group of three notes to be performed in the time of two of the same kind, or in the time of any number of another kind." *See* 25 THE NEW GROVE DICTIONARY OF MUSIC AND MUSICIANS 745 (Stanley Sadie ed., 2d ed. 2001). A "triplet flow" is commonly used in "trap" music, a sub-genre of hip hop that originated in the early 1990s. *Trap Music*, Wikipedia, https://en.wikipedia.org/wiki/Trap_music (last visited September 2, 2022). "In trap music, lyrical themes must revolve around street life, acquiring wealth, violence, American vehicles, and life experiences that artists have faced in their southern American surroundings." *Id.*

[6] The performance of the phrase "made in America" in Plaintiff's Recording is identical in every iteration, but there are three different performances of the phrase "This is America" in the Glover recording. (The first occurs at 0:49, 0:57, 1:54, and 2:00; the second occurs at 1:05; and the third occurs at 2:00.)

[7] "Triplet rhythm" has been used in multiple songs publicly released before Plaintiff's Recording in 2016. *See, e.g., Bring The Noise* – Public Enemy (1987); *Deadly Verses* – Gangsta Pat (1995); *Sleep* – Triple Six Mafia (2000); *Versace* – Migos (2013); *The Language* – Drake (2013); and *All We Got* (feat. Kanye West & Chicago Children's Choir) – Chance the Rapper (2016).

4

instrumental samples, and supporting background vocal tracks … absent from [plaintiff's song].").

Fourth, the musical production in each work is different. Plaintiff's Composition is dominated by a synth xylophone with sub-bass and electronic drums. There are no other background rap or vocal performances. In contrast, the Challenged Composition is both sung and rapped, has no synth xylophone, and incorporates choir singing, shouted/rapped background vocals, synth lead, sub-bass, electronic drums, and acoustic percussion samples. *See*, *e.g.*, *McDonald*, 138 F. Supp. 3d at 460 (granting dismissal where "Plaintiff's minimalist music is played on an acoustic guitar … moves back and forth between the same two chords for the entire song" and "Defendants' richer instrumental consists primarily of synthesizer and samples ....").

Fifth, the structure of a musical composition is generally unprotectable, and no meaningful structural similarities are alleged or exist. *Tisi v. Patrick*, 97 F. Supp. 2d 539, 543 (S.D.N.Y. 2000); *Mayimba Music, Inc. v. Sony Corp. of Am.*, No. 12 Civ. 1094(AKH), 2014 WL 5334698, at *16-17 (S.D.N.Y. Aug. 19, 2014); *Intersong-USA*, 757 F. Supp. at 282. In this case, Plaintiff's Composition has an introduction, has three choruses with each followed by a verse, and concludes with an outro. In contrast, the Challenged Composition has an introduction, a pre-chorus, chorus, a verse pattern that repeats twice with different content, a final pre-chorus, and an outro.

Finally, Plaintiff relies heavily on supposed similar lyrical "themes." But themes, ideas, and concepts are unprotectable. 17 U.S.C. § 102(b); s*ee also DiTocco v. Riordan*, 815 F. Supp. 2d 655, 666 (S.D.N.Y. 2011); *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976); *Lewinson v. Henry Holt and Co., LLC*, 659 F. Supp. 2d 547, 566 (S.D.N.Y. 2009); *Hudson v. Universal Studios, Inc.*, No. 04 Civ. 6997(GEL), 2008 WL 4701488, at *2 (S.D.N.Y. Oct. 23, 2008), *aff'd*, 369 F. App'x. 291 (2d Cir. 2010). A defendant also cannot infringe minor uses of *similar phrases*, which, as applied, are thematically different. *See May v. Sony Music Entm't*, 399 F. Supp. 3d 169, 188-89 (S.D.N.Y. 2019). Here, the supposed similar "lyrical themes" are expressed differently, and Plaintiff's allegation that the lyrics are "glaringly similar" is belied by a simple comparison. Compl. ¶40.

Specifically, Plaintiff's Composition is a short, simple, self-aggrandizing proclamation, with Plaintiff stating repeatedly: "I'm made in America." This mantra alerts rappers of Plaintiff's arrival ("2016 rappers? ... You should beware of this"), and his success ("I'm running the city … I'm making a milestone … You hearing my name though? Well don't wear it out … I'm killing the game"). Plaintiff's first verse addresses his "finesse" at making "move[s]" as a rapper, garnering him a "Black and [W]hite Benz." He boasts of his success, and that he's "killing the game and [he] got a tight grip and there won't be no evidence." He raps, "I OJ'ed the game," a likely reference to O.J. Simpson, who was acquitted of murder. In the second verse, Plaintiff similarly brags about his lyrical dexterity and popularity with women: "somersault the flow, pick up any ho, on any street." He attributes his success, and the envy it creates, to his record sales: "That's why the numbers count, I can always count / Especially on enemies." But in the end, he recognizes his celebrity and swagger pose dangers from the "Jakes" (*i.e.*, the police): "Heads up for the bullets that coming from the Jakes."

In contrast, the Challenged Composition is not about a rapper, but a complex clashing American landscape, anchored by the common phrase "This is America." The song provocatively addresses contemporary America, what America means and how it is perceived. It addresses facets of America, such as having fun and making money ("We just wanna party / Party just for you / We just want the money / Money just for you"); police misconduct ("Police be trippin' now"); gun

5

culture ("Guns in my area … / I gotta carry them"); materialism ("I'm so fitted … I'm on Gucci"); race and familial truth-telling ("Grandma, told me / Get your money, Black man …"); and drugs ("Contraband, contraband, contraband … I got the plug in Oaxaca").

The themes continue in the Chorus, which is cautionary and foreboding, expressing the need for people to pay attention to their surroundings ("This is America (Woo) / Don't catch you slippin' now"). The first verse launches into references about ostentatious lifestyles ("Look how I'm livin' now"), the attention that it can bring from police ("Police be trippin now"), and the ubiquity of guns ("Guns in my area …/ I got the strap …/ I gotta carry 'em"). In the Pre-Chorus, the song introduces race by declaring that "Grandma" told the narrator "Get your money, Black man." The second verse has a different riff on America. Here, the narrator is infatuated and proud of his appearance ("I'm so fitted … I'm on Gucci … I'm so pretty").

The Challenged Composition then shifts to a Pre-Chorus with a new narrator addressing "America," noting a debt that has not been paid, accompanied by voices encouraging the narrator to stake their claim, though the precise nature of the debt is left unstated ("America, I just checked my following list, and / You go tell somebody / You mothafuckas owe me"). The Challenged Composition then returns to the imperative "Grandma told me / Get your money, Black man…." The song ends with a provocative Outro addressing a Black man, reduced to "just a barcode," whose freedom is limited by forces beyond his control ("You just a big dawg, yeah, I kenneled him in the backyard, No, probably ain't life to a dog, For a big dog").[8]

In sum, the lyrics at issue are different and express (unprotectable) themes that are different in meaning and content. The only similarity they share is a smattering of a few discrete themes (*e.g.*, money, making moves, and the police); one by a boastful rapper, the other by a narrator observing the American landscape. But none of this matters because themes are unprotectable, much less unique to Plaintiff's Composition.[9]

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice and award such other relief as it deems just and proper.

Dated: September 9, 2022

<div style="text-align:right">

JONATHAN D. DAVIS, P.C.

By: */s/ Jonathan D. Davis*
Jonathan D. Davis

PRYOR CASHMAN LLP

By: */s/ Ilene Farkas*
Ilene Farkas

</div>

---

[8] Leave to amend should be denied because discovery will not modify the songs at issue or cure Plaintiff's failure to properly register Plaintiff's Composition. *Castro v. Cusack*, 15-cv-6714 (ENV), 2019 WL 3385218, at *9 (E.D.N.Y. July 26, 2019).

[9] *See*, *e.g.*, *The Message* – Grandmaster Flash and the Furious Five (1982); *Fuck Tha Police* – N.W.A. (1988); *You Must Learn* – KRS One (1989); *White America* – Eminem (2002); *Never Let Me Down* – Kanye West featuring Jay Z and J Ivy (2004); *Reagan* – Killer Mike (2012); *Black Rage* – Lauryn Hill (2012); *Don't Shoot* – The Game (2014); and *We The People* – A Tribe Called Quest (2016).

1 JA 150

QUINN EMANUEL URQUHART
& SULLIVAN LLP

By:   */s/ Alex Spiro*
     Alex Spiro

1 JA 151

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
                                    :

EMELIKE NWOSUOCHA,                  :    1:21-cv-04047 (VM)
                                      :

                 Plaintiff,      :
            v.                   :

                                      :

DONALD MCKINLEY GLOVER, II, et al.,  :
                                      :

               Defendants.     :
                                      :
-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**<u>TO JOINT MOTION TO DISMISS THE COMPLAINT</u>**

1 JA 152

This memorandum of law is respectfully submitted in opposition to Defendants' joint motion for an order dismissing the Complaint (ECF No. 90)(the "Motion"). Defendants move for dismissal on the following two bases: (1) they argue that Plaintiff cannot maintain his claims because his composition "Made in America" ("Plaintiff's Composition") is not registered with the United States Copyright Office (the "USCO"); and (2) they argue that Plaintiff fails to adequately plead or "access" or "substantial similarity" between Plaintiff's Composition and "This is America" ("Infringing Composition"). Def. Mem. at 2. For the reasons set forth below, Defendants' arguments are without merit, and – with respect to the latter argument – Defendants' Motion mischaracterizes the nature of the infringement claims at issue in this action, and fails to argue applicable legal standards.

