# No. 23-703

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

EMELIKE NWOSUOCHA,

*Plaintiff-Appellant*,

v.

DONALD MCKINLEY GLOVER, II, SONY MUSIC ENTERTAINMENT, YOUNG STONER LIFE PUBLISHING LLC, KOBALT MUSIC PUBLISHING AMERICA, INC., D/B/A SONGS OF KOBALT MUSIC PUBLISHING, THEORY ENTERTAINMENT LLC, D/B/A 300 ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ROC NATION PUBLISHING LLC, D/B/A SONGS OF ROC NATION, SONGS OF UNIVERSAL, INC., WARNERTAMERLANE PUBLISHING CORP., LUDWIG EMIL TOMAS GORANSSON, JEFFEREY LAMAR WILLIAMS,

*Defendant-Appellees*,

v.

RCA RECORDS LABEL, WARNER MUSIC GROUP CORP.,

*Defendants*,

On Appeal from the United States District Court
for the Southern District of New York
No. 1:21-cv-04047-VM
Hon. Victor Marrero, United States District Judge

## APPELLANT'S OPENING BRIEF

Imran H. Ansari
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
IAnsari@AidalaLaw.com

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorneys for Appellant*

# RULE 26.1 DISCLOSURE STATEMENT

(a)     Appellant Emelike Nwosuocha is a natural person.


(b)     This is not a criminal case.


(c)     This is not a bankruptcy case.


Date: August 17, 2023                    Respectfully submitted,

                                         */s/ Gregory Keenan*_____
                                         Gregory Keenan

# TABLE OF CONTENTS

**Page**

RULE 26.1 DISCLOSURE STATEMENT ...............................................................3

TABLE OF AUTHORITIES ..............................................................................6

JURISDICTIONAL STATEMENT .......................................................................10

RELEVANT STATUTORY PROVISIONS ...............................................................11

    I.     17 U.S.C. § 114.............................................................................11

    II.    17 U.S.C. § 408.............................................................................13

    III.   17 U.S.C. § 411.............................................................................14

STATEMENT OF ISSUES ...............................................................................16

    I.     COPYRIGHT-REGISTRATION ISSUES ......................................................16

    II.    SUBSTANTIAL-SIMILARITY ISSUES .......................................................18

STATEMENT OF THE CASE.............................................................................20

    I.     THE REGISTRATION ........................................................................22

    II.    THE SONGS ..................................................................................23

SUMMARY OF ARGUMENT ...........................................................................25

STANDARD OF REVIEW ...............................................................................27

ARGUMENT ............................................................................................28

    I.     THE DISTRICT COURT ERRED ON COPYRIGHT-REGISTRATION ISSUES BY SIDESTEPPING THE STANDARDS SET FORTH IN SECTION 411(b) AND OVERLOOKING THE IMPLICATIONS OF 411(a)....................30

A. The District Court erred in adopting an approach that sidesteps Section 411(b) in situations where administrative mistakes miscategorized the work. ............................................30

B. The District Court erred in proceeding to determine the merits after it had decided that there was no registration-decision made by the Copyright Office as to the musical work in question. .......................................................................38

II. THE DISTRICT COURT ERRED IN ITS SUBSTANTIAL-SIMILARITY ANALYSIS. ..............................................................................44

A. The District Court's substantial-similarity analysis was predicated upon legal errors and should accordingly be vacated. ........................................................................44

i. Prior Art ............................................................44

ii. Similarities, Not Differences ..............................51

iii. *Feist* .................................................................56

B. The District Court should be reversed on the merits because, if correctly applied, the substantial-similarity analysis supports Mr. Nwosuocha's claims of infringement. ...62

CONCLUSION ......................................................................................69

CERTIFICATE OF COMPLIANCE .....................................................70

CERTIFICATE OF SERVICE ..............................................................71

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Arnstein v. Porter,
154 F.2d 464 (2d Cir. 1946). ................................................................. 63, 65

Attia v. Society of the N.Y. Hosp.,
201 F.3d 50 (2d Cir. 1999) ............................................................. 18, 51, 54

Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,
215 F.3d 219 (2d. Cir. 2000). .........................................................................46

Bean v. Littell,
669 F. Supp. 2d 1031 (D. Ariz. 2008). ..........................................................34

Bleistein v. Donaldson Lithographing Co.,
188 U.S. 239 (1903)........................................................................... 63, 64

Boisson v. Banian, Ltd.,
273 F.3d 262 (2d Cir. 2001) ........................................................... 18, 23, 61

Bowen v. Paisley,
2016 U.S. Dist. LEXIS 114048 (M.D. Tenn. Aug, 25, 2016).......................59

Bowen v. Paisley,
2016 U.S. Dist. LEXIS 114048 (M.D. Tenn. Aug. 25, 2016).......................45

Bridgeport Music, Inc. v. UMG Recordings, Inc.,
585 F.3d 267 (6th Cir. 2009). ........................................................................58

Compulife Software, Inc. v. Newman,
959 F.3d 1288 (11th Cir. 2020). ................................................ 18, 44, 45, 46

Desclee & Cie., S.A. v. Nemmers,
190 F. Supp. 381 (E.D. Wis. 1961). ..............................................................58

Egyptian Goddess, Inc. v. Swisa, Inc.,
543 F.3d 665 (Fed Cir 2008). ........................................................................45

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
499 U.S. 340, 344 (1991) ....................................... 18, 19, 49, 56, 57, 59, 60

Fin. Info., Inc. v. Moody's Investors Serv.,
751 F.2d 501 (2d.Cir. 1984). .........................................................................49

Foss v. Eastern States Exposition,
    67 F.4th 462 (1st Cir. 2023). .........................................................41

Hall v. Swift,
    782 F. App'x. 639 (9th Cir. 2019). ...............................................64

Harper & Row, Publrs. v. Nation Enters.,
    471 U.S. 539 (1985)........................................................................52

Innovation Ventures, L.L.C. v. Aspen Fitness Prods.,
    2015 U.S. Dist. LEXIS 179139 (E.D. Mich. Mar. 31, 2015).......................34

Johnson v. CRB,
    969 F.3d 363 (D.C. Cir. 2020)................................................. 62, 63

Key Publs., Inc. v. Chinatown Today Publ'g Enters.,
    945 F.2d 509 (2d. Cir. 1991). ............................................... 47, 49

Knitwaves, Inc. v. Lollytogs Ltd.,
    71 F.3d 996 (2d. Cir. 1995) ................................. 18, 57, 59, 60, 61

Kregos v. AP,
    937 F.2d 700 (2d Cir. 1991). ........................................................61

L. Batlin & Son, Inc. v. Snyder,
    536 F.2d 486 (2nd Cir. 1976). ......................................................49

Laureyssens v. Idea Group, Inc.,
    964 F.2d 131 (2d Cir. 1992). ........................................................23

Lessem v. Taylor,
    766 F. Supp. 2d 504 (S.D.N.Y. 2011). .........................................53

Lester v. U2 Ltd.,
    2009 U.S. Dist. LEXIS 135947 (C.D. Cal. April 10, 2009).................. 47, 49

Mag Jewelry Co. v. Cherokee, Inc.,
    496 F.3d 108 (1st Cir. 2007)................................................ 47, 48

McDonald v. West,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015). ........................................61

Miller v. Metro. Life Ins. Co.,
    979 F.3d 118 (2d. Cir. 2020). ............................................. 40, 41

Moore v. Kulicke & Soffa Indus.,
    318 F.3d 561 (3d Cir. 2003). ........................................................46

Motion Picture Ass'n of Am., Inc. v. Oman,
    750 F. Supp. 3 (D.D.C. 1990)..........................................................................34

Muchnick v. Thomson Corp.,
    509 F.3d 116 (2d Cir. 2007). ........................................................... 17, 29, 39

New Old Music Group, Inc. v. Gottwald,
    122 F. Supp. 3d 78 (S.D.N.Y. 2015). ..............................................................45

Novelty Textile Mills v. Joan Fabrics Corp.,
    558 F.2d 1090 (2d Cir. 1977). ............................................ 18, 47, 48, 51, 54

Nwosuocha v. Glover,
    2023 U.S. Dist. LEXIS 50764 (S.D.N.Y. March 24, 2023)..........................20

Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,
    274 F.2d 487 (2d Cir. 1960). ..........................................................................52

Primetime 24 Joint Venture v. NBC,
    219 F.3d 92 (2d Cir. 2000). ............................................................................27

Reed Elsevier, Inc. v. Muchnick,
    559 U.S. 154 (2010).......................................................................... 17, 29, 39

Santrayll v. Burrell,
    1996 U.S. Dist. LEXIS 3538 (S.D.N.Y. March 25, 1996)............................58

Sheldon v. Metro-Goldwyn Pictures Corp.,
    81 F.2d 49 (2d Cir. 1936). ..............................................................................52