## I.   Plaintiff Registered the Copyright for His Composition Before Filing Suit

Defendants argue that Plaintiff "cannot sue for infringement because he failed to register the copyright for Plaintiff's Composition." *Id.* at 3. Defendants base this argument on the fact that the Certificate of Registration[1] for Plaintiff's Composition reflects a copyright registration for an unpublished collective work submitted under the *sound recording* designation. Defendants assert that this registration "thus limits [Plaintiff's] authorship to the 'sound recording'" and "lacks the additional description needed to claim a copyright in the underlying *musical composition*." *Id.* Defendants conclude that Plaintiff therefore cannot maintain the instant action, which asserts infringement on Plaintiff's copyrighted Composition. Defendants' conclusion in this regard is erroneous; USCO policy and procedure expressly permitted Plaintiff to simultaneously register copyrights in the sound recordings ***and*** compositions embodied in the underlying unpublished collective work – by using a single *sound recording* registration.

The USCO permits unpublished sound recordings *and* their underlying compositions to be registered simultaneously under the Sound Recording designation under USCO Circular 56A, which provides, in relevant part, that one may accomplish such simultaneous registration when: (a) claimant is the author of both the sound recording and the work embodied in the recording, or the owner of the copyright in both; (b) claimant checks "Sound Recording" under the "Author Created" section of the registration; and (c) claimant submits a phonorecord containing both the sound recording and the musical composition embodied in that recording.[2] Further, pursuant to applicable USCO policy and procedure, where a party identifies itself as the sole claimant and author in registering an unpublished collective work of sound recordings, the party's claim of ownership may subsume every creative contribution appearing in the collective work, including every compositional element therein. USCO, Compendium § 101 (3d ed. 2014) annexed hereto as **Exhibit C** at 509-509.2 (defining collective works as "constituting separate and independent [copyrightable] works in themselves;" an "applicant may register a collective work *together with the contributions* contained therein (i) if the contributions and the collective work were created by the same author, or (ii) if the copyright in the contributions and the collective work are owned by the same claimant, (iii) provided that the contributions and the collective work have not been previously published, [previously registered, and are not public domain].")[3]

---

[1] Plaintiff's Certificate of Registration is annexed hereto as **Exhibit A**.

[2] *See* USCO Circular 56A annexed hereto as **Exhibit B** at 4-7.

[3] *See also* USCO, Compendium § 101 (3d ed. 2021) annexed hereto as **Exhibit D** at 509-509.2 (same); **Ex. B** at 7 (applicant may use one *sound recording* application to register "a number of musical compositions and sound recordings as a collective work if the applicant owns the musical compositions and sound recordings . . . and the musical compositions and sound recordings have not been previously published or previously registered.")

1 JA 153

Per the USCO policies and procedures described above, Plaintiff registered copyrights in all sound recordings and constituent, underlying, protectable contributions contained in the collective work "Eleven: The Junior Senior Year," an unpublished album at the time of registration containing Plaintiff's Composition as a constituent, individually protectable contribution. Under USCO policy and procedure, Plaintiff used one *sound recording* registration to register his collective work of sound recordings and underlying compositions, filed the registration as sole claimant *and* sole author of the collective work, and effectuated a valid registration for the collective work extending to all musical compositions therein, including for "Made in America."[4]

Defendants seek to persuade this Court that Plaintiff's copyright registration does not extend to Plaintiff's Composition by virtue of "lack[ing] the additional description needed to claim a copyright in the underlying musical composition." Def. Mem. at 3. Besides being meritless considering the USCO policies and procedures set forth above, Defendants' argument—premised on the purported non-inclusion of a 'description' in Plaintiff's copyright registration application— is also erroneous pursuant to *Unicolors, Inc. v H&M Hennes & Mauritz, L.P.*, 142 S Ct 941, 945 (2022). In that case, the Supreme Court held that a certificate of registration for a copyrighted work will be valid *even if it contains inaccurate information*, as long as the copyright holder lacked knowledge that it was inaccurate. 142 S Ct at 945. Defendants do not—and cannot—allege any knowing or willful artifice perpetrated upon the USCO by Plaintiff in filing his application, and their conclusory assertions about what *they* perceive to be a missing description in Plaintiff's Certificate of Registration should not serve as a basis for dismissal on the pleadings. *See id.* at 946-48.

## II.  Plaintiff Has Adequately Plead Substantial Similarity

In this action, Plaintiff alleges that the chorus, or "hook," of Plaintiff's Composition has been infringed upon by the Defendants in the Infringing Composition. Compl. ¶¶ 39-43. The Complaint pleads that the hook of the Infringing Composition is substantially similar to the hook of Plaintiff's Composition in lyrical, rhythmic, structural, timbral, melodic, and thematic content. *Id.* Defendants acknowledge that such similarities between the songs' respective hooks constitute "the crux of Plaintiff's claim." Def. Mem. at 2. The Complaint describes these similarities and incorporates supportive exhibits, in the form of expert analysis and from the perspective of disinterested lay listeners commenting on the work(s) online. *Id.*; Compl. Ex. C; Compl. Ex. D at 10-17. Plaintiff attached a report from expert musicologist Dr. Brent Swanson, whose report is incorporated by reference into the Complaint, and who opined that the hooks in each composition are substantially similar to an extent beyond coincidence. Compl. Ex. D at 10-17. Dr. Swanson's report contains figures, analyses, and multiple means of scientific methodology by which he reached his expert conclusion.[5] Concerning the songs' discernible similarity from a lay perspective, the Complaint attaches and incorporates by reference an exhibit displaying

---

[4] *See* USCO Circular 56A at 7 ("For example, a CD [] with multiple tracks that embody musical compositions and sound recordings is considered a collective work. If the [party] selecting, coordinating, or arranging the musical compositions and sound recordings on the album also owns the sound recordings, which were not previously published or registered, then the album and sound recordings may be registered with one application as a collective work. *If that party also owns the musical compositions*, which were not previously published or registered, **then the collective work registration would also extend to the musical compositions**.")(emphasis added).

[5] *See* Compl. Ex. D 10-17 (analyzing near-identical rhythmic nature of the vocal transients contained within each hook's waveform when controlled for beats per minute value; analyzing comparative spectrographic profile of melodic contours in each hook, concluding that contours of melody employed in each hook are "similar," "have much more in common than they do differences.")

2

screenshots taken from major streaming platforms, where disinterested listeners of the public have expressly observed the significant audible similarity between the two compositions—in public comments posted long before the instant action was filed.[6]

Despite the particularity with which Plaintiff pleads several facets of substantial similarity between the compositions, Defendants ask this Court to rule as a matter of law that *no* reasonable jury find substantial similarity between the songs and/or that any similarities between the songs "consist of nothing more than non-copyrightable material." Def. Mem. at 4. Defendants do not challenge or address the contents or merits of Dr. Swanson's expert report incorporated into the Complaint. Defendants also do not challenge or address the Complaint's incorporated exhibit that shows screenshots of public comments on major streaming platforms referencing similarities between the songs and alluding to copying by "Gambino," Defendant Glover's stage name. Given that Dr. Swanson's report and the online public comments are incorporated in the Complaint, are probative of a listening public's ability to find substantial similarity, and are unchallenged, the substantial similarity question "depends on a subjective assessment better suited for a jury than a court" at this stage of this action, remaining a "question of non-infringement [] traditionally [] reserved for the trier of fact" rather than on motion to dismiss. *Est. of Smith v. Cash Money Records*, 253 F. Supp. 3d 737, 748 (S.D.N.Y. 2017); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010); *Hines v. W Chappell Music Corp.*, 2021 U.S. Dist. LEXIS 107398, at *7-9 (S.D.N.Y. June 8, 2021)(expert musicologist report attached to complaint—finding "identical" or "near-identical pitches and rhythmic values" in songs— constituted facts "enough to support an inference" defendants copied plaintiff's work such that question of substantial similarity could not be foreclosed on the pleadings.)(*quoting Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994)).[7]

In attempting to persuade this Court to find no substantial similarity between the songs as a matter of law, Defendants advance a muddled and inconsistent cacophony of points that fails to address the applicable substantial similarity test, misstates the nature of protectability in relevant compositional elements, and advances substantively irrelevant arguments based on the Defendants' subjective assessment of the songs' comparative nature, merits, and meanings.

First, even though Defendants concede "the crux" of Plaintiff's claims is infringement between the *hooks* in Plaintiff's Composition and the Infringing Composition,[8] three of Defendants' six listed points on substantial similarity address song aspects outside the hooks, beyond the scope of the claims, and thus non-probative for this Motion's purpose. Defendants' third point addresses "instrumentation" and overall melodic "impression,"[9] areas for which the Complaint does not assert infringement. As such, the Court should disregard this irrelevant third point. Defendants' fourth point addresses the instruments and musical production in the overall songs,[10] areas also outside the infringement asserted in the Complaint. As such, the Court should disregard this irrelevant fourth point. Defendants' fifth point addresses the overall structure of the songs, order and number of verse and chorus sections, also outside the infringement asserted in

---

[6] *See* Compl. Ex. C (public YouTube and SoundCloud comments, "**Gambino ripped this shit off you** G," "**anyone gonna ask Childish Gambino** about this song???," "**Childish gambino gotta give you creds** [*credit*] for the *flow* and *everything*.")(emphasis added).