Swirsky v. Carey,
    376 F.3d 841 (9th Cir. 2004). .........................................................................60

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,
    338 F.3d 127 (2d Cir. 2003). ..........................................................................54

Unicolors v. H&M Hennes & Mauritz, L.P.,
    142 S. Ct. 941 (2022).......................................................................................35

United States v. Ollie,
    442 F.3d 1135 (8th Cir. 2006). .......................................................................46

Yamashita v. Scholastic Inc.,
    936 F.3d 98 (2d Cir. 2019). ............................................................................27

**Statutes**

17 U.S.C. § 102.................................................................................... 20, 33

17 U.S.C. § 114. ............................................................... 11, 62, 63

17 U.S.C. § 408. ................................................................ 13, 16, 25, 33

17 U.S.C. § 411. .......................... 14, 16, 17, 20, 21, 25, 34, 35, 38, 39, 40

17 U.S.C. § 702. ................................................................ 16, 25, 34

17 U.S.C. §106. ................................................................................19

**Treatises**

FEDERAL PRACTICE AND PROCEDURE. .....................................................42

GOLDSTEIN ON COPYRIGHT. .........................................................58

NIMMER ON COPYRIGHT (2023).................................... 23, 46, 48, 49, 51

**Regulations**

37 C.F.R. §202.3. ............................................................ 16, 22

# JURISDICTIONAL STATEMENT

(A)    This civil action arose under the U.S. Copyright Act.    App.43¶74-46¶93 (Compl.).[1]    The District Court had subject-matter jurisdiction.    <u>See</u> 28 U.S.C. §§ 1331 (federal-question jurisdiction), 1338(a) (exclusively federal jurisdiction over copyrights).

(B)    The District Court entered final judgment.    App.192-193 (entry of judgment), <u>see</u> Fed. R. App. P. 4(a)(7)(ii) (defining entry).    This Court has appellate jurisdiction.    <u>See</u> 28 U.S.C. § 1291 (appellate jurisdiction over final decisions).

(C)    The District Court entered final judgment on March 24, 2023. App.193.    Twenty-eight days later, on April 21, 2023, the notice of appeal was filed.    App.194-195.    This appeal is timely.    <u>See</u> 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

(D)    The District Court disposed of all claims by order, App.169-191, and entered judgment, App.192-193.    This appeal arises from a final judgment that disposed of all claims.

---

[1] App. citations are to the Appellant's Appendix.  Throughout this Brief, all emphasis is added unless otherwise indicated.  Internal quotation marks, citations, and brackets are frequently removed for ease of reading.

**I.    17 U.S.C. § 114.**

Section 114 of Title 17 of United States Code reads, in pertinent part, as follows:

### § 114.  Scope of exclusive rights in sound recordings

**(a)** The exclusive rights of the owner of copyright in a sound recording are limited to the rights specified by clauses (1), (2), (3) and (6) of section 106, and do not include any right of performance under section 106(4).

**(b)** The exclusive right of the owner of copyright in a sound recording under clause (1) of section 106 is limited to the right to duplicate the sound recording in the form of phonorecords or copies that directly or indirectly recapture the actual sounds fixed in the recording.  The exclusive right of the owner of copyright in a sound recording under clause (2) of section 106 is limited to the right to prepare a derivative work in which the actual sounds fixed in the sound recording are rearranged, remixed, or otherwise altered in sequence or quality.  The exclusive rights of the owner of copyright in a sound recording under clauses (1) and (2) of section 106 do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate those in the copyrighted sound recording.  The exclusive rights of the owner of copyright in a sound recording under clauses (1), (2), and (3) of section 106 do not apply to sound recordings included in educational television and radio programs (as defined in section 397 of title 47) distributed or transmitted by or through public broadcasting entities (as defined by section 118(f)): Provided, That copies or phonorecords of said programs are not commercially distributed by or through public broadcasting entities to the general public.

**(c)** This section does not limit or impair the exclusive right to perform publicly, by means of a phonorecord, any of the works specified by section 106(4).

[...]

## II.    17 U.S.C. § 408.

Section 408 of Title 17 of United States Code reads, in pertinent part, as

follows:

### § 408.  Copyright registration in general

**(a) Registration permissive.**  At any time during the subsistence of
the first term of copyright in any published or unpublished work in
which the copyright was secured before January 1, 1978, and during
the subsistence of any copyright secured on or after that date, the
owner of copyright or of any exclusive right in the work may obtain
registration of the copyright claim by delivering to the Copyright
Office the deposit specified by this section, together with the
application and fee specified by sections 409 and 708.  Such
registration is not a condition of copyright protection.

[…]

**(c) Administrative classification and optional deposit.**

> **(1)** The Register of Copyrights is authorized to specify by
> regulation the administrative classes into which works are to be
> placed for purposes of deposit and registration, and the nature
> of the copies or phonorecords to be deposited in the various
> classes specified.  The regulations may require or permit, for
> particular classes, the deposit of identifying material instead of
> copies or phonorecords, the deposit of only one copy or
> phonorecord where two would normally be required, or a single
> registration for a group of related works.  This administrative
> classification of works has no significance with respect to the
> subject matter of copyright or the exclusive rights provided by
> this title.

[…]

## III.  17 U.S.C. § 411.

Section 411 of Title 17 of United States Code reads, in pertinent part, as follows:

### § 411. Registration and civil infringement actions

**(a)** Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.  In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue.

**(b)**

> **(1)** A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—
>
> > **(A)** the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> >
> > **(B)** the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
>
> **(2)** In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate

information, if known, would have caused the Register of Copyrights to refuse registration.

**(3)** Nothing in this subsection shall affect any rights, obligations, or requirements of a person related to information contained in a registration certificate, except for the institution of and remedies in infringement actions under this section and section 412.

[…]

## STATEMENT OF ISSUES

### I.   COPYRIGHT-REGISTRATION ISSUES

I.A.   *Sidestepping of Section 411(b)*: The Copyright Act sets forth a procedure to challenge in court a copyright registration issued by the U.S. Copyright Office. Specifically, under 17 U.S.C. §411(b)(1), a Copyright Office-issued registration certificate "satisfies" the requirements of the statute per se, **_unless_** there is a showing of (A) knowing inaccuracy and (B) materiality (*i.e.*, the inaccuracy, "if known, would have caused the Register of Copyrights to refuse registration"). *Where a copyright holder miscategorized the administrative classification of his registration but neither (A) knowing inaccuracy nor (B) materiality are shown, may a district court nonetheless disregard the registration and dismiss the action without applying the statutory framework set forth in §411(b)*?

*Appellant's Answer*: No, an artist's miscategorization of his or her works under the Copyright Office's administrative classifications is not a basis for sidestepping statutory frameworks for challenging a copyright registration. This Court should **_reverse_**.

*Apposite Authorities*: 17 U.S.C. §§408(c)(1), 411(b)(1), 702.; 37 C.F.R. §202.3.

I.B.    *Prematurely Reaching the Merits*.  With exceptions not relevant here, the U.S. Copyright Office must make a copyright-registration decision—a yes or a no on registration—prior to adjudication of copyright-infringement claims in court.   Specifically, under 17 U.S.C. §411(a), "no civil action for infringement […] shall be instituted until preregistration or registration of the copyright claim has been made" *or* "registration has been refused[.]" *Where a district court determines that the U.S. Copyright Office has not made a copyright-registration decision for a work, may that district court nonetheless institute a civil action for infringement of copyright and proceed to determining the merits of copyright infringement*?

*Appellant's Answer*: No, if a district court determines that a copyright-registration decision has not been made for the pertinent copyright claim, the district court must not proceed to determining the merits of an infringement action.   Thus, if this Court agrees that no registration decision has been made, this Court should ***vacate*** the merits portion of the District Court's decision.

*Apposite Authorities*: 17 U.S.C. §411(a); Muchnick v. Thomson Corp., 509 F.3d 116 (2d Cir. 2007); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010).

**II.    SUBSTANTIAL-SIMILARITY ISSUES**

II.A.    *Application of Erroneous Legal Principles*.    The District Court applied several incorrect legal principles and assumptions in its discussion of substantial similarity:

> i.    The District Court applied an incorrect burden of proof and misapprehended the relevance of *prior art* in copyright.
>
> ii.    The District Court focused on *differences* in the songs, *rather than similarities*, in conducting a similarity analysis.
>
> iii.    The District Court overlooked the Supreme Court's guidance on *selection and arrangement*.

*Was it error to apply these incorrect principles below?*

*Appellant's Answer*: Yes, the merits portion of the District Court's analysis should be ***vacated*** on the basis of these errors alone.

*Apposite Authorities*: Compulife Software, Inc. v. Newman, 959 F.3d 1288 (11th Cir. 2020); Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d 1090, 1093 n.3 (2d Cir. 1977); Attia v. Society of the N.Y. Hosp., 201 F.3d 50 (2d Cir. 1999); Boisson v. Banian, Ltd., 273 F.3d 262 (2d Cir. 2001); Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996 (2d. Cir. 1995); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 344 (1991).