[7] *See also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)(in considering motion to dismiss, a district court should consider "the facts as asserted within the four corners of the complaint" and "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.").

[8] *See* Def. Mem at 5.

[9] *See id.* at 5.

[10] *See id.* at 5-6.

1 JA 155

the Complaint. As such, the Court should disregard this irrelevant fifth point.[11] The third and fourth points are also outside the scope of Defendants' Pre-Motion letters[12] to which the Court substantively bound their briefing (ECF No. 81) and should accordingly also be disregarded on that basis.[13]

Turning to the portions of Defendants' substantial similarity argument probative of the claims, as an initial matter Defendants' argument relies on myopic analyses of isolated elements in the respective songs and fails to comport with this Circuit's applicable test. Because the hooks in both songs consist of protectable and unprotectable elements, the test in this Circuit is the "more discerning" test, under which the court attempts to extract unprotectable elements from consideration and ask whether protectable elements are substantially similar such that a reasonable jury could find them so. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995). Though Defendants appear to partially reference this test, Defendants neglect the following: the test contemplates the reality that creative works often consist mostly, or *entirely*, of individually unprotectable elements that, when creatively, originally arranged and compiled, make up a protectable work. *Walkie Check Prods., LLC v. ViacomCBS Inc.*, 2022 U.S. Dist. LEXIS 113357, at *22 (S.D.N.Y. June 27, 2022).[14] Indeed, it is settled that "[t]he Copyright Act protects original and minimally creative selection of preexisting, unprotected materials (such as facts) for inclusion in a work, as well as original and creative arrangement of those materials." *Matthew Bender & Co. v. West Pub. Co.*, 158 F.3d 674, 681 (2d Cir. 1998)(*citing Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir. 1984)). Neglecting this basic precept of the "more discerning" test, Defendants: (i) myopically assert non-protectability of the single word "America;" (ii) argue multiple songs have incorporated or been titled the phrase "Made in America" despite the absence of any allegations in the pleading asserting literal incorporation or infringement of that phrase; and (iii) conclude summarily that Plaintiff's claims concerning the "flows" used in the hooks are "based on [a] vocal style of performance of the chorus" that is a "non-composition element [] outside the scope" of Plaintiff's "compositional registration."[15] Defendants' point as to the protectability of the isolated word "America" fails to engage the "more discerning" inquiry. So does their point about the literal three-word phrase "Made in America," which is also unresponsive to any allegation raised in the Complaint. Moreover, Defendants' conclusory characterizations of "flow" are both inaccurate and inconsistent with their own arguments addressing the songs' flows.

Contrary to Defendants' argument, a "flow" is not a performance element; it is a *compositional* element. Flow refers to distinct vocal *rhythms* produced by metrical and articulative choices made by a given artist in composing a given set of rap lyrics. Distinct combinations, manipulations, and variances of such choices produce distinct vocal rhythm *i.e.*, flow.[16] Defendants seek to characterize flow as a *performance* element in conclusory fashion, but

---

[11] *See Griffin v. Sheeran*, 351 F. Supp. 3d 492, 500-01 (dissimilarity as matter of law inappropriate; defendant sought to "highlight the difference in 'total concept and feel' of songs" by raising "other elements – song structure, lyrics" not claimed to be similar by plaintiff, creating question "to be determined by trial rather than summarily.")

[12] The Pre-Motion correspondence is annexed hereto as **Exhibit E**.

[13] In foregoing the option to request full briefing (beyond the Court's instant six-page limit)(ECF No. 81), Plaintiff relied on the Court's substantive limiting of Defendants' brief to their Pre-Motion letters. Plaintiff is thus prejudiced by any points or arguments not in Defendants' Pre-Motion letters, including those described in this paragraph.

[14] *See also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-46 (1991)(originality does not require a large amount of creativity; "the requisite level of creativity is extremely low; even a slight amount will suffice.")

[15] *See* Def. Mem. at 3-4.

[16] Such choices include the placement of rhyming syllables; the placement of accented syllables; the degree of correspondence between syntactic units and measures; the number of syllables per beat; the amount of legato or staccato used; and the extent to which the onset of any syllable is earlier or later than the beat.

Defendants actually concede flow is a measure of compositional elements and choices in arguing purported "differences in the rhythm of the respective choruses." Def. Mem. at 4-5. To that end, Defendants argue rhythmic elements of vocal composition, such as comparative beats on which utterances occur and pick-up notes, albeit attempting to do so with nonsensical reference to "the *performance* technique of 'triplet *rhythm*.'" Def. Mem. 4-5 (emphasis added). Indeed, as expert musicologist Dr. Swanson explains, "[Hip-hop's] focus on *rhythm* over specific melodic pitches is known as an MC's (rapper's) 'flow' . . . 'The *rhythmic* style of MCing, or "*flows*," are among the *central* aspects of rap *production* and *reception*, and any discussion of rap *production* that takes musical poets seriously demands a vocabulary of flow.'" Compl. Ex. D at 10-13 (emphasis added). Dr. Swanson's report displays, analyzes, and describes quantifiable similarities between the *flows* at issue, and, based on those similarities, opines that the flows are similar to a degree likely beyond coincidence. *Id.* at 10-17. Counter to Defendants' assertions that flows are unprotectable, a flow constitutes an original element of rhythmic vocal composition—produced via creative selection, combination, manipulation, and variance of syllabic rhythm, placement, length, arrangement, and structure—and thus is itself protectable. *Hines*, 2021 U.S. Dist. LEXIS 107398 at *5 (in context of musical composition, copyright protects non-banal elements of *composition*, such as compilation or combination of "notes, rhythm, and harmony.")(internal quotations omitted)(emphasis added); *Pyatt v. Jean*, 2006 U.S. Dist. LEXIS 113149, at *15 (E.D.N.Y. Aug. 29, 2006)(motion to dismiss denied; plaintiff's hook combining common vocal elements was unique musical phrase to which defendant's hook was substantially similar in "style," "pitch sequence" despite non-identical vocal melody and rhythms.").[17]

Defendants also fail to dispose of the similarity question by relying on the assertion that Plaintiff's hook employs a flow "common to trap music." First, Defendants do not assert either song at issue is "trap music." Second, Defendants support their assertion by merely: (a) listing names of songs they claim "used" the same flow as the one at issue here; and (b) excerpting a Wikipedia page's description of "Trap Music," which solely addresses "lyrical themes," does not address flow or any other element of rhythm, and does not ostensibly fit the content of either song at issue. Def. Mem. at 4 n.5,7. Defendants accordingly fail to support their "trap music" theory of unoriginality with material sufficiently probative of unoriginality as a matter of law.[18]

Defendants further fail to dispose of the similarity question with their sixth, final substantial similarity argument consisting of little more than lengthy, non-substantive, arbitrary exposition on their subjective assessments of the lyrical "themes," nature, merits, and meanings of

---

[17] *See also Griffin v. Sheeran*, 351 F. Supp. 3d 492, 499-501 (S.D.N.Y. 2019)(noninfringement a question of fact; jury could find "several probative similarities" between songs, including elements of harmonic progression, harmonic rhythm, syncopation, and pitch sequence); *Levine v. McDonald's Corp*., 735 F. Supp. 92, 98 (S.D.N.Y. 1990)(defendants' arguments that "single elements, such as [] monotonic repetition of sixteenth notes, are unprotectable, [] have not convinced the Court that plaintiffs did not create a protectible work by combining various common elements so as to produce a unique [work]."); *Glover v. Austin*, 289 F. App'x 430, 431-32 (2d Cir. 2008)(similarity question of fact where record included unrebutted expert finding of significant similarity in "harmony, rhythm, melody," musical phrasing.); *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 87 (S.D.N.Y. 2015)(question of fact; defendants argued unoriginality based on prior songs containing the challenged rhythmic elements in combination, while plaintiff argued none of prior works combined elements the same way as his song.); *Consolidated Music Publishers, Inc. v. Ashley Publications, Inc*., 197 F. Supp. 17, 18 (S.D.N.Y. 1961).

[18] *See May v. Sony Music Entm't*, 399 F. Supp. 3d 169, 178 (S.D.N.Y. 2019)(commonality argument regarding vocal phrase was supported by items "obtained from websites" that "may well confirm defendants' contention. But that is a matter to be explored in discovery and ultimately considered on summary judgment . . . while the court may take [] notice [of these items], the existence of factual questions about their content militates against taking judicial notice for the purposes that defendants ascribe to them.").

5

the two songs. Defendants start by offering their take on lyrics and themes in Plaintiff's overall composition, a take equal parts self-serving, inaccurate, and needlessly deprecatory of Plaintiff and his creative expression. Defendants sum up Plaintiff's Composition as a "short, simple, self-aggrandizing proclamation" by a "boastful rapper," without any reference to how this opinion is probative of the similarity question under any applicable standard. To support their opinion, Defendants selectively quote isolated lyrics and frame them in terms of boastfulness.[19] This pattern extends improbably even to a line, "Heads up for the bullets that coming from the [police]," which Defendants arbitrarily fictionalize as a boast about dangers created by Plaintiff's "celebrity" and "swagger." Def. Mem. at 6. Summarizing the Infringing Composition, Defendants' review switches from trivializing to laudatory in tone. Defendants describe the Infringing Composition in terms like "complex," "cautionary," "provocative," "imperative," concluding that the Infringing Composition showcases "a narrator"—not a rapper—"observing the American landscape." *Id.* at 6-7. Defendants carry on this editorial review of the songs' respective lyrics and "themes" for five paragraphs without a cite to relevant authority, evidence, or law to be seen.[20] None of these unsupported, subjective, arbitrary characterizations are probative of dissimilarity as a matter of law. *Gaito*, 602 F.3d at 64.