II.B. *Incorrect Result on Substantial Similarity as a Matter of Law*.  If this Court

chooses to reach it, and applying the correct legal principles, whether the

District Court erred on the merits of the case in dismissing on substantial

similarity as a matter of law.

*Appellant's Answer*: Yes, this Court should ***reverse***.

*Apposite Authorities*: 17 U.S.C. §§106, 114(a); Boisson v. Banian, Ltd., 273

F.3d 262 (2d Cir. 2001); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S.

340 (1991).

# STATEMENT OF THE CASE

This appeal arises from a civil action asserting claims of copyright infringement over musical works.  App. 17-49 (Dkt. 1 at 1-33).  Following briefing on a motion to dismiss, the District Court (the Honorable Victor Marrero, U.S. District Judge of the U.S. District Court for the Southern District of New York) granted a Rule 12(b)(6) motion and dismissed the case with prejudice.  App.169-190 (Dkt. 100 at 1-22).[2]

The District Court's disposition has two central rationales.  *First*, the District Court held that Mr. Nwosuocha had failed to register his rights in his musical works.  App.181-186 (Section III.A).  It reasoned that, although Mr. Nwosuocha had indisputably registered copyrighted works when registering his album, his miscategorization under the Copyright Office's administrative classifications had, to the District Court, significance with respect to the statutory subject matter of copyright (*i.e.*, between sound recordings vs. musical works, compare 17 U.S.C. §102(7) ("sound recordings") with §102(2) ("musical works")).  So, the District Court sidestepped the statutory basis for challenging a registration set forth in 17 U.S.C. §411(b) and then dismissed the case pursuant to 17 U.S.C. §411(a)'s registration requirements.

---

[2] The District Court's opinion is unpublished.  Nwosuocha v. Glover, 2023 U.S. Dist. LEXIS 50764 (S.D.N.Y. March 24, 2023).

*Second*, even after deciding that this case pertained to an unregistered work, the District Court nonetheless proceeded to institute the infringement action and determine the merits of infringement, holding that there was no substantial similarity between the two songs as to the copyrightable expressions in Mr. Nwosuocha's song. App.186-190 (Section III.B). Notably, the District Court failed to consider whether it was even authorized to decide the merits, given its threshold determination on copyright registration. Compare id. with 17 U.S.C. §411(a) ("[N]o civil action for infringement […] shall be instituted until preregistration or registration of the copyright claim has been made" or "registration has been refused[.]").

On the merits of its substantial-similarity analysis, the District Court flipped burdens of proof with respect to prior art, App.188 n.4; concluded without explanation or citation that numerous categories of Mr. Nwosuocha's musical expressions are "categorically ineligible for copyright protection" either alone or in combination, App.188; and characterized the substantial-similarity analysis as turning on *differences* in the songs rather than resting on the existence of *similarities*, App. 190 ("More could be said on the ways these songs differ, but no more airtime is needed to resolve this case.").

On appeal, Mr. Nwosuocha challenges both rationales. See Argument Section I, *infra* (registration), Section II, *infra* (substantial similarity).

# I.    THE REGISTRATION

Mr. Nwosuocha has indisputably registered copyrighted works in his pertinent musical expressions.  He created an album—which contained the song in question—and then applied for a copyright registration for that entire album.  Upon review of the application, the U.S. Copyright Office then issued a certificate of registration.    App.51-52 (certificate of copyright registration), App.161-162 (same).

Accordingly, there's no dispute that there *is* a registration here.  Rather, the dispute is as to the registration's relevance—and the procedures by which the Copyright Office's certificate may be challenged.  Specifically, the central dispute here as to registration turns on the implications of the fact that Mr. Nwosuocha miscategorized his registration when choosing an administrative classification under the Copyright Office's regulations.

Here Mr. Nwosuocha's registration is registered as "**Registration Number SRu 1-301-911.**"  App.51, App.161.  Under the Copyright Office's administrative classifications, that's a registration for a sound recording but not necessarily a registration for a musical work (the infringed work here).  Compare 37 C.F.R. §202.3(b)(iv) ("***Class SR: Sound recordings***") with 37 C.F.R. §202.3(b)(ii) ("***Class PA: Works of the performing arts***"); see also 37 C.F.R. §202.3(b)(4) ("***Registration as one work***"), 37 C.F.R. §202.3(b)(ii) (referencing (b)(4)).

## II. THE SONGS

A substantial-similarity analysis involves a "side-by-side comparison" of the works. E.g., Boisson v. Banian, Ltd., 273 F.3d 262, 273 (2d Cir. 2001); id. at 275 ("side-by-side"); Laureyssens v. Idea Group, Inc., 964 F.2d 131, 142 (2d Cir. 1992) ("side-by-side").

Here, YouTube links to videos that perform both songs (*i.e.*, the songs of Mr. Nwosuocha and Mr. Glover) are in the record. App.73 (Mr. Nwosuocha's song), id. (Mr. Glover's song). (The music videos aren't at issue, so the YouTube videos should be *listened* to, not watched.) Illustratively, key portions for comparison of these songs are at 0:50-1:03 of Mr. Nwosuocha's song and 1:55-2:15 of Mr. Glover's song.

Notably, both Mr. Nwosuocha and Mr. Glover are rappers. They make rap music. Their audience is a rap audience. This distinct audience of their work is legally significant to a substantial-similarity analysis. See 4 NIMMER ON COPYRIGHT §13.03[E][1] (2023) (discussing copyright's audience-focused analysis). Critically, expressive and individualized aspects of a rapper's "flow" are highly significant in rap music. See, e.g., App.67 ("The rhythmic style of MCing, or 'flows,' are among the central aspects of rap production and reception[.]"); id. ("[A]ny discussion of rap production that takes musical poets seriously ***demands a vocabulary of flow***.").

This is particularly true here because rap audiences are highly attuned to the expressive nuances of each rapper's individual flow. Rap audiences have specifically noticed the similarities in flow between the songs at issue here, App.54-57:

- "Childish gambino [*i.e.*, Mr. Glover] gotta give you creds for that flow and everything[.]" App.55.

- "anyone gonna ask Childish Gambino about this song???" App. 56

- "Gambino ripped this sh*t off you G[.]" App.56.

Nonetheless, the District Court held a rapper's individualized and expressive flow—a central expressive feature of rap music that distinguishes one rapper from another—is uncopyrightable as a matter of law. App. 188 ("'[F]low'" is "categorically ineligible for protection."). The District Court made this capacious pronouncement without citation to ***any*** legal authority whatsoever—of this Court, of any other court, or of the Copyright Act. Id.

If affirmed, such a result would give more artistic rights to some cultures' and some communities' artistic expressions than to others.

# SUMMARY OF ARGUMENT

I.A.   Contrary to 17 U.S.C. §§408(c)(1), 702, the District Court erroneously construed the Copyright Office's regulations on *administrative* classification as having significance with respect to the *statutory* question of copyrightable subject matter.  That was error.  Further, compounding that error, the District Court used the administrative classification to sidestep the statutory standards and procedures used for challenging a copyright registration set forth in 17 U.S.C. §411(b).  This Court should reverse.

I.B.   Even if this Court affirms on the registration issue, it should still vacate the remainder of the District Court's opinion on substantial similarity .  That's because, under 17 U.S.C. §411(a), once a court has determined that there is no registration-decision at issue, that court is barred by statute from instituting an infringement action and deciding the merits.  Accordingly, in the alternative, this Court should vacate the merits rationale below.

II.A.   If this Court reaches the merits, it could simply vacate the merits analysis.  That's because the District Court's discussion of the merits of substantial similarity is predicated upon legal errors.  For example, the District Court erred in its views of prior art—both misplacing the burden of proof and erring on the significance of prior art in copyright.

II.B.  Ultimately, if it wishes to resolve the question of substantial similarity on this procedural posture, this Court should reverse.  The District Court's categorical rejection of wholesale expressive elements of a copyrighted work—*and* the expressive combination of such elements—all of which are appropriated by the infringing song—was incorrect.  The District Court should be reversed on this basis as well.

## STANDARD OF REVIEW

This appeal arises from a Rule 12(b)(6) dismissal. App.190-191. The standard of review for all issues is de novo. E.g., Yamashita v. Scholastic Inc., 936 F.3d 98, 103 (2d Cir. 2019) ("Because the court dismissed the Complaint under Federal Rule of Civil Procedure 12(b)(6), our review is de novo, accepting all of the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiffs' favor."); Primetime 24 Joint Venture v. NBC, 219 F.3d 92, 98 (2d Cir. 2000) ("We review *de novo* a district court's dismissal of a complaint under Rule 12(b)(6).").