## III.   **Plaintiff Adequately Pleads Access**

Defendants' argument that Plaintiff fails to plead access omits settled law in this Circuit recognizing an inverse relationship between access and probative similarity, and is resultingly without merit. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 56 (2d Cir. 2003). The stronger a plaintiff's evidence of probative similarity, the less evidence of access is required. *Glover*, 289 F. App'x 430, 432 (2d Cir. 2008). This inverse relationship reflects the courts' recognition that "direct evidence of copying is seldom available" to rightsholders. *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995). Thus, where two works are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access." *Jorgensen*, 351 F.3d at 56. Though *proving* striking similarity may be a "heavy" burden, "at the motion to dismiss stage, an allegation of striking similarity need only be plausible to survive." *Krisko v. Marvel Entm't, LLC*, 473 F. Supp. 3d 288, 305 (S.D.N.Y. 2020). To meet the plausibility standard for striking similarity at this stage, Plaintiff may rely on indirect evidence giving rise to a plausible inference of access, including evidence probative of Defendants' ability to access the copyrighted work, "similarities [] probative of copying between the works, and expert testimony." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001). Given the standard at this stage, Plaintiff has satisfied his burden with respect to striking similarity by (i) alleging plausible, specific areas of infringement; (ii) incorporating expert evidence probative of a striking degree of similarity between the works; and (iii) incorporating evidence probative of the listening's public's ability to find striking similarity between the works. *Krisko*, 473 F. Supp. at 304-09 (S.D.N.Y. 2020); *Repp v. Webber*, 132 F.3d 882, 890-91 (2d Cir. 1997).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants motion to dismiss and award such other and further relief as it deems just and proper.

---

[19] Boastfulness is a common hip-hop standard ascribable to lyrics in the Infringing Composition too. *See id.* at 7 (quoting "I'm so fitted…I'm on Gucci…I'm so pretty;" "I got the plug in Oaxaca;" "Look how I'm livin.'").

[20] Defendants conclude their brief by randomly footnoting an unexplained, arbitrary list of various songs. Defendants offer no characterization of these songs or provide any explanation for their relevance. Plaintiff submits that the Court should not take notice of or consider these songs in ruling on this Motion.

Dated: New York, New York
September 15, 2022

Respectfully submitted,

**AIDALA, BERTUNA & KAMINS, P.C.**
By:  /s/ Imran H. Ansari
Imran H. Ansari, Esq.
546 Fifth Avenue, 6th Floor
New York, NY 10036
T: (212) 486-0011
F: (212) 750-8297
iansari@aidalalaw.com

*and*

**MIAMI ENTERTAINMENT LAW GROUP**
By:  /s/ La'Shawn N. Thomas
La'Shawn N. Thomas, Esq.
261 North University Drive, Suite 500
Plantation, Florida 33324
T: (305) 417-6450
F: (305) 417-6452
LThomas@MiamiEntertainmentLawGroup.com
*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff Emelike Nwosuocha*

1 JA 159

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## SRu 1-301-922

**Effective Date of Registration:**
May 24, 2017

---

## Title
_____

Title of Work: Eleven: The Junior Senior Year

## Completion/Publication
_____

Year of Completion: 2017

## Author
_____

- Author: Emelike Wesley Nwosuocha
  Pseudonym: Kidd Wes
  Author Created: sound recording
  Citizen of: United States
  Domiciled in: United States
  Year Born: 1987
  Pseudonymous: Yes

## Copyright Claimant
_____

Copyright Claimant: Emelike Wesley Nwosuocha
2237 NE 42nd Ave, Homestead, FL, 33033, United States

## Rights and Permissions
_____

Name: Emelike Wesley Nwosuocha
Email: kiddwes@gmail.com
Telephone: (786)531-4022
Alt. Telephone: (786)525-8939
Address: 2237 NE 42nd Ave
Homestead, FL 33033 United States

## Certification
_____

Page 1 of 2

1 JA 161

**Registration #:** SRu001301922
**Service Request #:** 1-5219288781

Emelike Wesley Nwosuocha
2237 NE 42nd Ave
Homestead, FL 33033 United States

1 JA 162

Case 1:21-cv-04047-VM Document 92-3 Filed 09/09/22 Page 43 of 41

Type of Work:        Sound Recording

Registration Number / Date:
                     SRu001301922 / 2017-05-24

Application Title: Eleven: The Junior Senior Year.

Title:               Eleven: The Junior Senior Year.

Description:         Electronic file (eService)

Copyright Claimant:
                     Emelike Wesley Nwosuocha, 1987-   .

Date of Creation: 2017

Authorship on Application:
                     Kidd Wes, pseud. of Emelike Wesley Nwosuocha, 1987-
                       (author of pseudonymous work); Domicile: United States;
                       Citizenship: United States. Authorship: sound recording.

Rights and Permissions:
                     Emelike Wesley Nwosuocha, 2237 NE 42nd Ave, Homestead, FL,
                       33033, United States, (786) 531-4022, (786) 525-8939,
                       kiddwes@gmail.com

Copyright Note:      Basis for Registration: Unpublished collection

Names:               Nwosuocha, Emelike Wesley, 1987-
                     Wes, Kidd, pseud., 1987-

===============================================================================

1 JA 163

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
EMELIKE NWOSUOCHA,                                  :
                                                    :
                        Plaintiff,                  :    1:21-cv-04047 (VM)
                                                    :
            v.                                      :
                                                    :
DONALD MCKINLEY GLOVER, II, et al.,                 :
                                                    :
                        Defendants.                 :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT

JONATHAN D. DAVIS, P.C.
1 Rockefeller Plaza, Suite 1712
New York, New York 10020
(212) 687-5464

*Attorneys for Defendants Donald McKinley Glover, II, Jefferey Lamar Williams, Kobalt Music*
*Publishing America, Inc. d/b/a Songs of Kobalt Music Publishing, Sony Music Entertainment,*
*Young Stoner Life Publishing, LLC, 300 Entertainment LLC (f//k/a Theory Entertainment LLC*
*d/b/a 300 Entertainment), Atlantic Recording Corporation, and Warner-Tamerlane Publishing Corp.*

PRYOR CASHMAN LLP
7 Times Square
New York, NY 10036
(212) 326-0188
*Attorneys for Defendants Songs of Universal, Inc.*

QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
*Attorneys for Defendant Roc Nation Publishing LLC d/b/a Songs of Roc Nation*

Defendants respectfully submit this reply memorandum in further support of their motion to dismiss the Complaint. Plaintiff's opposition highlights the Complaint's weaknesses by making belated and immaterial arguments while glossing over those that matter. Plaintiff tries to salvage his deficient copyright registration by invoking, for the first time, a purported "safe harbor" that does not apply. Plaintiff fails to explain how the Complaint alleges "access" or "substantial similarity." He argues "striking similarity" as an alternative to "access," but does not even sufficiently allege "substantial similarity," or explain how he could meet that more stringent test. He also does not explain what Defendants copied, or how it was protectable or "substantially similar." The Complaint should be dismissed.

## I.    Plaintiff Failed to Register For Copyright Before Filing Suit

Registration is a prerequisite to file a copyright infringement claim, 17 U.S.C. § 411(a). Plaintiff's registration is for a sound recording copyright, not a composition. (Dkt. 92 at 2; Dkt. 91 at 1-2.) He admits and tries to excuse the lack of registration by relying on *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941 (2022). But *Unicolors* is inapposite. It recognizes a "safe harbor" that may "save [an inaccurate] registration from invalidation," which applies only if the applicant "lack[s] knowledge" of an "inaccuracy" that is immaterial. *Id.* (citing 17 U.S.C. § 411(b)(1)). The issue here, however, is not invalidation of Plaintiff's registration, but simply, as the Supreme Court confirmed in *Unicolors*, that "registration" is "a prerequisite for bringing a 'civil action for infringement[,]'" and that "the application for registration should be accurate." *Id.* at 944. Because "there was no valid copyright registration" here, this Court should "dismiss[] the infringement claim." *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 230 (S.D.N.Y. 2012).

But even if the issue were invalidation, rather than registration, Plaintiff does not and cannot allege that he lacked knowledge that his registration did not cover the musical composition. (Dkt. 1 at 2.) Form SR's "LINE-BY-LINE INSTRUCTIONS" require an applicant to include the compositional and compilational description Plaintiff omitted. (Dkt. 72-1 at 10-11, 15, 17; Copyright Office Circular No. 56A at 3.) Plaintiff disregarded or ignored those instructions. Plaintiff was also equally aware that Plaintiff's Recording, which embodied Plaintiff's Composition, garnered hundreds of thousands of views after he published it on the Internet, even though his copyright registration mischaracterized Plaintiff's Recording as "unpublished." (*Id.* at 11-12.) Plaintiff cannot explain these errors. (Dkt. 92 at 1-2.) But again, unlike *Unicolors*, the issue here is registration, not invalidation of a registration. Plaintiff also fails to acknowledge that, even if this were a *Unicolors* issue, given the registration requirement for commencing infringement actions, the deficiencies above are not "immaterial" to excuse his defectively prepared and filed registration. (*Id.*) For these reasons, this Court should reject Plaintiff's belated effort to invoke the safe harbor.