# ARGUMENT

The District Court had two central rationales for its order dismissing Mr. Nwosuocha's claims of copyright-infringement below: (1) an incorrect-registration rationale, App.181-186; and (2) a substantial-similarity rationale, App.186-190. The issue of copyright registration is briefed first, both because copyright registration is a threshold issue of administrative exhaustion and because this Court's disposition on the registration issues has implications for whether this Court must even address substantial similarity at all. See Section I, *infra*. Then, after briefing registration issues, this Brief turns to the issue of substantial similarity. See Section II, *infra*.

On the registration issues, the District Court erred. The District Court believed that what it viewed as a miscategerization of the type of work (*i.e.*, the subject matter) on an administrative ***paper*** form provided by the Copyright Office—not even the ***online*** form used—permitted it to sidestep the statutory standards set forth in Section 411(b) for challenging a registration. Yet, three separate provisions of the U.S. Copyright Act—§408(c)(1), §702, and §411(b) itself—confirm that the District Court's sidestepping approach was error. If a party wishes to challenge a registration, it may do so. Yet, that party must do so under the statutory framework Congress provided—*i.e.*, §411(b) itself, a statutory provision that permits the Copyright Office to weigh in. See Section I.A, *infra*.

Furthermore, the District Court also erred by proceeding to the merits after ruling that the work was not registered. Indeed, the very statutory section that the District Court relied upon for the proposition that a copyright registration is required, 17 U.S.C. §411(a), restricts a court from instituting the copyright-infringement action on the merits once it has been decided that the work in suit lacks registration., see Section I.B, *infra*, <u>Muchnick v. Thomson Corp.</u>, 509 F.3d 116 (2d Cir. 2007), <u>reversed on other grounds</u> <u>Reed Elsevier, Inc. v. Muchnick</u>, 559 U.S. 154 (2010).

If this Court reaches the merits and evaluates the District Court's decision to that end, the District Court also erred. It erred by predicating its merits analysis upon untenable and legally erroneous legal principles that should be vacated. <u>See</u> Section II.A, *infra*. Likewise, if the correct legal principles are applied, the District Court should be reversed on the issue of substantial similarity. <u>See</u> Section II.B, *infra*.

## I. THE DISTRICT COURT ERRED ON COPYRIGHT-REGISTRATION ISSUES BY SIDESTEPPING THE STANDARDS SET FORTH IN SECTION 411(b) AND OVERLOOKING THE IMPLICATIONS OF 411(a).

The District Court erred on the registration issues in two fundamental ways. First, it erred by construing an _administrative_ classification—one appearing on a paper registration form that Mr. Nwosuocha did not use—as having significance with respect to the _statutory_ subject matter of copyright, and then sidestepping the statutory procedures for challenging a copyright registration. See Section I.A, _infra_., see 17 U.S.C. §§408©(1), 411(b)(1), 702.

Second, even if one were to agree with the District Court's sidestepping of Section 411(b)'s statutory framework for challenging a registration, the District Court further erred by failing to recognize that the legal implications of its registration finding meant that it was statutorily barred from then proceeding to the merits. See Section I.B, _infra_.

### A. The District Court erred in adopting an approach that sidesteps Section 411(b) in situations where administrative mistakes miscategorized the work.

The complaint attached Mr. Nwosuocha's copyright registration, App.51-52, as did his opposition to the motion to dismiss, App.161-162. Defendants argued below that the administrative classification—_i.e._, as an SR rather than a PA work—meant that the copyright registration was inapplicable to the statutory subject matter at issue in this suit, _i.e._, musical works, see 17 U.S.C. §102(a)(2).

30

Mr. Nwosuocha opposed this analysis as an end-run around the statutory framework that must be used to challenge a Copyright Office-issued certificate set forth in 17 U.S.C. §411(b).  The District Court agreed with Defendants' analysis[3] and, on the basis of the administrative classification of the registration, the District Court held that 17 U.S.C. §411(a)'s requirements of a registration decision were not met.  App.181-186.

The significance of this sidestepping approach is that, ordinarily a registration suffices per se, 17 U.S.C. §411(b)(1), unless the party challenging the Copyright Office's registration decision shows both (A) knowing inaccuracy and (B) materiality (*i.e.*, that the inaccuracy, "if known, would have caused the Register of Copyrights to refuse registration").  17 U.S.C. §411(b)(1)(A)-(B) (setting forth these requirements).  And, notably, the Copyright Office itself gets to weigh in on whether of the purported error was material.  See §411(b)(2). Accordingly, this sidestepping approach by the District Court constitutes a misapplication of the statute to avoid materiality requirements and to cut the Copyright Office out of a decision on the significance of a registration issue.

---

[3] Notably, Defendants made this argument by pointing to the instructions and procedures appearing on a *paper* copyright registration form that Mr. Nwosuocha did not use to in registering his copyright online, which contains separate instructions and procedures than the *online* copyright registration performed used by Mr. Nwosuocha.

Ultimately, the District Court's sidestepping approach is error. It's untenable under multiple statutory provisions and effectually cuts the administrative expert—the Copyright Office—out of its statutory role of weighing in on the development of the law surrounding *its own* registration procedures.

The following three points are key:

1. The District Court based its *statutory* subject-matter distinction on an *administrative classification* of works in a manner that the statute itself says not to do. <u>See</u> §408(c)(1).

2. The District Court further erred because Copyright Office regulations are internal-operating procedures that should not be used to deprive copyright holders of substantive rights. <u>See</u> §702.

3. Finally, the District Court's holding is contrary to the statutory provisions setting forth what registrations count and how a party may challenge a registration. <u>See</u> §411(b).

Each of the above three points is discussed below in turn.

***First***, the District Court's construal of an administrative classification to determine statutory subject matter of rights is error.

The online registration's SR labelling, as opposed to an PA labelling, is an ***administrative*** classification. 37 C.F.R. §202.3(b)(ii), (iv); <u>see</u> <u>id.</u> §202.3(b) ("***Administrative classification***"). By contrast, the distinction drawn by Defendants and the District Court below was one of statutory subject matter. 17 U.S.C. §§102(a)(2) ("musical works"), 102(a)(7) ("sound recordings"); <u>see</u> <u>id.</u> §102 ("**Subject matter of copyright: In general**").

The statute expressly says not to construe administrative classifications as having significance with respect to statutory subject matter: "***This administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title.***" §408(c)(1). The District Court erred.


***Second***, the District Court also erred in relying on regulations that are essentially internal Copyright Office-operating procedures to affect substantive rights. Critically, Section 702 of the Copyright Act gives a statutory basis to understand the limits on the scope of the Copyright Office's rulemaking and regulatory authority with respect to the statute:

> The Register of Copyrights is authorized to establish regulations not inconsistent with law for the administration of the functions and duties made the responsibility of the Register under this title. All regulations established by the Register under this title are subject to the approval of the Librarian of Congress.

17 U.S.C. §702; see also Bean v. Littell, 669 F. Supp. 2d 1031, 1035 n.2 (D. Ariz. 2008) ("proper procedures"); Motion Picture Ass'n of Am., Inc. v. Oman, 750 F. Supp. 3, 6 (D.D.C. 1990) ("The Copyright Office has statutory authority to issue regulations necessary to administer the Copyright Act.").

Notably, the Copyright Office's rulemaking authority permits it "to establish regulations *not inconsistent with law*[.]" 17 U.S.C. §702. The point is that the statutory authorization for the Copyright Office regulations makes expressly clear that those regulations are *subject to* the statutory standards and existing law, not a license to deploy **administrative classifications** as a means for litigating around **statutory** standards set forth in 17 U.S.C. §411(b) concerning how to go about challenging a copyright registration—and notably doing so **without** input from the administrator, *i.e.*, the Register, herself.

The regulations must be "consistent with the Copyright statutes." E.g., Innovation Ventures, L.L.C. v. Aspen Fitness Prods., 2015 U.S. Dist. LEXIS 179139, *67 (E.D. Mich. Mar. 31, 2015). And, nothing in the Copyright Act permits a challenge to a registration under §411(a) without going through the procedures outlined in §411(b), especially not on the basis of an administrative classification. Indeed, Section 411(b) makes clear that an asserted registration meets the §411(a) requirements of a registration-decision *unless* the (A) knowing inaccuracy and (B) materiality requirements can be demonstrated.

Neither have been demonstrated here.

***Third***, in addition to above, the District Court's sidestepping approach is problematic from a prudential and pragmatic perspective because it cuts the Copyright Office out of the process of a challenge to *the Copyright Office's own* registration certificate.

Under Section 411(b), a registration is valid unless challenged. 17 U.S.C. §411(b)(1). In turn, Section 411(b) sets forth the procedure that should be used when addressing a challenge to a registration. Id. Moreover, Section 411(b)(2) also makes clear that, when a registration is challenged, "the court ***shall*** request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. §411(b)(2).