## II.    Plaintiff Has Not Pled Actionable Copying

The Complaint's deficient allegations of copying supply an independent basis for dismissal. (Dkt. 92 at 2-6.) Actual copying requires Plaintiff to allege *both*: (1) access, and (2) substantial similarities between protectable elements of the works at issue. *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020). Plaintiff sidesteps both requirements.

1

### A.  Plaintiff Fails to Allege Access

Plaintiff relegates his access arguments to a paragraph at the end of his filing where he simply dodges responding to his failure to sufficiently allege access, recognizing that his Internet-access theory is not plausible. (Dkt. 92 at 6.) Instead, Plaintiff belatedly contends that Plaintiff's Composition and the Challenged Composition are supposedly "strikingly similar," so that no proof of access is needed to sustain the Complaint. (*Id.*) But, as discussed below, the allegation of "striking similarity" is not plausible, and is not consistently alleged in the Complaint.[1] (Dkt. 91 at 1 n.1.) As explained below, under the "ordinary observer" test – where a district court must compare the songs' "total concept and overall feel" – the songs at issue lack "substantial similarity" – let alone "striking similarity." *Edwards v. Raymond*, 22 F. Supp. 3d 293, 297-301 (S.D.N.Y. 2014). No lay person would find them "strikingly similar," which is why the Complaint is conclusory and unsupportable. (Dkt. 1 ¶¶ 41-42.) Importantly, the compositions at issue control the analysis, not labels arbitrarily applied by Plaintiff, his counsel, or his purported music expert. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (stating "works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings"). The Complaint is dismissible for this reason.

### B.  The Works Are Not "Substantially Similar"

Defendants' motion detailed that virtually nothing about the two works is alike and any overlap is attributable to unprotectable elements. (Dkt. 91 at 3-5.) Defendants methodically addressed each component – the lyrics, the "flow," the instrumentation, the production, structure, and themes – and demonstrated that the works are entirely dissimilar. (*Id.*) Unable to respond, Plaintiff instead uses labels, calling the analysis a "muddled and inconsistent cacophony of points." (Dkt. 92 at 3-4.) Plaintiff's authorities confirm that "a district court may resolve the question of substantial similarity … on a Rule 12(b)(6) motion." *Hines v. W Chappell Music Corp.*, 2021 WL 2333621, at *3 (S.D.N.Y. June 8, 2021). The Court should do just that and dismiss the Complaint.

Plaintiff still cannot identify what is supposedly similar between the works. The Complaint's vague references to "flow," "theme," "content" and "structure" (Dkt. 1 ¶¶ 39-41) are non-specific, and Plaintiff's opposition is unilluminating. (Dkt. 91 at 3-5.) Plaintiff has failed to articulate any coherent theory of infringement. (Dkt. 92 at 2-6; Dkt. 1 *passim*.) Instead, Plaintiff rewrites his Complaint, arguing "the crux" of his claim is "infringement between the hooks in Plaintiff's Composition" (Dkt. 92 at 3), whereas the Complaint focused on the "chorus." Beyond switching theories, Plaintiff nowhere explains *what* about "the hooks" is infringed. (Dkt. 1 ¶ 40.) Plaintiff later references "flow" (Dkt. 92 at 4), claiming Defendants copied Plaintiff's "distinct vocal rhythms produced by metrical and articulative choices" in the "composi[tion]." (*Id.* at 4.) Whatever Plaintiff may mean by this phrase, he fails to meaningfully defend the Complaint's deficient allegations about "flow." Those allegations fail for three independent reasons: (1) Plaintiff's performance-based, non-compositional element is outside a compositional copyright

---

[1] Plaintiff's invocation of an unpleaded "striking similarity" claim to substitute for access cannot coexist with his invention of an unpleaded "selection and arrangement" claim (which requires near identity of the unprotectable elements selected and arranged and numerosity of the elements, which are not pleaded or present). *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1074 (9th Cir. 2020), *cert denied*, 141 S. Ct. 453 (2020). Plaintiff is also wrong that the Second Circuit recognizes the "inverse relationship" rule, and the Ninth Circuit abandoned it in the *Skidmore* case.

1 JA 166

(even if one were registered); (2) Glover's "flow" is actually different than Plaintiff's Composition and performed differently within the Challenged Composition; and (3) the ubiquitous use of "triplet flow" removes it from copyright protection. (Dkt. 91 at 3-5.)

As to the first point, Plaintiff claims his "flow" is not performance-based because it is "rhythmic" (Dkt. 92 at 4-5), but the rhythm occurs *in his performance*. Plaintiff merely assumes, without citation to the Complaint, a supporting document, or any authority, that these rhythms have a compositional component. Secondly, Plaintiff ignores the differences between the parties' respective "flows" detailed in the motion and relies, instead, on his conclusory assertion that there are "quantifiable similarities." (*Id.* at 5.) Finally, the "flow" alleged in the Complaint merely involves triplet notes – the "one-two-three" cadence that one hears in countless songs. *See, e.g.*, (Dkt. 1 ¶¶ 41, 49) (alleging "similarities" in "rhythmic triplet flow"); (Dkt. 1 Ex. D at 100) (expert opining that the "artists employ total triplet[s]"); (Dkt. 91 at 4 n.7) (collecting third-party song examples). This "general rhythmic style" is unprotectable. *Rose v. Hewson*, 2018 WL 626350, at *7 (S.D.N.Y. Jan. 30, 2018); (Dkt. 92 at 4.) Plaintiff feigns ignorance why Defendants offer multiple "triplet flow" song examples, and then he purports to manufacture originality by trumped up, fancy-worded descriptions to make a common music feature appear more complex than its common roots. (Dkt. 92 at 5) (characterizing "flow" as a "creative selection, combination, manipulation, and variance of syllabic rhythm, placement, length, arrangement, and structure").[2]

Because he cannot show that the works are "substantially similar," Plaintiff rotely cites his music expert's opinion. (Dkt. 92 at 3, 5.) But even his expert cannot provide a cogent explanation. Remarkably, Plaintiff cites authority undermining his purported opinion evidence: "expert … testimony is of questionable value in predicting whether a reasonable juror would find two works similar." *Pyatt*, 2006 WL 8440910, at *5. Even so, this Court can decide by its own aural comparison of the two works that it is not a close call to definitively conclude that they share no protectable elements. Thus, the opinion of an expert goes from "questionable" to valueless here because the expert does not and cannot meaningfully support his own opinion.[3]

Accordingly, the Complaint should be dismissed.

---

[2] The cases Plaintiff cite are distinguishable because, unlike here, they involve copying of a unique "combination" of "lyrics and melody," *Pyatt v. Jean*, 2006 WL 8440910, at *4 (E.D.N.Y. Aug. 29, 2006); *accord Glover v. Austin*, 289 F. App'x 430 (2d Cir. 2008); *Griffin v. Sheeran*, 351 F. Supp. 3d 492 (S.D.N.Y. 2019); *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78 (S.D.N.Y. 2015); *Levine v. McDonald's Corp.*, 735 F. Supp. 92 (S.D.N.Y. 1990); or a wholly original melody or presentation, *see, e.g.*, *Hines*, 2021 WL 2333621; *Consol. Music Pub., Inc. v. Ashley Pubs., Inc.*, 197 F. Supp. 17, 18 (S.D.N.Y. 1961). (Dkt. 92 at 5 and n.17). Plaintiff tries to rewrite the Complaint by his opposition to this motion to assert a "selection and arrangement" claim, even though none is alleged. *See In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *15 (S.D.N.Y. Mar. 28, 2018) ("Plaintiff's new-found theory of liability, raised for the first time in their opposition to Defendants' motion to dismiss, comes too late.").

[3] In six years on major streaming services, where it garnered hundreds of thousands of impressions, only three unidentified, unverified internet commenters purport to link Plaintiff's Composition to the Challenged Composition. (Dkt. 1 Ex. C.) Such *de minimis* hearsay should be rejected.

3

Dated: September 23, 2022

JONATHAN D. DAVIS, P.C.