Here, Defendants challenged the validity of the registration *without* following the statutory framework for how to do so, as laid out in Section 411(b). By doing so Defendants not only attempted to sidestep the proper role of the Copyright Office but also attempted to sidestep the implications of the Supreme Court's recent decision in Unicolors v. H&M Hennes & Mauritz, L.P., 142 S. Ct. 941 (2022).

Unicolors made clear that copyright registrants may not be penalized and copyright registrations may not be judicially invalidated on the basis of a registrant's purported "mistake in labelling." 142 S. Ct. at 946.

Ultimately, Defendants should not be permitted to sidestep §411(b); to sidestep the proper role of the Copyright Office in addressing a challenge to a Copyright Office-issued certificate; and to sidestep the implications of the Supreme Court's Unicolors decisions.

Defendants should not be permitted to do all this merely by construing a purported miscategorization under an administrative classification as having significance to the statutory subject matter of copyright.

* * * * *

The District Court's approach of construing an administrative classification as having significance with respect to statutory subject matter and then using that purported significance to sidestep the statutory framework for challenging a registration—cutting the Copyright Office out of the process entirely—is untenable.

It is contrary to law (i) because the statute says not to construe administrative classifications as having significance with respect subject matter, and (ii) because the statute indicates in §411(b) that the registration fulfills the registration requirement unless knowing inaccuracy and materiality can be shown.

Given these errors, this Court should reverse.[4]

---

[4] In reversing, however, this Court should clarify that Defendants may assert §411(b) challenges to the registration on remand if they wish. That is the proper route to challenge a copyright registration issued by the U.S. Copyright Office, not the sidestepping approach adopted below.

**B.**     **The District Court erred in proceeding to determine the merits after it had decided that there was no registration-decision made by the Copyright Office as to the musical work in question.**

After the District Court determined that there was no registration, App.181-186, it then proceeded to institute an infringement action and decide the case on the merits, App.186-190.

This was error.   The District Court overlooked the implication of its dismissal under Section 411(a).   Given its holding on the registration issue, the District Court should ***not*** have proceeded to make a merits decision because it was, therefore, ***not*** authorized to "institute[]" the infringement action.   <u>See</u> 17 U.S.C. §411(a).

Indeed, the District Court's approach of deciding the merits after dismissing under §411(a) below was error for the following three separate reasons:

1.     The District Court's approach violated the statutory command of §411(a).

2.     The District Court's approach violated the "cardinal principle of judicial restraint" requiring courts not to decide unnecessary issues.

3.     The District Court's approach is prudentially and pragmatically improper.

Each of the above three points is addressed in further detail below.

**<u>First</u>**, there's Section 411(a).

The District Court violated §411(a)'s statutory command when it ruled that §411(a)'s registration-decision requirement was *not* met, but then it nonetheless instituted the infringement action and made a merits determination on substantial similarity. The statute is clear that, if the registration requirement is not met, then "**_no_ civil action for infringement of the copyright in any United States work shall be instituted**[.]" 17 U.S.C. §411(a).

This Court clarified in <u>Muchnick</u> that a court should not adjudicate or resolve a case until §411(a)'s registration requirement is satisfied. <u>See Muchnick v. Thomson Corp.</u>, 509 F.3d 116 (2d Cir. 2007), <u>rev'd on other grounds Reed Elsevier, Inc. v. Muchnick</u>, 559 U.S. 154 (2010). Although the Supreme Court has subsequently clarified that §411(a) is a claim-processing rule and not a jurisdictional requirement, reversing this Court on other grounds, this Court's rationale remains good law that the merits of a decision cannot be decided or resolved by the courts until a registration-decision has been made.

In other words, the District Court had no obligation to raise §411(a) *sua sponte*. Yet, once Defendants raised §411(a) and the District Court ruled on the issue in their favor, §411(a) barred the District Court from going a step further by instituting the infringement action and proceeding to decide the case on the merits, *i.e.*, determining the merits issue of substantial similarity.

Thus, after the District Court ruled that §411(a)'s registration-decision requirements was not met, it was error for the District Court to proceed to institute the action and determine the merits nonetheless. That approach overlooked the very implications of the District Court's own ruling that Congress' statutory command in Section 411(a) had not been met by Mr. Nwosuocha.

**Second**, there is "the cardinal principle of judicial restraint" that courts should not be deciding unnecessary issues. Miller v. Metro. Life Ins. Co., 979 F.3d 118, 124 (2d. Cir. 2020). Like many other courts, this Court has been clear that, "if it is not necessary to decide more, it is **necessary *not* to decide more**[.]" Id. Simply put, district courts should *not* decide issues that are not necessary to the disposition of the case. Id.

Given that the District Court had *already* deemed dismissal was warranted under §411(a), App.185 ("[D]ismissal of Nwosuocha's Complaint is warranted."), it was unnecessary for the District Court to then weigh in on any other issue, let alone to wade into the merits and conduct a substantial-similarity analysis as well. Indeed, because it was unnecessary to decide this issue to reach the disposition of the case below, it was, therefore, "necessary not to" to decide these issues. See Miller, 979 F.3d at 124.

Accordingly, assuming *arguendo* that this Court affirms on the registration rationale, see Section I.A, *supra*, then this Court should vacate the District Court's unnecessary overreaching into additional issues.

At bottom, even assuming the District Court's construal of an administrative classification is dispositive of §411(a), the District Court's further reaching into other issues contravened the "the cardinal principle of judicial restraint" that courts should not make unnecessary determinations.

**<u>Third</u>**, the District Courts approach is prudentially and pragmatically problematic.

Indeed, a dismissal predicated on multiple grounds—one of which is Section 411(a)—creates a host of unnecessary complications. For example, it complicates a preclusion analysis. <u>See</u>, <u>e.g.</u>, <u>Foss v. Eastern States Exposition</u>, 67 F.4th 462, 463-464 (1st Cir. 2023) ("[W]e agree with Foss that the assertedly preclusive dismissal rested on one ground that on its own could not permit the dismissal to be claim preclusive, notwithstanding that the dismissal also rested on two other grounds that could have. Moreover, we conclude both that federal res judicata law does recognize the alternative-determinations doctrine and that this doctrine applies here.").

Such an approach complicates a preclusion analysis because a dismissal for both §411(a) *and* a merits determination simply yields an alternative-determination. Id. In turn, an alternative-determination implicates preclusions alternative determinations rule:

> If a first decision is supported both by findings that deny the power of the court to decide the case on the merits and by findings that go to the merits, preclusion is inappropriate as to the findings on the merits.

18 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE §4421, at 207 (2d ed. 1981); cf. Costello, 365 U.S. at 285 ("At common law dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim.").

Though the District Court might have believed it was saving the Parties and the courts time and resources by just weighing into the merits assessment as well, in truth, this alternative-determinations approach significantly complicated matters and risks unnecessarily implicating far more judicial resources than had it simply rested on its Section 411(a) decision.

The District Court's approach below creates unnecessary procedural complications and uncertainties for little benefit. Such approach does little more than implicate esoteric aspects of federal *res judicata* law and incentivizes the filing of avoidable cautionary appeals about the implications of alternative-determinations for a dismissal that should have merely implicated Section 411(a).

* * * * *

For the above three reasons, it was improper and imprudent for the District Court to decide the merits of a case that it had already dismissed pursuant to Section 411(a). Doing so was error. Such approach violates the command of the statute; disregards this Court's "cardinal principle of judicial restraint" against deciding unnecessary issued; and creates a host of complicating implications for litigants and courts alike.

## II.   THE DISTRICT COURT ERRED IN ITS SUBSTANTIAL-SIMILARITY ANALYSIS.

### A.   The District Court's substantial-similarity analysis was predicated upon legal errors and should accordingly be vacated.

#### i.   Prior Art

Below, the District Court faulted Mr. Nwosuocha for failing to account for "prior art" when pleading that Defendants had copied original components of his song.  App.188 at n.4 ("*entirely failed to consider or analyze any prior art*").  The District Court's assessment of "prior art" presents ***three*** distinct problems for its substantial-similarity analysis.

***First***, the District Court misplaced the burden regarding prior art.

It expected Mr. Nwosuocha, as plaintiff, to analyze prior art to prove that the copied elements were protectable.  That was error.  See, e.g., Compulife Software, Inc. v. Newman, 959 F.3d 1288, 1303 (11th Cir. 2020) ("[W]e hold that [the court] should have required the *defendants* to prove that those elements were *not* protectable.").

Placing the burden regarding prior art on the plaintiff "would unfairly require him to prove a negative."  Id. at 1305.  After all, a copyright plaintiff can't reasonably "present the entirety of the public domain" or "introduce the entire corpus of relevant, industry-standard techniques" so as to "show that no elements of his work were taken from it."  Id. at 1305-1306.