By:     /s/ Jonathan D. Davis
        Jonathan D. Davis

PRYOR CASHMAN LLP

By:     /s/ Ilene Farkas
        Ilene Farkas

QUINN EMANUEL URQUHART
& SULLIVAN LLP

By:     /s/ Alex Spiro
        Alex Spiro
        Paul B. Maslo

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____        │
│ DATE FILED: 3/24/2023            │
└──────────────────────────────────┘
```

---

EMELIKE NWOSUOCHA,

                    Plaintiff,

          - against -

DONALD MCKINLEY GLOVER, II,
JEFFEREY LAMAR WILLIAMS, LUDWIG
EMIL TOMAS GÖRANSSON, KOBALT
MUSIC PUBLISHING AMERICA, INC. d/b/a/
SONGS OF KOBALT MUSIC PUBLISHING,
RCA RECORDS, SONY MUSIC
ENTERTAINMENT, YOUNG STONER LIFE
PUBLISHING LLC, THEORY
ENTERTAINMENT LLC d/b/a 300
ENTERTAINMENT, ATLANTIC RECORDING
CORPORATION, ROC NATION PUBLISHING
LLC d/b/a SONGS OF ROC NATION, SONGS
OF UNIVERSAL, INC., WARNER MUSIC
GROUP CORP., and WARNER-TAMERLANE
PUBLISHING CORP.,

                    Defendants.

---

21 Civ. 04047(VM)

**DECISION AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

Plaintiff Emelike Nwosuocha ("Nwosuocha") brings this action against defendants Donald McKinley Glover, II ("Glover"), Jeffrey Lamar Williams ("Williams"), Ludwig Emil Tomas Göransson ("Göransson"), Kobalt Music Publishing America, Inc. d/b/a/ Songs of Kobalt Music Publishing ("Kobalt Music"), RCA Records, Sony Music Entertainment ("Sony Music"), Young Stoner Life Publishing, LLC ("YSL"), 300 Entertainment LLC f/k/a Theory Entertainment LLC d/b/a 300 Entertainment ("300 Entertainment"), Atlantic Recording

Corporation ("Atlantic"), Roc Nation Publishing d/b/a Songs of Roc Nation ("Roc Nation"), Songs of Universal, Inc. ("Universal"), Warner Music Group Corp., and Warner-Tamerlane Publishing Corp. ("Warner-Tamerlane") (collectively, "Defendants").[1] The complaint alleges that Defendants engaged in direct, contributory, and vicarious copyright infringement of Nwosuocha's copyright in his song titled, "Made in America," via the song titled "This is America," in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq*. (See "Complaint," Dkt. No. 1.)

Now pending before the Court is Defendants' Joint Motion to Dismiss Nwosuocha's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See "Motion," Dkt. No. 93.) For the reasons set forth below, the Motion is **GRANTED**, and Nwosuocha's Complaint is dismissed with prejudice to leave to amend.

---

[1] Defendants RCA Records and Warner Music Group Corp. were voluntarily dismissed without prejudice from this action on April 28, 2022. (See Dkt. No. 78.) They are therefore excluded from the definition of "Defendants."

# I.   BACKGROUND

A.   FACTS[2]

1.   Nwosuocha Writes "Made in America" and Obtains a Sound Recording Copyright Registration

In or about early September 2016, Nwosuocha, who performs under the pseudonym "Kidd Wes," wrote the song titled "Made in America" ("Plaintiff's Composition"). On September 11, 2016, Nwosuocha uploaded Plaintiff's Composition to Soundcloud, an online music streaming platform, where it was available to the public for listening. Nwosuocha uploaded a music video of Plaintiff's Composition to YouTube on November 9, 2016, where it was also available to the public to be viewed and listened to. Nwosuocha registered his then unpublished album, "Eleven: The Junior Senior Year," which included Plaintiff's Composition, with the United States Copyright Office (the "Copyright Office") on May 24, 2017. Nwosuocha was then issued a Sound Recording registration, United States Copyright Registration No. SRu 1-301-922. (See Dkt. No. 1-2.) Nwosuocha subsequently published Plaintiff's Composition as a purchasable lead single to "Eleven: The Junior Senior Year" on June 8, 2017.

---

[2] Except as otherwise noted, the following background derives from the Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II below.

1 JA 171

2.   Glover, Williams, and Göransson Write and Release
     "This is America"

In 2018, Glover, Williams, and Göransson wrote the song titled "This is America" ("the Challenged Composition"). The Challenged Composition was publicly released on May 6, 2018, when Glover performed the song while hosting the television show Saturday Night Live. At or around the same time, a music video of the Challenged Composition was uploaded and made publicly available on Glover's official YouTube channel, and the song was otherwise made available for streaming and purchase. Kobalt Music, RCA Records, Sony Music, YSL, 300 Entertainment, Atlantic, Roc Nation, Universal, Warner Music Group Corp., and Warner-Tamerlane, as publishers and distributers of the Challenged Composition, facilitated and assisted with its distribution, promotion, and sale.

The Challenged Composition was an immediate and continuing success. The song received critical acclaim, including winning the 2019 Grammy Award for Record of the Year. Commercially, the Challenged Composition debuted at number one on the Billboard Hot 100 chart after selling 78,000 copies and garnering 65.3 million streams in the United States within the first week of its release. The Challenged Composition would go on to have 3,000,000 certified sales in the United States alone. Glover also went on the international

4

"This is America Tour," and performed the Challenged Composition between thirty and thirty-five times at concerts throughout the world.

### 3. Nwosuocha Notifies Defendants of "This is America's" Infringement on "Made in America"

Nwosuocha's counsel sent a letter to Glover, Williams, Göransson, Sony Music, and RCA Records, on December 7, 2020, objecting to the Challenged Composition's infringement on Plaintiff's Composition. Nwosuocha's counsel received only a non-substantive response from Glover's counsel, who asked for materials supporting Nwosuocha's claims. Nwosuocha's counsel sent Glover's counsel a cease-and desist letter on February 16, 2021, after Glover demonstrated no intent to cure or mitigate the Challenged Composition's alleged infringement.

B.   PROCEDURAL HISTORY

Nwosuocha initiated this action on May 6, 2021. (See Complaint.) Defendants then wrote a pre-motion letter to Plaintiff in anticipation of filing a motion to dismiss. (See Dkt. No. 72-1.) The parties exchanged three further letters, after which Defendants informed the Court that the parties had concluded their pre-motion exchange pursuant to the Section II.B.2 of the Court's Individual Practices and had failed to avoid motion practice at this point. (See Dkt. Nos. 72, 72-1.)

1 JA 173

The parties subsequently opted to file supplemental briefing, including a joint filing by Defendants. (See Dkt. Nos. 81-83, 86-88.) Accordingly, Defendants filed a joint Motion to Dismiss the Complaint (the "Motion"), with an accompanying Memorandum of Law in Support (the "Memorandum"). (See Dkt. Nos. 93-95.) Nwosuocha filed his Memorandum of Law in Opposition to the Motion (the "Opposition"), which was followed by Defendants' joint Reply Memorandum of Law in Support of the Motion (the "Reply"). (See Dkt. Nos. 96-97.) Nwosuocha subsequently requested leave to file a sur-reply, which the Court denied. (See Dkt. Nos. 98-99.)

## II.  LEGAL STANDARD

A. MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations

6

sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013).

In this context, the Court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). A district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted). The requirement that a court accept the factual allegations in the complaint as true

1 JA 175

does not extend to legal conclusions. See Iqbal, 556 U.S. at
678.

B. COPYRIGHT INFRINGEMENT

Under the Copyright Act, "no civil action for
infringement of the copyright in any United States work shall
be instituted until preregistration or registration of the
copyright claim has been made in accordance with [Title 17,
Copyrights.]" 17 U.S.C. § 411(a). Specifically, a potential
claimant must "apply for registration and receive the
Copyright Office's decision on [the] application before
instituting suit." Fourth Estate Pub. Benefit Corp. v. Wall-
Street.com, LLC, 139 S. Ct. 881, 891 (2019).

"The mere fact that a work is copyrighted does not mean
that every element of the work may be protected," rather, the
"law regulates only the copying of the plaintiff's *original
expression*." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499
U.S. 340, 348 (1991); see McDonald v. West, 138 F. Supp. 3d
448, 454 (S.D.N.Y. 2015) aff'd 669 F. App'x 59 (2d Cir. 2016)
(emphasis in original). To be original means that "the work
was independently created by the author (as opposed to copied
from other works), and that it possess at least some minimal
degree of creativity. . . no matter how crude, humble or
obvious it might be." Feist, 499 U.S. at 345 (internal

8

quotation marks omitted). Copyright protection is limited in this way because the law recognizes that "all creative works draw on the common wellspring that is the public domain." Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 132 (2d Cir. 2003).

Thus, "copyright protects only that which is original," and "does not protect ideas, only their expression." McDonald, 138 F. Supp. 3d at 455. "This principle excludes from copyright the raw materials of art, like colors, letters, descriptive facts, and standard geometric forms, as well as previous creative works that have fallen into the public domain," and "[i]t likewise excludes the basic building blocks of music, including tempo and individual notes." Id. at 454 (collecting cases). Further, "words and short phrases, including titles and slogans, rarely if ever exhibit sufficient originality to warrant copyright protection," and "[l]onger phrases are also not protectable if they are common or cliché." Id. Similarly, "common rhythms, song structures, and harmonic progressions are not protected" and "[t]hemes fall into the category of uncopyrightable ideas." Id. at 454-55. Still, "a work may be copyrightable even though it is entirely a compilation of unprotectible elements," because "the original way in which the author has selected,

9

1 JA 177

coordinated, and arranged the elements of his or her work" is protectible. Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1003-04 (2d Cir. 1995) (internal quotation marks omitted).