By contrast, a defendant is well-positioned to point to the specific prior art that he believes demonstrates the unprotectabilty of the copied elements. Id. at 1306. That's why courts require copyright **defendants** to demonstrate relevant prior art. See, e.g., New Old Music Group, Inc. v. Gottwald, 122 F. Supp. 3d 78, 95 (S.D.N.Y. 2015) ("**Defendants** have not shown that the relevant drum part in its totality existed in any prior art[.]"); Bowen v. Paisley, 2016 U.S. Dist. LEXIS 114048, *30 (M.D. Tenn. Aug. 25, 2016) ("**[D]efendants** attempt to shoulder that burden by pointing to the assessment of **their** expert [...] who conducted an analysis of prior art").

The same approach to prior art prevails in the patent context—with the burden of proof on the **defendant**. See, e.g., Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678 (Fed Cir 2008) ("**[T]he burden of production** of that prior art is on the accused infringer.").

Indeed, by misplacing the burden on Mr. Nwosuocha below, the District Court "unfairly require[d] him to prove a negative." Compulife, 959 F.3d at 1305. Such an approach deviates from ordinary practice regarding the placement of burdens to avoid requiring proof of a negative, as demonstrated by the below precedent of this Court and other Circuits:

- <u>Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.</u>, 215 F.3d 219, 225 n.4 (2d. Cir. 2000) ("This allocation of burden avoids forcing the party claiming objective surprise to prove a negative.")

- <u>Moore v. Kulicke & Soffa Indus.</u>, 318 F.3d 561, 568 (3d Cir. 2003) (noting "the general rule that the party having the negative of an issue will [not] have the burden of proof on such issue").

- <u>United States v. Ollie</u>, 442 F.3d 1135, 1143 (8th Cir. 2006) ("[T]he law generally frowns on requiring a party to prove a negative.").

Accordingly, placing the burden regarding prior art on the defendant is both "fairer and more efficient" and is in keeping the with ordinary practice of not requiring parties to prove a negative. <u>Compulife</u>, 959 F.3d at 1306.

In short, only after "defendant offers proof of lack of originality" by demonstrating "evidence that plaintiff copied from prior works" would the burden then "shift[] to plaintiff to overcome that evidence." 3 NIMMER ON COPYRIGHT §12.11[B][1][b][ii].

Thus, the District Court erred on the substantial-similarity analysis by misplacing the burden regarding prior art below.

***Second***, even if*, arguendo,* there were similarities between the copied "elements of Plaintiff's Composition," App.186, "prior art," App.188 n.4, the District Court misapprehended when prior art becomes relevant in copyright.

Similarity of a song to prior art would ***not*** demonstrate a lack of originality per se as the District Court improperly believed.  <u>See</u> App.186-187 ("insufficiently original").  Indeed, numerous courts have stressed that similarity to prior art does **<u>not</u>** establish a lack of originality on its own, as demonstrated by the precedent listed below:

- "[A] work is original and may command copyright protection, even if it is completely identical with a prior work[.]"  <u>Novelty Textile Mills v. Joan Fabrics Corp.</u>, 558 F.2d 1090, 1093 n.3 (2d Cir. 1977); <u>Mag Jewelry Co. v. Cherokee, Inc.</u>, 496 F.3d 108, 116 (1st Cir. 2007) (same).

- "Similarity to prior works will not, in and of itself, affect the validity of a particular work's copyright."  <u>Key Publs., Inc. v. Chinatown Today Publ'g Enters.</u>, 945 F.2d 509, 513 (2d. Cir. 1991).

- "The existence of prior art that is substantially similar to a copyrighted work does not defeat copyright protection."  <u>Lester v. U2 Ltd.</u>, 2009 U.S. Dist. LEXIS 135947, *10 (C.D. Cal. April 10, 2009).

Nevertheless, the District Court held otherwise.

For example, the District Court improperly believed that the "total triplet flow" of Mr. Nwosuocha's song wasn't original because "prior art" and "other songs" used that flow too. App.188 n.4. That was error.

Simply put, similarity to prior art does not establish lack of originality. See, e.g., 1 NIMMER ON COPYRIGHT §2.01[A][2] (A "work must _**not**_ be denied copyright protection simply because it is substantially similar to a work previously produced by others[.]").

Rather, in order to demonstrate lack of originality, a defendant would not only need to demonstrate similarity to prior art but to _**also**_ demonstrate that the plaintiff had in fact "copied from such prior work." Novelty Textile, 558 F.2d at 1093 n.3 (2d Cir. 1977); Mag Jewelry, 496 F.3d at 116 (same); 3 NIMMER ON COPYRIGHT §12.11 [B][1][b][ii] ("Of course, _defendant_ must do more than adduce the _existence_ of prior similar works—there must be _further evidence_ that plaintiff _copied_ from such works.).

_**Third**_, the District Court's view of "prior art" confused copyright law's originality standard with patent law's novelty standard.

Critically, this Court has juxtaposed "the rather broad copyrightability standard of originality which is phrased in terms of 'independent creation'" with patent law's "narrower, inapplicable standards of 'uniqueness' or 'novelty' or 'ingenuity[.]'" Fin. Info., Inc. v. Moody's Investors Serv., 751 F.2d 501, 507

(2d.Cir. 1984); <u>L. Batlin & Son, Inc. v. Snyder</u>, 536 F.2d 486, 490 (2nd Cir. 1976) ("Originality is [...] distinguished from novelty[.]"); 1 NIMMER ON COPYRIGHT §2.01 ("The copyright requirement of originality is to be contrasted with the patent requirement of novelty.").

In the copyright context, as this Court has explained, "[1] original means not copied, and [2] exhibiting a minimal amount of creativity. In practice, the requirement of originality has become little more than a prohibition of actual copying." <u>Key Publs.</u>, 945 F.2d at 512-513 (2d Cir.). So, while patent law requires "uniqueness ingeniousness or novelty" by contrast copyright law simply requires "independent creation[.]" <u>L. Batlin</u>, 536 F.2d at 490; <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 358 (1991) (In copyright, "novelty is <u>*not*</u> required[.]").

It is thus axiomatic that "a work must not be denied copyright protection simply because it is substantially similar to a work previously produced by others—meaning that it is not novel." NIMMER ON COPYRIGHT §2.01[A][2]. For that reason, "the search for prior art that frequently goes into challenging a patent *plays no role in copyright cases*." <u>Lester v. U2 Ltd.</u>, 2009 U.S. Dist. LEXIS 135947, at *10.

As such, the District Court's focus on "prior art" to deny copyright protection for the taken elements of Mr. Nwosuocha's song was fundamentally misplaced.

### ii. Similarities, Not Differences

The District Court also improperly focused on differences, rather than similarities, when conducting its substantial-similarity analysis. Indeed, the District Court concluded its substantial-similarity analysis with the following remark: "More could be said on the ways these songs differ, but no more airtime is needed to resolve this case." App.190.

Yet the District Court overlooked that "*[i]t is entirely immaterial* that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff s work can be shown." See, e.g., L.A. Printex Indus. V. Aeropostale, Inc., 676 F.3d 841, 851 (9th Cir. 2012) (quoting 4 NIMMER ON COPYRIGHT §13.03[B][l][a]); Attia v. Society of the N.Y. Hosp., 201 F.3d 50, 57-58 (2d Cir. 1999) (same).

As its name suggests, a substantial-*similarity* analysis focuses on similarities. See Attia, 201 F.3d at 57-58 ("[I]n determining whether there is 'substantial similarity' between two works, *the key is the similarities rather than the differences*."); Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d 1090, 1093 n.4 (2d. Cir. 1977) ("The key to the 'ordinary observer' test is therefore the *similarities rather than the differences*.").

Since its venerable inception in this Court, the substantial-similarity analysis has been a search for similarities not a hunt for differences.  See, e.g., Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960) (Substantial similarity exists if "the ordinary observer, *unless he set out to detect the disparities*, would be disposed to overlook them and regard their aesthetic appeal as the same.").  This focus on similarities reflects the longstanding, axiomatic tenet of copyright law that "[n]o plagiarist can excuse the wrong by showing how much of his work he did not pirate."  Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936) (Hand, J.).

The substantial similarity inquiry's focus on similarities rather than differences  is why courts have found substantial similarity even where there are an abundance of significant differences between the works.  For example, consider the Supreme Court's Harper Row decision involving the copying of a mere 300 words out of a 200,000-word manuscript.  Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 579 (1985) (Brennan, J., dissenting) ("The Court holds that The Nation's quotation of 300 words from the unpublished 200,000-word manuscript of President Gerald R. Ford infringed the copyright in that manuscript[.]").

Based on the foregoing, even a finding that much "could be said on the ways these [songs here] differ[,]" see App.190, would not foreclose a finding of substantial similarity.

In Harper, hundreds of thousands of words of differences didn't shut the door on liability, given the 300 words of similarity. Accordingly, noting differences, as the District Court did below, simply fails to resolve the substantial-similarity inquiry.