A district court may dismiss a copyright infringement claim on a Rule 12(b)(6) motion "either when the similarity concerns only noncopyrightable elements of plaintiff['s] work, or when no reasonable trier of fact could find the works substantially similar." Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986); see also Peter F. Gaito Architecture, LLC v. Simone Development Corp., 602 F.3d 57, 64 (2d Cir. 2010)). "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." Peter F. Gaito, 602 F.3d at 64 (internal quotation marks and citations omitted). Accordingly, "no discovery or fact-finding is typically necessary, because what is required is only a visual [or aural] comparison of the works." Id. (internal quotations marks omitted).

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them,

10

1 JA 178

and regard the aesthetic appeal as the same." Id. at 66 (internal quotation marks and alterations in original omitted). In other words, the test considers "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Id. (internal quotation marks omitted). Where the infringement of music is at issue, the ordinary observer test considers whether the "defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997) (alteration in original) (quoting Arnstein v. Porter, 154 F.2d 464, 473 (2d Cir. 1946)).

If the works at issue "have both protectible and unprotectible elements, [the] analysis must be more discerning, and [the court] instead must attempt to extract the unprotectible elements from [] consideration and ask whether the protectible elements, standing alone, are substantially similar." Peter F. Gaito, 602 F.3d at 66 (internal quotation marks and citations omitted).

Under either analysis, however, a court is not "required to dissect the works into their separate components, and

11

1 JA 179

compare only those elements which are in themselves copyrightable." Id. (alteration omitted). "Instead, [a court is] principally guided by comparing the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by [the court's] good [ears] and common sense." Id. (internal quotation marks and citations omitted). Thus, a court "must make sure to engage in a holistic comparison of the two works, looking for substantial similarity that is apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of unprotectible components—are considered in relation to one another." McDonald, 138 F. Supp. at 456 (quoting Peter F. Gaito, 602 F.3d at 66) (internal quotation marks and alterations omitted).

### III. **DISCUSSION**

Defendants move to dismiss Nwosuocha's sole claim that Defendants engaged in direct, contributory, and vicarious copyright infringement of Nwosuocha's copyright in Plaintiff's Composition, via the Challenged Composition, in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq*. For the reasons explained below, the Court grants Defendants'

1 JA 180

Motion and dismisses the Complaint with prejudice to leave to amend.

A.  COPYRIGHT REGISTRATION

The Complaint alleges that "Nwosuocha is the sole and exclusive owner of the U.S. Copyright in all rights, titles, and interests in the Copyrighted Work, 'Made in America,'" and that the "Infringing Work[, "This is America,"] copies quantitatively and qualitatively distinct, important, and recognizable portions and/or elements of the Copyrighted Work." (See Complaint ¶¶ 75, 80.) Specifically, the Complaint alleges that the

> distinctive flow employed in Defendant Glover's recorded performance of the Infringing Work's chorus, which is the musical centerpiece of the Infringing Work and forms the namesake for the Infringing Work's song title, is unmistakably similar, if not practically identical, to the distinct and unique flow that was employed by Nwosuocha in recording his vocal performance of his rapping of the hook to his Copyrighted Work,

and "the lyrical theme, content, and structure of the identically-performed choruses are also glaringly similar." (Id. ¶¶ 39-40.) Accordingly, the "Defendants' unauthorized reproduction, distribution, public performance, display, creation of derivative works, and other exploitation and/or misappropriation of the Copyrighted Work infringes Nwosuocha's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 et seq." (Id. ¶ 76.)

13

1 JA 181

Defendants argue that Nwosuocha's copyright claim fails as a matter of law because Nwosuocha failed to register a copyright for his composition of Plaintiff's Composition (Memorandum at 1-2.) Defendants note that Nwosuocha's Certificate of Registration is for a sound recording of Plaintiff's Composition, not for its musical composition, meaning he cannot assert a copyright claim that the composition has been infringed. (Id.; Dkt. No. 1-2.)

Nwosuocha responds that he is able to maintain a case because the Copyright Office permits the submission of a single recording to register copyrights in the sound recordings and compositions of the submission, and that he "used one *sound recording* registration to register his collective work of sound recordings and underlying compositions, filed the registration as sole claimant *and* sole author of the collective work, and effectuated a valid registration for the collective work extending to all musical compositions therein, including for 'Made in America.'" (See Opposition at 1-2.) Nwosuocha argues further that under the Supreme Court's holding in Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., even if his registration contains inaccurate information, presumably such as not identifying Nwosuocha as creating the composition as well as the sound recording, the

14

registration is nonetheless valid because Nwosuocha did not know of the inaccuracies. 142 S. Ct. 941, 945 (2022); (see Opposition at 1-2.)

The Court finds that Nwosuocha's copyright claim fails as a matter of law because Nwosuocha does not possess a copyright registration for the musical composition of Plaintiff's Composition, only a registration for a sound recording of the song. As other courts in this District have explained, "[c]opyright protection extends to two distinct aspects of music: (1) the musical composition, which is itself usually composed of two distinct aspects—music and lyrics; and (2) the physical embodiment of a particular performance of the musical composition, usually in the form of a master recording." Pickett v. Migos Touring, Inc., 420 F. Supp. 3d 197, 205 (S.D.N.Y. 2019) (quoting Ulloa v. Universal Music & Video Distribution Corp., 303 F. Supp. 2d 409, 412 (S.D.N.Y. 2004)). Here, the Complaint does not allege that Defendants incorporated "the physical embodiment" or sound recording of Plaintiff's Composition. Rather, the Complaint claims that Defendants infringed on the composition of Plaintiff's Composition, including the "lyrical theme, content, and structure," elements that go to the composition of the songs. (Complaint ¶¶ 39-40.)

1 JA 183

Nwosuocha's arguments that he possesses a copyright registration for the composition of Plaintiff's Composition are without merit. First, Nwosuocha claims that he "used one *sound recording* registration to register his collective work of sound recordings and underlying compositions . . . including for [Plaintiff's Composition]." (See Opposition at 1-2 (emphasis in original)). Nwosuocha is correct that a single recording may be submitted to the Copyright Office to register for both a sound recording registration and a musical composition registration provided that "the composition and the sound recording are embodied in the same phonorecord, (2) the author is the only performer featured in the recording, and (3) the author is the only copyright owner of both works." (See Copyright Office Circular 56, Dkt. No. 96-2.) To obtain both registrations, however, qualified applicants must mark or detail in their applications that they are seeking both types of copyright. (See id.)

For instance, if applicants use Form SR, which "should be used when the copyright claim is limited to the sound recording itself," but "may also be used where the same copyright claimant is seeking simultaneous registration of the underlying musical, dramatic, or literary work embodied in the phonorecord," they must "include the appropriate

16

1 JA 184

authorship terms for reach author, for example 'words,' 'music,' 'arrangement of music,' or 'text.'" (See Dkt. No. 96-5.)

That the Copyright Office allows one submission to register for both a sound recording registration and a musical composition registration, however, does not mean that Nwosuocha's submission did so. Indeed, Nwosuocha's Certificate of Registration is only for a sound recording. (See Dkt. No. 1-2.) Thus, Nwosuocha did not obtain both a sound recording and a compositional copyright registration with a single registration submission and lacks the copyright registration necessary to his claims.

Second, Unicolors does not alter Nwosuocha's failure to register a copyright for the composition of Plaintiff's Composition. Unicolors addressed whether a certificate of registration would remain valid despite containing inaccurate information. 142 S. Ct. at 945. Here, there is no dispute about the validity of Nwosuocha's sound recording registration and Unicolors does not otherwise support Nwosuocha's attempt to retroactively expand the scope of his existing copyright registration. See id. Accordingly, dismissal of Nwosuocha's Complaint is warranted.

17

1 JA 185

Regarding the scope of such dismissal, Nwosuocha's failure to register a compositional copyright prior to filing suit cannot be cured through amendment. See Malibu Media, LLC v. Doe, No. 18 Civ. 10956, 2019 WL 1454317, at *2-3 (S.D.N.Y. Apr. 2, 2019) (explaining how post-registration amendment and relation-back would make a "meaningless formality" of the requirement under 17 U.S.C. Section 411(a) that the copyright registration be in place before a plaintiff's bringing suit for infringement). As noted previously, Section 411(a) prohibits a civil action for copyright infringement from being "instituted until preregistration or registration of the copyright has been made in accordance with [Title 17]." 17 U.S.C. § 411(a). An action is "instituted by the origination of formal proceedings, such as the filing of an initial complaint." United States ex rel. Wood v. Allergan, Inc., 899 F.3d 163, 172 (2d Cir. 2018). Thus, Nwosuocha cannot cure this defect by now obtaining a compositional registration and amending the complaint.

B. COPYRIGHT PROTECTION AND SUBSTANTIAL SIMILARITY

Even if Nwosuocha had a copyright registration for the composition of Plaintiff's Composition, however, dismissal would be warranted here because the elements of Plaintiff's Composition purportedly infringed upon are insufficiently

18

original to warrant protection, or because they are not
substantially similar to the Challenged Composition.

As touched upon previously, the Complaint alleges that
the

> distinct and unique vocal cadence, delivery, rhythm,
> timing, phrasing, meter and/or pattern," or "flow,"