By way of contrast, consider the Lessem case an illustration of the proper application of the substantial-similarity analysis of two songs. See Lessem v. Taylor, 766 F. Supp. 2d 504, 514 (S.D.N.Y. 2011). In Lessem, the court explained the "*only* portions of the two songs that could be considered substantially similar are the ones in which the phrase 'this is how we do' appears." Id. And, the Lessem court stressed that "[l]istening to the two songs reveals significant differences in their other portions." Id.

Nevertheless, properly applying a similarities-focused analysis, the Lessem court found that a "reasonable jury [could] conclude that the songs are substantially similar" given the presence of some similarities. Id. The similarity of "lyrics and rhythm" repeated in both songs' choruses permitted such a finding, ***despite*** "significant differences" between the songs.

Thus, the presence of ample differences—even "significant differences"— doesn't foreclose substantial similarity. See, e.g., id.

This Court has remanded where, as here, "the district court failed to consider—apart from total concept and feel—whether *material portions"* of Defendants' work "infringed on corresponding *parts*" of plaintiff's work. See Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 135 (2d Cir. 2003).

The Tufenkian Court explained that a district court "must analyze the two works closely to figure out in what respects, if any, they are similar"—not point to differences and dispose of the case. Id. at 134.

* * * * *

Below, the District Courts improperly concluded that "[m]ore could be said on the ways these songs differ but no more *airtime* is needed to resolve this case." App.190. It overlooked that "the key is the similarities rather than the differences." Attia, 201 F.3d at 57-58 (2d Cir. 1999); Novelty Textile, 558 F.2d at 1093 n.4 (2d. Cir. 1977).

A proper application of the substantial-similarity analysis would have dedicated "airtime" to identifying the similarities between the works rather than a myopic focus on differences. After all, while the presence of many differences might speak to mitigated damages, the presence of differences (even a significant number of differences) between two works does not foreclose the possibility of substantial similarity.

Simply put, treating differences as dispositive of the audience test and the substantial similarity analysis was error.

### iii. Feist

The District Court's substantial similarity analysis also runs afoul of seminal copyright case Feist. The District Court stated the following:

> The Court finds that the "distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern" or "flow" as well as the "lyrical theme" and "structure" of the chorus in Plaintiff's Composition lack sufficient originality alone, or as combined, to merit compositional copyright protection or are categorically ineligible for copyright protection.

App.188.

Yet, notably, the District Court did not provide a single legal citation or authority when making that sweeping assertion. Id. (citing no case law). Indeed, the District Court simply *ipse dixit* fiated that none of these ten elements—neither taken "alone" nor "combined"—were copyrightable. Id. That conclusion contravenes Feist.

In Feist, the Supreme Court clarified copyright law's remarkably (perhaps even surprisingly) permissive standard for originality. Cf. Fin. Info., Inc., 751 F.2d at 507 (2d.Cir. 1984) ("the rather broad copyrightability standard of originality"). Feist explained that "[o]riginal, as the term is used in copyright, means only that: [1] the work was independently created by the author (as opposed to copied from other works), and [2] that it possesses at least *some minimal degree of creativity*." Feist, 499 U.S. at 345.

Furthermore, in Feist, Supreme Court explained that "the requisite level of creativity is *extremely low*[.]" Id. It clarified that "even a slight amount [of creativity] will suffice." Id. And, the Supreme Court stressed that the "vast majority of works make the grade quite easily[.]" Id. That's because "they possess some creative spark, *no matter how crude, humble or obvious it might be*." Id. In short, all that's required is "independent creation plus *a modicum of creativity*[.]" Id. at 346.

Thus, the strained conclusion reached by the District Court below is that Mr. Nwosuocha's "distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern" and "flow" as well as the "lyrical theme" and "structure", App.188, all lacked even a "modicum" of creativity, see Feist, 499 U.S. at 346. The necessary (and implicit) conclusion of the District Court is that the series of artistic choices Mr. Nwosuocha made when composing these elements of his song were less creative than a "telephone directory[.]" Cf. Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1003-1004 (2d. Cir. 1995) (citing Feist). That's incorrect.

Indeed, the District Court's order presents two distinct iterations of a Feist problem.

*First*, the District Court's Order raises a Feist issue relating to individual elements.

More specifically, the District Court simply fiats that ten separate elements of the song lack "sufficient originality" or are "categorically ineligible for copyright protection." App.188. Yet, problematically, the District Court nowhere explains *why*. Regardless, pertinent authorities do not support the District Court's conclusion. The following are just a few examples:

- Phrasing *is* copyrightable. <u>E.g.</u>, GOLDSTEIN ON COPYRIGHT §2.8 at §2:102.2 ("Courts may also find the requisite original expression in a musical composition's […] dynamic marks, tempo indications, ***slurs and phrasing.***"). <u>But see</u> App.188 ("categorically ineligible").

- Rhythm *is* copyrightable. <u>E.g.</u>, <u>Bridgeport Music, Inc. v. UMG Recordings, Inc.</u>, 585 F.3d 267, 272 (6th Cir. 2009) (hip hop song's "***rhythmic*** panting" copyrightable); <u>Desclee & Cie., S.A. v. Nemmers</u>, 190 F. Supp. 381, 388 (E.D. Wis. 1961) (Gregorian chants' "***rhythmic*** annotations"); <u>Santrayll v. Burrell</u>, 1996 U.S. Dist. LEXIS 3538, *4 (S.D.N.Y. March 25, 1996) ("The Court finds that the repetition of the non-protectible word 'uh-oh' in a ***distinctive rhythm*** comprises a sufficiently original composition to render it protectible by the copyright laws."). <u>But see</u> App.188 ("categorically ineligible").

- Structure *is* copyrightable. <u>E.g.</u>, <u>Bowen v. Paisley</u>, 2016 U.S. Dist. LEXIS 114048, *36 (M.D. Tenn. Aug, 25, 2016) ("other aspects of two musical works, including ***structure***, mood or tone, and any other distinctive feature may also contribute to a finding of substantial similarity.). <u>But see</u> App.188 ("categorically ineligible").

In short, such elements can satisfy <u>Feist</u>'s permissive originality standard. The Court erred in discounting each of these aforementioned ten elements as "insufficiently original." Dkt. 100 at 18; Dkt. 100 at 20 ("categorically ineligible for copyright protection.").

***Second***, the <u>Feist</u> problem underlying the District Court's decision becomes all the more pronounced when looking at these ten elements "*combined*." <u>See</u> App.188. Once again, the District Court gave no reason for why it believed these ten categories when *combined* also failed to satisfy <u>Feist</u>'s permissive originality standard.

Regardless, again, the authority is to the contrary. Indeed, this Court has made the implications of <u>Feist</u> clear:

> As the Supreme Court's decision in <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340 (1991), ***makes clear***, a work may be copyrightable *even though* it is entirely a compilation of unprotectible elements."

<u>Knitwaves</u>, 71 F.3d at 1003-1004 (2d. Cir.).

Thus, *even if* all ten of the aforementioned categories failed to be original, the combination of these numerous elements could still be copyrightable when combined—provided that this combination simply possesses a "modicum" of creativity (*i.e.*, more than the creativity involved in selecting the entries in a phonebook). Feist, 499 U.S. at 346; Knitwaves, 71 F.3d at 1003-1004 (citing Feist) ("[E]ven [a] telephone directory may be copyrightable if its listings are selected, coordinated, or arranged in an original fashion.").

Yet, the District Court failed to credit *that* originality—*i.e.*, the originality in the combination of these numerous separate elements into the form of a song. Instead, the District Court dissected the work into its constituent parts and dismissed each part as uncopyrightable. App.188. ("For instance [...] a lyrical theme is simply an idea, and ideas are not protectable.").

Notably, Courts have criticized such an approach. See, e.g., Swirsky v. Carey, 376 F.3d 841, 848 (9th Cir. 2004) ("[T]o disregard chord progression, key, tempo, *rhythm*, and genre is to ignore the fact that a *substantial similarity can be found in a combination of elements, even if those elements are individually unprotected.*").

And, this Court too has also stressed the Feist problem with the District Court's approach:

> [A] court is *not* to dissect the works at issue into separate components and compare only the copyrightable elements. To do so would […] result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic non protectable elements like letters, colors and symbols. This outcome — **affording no copyright protection to an original compilation of unprotectible elements — <u>would be contrary to the Supreme Court's holding in *Feist Publications*</u>**.

Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001) (citing Knitwaves, 71 F.3d at 1003).