> "employed in Donald Glover's recorded performance of the
> Infringing Work's chorus, which is the musical
> centerpiece of the Infringing Work and forms the
> namesake for the Infringing Work's song title, is
> unmistakably substantially similar, if not practically
> identical, to the distinct and unique flow that was
> employed by Nwosuocha in recording his vocal performance
> of his rapping of the hook to his Copyrighted Work.

(Complaint ¶ 39.) The Complaint further alleges that "the
lyrical theme, content, and structure of the identically-
performed choruses[3] are also glaringly similar," specifically
highlighting the following song portions:

| Made in America | This is America |
|---|---|
| [I'm] Made in America<br>Flex on the radio<br>Made me a terrorist<br>Pessimistic n***as<br>You should just cherish this | This is America<br>Guns in my area<br>I got the strap<br>I gotta carry 'em<br>- or -<br>This is America<br>Don't catch you slippin' now<br>Don't catch you slippin' now<br>Look what I'm whippin' now |

---

[3] The exact portion of the songs that constitute the referenced "chorus"
or "hook" are not specified, and the Complaint uses these terms
inconsistently. The terms first refer solely to the titular lyrics of the
songs, but then are used to refer to a larger portion of each song, with
the hook or the chorus having a "central lyrical refrain" for instance.
(Complaint ¶¶ 39, 40.)

19

1 JA 187

(Id. ¶ 40.)[4]

Additionally, the parties agree, and the Court concurs, that the Complaint does not allege infringement of the "overall structure of the songs, order, and number of verse and chorus sections," or the "instrumentation," "musical notes," or "musical production."[5] (See Opposition at 2-6; Memorandum at 4-6; Complaint ¶¶ 39-40.)

The Court finds that the "distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern" or "flow" as well as the "lyrical theme" and "structure" of the chorus in Plaintiff's Composition lack sufficient originality alone, or as combined, to merit compositional copyright protection or are categorically ineligible for copyright protection. (Complaint ¶ 39.) For instance, Nwosuocha asserts copyright over the "lyrical theme" of Plaintiff's Composition, but a lyrical theme is simply an idea, and ideas are not protectable. Moreover, the

---

[4] The Court notes that the lyrics for Plaintiff's Composition in the Complaint and the musicologist report attached to the Complaint are notably incomplete. (See Dkt. Nos. 1, 1-4.) Nwosuocha says the word "I'm" before saying "made in America," and thus the lyrics should be presented as "I'm made in America." The Court further notes that the musicologist report entirely failed to consider or analyze any prior art, such as other songs that use "total triplet flow." (See Dkt. No. 1-4.)

[5] As referenced in the parties' briefing, "musical production" here refers to the selection and use of instruments, singing, rapping, and background vocals, including choir and samples. (See Memorandum at 5; Opposition at 3-4 (referring to this as "overall melodic 'impression'").)

1 JA 188

idea of a boastful rapper is certainly not original to Nwosuocha.

The Court further finds that although the "content" of the chorus of Plaintiff's Composition, which the Court understands to mean the lyrics, bears sufficient originality to merit compositional protection, a cursory comparison with the Challenged Composition reveals that the content of the choruses is entirely different and not substantially similar.[6] As noted previously, the "question of substantial similarity is by no means exclusively reserved for resolution by a jury" and the Second Circuit has "repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Peter F. Gaito, 602 F.3d at 63. Here, no reasonable jury, properly instructed, could find that the lyrics of the chorus of Plaintiff's Composition and the chorus of the Challenged Composition are substantially similar.

---

[6] This holds true under either observer standard or when assessing the songs holistically.

21

1 JA 189

Returning to the songs, as Defendants detail in their Memorandum, "Plaintiff's Composition is a short, simple, self-aggrandizing proclamation with Plaintiff stating repeatedly: 'I'm made in America,' [] alert[ing] rappers of Plaintiff's arrival [] and his success," "attribut[ing] his success, and the envy it creates to his record sales" but "recogniz[ing] his celebrity and swagger pose dangers from the" police. (Memorandum at 5.) By contrast, "the Challenged Composition is not about a rapper, but" "addresses contemporary America, what America means and how it is perceived," and is "anchored by the common phrase 'This is America.'" (Id.)

More could be said on the ways these songs differ, but no more airtime is needed to resolve this case.

### IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion filed by defendants Donald McKinley Glover, II, Jeffrey Lamar Williams, Ludwig Emil Tomas Göransson, Kobalt Music Publishing America, Inc. d/b/a/ Songs of Kobalt Music Publishing, Sony Music Entertainment, Young Stoner Life Publishing, LLC, 300 Entertainment LLC f/k/a Theory Entertainment LLC d/b/a 300 Entertainment, Atlantic Recording Corporation, Roc Nation Publishing d/b/a

22

1 JA 190

Songs of Roc Nation, Songs of Universal, Inc., and Warner-Tamerlane Publishing Corp. to dismiss the Complaint of plaintiff Emelike Nwosuocha (Dkt. No. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED** with prejudice to leave to amend. The Clerk of Court is respectfully directed to terminate the Motion to Dismiss at Dkt. No. 93 as well as any other pending motions and close the case.

**SO ORDERED.**

Dated:      New York, New York
            24 March 2023

_____
                         Victor Marrero
                            U.S.D.J.

23

1 JA 191

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
EMELIKE NWOSUOCHA,

<div align="center">Plaintiff,</div>

       -against-                                      21 **CIVIL** 4047 (VM)

<div align="center">

# <u>JUDGMENT</u>

</div>

DONALD MCKINLEY GLOVER, II,
JEFFEREY LAMAR WILLIAMS, LUDWIG
EMIL TOMAS GÖRANSSON, KOBALT
MUSIC PUBLISHING AMERICA, INC. d/b/a/
SONGS OF KOBALT MUSIC PUBLISHING,
RCA RECORDS, SONY MUSIC
ENTERTAINMENT, YOUNG STONER LIFE
PUBLISHING LLC, THEORY
ENTERTAINMENT LLC d/b/a 300
ENTERTAINMENT, ATLANTIC RECORDING
CORPORATION, ROC NATION PUBLISHING
LLC d/b/a SONGS OF ROC NATION, SONGS
OF UNIVERSAL, INC., WARNER MUSIC
GROUP CORP., and WARNER-TAMERLANE
PUBLISHING CORP.,

<div align="center">Defendants.</div>

------------------------------------------------------------X

       It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Decision and Order dated March 24, 2023, the motion filed by defendants

Donald McKinley Glover, II, Jeffrey Lamar Williams, Ludwig Emil Tomas Göransson, Kobalt

Music Publishing America, Inc. d/b/a/ Songs of Kobalt Music Publishing, Sony Music

Entertainment, Young Stoner Life Publishing, LLC, 300 Entertainment LLC f/k/a Theory

Entertainment LLC d/b/a 300 Entertainment, Atlantic Recording Corporation, Roc Nation

Publishing d/b/a Songs of Roc Nation, Songs of Universal, Inc., and Warner-Tamerlane

Publishing Corp. to dismiss the Complaint of plaintiff Emelike Nwosuocha (Dkt. No. 1) pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED with prejudice to leave to amend; accordingly, the case is closed.

**Dated:** New York, New York

March 24, 2023

**RUBY J. KRAJICK**

_____
**Clerk of Court**

**BY:** *K. Mango*

_____
**Deputy Clerk**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
                                                                  :
EMELIKE NWOSUOCHA,                                                 :      1:21-cv-04047 (VM)
                                                                  :
                                              Plaintiff,           :
                         v.                                        :
                                                                  :
DONALD MCKINLEY GLOVER, II, et al.,                               :
                                                                  :
                                              Defendants.          :
------------------------------------------------------------------X

<u>**NOTICE OF APPEAL**</u>

**NOTICE IS HEREBY GIVEN** that Emelike Nwosuocha, Plaintiff in the above-

captioned case, hereby appeals to the United States Court of Appeals for the Second Circuit from

the District Court Decision and Order, entered March 24, 2023 (ECF No. 100), and Judgment,

entered March 24, 2023 (ECF No. 101), that granted the Motion to Dismiss of Defendants

Donald McKinley Glover, II, Jeffrey Lamar Williams, Ludwig Emil Tomas Gransson, Kobalt

Music Publishing America, Inc. d/b/a/ Songs of Kobalt Music Publishing, Sony Music

Entertainment, Young Stoner Life Publishing, LLC, 300 Entertainment LLC f/k/a Theory

Entertainment LLC d/b/a 300 Entertainment, Atlantic Recording Corporation, Roc Nation

Publishing d/b/a Songs of Roc Nation, Songs of Universal, Inc., and Warner-Tamerlane

Publishing Corp. with prejudice to leave to amend. This appeal is taken from each and every part

of the March 24, 2023 Decision and Order

Dated: New York, New York
April 21, 2023

Respectfully submitted,

**AIDALA, BERTUNA & KAMINS, P.C.**

By: /s/ Imran H. Ansari

Imran H. Ansari, Esq.
546 Fifth Avenue, 6th Floor
New York, NY 10036
T: (212) 486-0011
F: (212) 750-8297
iansari@aidalalaw.com

*Attorneys for Plaintiff Emelike Nwosuocha*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 21, 2023, I caused the foregoing Notice of Appeal to be

served via the Electronic Case Filing (ECF) system in the United States District Court for the

Southern District of New York, on all parties registered for CM/ECF in the above-captioned

action.

Dated: New York, New York
       April 21, 2023

                                     **AIDALA, BERTUNA & KAMINS, P.C.**

By:    /s/ Imran H. Ansari
          Imran H. Ansari, Esq.
          546 Fifth Avenue, 6th Floor
          New York, NY 10036
          T: (212) 486-0011
          F: (212) 750-8297
          iansari@aidalalaw.com

          *Attorneys for Plaintiff Emelike Nwosuocha*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit via the appellate CM/ECF system.

Participants in this case who are registered CM/ECF users have been served via the appellate CM/ECF system.

Date: August 17, 2023                    Respectfully submitted,

                                         */s/ Gregory Keenan*
                                         Gregory Keenan