The simple fact is that Mr. Nwosuocha's combination of these numerous elements into a song (copied into Mr. Glover's song) readily satisfies Feist's permissive standard of originality—regardless of whether or not they are individually protectable. See, e.g., McDonald v. West, 138 F. Supp. 3d 448, 455 (S.D.N.Y. 2015) (applying Knitwaves) (Even "a commonplace, public domain melody could become part of a copyrightable musical composition when combined in an original way with other elements of songwriting like harmony, rhythm, and structure."); Knitwaves, 71 F.3d at 1004, Kregos v. AP, 937 F.2d 700, 701-702, 705 (2d Cir. 1991). Accordingly, *even if* arguendo the District Court were correct that all ten enumerated elements were individually unprotectable, it would still be error to conclude that all ten elements combined were unoriginal. Such a conclusion runs afoul of Feist.

**B.** **The District Court should be reversed on the merits because, if correctly applied, the substantial-similarity analysis supports Mr. Nwosuocha's claims of infringement.**

Properly applied, the substantial-similarity test makes clear that ordinary listeners could find similarities between the two songs at issue in this case. Indeed, as explained below, ordinary listeners immediately recognized that Mr. Glover's song had taken expression from Mr. Nwosuocha's song, including its flow. App.55-57. So did an expert. App.67-69.

Thus, the ordinary observer conducting an aural comparison of the two works could (and, in fact, *did*) find similarities between them. Indeed, lay persons and experts alike did not struggle to recognize that these two works are similar. For that reason, reversal on substantial similarity is proper here.

Three initial points are critical for appreciating just how similar the works are here.

*First*, the statute grants a broader the scope of protection for musical works as compared to the significantly narrower scope of protection for sound recordings. 17 U.S.C. §114(b); see 17 U.S.C. §§102(a)(2) ("musical works"), 102(a)(7) ("sound recordings").

Whenever we hear a recording of a song, at least two copyrights (or two works) are inevitably tied up in that song: a sound recording and a musical work. E.g., Johnson v. CRB, 969 F.3d 363, 367 (D.C. Cir. 2020).

For sound recordings, the scope of protection is strictly limited to the "actual sounds" recorded in a particular performance. 17 U.S.C. §114(b). Thus, a "sound recording" copyright merely protects "a performing artist's particular recording of a musical work." Johnson, 969 F.3d at 367. By contrast, everything else about the song beyond the exact, "actual sounds" captured in the recording is part of the musical-work copyright. Thus, a musical work copyright protects such aspects "notes, lyrics, *embedded performance directions*, and related material composed by the creator of a song." Id.

Keeping this statutory distinction in mind, the musical-work copyright in Mr. Nwosuacha's song would protect not just the "actual sounds" of a particular performance but also all of the embedded performance directions such as particular syllable stresses, flow, tempo, rhythm, *etc.* See, e.g., App.67-69.

***Second***, a substantial similarity analysis is primarily concerned with the reactions of "lay listeners." E.g., Arnstein v. Porter, 154 F.2d 464, 473 (2d Cir. 1946) (discussing the "lay listeners, who comprise the audience for whom such popular music is composed[.]"). Indeed, Justice Holmes famously cautioned that it "would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of" of artistic creations." Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 251 (1903).

And, "Justice Holmes' century-old warning remains valid" today. <u>Hall v. Swift,</u> 782 F. App'x. 639, 640 (9th Cir. 2019) (reiterating this caution against a court acting as "the final judge of the worth of an expressive work."). Indeed, if anything the passage of time has only borne out its wisdom—what judge in the 1960s would have foreseen that American singer-songwriter Bob Dylan would go on to win the Nobel Prize in *Poetry*? When it comes to similarity analysis of expressive works it is the "lay listeners" and the "public" who should be the final arbiter. App.55-57.

*<u>Third</u>*, Justice Holmes's age-old warning demonstrates particular prescience in the context of rap and "flow." Justice Holmes cautioned that failing to head this warning would risk improperly depriving copyright where artistic works employed a "new language in which their author spoke[.]" <u>Id.</u> And critically, "any discussion of rap production that takes musical poets seriously ***demands a vocabulary of flow***." App.67.

It is unlikely that the average member of the bar or the bench, trained only in the law, would have command of such "vocabulary of flow." But the lay listening public might readily be so well-versed in such new artistic vocabulary and languages. <u>See</u>, <u>e.g.</u>, App.55 ("Childish gambino gotta give you creds for that flow and everything[.]"); App.57 ("Gambino ripped this sh*t off you G").

Indeed, flow is precisely the type of combination of elements protected by Feist and as elaborated upon by this Court in Boisson. See Robert Komaniecki, "Analyzing the Parameters of Flow in Rap Music, Dissertation, Indiana University, at 9 (2019) ("[R]ap flow is essentially delivered over a repeated one-or-two-measure looped beat, so stacking each measure of lyrics vertically helps readers see overall trends in syllable placement within each loop.").

And lay audiences readily recognize when, as here, one artist steals another artist's flow. E.g., App.55, App.57. That's a substantial similarity. Yet, a court or lawyer, not versed in a "new language in which their author spoke" or in the "vocabulary of flow," might readily miss similarities that the well-versed lay listener would readily catch.

Keeping these clarifications in mind, consider the pertinent substantial similarity inquiry that this Court articulated in Porter:

> The question, therefore, is whether defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such popular music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.

Arnstein, 154 F.2d at 473 (2d Cir.).

Here, there's no serious question. E.g., App.55 ("Childish gambino gotta give you creds for that flow [.]"); App.57 ("Gambino ripped this sh*t off you[.]"); App.56 ("[A]nyone gonna ask Childish Gambino about this song???").

The lay listeners of such rap readily recognized plaintiff's copyrightable expression, including his "flow." Indeed, there are numerous similarities between the two works. For example, a sampling of some of these similarities include:

- Shared "total triplet flows" that are used repeatedly throughout both songs, especially in their choruses. App.67;

- A shared *combination* of this "flow" *as combined* with "identical timing", similar wording and lyrics, and similar music notation. Id.; App.29

- Shared "structure" of the choruses. App.29.

- The "similar structure and lyrical content" particularly in the hooks. App.29.

- "Similarities in melodic contour" App.31, App.73

- "The lines 'Made in America' and 'This is America' lineup nearly perfectly in time[.]" App.31, App.73

- Similarities in the "rhtymic utterances" of both songs. App.31, App.73; App. 69 (discussing shared "rhythmic device").

- Similar "articulation of phonemes ("t" and "s" in "This is America" and "mm," "ih," and "nn" in Made in America)" App.72.

- "Strikingly comparable" aspects of Gambino's performance and Wes's performance "thematically, lyrically, visually, melodically[.]" App.59

- Shared *combinations* of the aforementioned.

Given such similarities, as recognized by experts and lay listeners alike, the two works are substantially similar.

* * * * *

Below, the District Court and Defendants failed to properly credit these numerous similarities, which as due to the following two central methodological mistakes:

***First***, the District Court conducted an improper dissection of similar combinations of elements in violation of <u>Feist</u> and in ways <u>Boisson</u> cautioned against. This mistake failed to credit the songs' shared "flow." <u>See</u>, <u>e.g.</u>, App.67; App.55 ("the flow").

***Second***, the District Court improperly focused on the differences between certain parts of the songs rather than crediting the shared similarities in other portions of the song. For that reason, vacatur is appropriate. <u>See</u> Section II.A, *supra*.

Yet, once these two methodological errors are avoided, it becomes clear that these works are substantially similar, which is especially so here given that:

1. There are objective, scientific similarities between the two songs. <u>E.g.</u>, App.67-69; and

2.     There are statements in the records from members of the general public recognizing and articulating perceived similarities between the two songs. App.30; App.55-57.

For those reasons, and as explained in this Section, reversal on substantial similarity is also appropriate here.

# CONCLUSION

This Court should reverse the District Court's disposition on both the copyright-registration issues, see Section I.A, *supra*, and the substantial-similarity issues, see Sections II.A-II.B, *supra*, noting however that the reversal is *without* prejudice to Defendants raising a 17 U.S.C. §411(b)-based challenge to Mr. Nwosuocha's registration.

If, however, this Court agrees with the District Court on the copyright-registration issues, it should nevertheless vacate the District Court's merits ruling on substantial similarity pursuant to 17 U.S.C. §411(a), clarifying that the dismissal was without prejudice to refiling upon receipt of an updated, clarified, and/or new registration. See Section I.B, *supra*.

Date: August 17, 2023

Respectfully submitted,

DIGITAL JUSTICE FOUNDATION

*/s/ Gregory Keenan*
Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Flora Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

*Attorney for Appellant*

# CERTIFICATE OF COMPLIANCE

This Brief contains **9,639** words, excluding the portions exempt from the word count by rule.

This Brief was prepared in Microsoft Word using Times New Roman 14-point font.

Date: August 17, 2023                    Respectfully submitted,

                                         */s/ Gregory Keenan*_____
                                         Gregory Keenan

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit via the appellate CM/ECF system.

Participants in this case who are registered CM/ECF users have been served via the appellate CM/ECF system.

Date: August 17, 2023

Respectfully submitted,

*/s/ Gregory Keenan*
Gregory Keenan