# 23-703

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

EMELIKE NWOSUOCHA,

*Plaintiff-Appellant,*

—v.—

DONALD MCKINLEY GLOVER, II, SONY MUSIC ENTERTAINMENT, YOUNG STONER LIFE PUBLISHING LLC, KOBALT MUSIC PUBLISHING AMERICA, INC., DBA SONGS OF KOBALT MUSIC PUBLISHING, THEORY ENTERTAINMENT LLC, DBA 300 ENTERTAINMENT, ATLANTIC RECORDING CORPORATION, ROC NATION PUBLISHING LLC, DBA SONGS OF ROC NATION, SONGS OF UNIVERSAL, INC., WARNERTAMERLANE PUBLISHING CORP., LUDWIG EMIL TOMAS GORANSSON, JEFFEREY LAMAR WILLIAMS,

*Defendants-Appellees,*

RCA RECORD LABEL, WARNER MUSIC GROUP CORP.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## DEFENDANTS-APPELLEES' SUPPLEMENTAL APPENDIX

JONATHAN D. DAVIS
ALYSSA M. PRONLEY
ANTHONY C. LOMONACO
JONATHAN D. DAVIS, P.C.
1 Rockefeller Center, Suite 1712
New York, New York 10020
(212) 687-5464

*Attorneys for Defendants-Appellees
Donald McKinley Glover, II, Sony
Music Entertainment, Young Stoner
Life Publishing, LLC, Kobalt Music
Publishing America, Inc., d/b/a Songs
of Kobalt Music Publishing, 300
Entertainment LLC (f/k/a Theory
Entertainment LLC, d/b/a 300
Entertainment), Atlantic Recording
Corporation, Warner-Tamerlane
Publishing Corp., Ludwig Emil Tomas
Göransson, and Jeffrey Lamar Williams*

ILENE S. FARKAS
DONALD S. ZAKARIN
PRYOR CASHMAN LLP
7 Times Square, 40th Floor
New York, New York 10036
(212) 421-4100

*Attorneys for Defendant-Appellee
Songs of Universal, Inc.*

ALEX SPIRO
PAUL B. MASLO
QUINN EMANUEL URQUHART
  & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 687-5464

*Attorneys for Defendant-Appellee
Roc Nation Publishing LLC,
d/b/a Songs of ROC Nation*

# TABLE OF CONTENTS

PAGE

Declaration of Jonathan D. Davis, for Defendant, in Support
of Motion to Dismiss, dated September 9, 2022 ................... DA-1

Exhibit A to Davis Declaration—
Complaint, dated May 5, 2021, with Exhibits...................... DA-4

Exhibit B to Davis Declaration—
U.S. Copyright Registration for the musical composition
"Made in America," registered in 1981 ......................... DA-95

Exhibit C to Davis Declaration—
U.S. Copyright Registration for the musical composition
"Made in America," registered in 1998 ......................... DA-97

Exhibit D to Davis Declaration—
U.S. Copyright Registration for the musical composition
"Made in America," registered in 2011 (authored by Frank
Ocean, Kanye West, Shawn Carter, Shama Joseph,
and Mike Dean) ............................................... DA-100

Exhibit E to Davis Declaration—
U.S. Copyright Registration for the musical composition
"Made in America," registered in 2011 (authored by Toby Keith
Covel, Bobby Pinson, and Gregory Scott Reeves) ............... DA-103

Exhibit F to Davis Declaration—
U.S. Copyright Registration for the musical composition
"Made in America," registered in 2012 ......................... DA-106

Exhibit G to Davis Declaration—
U.S. Copyright Registration for the musical composition
"Made in America," registered in 2013 ......................... DA-109

Exhibit H to Davis Declaration—
U.S. Copyright Registration for the musical composition
"Made in America," registered in 2017 ......................... DA-112

ii

PAGE

Exhibit I to Davis Declaration—
Lyrics for Appellant's Composition . . . . . . . . . . . . . . . . . . . . . . . . . . . . DA-115

Exhibit J to Davis Declaration—
Lyrics for Challenged Composition . . . . . . . . . . . . . . . . . . . . . . . . . . . DA-119

Exhibits to Plaintiff's Memorandum of Law in Opposition to Motion
     to Dismiss:

Exhibit B to Memorandum—
USCO Circular 56A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DA-123

Exhibit C to Memorandum—
USCO, Compendium § 101 (3d ed. 2014) . . . . . . . . . . . . . . . . . . . . . . DA-134

Exhibit D to Memorandum—
USCO, Compendium § 101 (3d ed. 2021) . . . . . . . . . . . . . . . . . . . . . . DA-138

Exhibit E to Memorandum—
Pre-Motion correspondence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DA-142

**DA-1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EMELIKE NWOSUOCHA,                                      :
                                                       :
                        Plaintiff,                     :
                                                       :      1:21-cv-04047 (VM)
            v.                                          :
                                                       :      **DECLARATION OF**
DONALD MCKINLEY GLOVER, II, et al.,                    :      **JONATHAN D. DAVIS**
                                                       :
                        Defendants.                    :
                                                       :
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JONATHAN D. DAVIS declares as follows:

1.  I am the sole shareholder of Jonathan D. Davis, P.C., attorneys for Defendant Donald

Glover in the above-captioned action. I am fully familiar with the matters set forth herein.

2.  I submit this declaration in support of the Defendants[1] joint motion, in accordance with

the Order, dated June 24, 2022, under Fed. R. Civ. P. 12(b)(6) for an order: (1) dismissing the

Complaint [ECF Dkt. No. 1] because neither the musical composition "Made in America"

("Plaintiff's Composition"), nor the music video embodying Plaintiff's Composition, is registered

with the United States Copyright Office, which is a prerequisite to filing a copyright claim; or,

alternatively, (2) dismissing the copyright infringement claim for failure to adequately plead

"access" or "substantial similarity" between Plaintiff's Composition and "This is America" (the

"Challenged Composition").

---

[1] "Moving Defendants" refers to Donald McKinley Glover, II, Ludwig Emil Tomas Göransson,
Jefferey Lamar Williams, Kobalt Music Publishing America, Inc. d/b/a Songs of Kobalt Music
Publishing, RCA Records, Sony Music Entertainment, Young Stoner Life Publishing, LLC, 300
Entertainment LLC (f/k/a Theory Entertainment LLC d/b/a 300 Entertainment), Roc Nation
Publishing LLC d/b/a Songs of Roc Nation, Atlantic Recording Corporation, Songs of Universal,
Inc., Warner Music Group Corp., and Warner-Tamerlane Publishing Corp.

3.   Attached as <u>Exhibit A</u> is a copy of the Complaint.

4.   Attached as <u>Exhibit B</u> is U.S. Copyright Registration (Pau000354788) for the musical composition "Made In America," registered in 1981, and authored by David Doyle and A.J. Loria.

5.   Attached as <u>Exhibit C</u> is U.S. Copyright Registration (PA0000890766) for the musical composition "Made In America," registered in 1998, and authored by Richie Sambora and Richie Supa.

6.   Attached as <u>Exhibit D</u> is U.S. Copyright Registration (PA0001768256) for the musical composition "Made In America" registered in 2011, and authored by Frank Ocean, Kanye West, Shawn Carter, Shama Joseph, and Mike Dean.

7.   Attached as <u>Exhibit E</u> is U.S. Copyright Registration (PA0001776533) for the musical composition "Made In America," registered in 2011, and authored by Toby Keith Covel, Bobby Pinson, and Gregory Scott Reeves.

8.   Attached as <u>Exhibit F</u> is U.S. Copyright Registration (PA0001786233) for the musical composition "Made In America," registered in 2012, and authored by John Sembello.

9.   Attached as <u>Exhibit G</u> is U.S. Copyright Registration (PA0001864125) for the musical composition "Made In America," registered in 2013, and authored by Kevin Fransen, Tim Kmet, and Gail Irmen.

10. Attached as <u>Exhibit H</u> is U.S. Copyright Registration (PA0002119555) for the musical composition "Made In America," registered in 2017, and authored by Jayceon Terrell Taylor and Marcus Black.

11. Attached as <u>Exhibit I</u> are the lyrics for Plaintiff's Composition.

12. Attached as <u>Exhibit J</u> are the lyrics for Challenged Composition.

**DA-3**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York, on this 9th day of September 2022.

/s/ Jonathan D. Davis
JONATHAN D. DAVIS

# EXHIBIT A

**DA-5**

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

EMELIKE NWOSUOCHA,                               :

                          Plaintiff,            :

            against                               :            **COMPLAINT**

DONALD MCKINLEY GLOVER, II,             :            JURY TRIAL DEMANDED
JEFFEREY LAMAR WILLIAMS, LUDWIG
EMIL TOMAS GÖRANSSON, KOBALT
MUSIC PUBLISHING AMERICA, INC. d/b/a/
SONGS OF KOBALT MUSIC PUBLISHING,
RCA RECORDS, SONY MUSIC
ENTERTAINMENT, YOUNG STONER LIFE
PUBLISHING LLC, THEORY
ENTERTAINMENT LLC d/b/a 300
ENTERTAINMENT, ATLANTIC RECORDING
CORPORATION, ROC NATION PUBLISHING
LLC d/b/a SONGS OF ROC NATION, SONGS
OF UNIVERSAL, INC., WARNER MUSIC
GROUP CORP., and WARNER-TAMERLANE
PUBLISHING CORP.

                        Defendants.            :

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

Plaintiff Emelike Nwosuocha ("Nwosuocha"), by and through his attorneys, Aidala, Bertuna &

Kamins P.C., for his Complaint against defendants Donald McKinley Glover, II ("Glover"),

Jefferey Lamar Williams ("Williams"), Ludwig Emil Tomas Göransson ("Göransson"), Songs of

Kobalt Music Publishing ("Kobalt Music"), RCA Records ("RCA"), Sony Music Entertainment

("Sony Music"), Young Stoner Life Publishing LLC ("YSL"), Theory Entertainment LLC d/b/a

300 Entertainment ("300"), Atlantic Recording Corporation ("Atlantic"), Warner Music Group

Corp. ("WMG"), Roc Nation Publishing LLC d/b/a Songs of Roc Nation ("Roc Nation"), Songs

of Universal, Inc. ("Universal"), and Warner-Tamerlane Publishing Corp ("Warner-Tamerlane")

**DA-6**

(collectively, "Defendants"), alleges, on knowledge as to his own actions, and otherwise on information and belief, as follows:

**PRELIMINARY STATEMENT**

1.      Nwosuocha brings this action seeking injunctive and monetary relief for Defendants' infringement via direct and/or indirect copying of Nwosuocha's copyright in Nwosuocha's song entitled "Made in America" (the "Copyrighted Work"), which Nwosuocha registered with the U.S. Copyright Office on May 24, 2017 and owns full copyright in.

2.      The crux of the claims in this action brought pursuant to the to the Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq*. is that there are substantial similarities between the Copyrighted Work and the song "This is America," which was released pseudonymously by Defendant Glover under his musical stage name, Childish Gambino. Specifically, the substantial similarities between both songs include, but are not limited to, nearly-identical unique rhythmic, lyrical, and thematic compositional and performance content contained in the chorus – or "hook" – sections that are the centerpieces of both songs.

3.      Defendants are the writers, producers, performers, record labels, publishers, distributors, managers, administrators, and/or distributors of the infringing work "This is America" (the "Infringing Work").

4.      In or about early September, 2016 Nwosuocha wrote and created the Copyrighted Work. Nwosuocha subsequently displayed the Copyrighted Work to the public on September 11, 2016 by uploading it to popular streaming platform Soundcloud, where end users were allowed to listen to the song on the Soundcloud platform as a free stream. Nwosuocha later again publicly displayed the Copyrighted Work by uploading it, accompanied by a music video, to YouTube on or about November 9, 2016, where end users were allowed to listen to the song on the YouTube

platform as a free stream. A screenshot reflecting these initial two public displays of the Copyrighted Work by Nwosuocha is annexed hereto as **EXHIBIT A**.

5.      Subsequent to publicly displaying the Copyrighted Work on Soundcloud and YouTube, Nwosuocha registered his full and exclusive copyright in the Copyrighted Work with the U.S. Copyright Office on May 24, 2017 in advance of the Copyrighted Work's first publication. The Copyrighted Work would be published for the first time as the lead single for his then-unpublished album entitled "Eleven: The Junior Senior Year" (the "Album"), which he also owns full copyright to. The Certificate of Copyright reflecting the foregoing registration is annexed hereto as **EXHIBIT B**. Nwosuocha is the owner of all copyrights in the Copyrighted Work.

6.      Since creating the Copyrighted Work and fixing it to a tangible medium, Nwosuocha has published, distributed, advertised, licensed, performed, publicly displayed, and sold the Copyrighted Work in the United States by, among other means, uploading the Copyrighted Work to all major music streaming platforms, including YouTube, Apple Music, Spotify, Tidal, and Soundcloud, and by selling downloadable digital copies of the Copyrighted Work.

7.      All of the claims asserted herein arise out of and are based on Defendants' copying, reproduction, distribution, public display, performance, sale, licensing, marketing, promotion and/or other exploitation of the Copyrighted Work without Nwosuocha's consent. Nwosuocha sues for copyright infringement under the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 101 *et seq*.

8.     Nwosuocha seeks all remedies afforded to him by the Copyright Act, including preliminary and permanent injunctive relief, Nwosuocha's damages and Defendants' profits from Defendants' infringing conduct, and other monetary relief.

### JURISDICTION AND VENUE

9.     This court has jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act. Federal Courts have exclusive jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

10.     This court has personal jurisdiction over the enumerated Defendants because they have directed their infringing activities with respect to the Infringing Work to New York residents, and New York residents are able to purchase, download, and stream the Infringing Work and works that are derivative of the Infringing Work.

11.     Defendants have engaged in systematic and continuous business activities, including those relating to the Infringing Works, in New York. As such, the Defendants have engaged in continuing business activities in the instant jurisdiction.

12.     Defendants are, at minimum, constructively aware of their continuous and substantial commercial interactions with New York residents.

13.     Defendant Glover has performed, and he and the other Defendants have authorized, organized, and promoted performances of the Infringing Work in New York.

14.     The Defendants have generated touring and recording revenues from the unauthorized and unlawful exploitation of the infringing work, including receiving substantial revenue from such exploitation in New York. They have advertised the Infringing Works to New York residents.

15.     The Defendants, individually and collectively, have generated substantial revenue from the exploitation of the infringing works in New York.

16.     New York has a considerable interest in adjudicating disputes wherein New York residents are the target of the harm resulting from exploitation of the infringing work

17.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c) and 1400(a) because Defendants maintain offices in and are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this judicial district, and because a substantial part of the events giving rise to the within claims occurred in this judicial district.

<u>PARTIES</u>

18.     Nwosuocha is an individual who resides in and is a citizen of Miami-Dade County, Florida. Nwosuocha is a musician, singer, vocalist, songwriter, and producer who disseminates and/or performs his musical works under the pseudonym/stage name "Kidd Wes." Nwosuocha is further engaged in, among other things, conducting the business of publicly performing, distributing, selling, marketing, licensing, promoting, and/or otherwise exploiting his musical works.

19.     Upon information and belief, Defendant Glover resides in Los Angeles County, California. Among other ventures, Defendant Glover is an American singer, songwriter, and rapper who releases music under the stage name Childish Gambino, and who caused the public release of the Infringing Work on May 6th, 2018, and who has since then has caused the Infringing Work to be widely published distributed, performed, licensed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon further information and belief, Defendant Glover has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

20.     Upon information and belief, Defendant Kobalt Music is a Delaware corporation in the business, among others, of music publishing, with a principal place of business in New York, New York. Upon further information and belief, Kobalt Music is one of the publishers of the Infringing Work, has been responsible for, among other things, coordinating publishing, administrative, and creative support services with respect to the Infringing Work. Upon further information and belief, Defendant Kobalt Music has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

21.     Upon information and belief, Defendant Sony Music is a major global music company that produces, manufactures, publishes, licenses, distributes, administers, markets, and/or exploits prerecorded music, among other business ventures. Upon further information and belief, Defendant Sony Music is the parent entity that owns Defendant RCA. Upon further information and belief, Defendant Sony Music has assisted in and/or directly facilitated, among other things, the publication, licensing, promotion, reproduction, sale and/or exploitation of the Infringing Work. Upon further information and belief, Defendant Sony Music conducts systematic and continuous business in this district and has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

22.     Upon information and belief, Defendant RCA is an unincorporated division of Sony Music that does regular business in New York and maintains an office in New York. Defendant RCA is the record label entity to which Defendant Glover is signed for the purposes of creating, producing, manufacturing, publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his stage name Childish Gambino, including the Infringing Work. Upon information and belief, Defendant RCA has assisted in and/or directly facilitated, among other

things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant RCA has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

23.     Upon information and belief, Defendant Williams resides in Fulton County, Georgia. Among other ventures, Defendant Williams is an American singer, songwriter, and rapper who releases music under the stage name Young Thug, who regularly does business in New York, and who is credited as a writer of the Infringing Work and who vocally performs on the Infringing Work. Defendant Williams has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Defendant Williams has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

24.     Upon information and belief, Defendant YSL is a Georgia limited liability company whose principal and sole member is Defendant Williams, and which functions as Defendant Williams' publishing imprint. Upon further information and belief, Defendant YSL has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited, and has derived substantial revenues and/or profits therefrom.

25.     Upon information and belief, Defendant 300 is a Delaware limited liability company doing regular business in New York, and with a principal place of business in New York, New York. Upon further information and belief, Defendant 300 is the record label to which Defendant Williams is signed for the purposes of creating, producing, manufacturing,

publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his stage name Young Thug, including the Infringing Work, and is the record label that has acted as the distributor for music released and/or published through Defendant YSL's imprint. Upon further information and belief, Defendant 300 has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant 300 has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

26.    Upon information and belief, Defendant Atlantic is a Delaware corporation with offices in, and doing regular business in, the State of New York. Upon further information and belief, Defendant Atlantic has acted as the distributor of all music distributed by and through Defendant 300, including the Infringing Work. Upon further information and belief, Defendant Atlantic has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Atlantic has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

27.    Upon information and belief, Defendant WMG is a major global music corporation organized under the laws of Delaware with its principal offices in New York, New York. Defendant Upon further information and belief, WMG is the parent company Defendant

Atlantic, and Defendant WMG has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant WMG has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

28.     Upon information and belief, Defendant Göransson resides in Los Angeles County, California. Among other ventures, Defendant Göransson is a music producer who is credited as a writer of the Infringing Work, whose composition and performance of the instrumental track that underlies the Infringing Work is embodied within the Infringing Work, and who does regular business in New York. Upon further information and belief, Defendant Göransson has caused the Infringing Work to be widely published, distributed, licensed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited. Upon information and belief, Defendant Göransson has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

29.     Upon information and belief, Defendant Roc Nation is a Delaware limited liability company doing regular business in New York, and with a principal place of business in New York, New York. Upon further information and belief, Defendant Roc Nation is the record label to which Defendant Göransson is signed for the purposes of creating, producing, manufacturing, publishing, licensing, distributing, performing, displaying, marketing, promoting, and/or otherwise exploiting the music he creates, writes and/or performs under his given name, including the Infringing Work. Upon further information and belief, Defendant Roc Nation has assisted in and/or directly facilitated, among other things, the publication, reproduction,

licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Roc Nation has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

30.     Upon information and belief, Defendant Universal is a corporation organized under the laws of the State of California registered and doing regular business in the State of New York as a foreign business corporation. Upon further information and belief, Defendant Universal has acted as the distributor of music distributed and/or published by and through Defendant Roc Nation that includes the Infringing Work. Upon further information and belief, Defendant Universal has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration, distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Universal has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

31.     Upon information and belief, Defendant Warner-Tamerlane is a corporation organized under the laws of the State of California registered and doing regular business in the State of New York as a foreign business corporation. Upon further information and belief, Defendant Warner-Tamerlane has acted as the publisher and/or distributor of music published and/or distributed by and through Defendant Roc Nation and Defendant Atlantic, including the Infringing Work. Upon further information and belief, Defendant Warner-Tamerlane has assisted in and/or directly facilitated, among other things, the publishing, licensing, administration,

distribution, dissemination, and/or the exploitation of the Infringing Work, and has caused copies of the Infringing Work to be widely published, distributed, performed, displayed, marketed, promoted, reproduced, copied and/or otherwise exploited to the public. Upon further information and belief, Defendant Warner-Tamerlane has derived substantial revenues and/or profits from the exploitation of the Infringing Work.

**FACTS**

A.      **Plaintiff and his Copyrighted Work**

32.      Nwosuocha wrote the Copyrighted Work, and thereafter fixed it to a tangible medium by recording his performance of the Copyrighted Work, in or about early September of 2016. Nwosuocha has since then continued to retain ownership of the full and exclusive copyright in the Copyrighted Work, and registered his full ownership of copyright in the Copyrighted work with the U.S. Copyright Office on May 24th, 2017, prior to its publication. Nwosuocha accomplished registering his full copyright ownership in the Copyrighted Work by registering on May 24th, 2017 his full copyright ownership of the entirety of his then-unpublished album entitled "Eleven: The Junior Senior Year" (the "Album"), on which the Copyrighted Work was included.

33.      Subsequent to registering his full copyright to the entirety of the fully-unpublished Album on May 24th, 2017, Nwosuocha made the first publication of the Copyrighted Work as a purchasable lead single to the Album. This initial publication of the Copyrighted Work occurred on or about June 8th, 2017.

34.      As a result of the foregoing, Nwosuocha owns any and all copyright rights in the Copyrighted Work.

35.     The Copyrighted Work is wholly original, and Nwosuocha is the lawful exclusive owner of all rights, title, and interest, including all rights under copyright, in the Copyrighted Work.

36.     Nwosuocha is the owner of valid and subsisting United States Copyright Registration No. SRu 1-301-922 for the Copyrighted Work, issued by the United States Copyright Office on May 24th, 2017. *See* **Ex. B**.

37.     As previously set forth, Nwosuocha has published, distributed, licensed, displayed, sold, performed, promoted, marketed and/or otherwise exploited the Copyrighted Work by, among other means, uploading the Copyrighted Work to all major music streaming platforms, including YouTube, Apple Music, Spotify, Tidal, and Soundcloud, and by selling copies of the Copyrighted Work.

**B.     Defendants' Infringing Conduct**

38.     Defendants Glover, Williams, and Göransson are credited as the writers of the Infringing Work, "This is America," which publicly-accessible records filed by and/or on behalf of the Defendants affirmatively state was created in 2018.

39.     The Infringing Work, which won the 2019 Grammy for Record of the year and has continuously generated massive amounts of revenue, praise, and publicity since its initial public release, is centered on a chorus, or "hook," wherein Defendant Glover recorded his vocal performance of the rapping of the chorus' lyrics while employing a distinct and unique vocal cadence, delivery, rhythm, timing, phrasing, meter and/or pattern – or  a "flow," as the various elements making up a vocal performance are known and referred to in the realm of hip-hop music. The distinctive flow employed in Defendant Glover's recorded performance of the Infringing Work's chorus, which is the musical centerpiece of the Infringing Work and forms the

namesake for the Infringing Work's song title, is unmistakably substantially similar, if not practically identical, to the distinct and unique flow that was employed by Nwosuocha in recording his vocal performance of his rapping of the hook to his Copyrighted Work.

40.     In addition to the substantially similar unique "flow" employed first in the Copyrighted Work and almost two years later in the Infringing Work, the lyrical theme, content, and structure of the identically-performed choruses are also glaringly similar. In the chorus to the Copyrighted Work, as first made available by Nwosuocha on major streaming platforms for widespread public listening as early as September 11th, 2016, Nwosuocha's lyrical refrain is:

> *"Made in America*
> *Flex on the radio*
> *Made me a terrorist*
> *Pessimistic n***as*
> *You should just cherish this"*

Similarly, in the later-released Infringing Work, as created in 2018 and released on May 6th, 2018, the hook's central lyrical refrain, which is repeated and reincorporated throughout the song with occasional minor variances in the specific words rapped is:

> *"This is America*
> *Guns in my area*
> *I got the strap*
> *I gotta carry 'em"*
>
> - or -
>
> *"This is America*
> *Don't catch you slippin' now*
> *Don't catch you slippin' now*
> *Look what I'm whippin' now"*

41.     The unmissable substantial similarity of the two flows used in the songs' respective hooks, as augmented by the two hooks' substantially similar structure and lyrical content, is striking to an extent beyond coincidence and is accordingly audible to the average lay

person who listens to both songs. Indeed, a number of end users from the general public who have listened to the Copyrighted Work as uploaded by Nwosuocha to major streaming platforms have left comments on the Copyrighted Work explicitly noting their opinions as members of the disinterested listening general public that the Infringing Work represents a clear infringement of the Copyrighted Work. For example, on major streaming platform SoundCloud, one listener commented on Nwosuocha's posting of the Copyrighted Work for public streaming: "*Gambino ripped this shit off you G.*" Other examples, which appear in the comment section of Nwosuocha's upload of the Copyrighted Work's music video to YouTube for public streaming, include one listener commenting "*Childish gambino gotta give you creds for the flow and everything*" and another listener commenting "*anyone gonna ask Childish Gambino about this song???*" Annexed hereto as **EXHIBIT C** are screenshots containing the relevant portions of the comment sections of Kidd Wes' "Made in America," as uploaded to SoundCloud and YouTube, reflecting the foregoing examples of comments made by the listening public.

42.     Beyond the fact that the striking substantial similarities between the Copyrighted Work and the Infringing Work are manifestly audible to listening lay persons of the general public, the striking substantial similarities are also qualifiable and quantifiable from a scientific perspective. Esteemed University of Miami Musicologist Dr. Brent Swanson ("Dr. Swanson") has undertaken an investigation into the similarities between the Copyrighted Work and the Infringing Work and concluded in his investigation's report as follows:

> "*This report has detailed the thematic, lyrical, visual, rhythmic, and melodic similarities between the music videos 'Made in America'" by Kidd Wes, and 'This is America,' by Childish Gambino. The videos and lyrics share the themes of gun violence, and oppression of African-Americans and People of Color by police, the political establishment, conservative organizations (in particular the NRA and the GOP), White nationalism (Charleston shooting), and racist structures in the U.S. They also use of imagery related to Blackface Minstrelsy (Jim Crow, Coon, and Uncle Tom), and deride stereotypical Black culture in an ironic way to poke fun*

*at and bring attention to the aforementioned racist power structures in the U.S or Whiteness. There are distinct similarities in melodic contour, rhythmic triplet flow in each performance, and the lines 'Made in America' and 'This is America' line-up nearly perfectly in time despite being different tempos. They also both use rhythmic utterances in their performances. **It is authors' opinion that these similarities are likely not coincidences.***"

*See* Dr. Swanson's Report annexed hereto as **EXHIBIT D** at 15. (emphasis added).

43.     In arriving at the above expert conclusion, Dr. Swanson, among other things, conducted an in-depth forensic sonic analysis and comparison of the audio making up the two songs. Based on his analysis and comparison of the two songs' audio using a number of scientific methods of audio analysis, Dr. Swanson determined that the songs' hooks are substantially similar from a scientific qualifiable and quantifiable perspective. *See id.* at 9-15.

44.     When viewed in light of the fact that the Copyrighted Work had been made continuously widely publicly accessible by Nwosuocha significantly before the Infringing Work was created and/or released, the clearly audible (and scientifically-confirmed) substantial similarity between the Copyrighted Work and the Infringing Work cannot be reasonably ascribed to mere coincidence. Indeed, as has been opined by Dr. Swanson and a number of commenting members of the disinterested listening general public, the clear substantial similarity between the works is most reasonably ascribable to Defendants' willful unauthorized infringement of the Copyrighted Work that was widely and continuously publicly accessible, and copyrighted, well before the Infringing Work was ever released to the public.

45.     Despite the foregoing unauthorized copying of the Copyrighted Work in the Infringing Work, on or about May 6th, 2018, the Infringing Work was publicly released for the first time when: (a) Defendant Glover performed it on television while hosting Saturday Night Live; and (b) simultaneously, or soon thereafter, upon information and belief, Defendants Glover, Kobalt Music, Sony Music and RCA, as administrators and/or managers of Defendant

Glover's music, caused a music video (the "Infringing Work Music Video") derivative of and accompanying the Infringing Work to be uploaded to his "Donald Glover" official YouTube channel for public streaming.

46.     The Infringing Work and the derivative Infringing Work Music Video were an instant sensation of historical proportions. In an article published online on May 9th, 2018 Billboard reported that the Infringing Work Music Video had been viewed nearly one million times on the "Donald Glover" YouTube channel within the first hour of its public release, had amassed 12.9 million views within the first twenty-four hours of its initial release, and had reached over 50 million views at the time of reporting (just a few days after the initial release). Nerisha Penrose, "*Childish Gambino's Record-Breaking 'This Is America' Video Hits 50 Million Views in Mere Days*," Billboard, May 9, 2018, https://www.billboard.com/articles/columns/hip-hop/8455253/childish-gambino-breaks-his-youtube-record-this-is-america-video.

47.     As of the date of the within, the Infringing Work Music Video remains uploaded to the Donald Glover YouTube channel for public streaming and has a total view count of approximately 772.4 million views since its upload on May 6th, 2018.

48.     Beyond the unprecedented astronomical number of streams that the Infringing Work and the Infringing Work Music Video garnered instantly after Defendants Glover, Kobalt Music Sony Music, and RCA first publicly released both, the Infringing Work quickly began receiving widespread critical acclaim that often specifically referenced and praised the infringing flow, structure, and/or lyrical content and themes of the Infringing Work's hook. For example, in a glowing song review of the Infringing Work published on May 7th, 2018 by Pitchfork (one of the best-known and most influential music review outlets in the world), contributor Stephen Kearse noted of the sonics of Defendant Glover's vocal performance in the Infringing Work that:

> "'This Is America,' then, is a bit of a reset. Here, [Glover] uses the ambivalent reception of black art to represent the tightrope of being black. Built on the sharp contrast between jolly, syncretic melodies and **menacing trap cadences**, the song presents Childish Gambino as confident and cutting. 'This is America!' **he chants** as the song swings between harmony and discord ... **Glover's voice** bridges the two worlds, dropping to an austere deadpan for his rapping and ascending to a syrupy coo for his singing. 'Don't catch you slippin' up,' Glover warns as he pulls off the balancing act with ease ..."

Stephen Kearse, "*Childish Gambino - This is America*," Pitchfork, May 7, 2019, https://pitchfork.com/reviews/tracks/childish-gambino-this-is-america/ (emphasis added).

49.     Similarly, writing for Vulture (one of the world's foremost entertainment news outlets), and echoing Dr. Swanson's descriptions of certain unique lyrical/thematic/vocal elements from the Copyrighted Work that he found were strikingly substantially copied in the Infringing Work, Frank Guan specifically commented on the lyrics, thematic elements, and vocal performances embodied in the Infringing Work:

> "... **with its cash-grabbing, fashion-mongering, gun-waving, drug-slinging rhetoric delivered in a clipped triplet flow**, the song is a trap number in all but name. The incongruousness of Glover, raised middle-class and a NYU graduate, bragging about his Mexican drug supplier and threatening to have you gunned down, is intentional: it's a tribute to the cultural dominance of trap music **and a reflection on the ludicrous social logic** that made the environment from which trap emerges, **the logic where money makes the man, and every black man is a criminal**."

Frank Guan, "*What It Means When Childish Gambino Says 'This Is America,'*" Vulture, May 8, 2018, https://www.vulture.com/2018/05/what-it-means-when-childish-gambino-says-this-is-america.html (emphasis added).

50.     The Infringing Work reportedly debuted at number one in the Billboard Hot 100 chart after selling 78,000 downloadable copies and garnering 65.3 million U.S. streams within its first week of release, remained number one on the Billboard Hot 100 for two weeks, and remained in the top ten of the Billboard Hot 100 for a total of five weeks.

51.     The immediate sensation of the Infringing Work and the derivative Infringing Work Music Video spanned well beyond the United States in scope and extent. As reported by Billboard in an article published on August 2nd, 2018, many derivative works, or "remixes," of the Infringing Work and/or the Infringing Work Music Video began to be disseminated on a global scale by musicians hailing from countries all over the world in the few months following the initial public release of the Infringing Work and the Infringing Work Music Video. *See* **EXHIBIT E** annexed hereto, Gil Kaufman, "*This Is Earth: Watch 12 Global Remixes of Childish Gambino's 'This Is America'*," Billboard, Aug. 2, 2018, https://www.billboard.com/articles/columns/hip-hop/8468356/this-is-america-global-remixes-childish-gambinos-india-brazil-iraq-india.

52.     In keeping with the prevailing musical custom for "remixes" within the hip-hop music genre (to which both the Copyrighted Work and the Infringing Work belong), the vast majority of these international derivative works remixing the Infringing Work have substantially featured identical copies of the compositional and performance elements embodied in the Infringing Work - including those the Defendants copied from the Copyrighted Work without authorization - except that in many instances the specific words in the Infringing Work's lyrics were swapped out in the remixes for the international remixers own chosen words.

53.     Indeed, in a number of the more well-known examples of these international derivative remix works, the international remixers/rappers who created and disseminated their own remixes of the Infringing Work rapped over substantially the exact backing instrumental (or "beat," in hip-hop parlance) of the Infringing Work, and did so deliberately employing the same distinct and unique cadences, delivery (or deliveries), and/or phrasing(s) of the vocal performance(s) embodied in the original recording of the Infringing Work, including those

distinct and important vocal elements copied without authorization from the Copyrighted Work. The central musical idea underlying these examples of the international derivative remixes was to substantially sonically remake the Infringing Work but to do so rapping lyrics specifically referencing the remixer's own home country instead of America. Each of any such derivative remix of the Infringing Works has thus been, by design, patently referential to and promotional of the Infringing Work, and has also necessarily constituted a widespread international public distribution and/or exploitation of the Infringing Work.

54.     For all intents and purposes, the phenomena of these international derivative remixes, including the attendant major media outlet coverage, has functioned as a massively effective low-budget global advertisement campaign for the Infringing Work and Defendants' various lucrative infringing endeavors with respect to the Infringing Work.

55.     In addition to globally promoting, advertising, and/or otherwise facilitating the Defendants' continuing infringement of the Copyrighted Work, because many of the international derivative remixes, by design, used the same vocal elements wrongfully and unlawfully copied by Defendants from the Copyrighted Work, those international derivative remixes themselves represent infringements of the Copyrighted Work.

56.     Some examples of the infringing international derivative remixes described in the foregoing have garnered significant streams and international fame in their own rights. For instance, Nigerian rapper Falz's infringing derivative remix "This is Nigeria" has been streamed on YouTube approximately 20.1 million times to date, and has been reported on by NPR and CNN, amongst other preeminent global news outlets. In another example, Dubai-based Iraqi rapper I-NZ's infringing derivative remix "THIS IS IRAQ" has been streamed on YouTube approximately 7.9 million times to date, has been reported to have amassed 350 million streams

Case 23-703, Document 104, 11/07/2023, 3588268, Page27 of 173

DA-24

Case 21-cv-04040-AJN    Document 94-1 Filed 05/09/22   Page 20 of 136
Case 1:21-cv-04040-LJL    Document 94    Filed 06/10/21   Page 20 of 91

overall, and has been the subject of reports by Newsweek, amongst other notable major media outlets. As further evidence highlighting the direct benefits Defendants have enjoyed as a direct result of these infringing derivative remixes of their Infringing Work, on the popular major online music streaming/purchase platform BandCamp, "THIS IS IRAQ" is made available by the rapper I-NZ for free streaming and for digital download with an express acknowledgement and disclaimer from I-NZ that "All rights to the musical composition belong to Childish Gambino and the record label GlassNote Records," and additionally includes the name Childish Gambino in the posting's tagline. A screenshot of "THIS IS IRAQ," as uploaded to BandCamp by I-NZ, reflecting the foregoing is annexed hereto as **EXHIBIT F**.

57.    Upon information and belief, none of the Defendants have caused any of the more popular/widely-consumed examples of the international derivative remixes to be removed from YouTube. Upon further information and belief, all of the Defendants have possessed the presumptive ability to cause the aforesaid international derivative remixes to be taken down from YouTube, pursuant to YouTube's DMCA copyright takedown policy, because the Defendants are all either: (a) parties with registered writing and/or publishing interests in and to the Infringing Work; and/or (b) are major parent record corporations, distribution companies, and/or publishing companies who are responsible for the administration and/or management of the Infringing Work and the registered writing and/or publishing interest therein.

58.    As a further testament to the tremendous global scale on which the Infringing Work has been disseminated and exploited, to date the Infringing Work has been reportedly been Certified:

     a.    three-times Platinum in the U.S. (3,000,000 Certified Units/Sales);

     b.    three-times Platinum in Australia (210,000 Certified Units/Sales);

    c.   three-times Platinum in Canada (240,000 Certified Units/Sales);

    d.   Platinum in Poland (20,000 Certified Units/Sales);

    e.   Gold in France (100,000 Certified Units/Sales);

    f.   Gold in New Zealand (15,000 Certified Units/Sales); and

    g.   Gold in the United Kingdom (40,000 Certified Units/Sales).

59.    In addition to garnering massive numbers of streams and/or sales, as well as spawning a swath of infringing derivative international works that furthered the Infringing Work's dissemination and themselves generated significant streams and/or sales, upon information and belief, the Infringing Work has also been exploited by the Defendants via other means, such as via live performance and via audiovisual synchronization licensing.

60.    For example, in a notable instance of audiovisual synchronization licensing of the Infringing Work, the Infringing Work, including its infringing hook, can be heard prominently featured as a musical score appearing in the 2019 film "Guava Island," which was/is distributed by Amazon Prime Video, stars Defendant Glover alongside global pop phenom Rihanna, has been the subject of much widespread publicity and promotion, and remains widely streamable by the public via Amazon Prime's streaming service. Upon information and belief, since the date of its public release in the U.S., "Guava Island" has also been accessible for public streaming in numerous foreign countries including Brazil, Germany, Singapore, France, and Canada, among others. Upon further information and belief, as parties who possess and/or control and/or administrate the registered writing and publishing interests in the Infringing Work, all of the Defendants have reaped significant revenues and profits derived from this international synchronization license.

61.     Though the exact extent to which Defendants Glover, Williams, and/or Göransson have individually and/or jointly publicly participated in live performances of the Infringing Work may not be fully ascertainable by Nwosuocha until discovery in this action is complete, it is presently known that, in 2018 through 2019, Defendant Glover went on the international "This is America Tour." During the tour, which was named/branded after the Infringing Work, upon information and belief as well as publicly-available setlists/recordings, Defendant Glover gave live performances of the Infringing Work approximately thirty to thirty-five separate times at concerts dates spanning the United States and various locations in Canada, Australia, England, and France.

62.     It is not yet known to Nwosuocha precisely how many total concert tickets were sold during the entire span of the This is America Tour, or precisely how much gross revenue was generated from the total sales from the entire span of the tour. Nonetheless, publicly-available concert box office data reported by Billboard, which **does not include** sales/revenue data for the majority of the venues where Defendant Glover performed during the tour, makes presently knowable that the This is America Tour garnered approximately 190,707 total concert ticket sales, resulting in a total gross revenue of $16,286,160.00, from the tour performances that occurred in just twelve out of the thirty total venues that hosted the tour. Because the foregoing astronomical $16,286,160.00 gross revenue figure represents roughly just 40% (12 out of 30 tour venues) of the entire tour, it is reasonable to assume that the tour's total gross revenue, derived in significant part from Defendants' infringing use of the Copyrighted Work in the Infringing Work, far exceeds this figure. Upon further information and belief, as the parties who possess and/or control and/or administrate the writing and publishing interests in the Infringing Work, all of the Defendants have reaped significant revenues and profits derived from the tour.

63.     Upon information and belief, the Infringing Work was also merchandised in tour merchandise sold during the tour, and Defendants have derived revenue from this merchandising.

64.     Upon information and belief, the Infringing Work has also been performed live outside the context of the This is America Tour, including, but not necessarily limited to, at the 2018 BET Awards.

65.     Upon information and belief, Defendants Kobalt Music, RCA, Sony Music, YSL, 300, Atlantic, WMG, Roc Nation, Universal, and Warner-Tamerlane (collectively, the "Label Defendants") have individually and jointly been responsible for the continuing administration, display, reproduction, distribution, performance, sale, marketing, promotion, and/or other exploitation of the Infringing Work. Upon further information and belief, the Label Defendants' joint and individual infringing conduct in this regard extends to conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples infringing conduct described above. For instance, as just one example of Defendant RCA's, and its parent company Defendant Sony Music's, role in carrying out and furthering the continuing infringement of Nwosuocha's Copyrighted Work is a press release dated May 6th, 2018 posted publicly to Defendant RCA's official website, wherein Defendant RCA: directly promotes both the Infringing Work and the derivative Infringing Work Music Video; explicitly solicits public streaming of both the Infringing Work and the derivative Infringing Work Music Video; and explicitly solicits the public to *purchase* copies of the Infringing Work. *See* the May 6th, 2018 RCA online press release annexed hereto as **EXHIBIT G**. In other examples, which are but two of numerous examples where Defendant Roc Nation's overtly has furthered the continuing infringement, Roc Nation's website directs visitors specifically to stream the "Guava Island" film prominently

containing the Infringing Work and features a "news" update of the Infringing Work's Grammy award. Indeed, upon information and belief, all of the Label Defendants, personally and/or through their subsidiaries, have overtly promoted and marketed multiple instances of the continuing infringing use of the Copyrighted Material by way of its unauthorized inclusion in the Infringing Work.

66. Upon further information and belief, the Label Defendants are individually and jointly responsible for the administration and/or distribution of the various streams of revenue derived from conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct described above.

67. Upon information and belief, Defendants Glover, Williams, and Göransson, as the three parties credited with writing the Infringing Work, have continuously derived significant financial and professional benefits directly resulting from conduct that continues to infringe upon Nwosuocha's full ownership of the copyright to the Copyrighted Material, including, but not limited to, the various examples of infringing conduct described above.

68. Further, Defendants Williams and Göransson both took affirmative public steps to advance their financial interests as credited writers of the Infringing Work by promoting, encouraging, and/or soliciting the widespread global dissemination of the Infringing Work. Illustrative examples of such conduct by Defendants Williams and Göransson include, but are not limited to, Defendant Williams doing a promotional video piece for major streaming platform Spotify publicly released on or about May 8th, 2018 that solicited end users to stream the Infringing Work on Spotify, and Defendant Göransson championing the Infringing Work as a song that "speaks to people; it connects right to your soul. It calls out injustice, celebrates life

and reunites us all at the same time" directly to the countless viewers of his highly-televised acceptance speech for the Grammy given to the Infringing Work.

69.     Upon information and belief, as a direct result of the streaming, licensing, sale, derivative streaming/licensing/sale/exploitation, synchronization licensing, live performance, reproduction, marketing, promotion, and/or other exploitation of the Infringing Work, all Defendants have wrongfully benefited, and continue to wrongfully benefit, from their continued wrongful uses of Infringing Work and/or the derivative Infringing Work Music Video that both include material to which Nwosuocha owns full copyrights. Because the foregoing sets forth only that portion of Defendants' infringing conduct that has been reasonably discoverable and ascertainable to Nwosuocha in the time since the Defendants' infringing conduct first became public on May 6th, 2018, the foregoing likely may only represent a portion of the totality of the infringing conduct for which Defendants are liable to Nwosuocha either on individual and/or joint bases.

70.     On December 7th, 2020 Nwosuocha's undersigned counsel sent a letter to Defendants Glover, Williams, Göransson, Sony, and RCA in order to put the Defendants on formal notice of Nwosuocha's objection to the Defendants' unauthorized and infringing reproduction, publication, promotion, distribution, license, public display, sale and/or exploitation of the Copyrighted Work. The letter also, in good-faith, sought to provide the Defendants an opportunity to discuss a pre-suit resolution to the issue of their continuing infringement that may have avoided the need for Nwosuocha's within resort to the courts. Annexed hereto as **EXHIBIT H** is a true and correct copy of Nwosuocha's counsel's December 7th, 2020 letter to Defendants.

71.     Nwosuocha's counsel received no response to the December 7th, 2020 letter from any of the Defendants except Defendant Glover, whose counsel, Jonathan D. Davis, Esq. ("Mr. Davis"), reached out to the undersigned to ask for materials supporting Nwosuocha's copyright claims, such as Dr. Swanson's report, for Defendant Glover's review. On February 16th, 2021, given that Defendant Glover had opened the lines of communication but still had failed to demonstrate an intent to cure, or even temporarily mitigate, the continuing global infringement of Nwosuocha's Copyrighted Work, the undersigned sent Mr. Davis a cease and desist letter demanding that Defendant Glover immediately cease all of his infringing conduct with respect to the Copyrighted Work, destroy all infringing materials in his possession, custody, and control, and provide Nwosuocha  with a full accounting of all proceeds he derived from the Infringing Work. Annexed hereto as **EXHIBIT I** is a true and correct copy of Nwosuocha's counsel's February 16th, 2021 cease and desist letter. In good-faith, and hoping to convince Defendant Glover to begin abating the continuing infringement of the Copyrighted Work as soon as possible, Nwosuocha also soon thereafter provided Mr. Davis with the corroborative materials he requested for Glover's review.

72.     Despite the foregoing two letters sent by Nwosuocha's counsel, as well as Nwosuocha's counsel's good-faith communications with and informal document disclosure to Glover's counsel, to date none of the Defendants have communicated to Nwosuocha any intention on their parts to cease, desist, and/or otherwise cure any of their continuing willful infringing conduct with respect to the Copyrighted Work. Nwosuocha is not aware of any evidence otherwise demonstrating that any of the Defendants have or will cease, desist, and/or otherwise cure their massive ongoing global infringement of the Copyrighted Work. Given that the notice provided by Nwosuocha was received by Defendants Glover, Williams, Göransson,

Sony, and RCA, the remaining co-defendants (as Defendants Glover's, Williams', and Göransson's publishers and/or record labels and/or distributors, and/or parent corporations thereof) had reasonable opportunity and cause to learn of Nwosuocha's notice from Defendants Glover, Williams, Göransson, Sony Music, and/or RCA. Accordingly, because Nwosuocha's notice clearly set forth his objection to the Defendants' continuing infringement, the Defendants' continuing infringement after that notice is evidence of the willfulness with which they continue to engage in their infringement.

73.    As a result of Defendants' actions described above, Nwosuocha has been directly damaged, and is continuing to be damaged, by Defendants' willful unauthorized and infringing reproduction, publication, promotion, distribution, license, public display, sale and/or exploitation of the Copyrighted Work. Defendants have never accounted to or otherwise paid Nwosuocha for their unauthorized use of the Copyrighted Work.

### FIRST CAUSE OF ACTION
### (DIRECT, CONTRIBUTORY, AND VICARIOUS COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS)
### (17 U.S.C. § 101, *et seq.*)

74.    Nwosuocha repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

75.    Nwosuocha is the sole and exclusive owner of the U.S. Copyright in all rights, titles, and interests in the Copyrighted Work, "Made in America" as written and recorded by Nwosuocha.

76.    The Defendants' unauthorized reproduction, distribution, public performance, display, creation of derivative works, and other exploitation and/or misappropriation of the Copyrighted Work infringes Nwosuocha's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

77.     The Defendants did not seek or receive permission to copy and/or interpolate any portion of the Copyrighted Work into the Infringing Work, "This is America."

78.     The Defendants' conduct has at all times been knowing, willful, and with complete disregard for Nwosuocha's rights.

79.     As a direct and/or proximate cause of the Defendants' wrongful conduct, Nwosuocha has been irreparably harmed.

80.     The Infringing Work copies quantitatively and qualitatively distinct, important, and recognizable portions and/or elements of the Copyrighted Work.

81.     Specifically, the Infringing Work copies distinctive and important vocal elements of the composition and performance embodied in the Copyrighted Work.

82.     The central inclusion of the foregoing important vocal elements from the Copyrighted Work in the Infringing Work has greatly enhanced the musical and financial value of the Infringing Work.

83.     From the date of the creation of the Infringing Work, all of the Defendants have infringed Nwosuocha's copyright interest in the Copyrighted Work including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing the Infringing Work at radio, live concerts, and on film, video, television, and otherwise; (b) by authorizing and/or playing a role in the facilitation of the reproduction, distribution and sale of records and digital downloads containing the Infringing Work through the execution of licenses, and/or actually selling, manufacturing, and/or distributing the Infringing Work through various sources; (c) by substantially copying and participating in the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in and

furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of elements of the Copyrighted Work in and as part of the Infringing Work, packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including via radio, streaming services, concerts, film, video, television, and/or otherwise.

84.    Nwosuocha has received no songwriter credit and no copyright ownership interests in and for any exploitations of the Infringing Work or any of the works associated with the Infringing Work.

85.    The infringement by the Defendants has been, and continues to be, willful and knowing.

86.    With knowledge of the infringement, the Defendants have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

87.    The Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that the Defendants should be found vicariously liable.

88.    The infringement is continuing, as the Infringing Work continues to be sold, licensed, performed, displayed, merchandised, and/or otherwise used and/or exploited by the Defendants or their agents.

89.    As a direct and proximate result of the conduct of the Defendants, Nwosuocha has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, while Defendants have profited in the amount of hundreds of millions of dollars and to be determined at trial from their infringement.

90.     Pursuant to 17 U.S.C. § 504(b), Nwosuocha is entitled to damages including the substantial profits of the Defendant, as will be proven at trial.

91.     In the alternative, pursuant to 17 U.S.C. § 504(c), Nwosuocha is entitled to the maximum statutory damages of $150,000 per infringement, since the Defendants' willful and continuing infringement occurred after Nwosuocha's full-owned copyrights in the Copyrighted Work were registered and after the Copyrighted Work had been published and made widely publicly-accessible.

92.     Nwosuocha is entitled to his costs, including reasonably attorneys' fees, pursuant to 17 U.S.C. § 505.

93.     Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause Nwosuocha irreparable injury that cannot be fully compensated or measured in monetary terms. Nwosuocha has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Nwosuocha is entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the Infringing Work, including all derivatives thereof, in any and all formats, configurations and/or media.

## **RELIEF REQUESTED**

**WHEREFORE**, Nwosuocha respectfully requests that judgment be entered against the enumerated Defendants, as follows:

A.     A declaration that Defendants have willfully infringed Nwosuocha's Copyrighted Work in violation of the Copyright Act;

B.     A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

C.      A permanent injunction requiring Defendants and their agents, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and directly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Nwosuocha's rights protected by the Copyright Act;

D.      An award of damages pursuant to 17 U.S. § 504(b), including actual damages, and the profits of the Defendants as will be proven at trial, including all profits and damages from exploitation of the Copyrighted Work domestically and internationally, as well as any and all profits and damages in the following categories attributable to the infringement, including but not limited to:

(1)     Record sales;
(2)     Downloads;
(3)     Ringtones;
(4)     Ringback tones;
(5)     Public performance revenues;
(6)     Digital revenue;
(7)     Streaming revenue;
(8)     Synchronization licensing;
(9)     Merchandising;
(10)    Public appearances;
(11)    Endorsements;
(12)    Sponsorships;
(13)    Spokesperson work;
(14)    Touring revenue;
(15)    Advertising revenue;
(16)    Appearance fees;
(17)    Name and likeness income and increase in value;
(18)    Rights of publicity income and increase in value;
(19)    Increased value in all Defendants' publishing and/or record company and/or companies;
(20)    Increased value of all Defendants' catalogues;
(21)    Increased value of music publishing and/or record royalties and rights;
(22)    Increased value of social media rights, accounts and value;
(23)    Increased goodwill;
(24)    Promotional value;
(25)    Increased value of royalty rate for record deals;

(26)     Increased value in distribution deals, negotiating power and reduction in costs;

(27)     Value of obtaining lower cost of administration fees and/or increased advances for publishing deals;

(28)     Value of obtaining better terms for record company advances and terms and multi-record deals;

(29)     Value of obtaining better terms of publishing and/or recorded master deals for the existing catalogue and for future works of Defendants Glover, Williams, and Göransson;

(30)     Increased value in negotiating 360 deals with record companies and/or publishers;

(31)     Sheet music sales and sheet folio income;

(32)     Any and all music publisher income;

(33)     Any and all record master income;

(34)     Any and all record income;

(35)     Any and all SoundExchange, BMI, ASCAP, PRS, SESAC, PPL, SOCAN, MCPS, Harry Fox Agency, and any and all collection society, mechanical society and performance society income worldwide;

(36)     Any and all producer royalty income;

(37)     Any and all arrangement income;

(38)     Any and all income derived from any existing medium or any medium hereinafter developed worldwide;

(39)     Any and all income from any new collection society and/or collection agency to be created anywhere in the world, including by the U.S. Congress under the Music Modernization Act;

(40)     Any and all income from any society to which any Defendant belongs or joins in the future;

(41)     Any and all income and/or residuals from SAG-AFTRA;

(42)     Any and all income from Apple, iTunes, Amazon, Spotify, Pandora, Rhapsody, and any and all download and streaming services; and

(43)     Any and all of Defendants' equity interests in Spotify, and any other music streaming or download services or companies in which one or more Defendant has an interest, as it relates to the value from the inclusion of the infringing song in the service.

E.      In the alternative, an award of statutory damages, pursuant to 17 U.S. § 504(c), in the amount of $150,000 for each act of infringement;

F.      An award of compensatory and special damages in accordance with proof at trial;

G.      An award of attorneys' fees and full costs pursuant to 17 U.S. § 505 and under other applicable law;

H.      For pre-judgment and post-judgment interest according to law, as applicable; and

I.      For such other and further relief as this Court may deem just and proper.

32

**DA-37**

**REQUEST FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Nwosuocha demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated: New York, New York
      May 5, 2021

Respectfully submitted,

**AIDALA, BERTUNA & KAMINS, P.C.**
By:  /s/ Imran H. Ansari
     Imran H. Ansari, Esq.
     546 Fifth Avenue, 6th Floor
     New York, NY 10036
     T: (212) 486-0011
     F: (212) 750-8297
     iansari@aidalalaw.com

     *and*

**MIAMI ENTERTAINMENT LAW GROUP**
By:  /s/ La'Shawn N. Thomas
     La'Shawn N. Thomas, Esq.
     261 North University Drive, Suite 500
     Plantation, Florida 33324
     T: (305) 417-6450
     F: (305) 417-6452
     LThomas@MiamiEntertainmentLawGroup.com
     *Pro Hac Vice Application Forthcoming*


     *Attorneys for Plaintiff Emelike Nwosuocha*

# EXHIBIT A

DA-39

Kidd Wes-Made In America (prod. by Mindlabs) VIDEO IN DESCRIPTION by Kidd Wes | Free Listening on SoundCloud                    5/5/21, 11:40 AM



**DA-40**

Kidd Wes-Made In America (prod by Mindlost) VIDEO IN DESCRIP. PLAY by Kidd Wes | Free Listening on SoundCloud

5/5/21, 11:40 AM

Imprint · Creator Resources · Blog · Charts
Popular searches

Language: English (US)

randychetsingh1960 at 0:09
Blue the music is banging as always
4 years ago

c g mcdavid68 at 0:51:
Is great song for my.
4 years ago

neiljeremyhudson17 at 2:38
Love it blue
4 years ago

D G Linney at 2:36:
Soo much talent...~~!!~
4 years ago

edforelli at 3:37
this song is amazing , i like
4 years ago

Blair T x Panasik at 1:33:
I look froward! I love this song!
4 years ago

ydimirybe at 3:15
Great song and awesome smile emoticon
4 years ago

philiphypaoli1988 at 3:03:
Amazing, it really is
4 years ago

yqomibonu58 at 2:14
sneakers on point
4 years ago

pat s a cooper at 2:58:
So excited for you! Good luck!
4 years ago

eqokabyvugi at 0:15:
uper bra låt?? Keep up the god work !
4 years ago

CPBrooks at 3:21:
I love this song ***
4 years ago

trentnobriggs6 at 2:50:
it!!!!! Masterpiece!
4 years ago

arebylukiwi at 1:52:
A great song! Wish you all
4 years ago

F z Gossett3 at 1:03:
very nice!!!Love it!
4 years ago

IJGormley3 at 1:55:
Great song and awesome smile emoticon
4 years ago

joshlcrook at 2:13:
My ambition was always my favorite
4 years ago

ocimakiwew56 at 3:22:
It's fantastic!! ;D <333
4 years ago

uhabezuraty at 2:03:
one word AMAZING
4 years ago

J L Forrester75 at 0:41:
good luck guys you deserve it~@#
4 years ago

c d webber7 at 0:28:
Great job blue flame
4 years ago

SlWregget at 0:33:
I love this song
4 years ago

Silas D D Emmery at 2:25:
Wonderfool voice
4 years ago

# DA-41

Kidd Wes–Made In America (prod by Mindless) VIDEO IN DESCRIP | Kidd Wes | Free Listening on SoundCloud                    5/5/21, 11:40 AM



| | | |
|---|---|---|
| punutuw92 at 0:09 | | 4 years ago |
| Loved the song was good | | |
| rossenadeau4 at 2:47 | | 4 years ago |
| perfect song. one of my favourites | | |
| jacob fritshaw92 at 3:37 | | 4 years ago |
| Beautiful song well song | | |
| ragubuxefi at 3:00 | | 4 years ago |
| So excited for you! Good luck! | | |
| austinbescobedo1983 at 1:41 | | 4 years ago |
| Again and again I Loved it | | |
| ywimepycyw1964 at 3:29 | | 4 years ago |
| My one and only voice...Love this voice | | |
| Jasmine at 2:33 | | 4 years ago |
| bad ass rap <3 | | |
| Sheila at 1:50 | | 4 years ago |
| Lyrical GENIUS | | |





|  |  |  |  |  | 0:00 | | 3:39 | | Kidd Wes |
|---|---|---|---|---|---|---|---|---|---|

Kidd Wes–Made In America (prod. b...

☰ ▶ YouTube          kidd wes made in america          🔍  🎤     ⠿   👤 SIGN IN





▶ ⏭ 🔊  0:00 / 3:45                          ⚙ ⧉ ◲ ▭ ⛶

Kidd Wes-Made In America [Official Music Video] (Shot by Gfxkid Films)

122,560 views • Nov 9, 2016

👍 1K   👎 119   ↪ SHARE   ⬇ SAVE   ⋯

Kidd Wes
379 subscribers
                                                              SUBSCRIBE

Kidd Wes- MADE IN AMERICA

Follow Me:

SHOW MORE


Prince Riley - "Brothers" (Official Video Shot By |...
PRINCE RILEY RFMG ♪
165K views • 3 years ago


Kidd Wes- Blvd Dreams (Official Video) [Directed by Roberto...
Kidd Wes
15K views • 5 years ago


03. Memoirs of a Gold Chain (prod. by Mikey Beatz)
Kidd Wes
693 views • 6 years ago


Kidd Wes- Made in America [Behind the Scenes
Kidd Wes
17K views • 4 years ago


morray - quicksand (official music video)
Morray ♪
65M views • 6 months ago


E-40 "I STAND ON THAT" FT. JOYNER LUCAS & T.I. (MUSIC...
E40TV ♪
7.6M views • 1 month ago


2000s r&b playlist to get you in your feels reupload
Ahmad-Xv
612K views • 3 months ago


RUN DMC - Walk This Way (Official HD Video) ft. Aerosmith
Run DMC ♪
90M views • 11 years ago


O4L Jigg - SHOOTA SHOOTA
O4L Jigg
1K views • 4 years ago


JokaaG - Heart (Official Music Video) Shot By @HoldUpTV
HoldUpTV
73K views • 2 years ago


NLE Choppa - Final Warning (Official Video)
NLE CHOPPA ♪
6.7M views • 4 days ago
New

Polo G - RAPSTAR (Official Video)
Polo G ♪
49M views • 3 weeks ago

Eminem - Godzilla ft. Juice WRLD (Directed by Cole...
Lyrical Lemonade ✓
363M views • 1 year ago

Pooh Shiesty - Back In Blood (feat. Lil Durk) [Official Music...
Pooh Shiesty ♪
130M views • 4 months ago

21 Savage - a lot (Official Video) ft. J. Cole
21 Savage ♪
365M views • 2 years ago

Yung Bleu - You're Mines Still (feat. Drake) [Official Video]
Yung Bleu ♪
108M views • 4 months ago

Mac Miller - Self Care (Official Music Video)
Mac Miller ♪
281M views • 2 years ago

06. In Between the Lines Ft. CaShe & DJ Fly Guy (prod. by...
Kidd Wes
35 views • 6 years ago

Bblasian - Change (Official Video)
Lil Zayo
690K views • 3 years ago

Childish Gambino - Feels Like Summer
Donald Glover ♪
222M views • 2 years ago

# EXHIBIT B

**DA-44**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## SRu 1-301-922

**Effective Date of Registration:**
May 24, 2017

---

## Title

| | |
|---|---|
| **Title of Work:** | Eleven: The Junior Senior Year |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2017 |

## Author

| | |
|---|---|
| **Author:** | Emelike Wesley Nwosuocha |
| **Pseudonym:** | Kidd Wes |
| **Author Created:** | sound recording |
| **Citizen of:** | United States |
| **Domiciled in:** | United States |
| **Year Born:** | 1987 |
| **Pseudonymous:** | Yes |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Emelike Wesley Nwosuocha<br>2237 NE 42nd Ave, Homestead, FL, 33033, United States |

## Rights and Permissions

| | |
|---|---|
| **Name:** | Emelike Wesley Nwosuocha |
| **Email:** | kiddwes@gmail.com |
| **Telephone:** | (786)531-4022 |
| **Alt. Telephone:** | (786)525-8939 |
| **Address:** | 2237 NE 42nd Ave<br>Homestead, FL 33033 United States |

## Certification

---

Page 1 of 2

**Registration #:** SRu001301922
**Service Request #:** 1-5219288781

Emelike Wesley Nwosuocha
2237 NE 42nd Ave
Homestead, FL 33033 United States

**DA-46**

```
Type of Work:        Sound Recording

Registration Number / Date:
                     SRu001301922 / 2017-05-24

Application Title: Eleven: The Junior Senior Year.

Title:               Eleven: The Junior Senior Year.

Description:         Electronic file (eService)

Copyright Claimant:
                     Emelike Wesley Nwosuocha, 1987-  .

Date of Creation:  2017

Authorship on Application:
                     Kidd Wes, pseud. of Emelike Wesley Nwosuocha, 1987-
                       (author of pseudonymous work); Domicile: United States;
                       Citizenship: United States. Authorship: sound recording.

Rights and Permissions:
                     Emelike Wesley Nwosuocha, 2237 NE 42nd Ave, Homestead, FL,
                       33033, United States, (786) 531-4022, (786) 525-8939,
                       kiddwes@gmail.com

Copyright Note:     Basis for Registration: Unpublished collection

Names:               Nwosuocha, Emelike Wesley, 1987-
                     Wes, Kidd, pseud., 1987-
```

================================================================================

# EXHIBIT C







Kidd Wes

4 years ago

**Kidd Wes-Made In America (prod. by Mindlabs) VIDEO IN DESCRIPTION**

# Hip-hop & Rap



Write a comment

▶ 85.6K    ♥ 405    ⟲ 170

**Kidd Wes**

👥 3,517    🔊 37

Follow

◆ Report

Fuck 2016 Rappers
Official Video:
youtu.be/C7zL_OE7gnM

# Kidd Wes    # Trump    # Clinton    # Drake    # 40
# YesJulz    # Trap

💬 134 comments

LUNAR! at 0:35:                                    2 years ago
Gambino ripped this shit off you G

Dj wakach at 1:43:                                 3 years ago
i fw the bass

girls away at 1:40:                                3 years ago
loving it already

phelp hawk at 1:09:                                3 years ago
i want it on itunes and spotify

KelseysKicksMusic at 3:10:                         4 years ago
MADE IN AMERICA, FLEX MADE ME A
TERRORIST :) REPOST!!

Nolan J Jackman at 3:00:                           4 years ago
Wonderfool voice

mark m fleetwood at 0:11:                          4 years ago
Great job blue flame

**Related tracks**                          View all

Southside Matt
SSG (Trilla & Southside Matt) - No ...
▶ 38.5K    ♥ 1,057    ⟲ 160    💬 104

VK Rz
Gramtalk freestyle
▶ 1,406    ♥ 70    ⟲ 24    💬 11

LLOSTconcept
F*****D UP
▶ 5,421    ♥ 17    ⟲ 41

**In playlists**                            View all

DigitalTraphouse
Best of the Week Vol. 10
♥ 2    ⟲ 1

DigitalTraphouse
Best of the Month Vol. 3 - Septemb...
♥ 3    ⟲ 1

Jules Marchisio
trap us

♥ 405 likes                                 View all

⟲ 170 reposts                               View all

0:36 ———————————————— 3:39    🔊    Kidd Wes
Kidd Wes-Made In America (pro...

**DA-51**

# EXHIBIT D

# The Similarities Between Kidd Wes's "Made in America" and Childish Gambino's "This is America."

Dr. Brent Swanson (Lead Investigator)
Marcus Grant (Associate)

## Introduction

In 2016, the rapper Kidd Wes (Emelike Nwosuacha) produced a music video titled "Made in America," in which he explores African-American identity and its relationship with the 2016 political campaign between Hillary Clinton and Donald Trump. In 2018, Childish Gambino (Donald Glover) released a similar music video titled "This is America." In addition to the analogous titles, aspects of Gambino's performance are strikingly comparable to Wes's performance thematically, lyrically, visually, melodically, and rhythmically. The aim of this report to detail the similarities between Kidd Wes's "Made in America," and Gambino's "This is America."[1]

## Visual and Lyrical Themes

Since MTV first launched into suburban homes in the 1980s, the music video transitioned from a "representation" of a live performance to another medium through which artists could express themselves. No longer were issues of gender, race, religion, sexuality, etc., confined to and negotiated in sonic material, lyrics, album art and other merchandise. These short films were now broadcast to millions of televisions in the United States. Artists like Madonna, The Eurythmics, and Twisted Sister negotiated gender scripts, while artists like Michael Jackson hired famous horror director John Landis to produce his thirteen minute long masterpiece "Thriller." In other words, the music video became another type of "text" the artists implicitly (sometimes explicitly) encouraged (even demanded) the audience to interpret. Despite the fact that today MTV rarely shows music videos, the genre continues through online streaming platforms such as YouTube, Vevo, and Dailymotion.

In the case of Kidd Wes and Childish Gambino, the videos are integral to the meaning each artist intends to convey. Like most hip-hop lyrics, the meaning in the video is coded (based on metaphorical and literal associations) rather than a distinct narrative. This requires one to either base the visuals and words on their own experiences or be "in-the-know" (privy to the artist's intentions). One can argue that the visual content of both of these artists' videos have little to no distinct narrative, but are a series of images juxtaposed in a dadaesque fashion that, when played in real-time along with the lyrics and sonic material, require the listener to put the pieces of the "puzzle" together.

---

[1] For the purposes of this report, the authors use the artists' stage names rather than their legal names.

The lyrics of Gambino's song contain no story or plot line, nor do they give the audience any major clues as to the narrative of the song. However, the video is filled with various images referencing the history of racist behavior towards African-Americans. The artist makes visual references to the "Coon Face" from the infamous Coon Chicken Inn Menu (0:41) and Jim Crow pose (0:51) used in Blackface Minstrelsy. Furthermore, he references the murder of members of the Emmanuel AME church in Charleston by White Supremacist/Nationalist Dylan Roof in 2015 (1:50-1:57). Each of these is expressed ironically. Gambino poses as Jim Crow (See Figures 1 and 2), a witty trickster character, just before shooting a guitarist (playing kora-like arpeggiated patterns in a major mode – often associated with "happiness" or "positivity") in a chair with a handgun.[2] Just before this violent act, he dances shirtless with different expressions on his face. Sometimes he is smiling, while other times he has a scowl or pensive facial features. He makes the aforementioned "Coon Face" (See Figures 2 and 3) at this time. Further, the "Charleston choir" members are all smiling and singing "Oooh, got to tell somebody. Grandma told me 'Get your money, Black man'" just before Gambino guns them down. The gun is immediately placed in a red cloth (as was the original gun he used to kill the guitarist), which symbolizes caring for the gun more than the people that were just killed. This is of particular interest as it alludes to conservative support for the NRA, which is considered a corrupt organization by Black Lives Matter as well as many Progressive politicians and voters. In this case, the NRA and conservatism are White structures that oppress African-Americans and People of Color.[3] The fact that the cloth is red, the color of the GOP and Donald Trump's MAGA hats, reinforces the links to conservatism. These critiques are aimed at the structure of Whiteness (existing power structures mostly perpetuated by White men and women), which is rooted in America's racist past, one of which Black bodies have been derided and demonized while simultaneously serving as the main source of entertainment.[4]

---

[2] The kora is a multi-string zither played by the Jali of the Mandinka and related cultures. The majority of slaves in the United States were brought from the Senegambia region of West Africa, where Mandinka culture is most prevalent. The Jali are known as oral historians and keepers of Mandika culture.

[3] In this report, the term People of Color refers to non-White minorities who do not consider themselves African-American, while Black refers to all non-White minorities, including African-Americans.

[4] In this article, Whiteness does not only refer to White men and women, but those who support racist structures that have traditionally benefitted White men and women and oppressed African-Americans and People of Color.

**DA-54**



Figure 1. Thomas Daddy Rice in Blackface posing as Jim Crow.[5]

---

[5] Source: https://en.wikipedia.org/wiki/Jim_Crow_(character)#/media/File:Thomas-D-Rice-1832.jpg

**DA-55**



Figure 2. Childish Gambino in a Jim Crow Pose.[6]

---

[6] All images of Childish Gambino are screenshots from his official music video on YouTube.



Figure 3. "Coon Face" from the original Coon Chicken Inn menu.[7]

---

[7] Source: http://edan.si.edu/slideshow/viewer/?eadrefid=NMAH.AC.1153_ref272



Figure 4. Childish Gambino making a "Coon Face."

Similarly, Kidd Wes's video critiques Whiteness through mocking the choices of the 2016 election. Much of the imagery comprises people dressed in caricature costumes of Hillary Clinton and Donald Trump juxtaposed against clowns and gangster figures with guns. The lyrics consist of typical boasting/toasting by a rapper (one in which a rapper boasts about his accomplishments), but other than "Make America Great Again," in the last line of the song, there are no outstanding political references. It is the imagery that holds the narrative together, and, like Gambino's video, much of those lyrics and images are presented ironically.

The video begins with Kidd Wes staring incredulously at TV images of news Headlines about Clinton's emails, Trump mocking a disabled reporter, and James Comey pronouncing Clinton's innocence, which is followed by an image of a man in a clown suit (0:06-14). Next, a person in a Trump costume, after staring at a photo of himself with a likely underage girl (an allusion to Trump's pedophilic statement about his willingness to have sex with his daughter Ivanka if they weren't related), is kidnapped by gangsters because a security guard was distracted by a call on his cellular phone (1:30-36). A person in a Clinton costume is then seen looking at "Classified" emails on her Gmail account (a reference to her use of official email correspondence on a non-government server), and is subsequently kidnapped by the same group of gangsters (1:43-48). They place her in the same car as Donald Trump. At 2:01, a person in a clown mask is seen with a gun to their forehead. The political caricatures juxtaposed against clowns is a statement about the ridiculousness of politics, but those politicians also represent power, and, in particular, Whiteness.

As previously mentioned, the lyrics contain little political material, however, they are as ironic as the images. Wes raps in a boastful manner typical of rappers in hip-hop:

> Black and white Benz, I'm making a chess move (Unh)
> I'm running the city, I'm making my next move (Whoa)
>
> And got a tight grip and there won't be no evidence
> How funny I OJ'ed the game and it seems to make
> Oh what a relevance
> Pessimist niggas, you should just cherish this
> 2016 Rappers?
> (yeah) you should beware of this

In these lines, Wes is jeering at stereotypical rappers and himself by referring to himself as OJ (an Uncle Tom figure) to describe his rise to the top (besting other rappers), while simultaneously warning them to take him (Wes) seriously. The images and the lyrics coincide here. The politicians are clowns, but they need to be taken seriously because they represent Whiteness and America's racist past. Wes concludes these thoughts with the lines "Heads up for the bullets that's coming from the Jakes. Making America great again, baby that's all it takes." The term "Jakes" is code for the police, whose harsh tactics have been lauded by Trump and his supporters. Much of Trump's popularity is related to his promise of tougher punishment for criminals. These tactics and Trump's political platform have been criticized by the Black Lives Matter movement

**DA-59**

and those on the left side of the political spectrum. This is also the case for Hillary Clinton, who is known for her past support of harsh mandatory minimum sentences that disproportionally affected (and still affect) Black Americans.

Childish Gambino also alludes to oppression of African-Americans in the justice system through an image of a young Black man behind a bridge with "bars" holding a cellphone. This is accompanied by the ambiguous line "this a celly" (referring to both a cellphone and a jail cell – 2:29). Further, Gambino is running away from a White mob at the end of the video while the following ironic words are sung by Young Thug (3:34):

> You just a black man in this world
> You just a barcode, ayy
> You just a black man in this world
> Drivin' expensive foreigns, ayy
> You just a big dawg, yeah
> I kenneled him in the backyard
> No proper life to a dog
> For a big dog

The lyrics deride Black culture in the U.S., and even mention stereotypes such as premium cars with the line "Drivin' expensive foreigns." Like Kidd Wes's performance, this is not a literal derision, but a satire about how White Americans deride Black culture. In his video, Kidd Wes also mentions his "Benz," which is code for a Mercedes Benz, an expensive foreign car.

Another comparable image is the use of placing a bag over the head of a musician. In Gambino's video, the bag appears over the guitarists head just before shooting him. In Wes's video, the gangster authorities place a bag over a rappers head before they kidnap him (2:28). Each of these acts represents two themes: First, the silencing (representing Black power movements or revolutionary politicians who want rapid and drastic change) of those who do nothing to protest inequality and Whiteness. This is apparent in Gambino's video when the guitarist is playing arpeggios in a major key (often associatied with happiness) accompanying the plastic lyrics "We just want to party, party just for you." In Wes's video, the rapper, who is talking on the phone in coded language, represents one of the stereotypical rappers the artist (Wes) consistently toys with in his abovementioned boasting. Second, the criminal acts against the guitarist in Gambino's video and the rapper in Wes's video can be seen as an execution (representing Whiteness or existing political system prejudiced against African-Americans and People of Color) of those who have agency to unite and motivate larger groups of people against the establishment.

In sum, each of these rappers uses ironic images and lyrics to protest White hegemony in the United States. The term America here is a metaphor for both the history of oppressive racism towards Black bodies as well as the hope that African-Americans and other People of Color have the ability (freedom) to rise up against Whiteness in the U.S.

# Rhythmic and Melodic Themes

Rappers in hip-hop tend to focus on rhythm rather than specificity of pitch (e.g., being perfectly – or near perfectly – in-tune with a certain key or modality – such as opera or classical performance practice). This not to say that rappers pay no mind to a key or modality, they do. However, the pitches are usually "in the ballpark" rather than consistently singing/rapping specific pitches (i.e., A – 440 Hz). This focus on rhythm over specific melodic pitches is known as an MC's (rapper's) "flow." According to scholar Adam Krims "The rhythmic style of MCing, or "flows," are among the central aspects of rap production and reception, and any discussion of rap production that takes musical poets seriously demands a vocabulary of flow.... It thus cannot be separated from an exposition of rap genres and styles" (Krims 2000, 48). In the case of Kidd Wes and Childish Gambino, they both use what Ben Duiker calls *total triplet flow* (Duiker 2019). The author defines this as "complete formal units (such as verses) – or rarer, entire songs – where the MC uses nothing but triplets in their flow" (Ibid. 427). Figure 5 below demonstrates the similarities in flow to Wes's "Made in America" (transposed up one whole-step to match the same starting pitch as Gambino) and Gambino's line "This is America." This is but one example of a plethora of times the artists employ *total triplet flow*.



Figure 5. *Total triplet flow* of Gambino's "This is America" and Wes's "Made in America."

In addition to the use of *total triplet flow* by both artists in their respective phrases (and in subsequent phrases), the performance of these phrases by each rapper are nearly identical in timing despite a significant difference in tempo. Wes's song is performed at 140 BPM (beats per minute) while Gambino's song is at 120 BPM. The following figures visualize the similarities and differences in flow and tempo in waveform. Figure 6 is a waveform of each audio file (vocals only) of Wes's and Gambino's respective songs at their original tempo. Figure 7 is a waveform of each audio file with Kidd Wes's song slowed down to 120 BPM, and Figure 8 is a zoomed in

waveform of the phrases "Made in America" and "This is America" by Wes and Gambino respectively in their original tempo.[8]



Figure 6. Waveform of Gambino's verse on "This is America" and Wes's "Made in America" in their original tempos.



Figure 7. Waveform of Gambino's verse on "This is America" and Wes's "Made in America" in the same tempo.

---

[8] The authors obtained isolated vocals for "Made In America" from Emelike Nwosuacha and for "This is America" from this YouTube page uploaded by MS Project:
https://www.youtube.com/watch?v=ZZN1ZnPKrVQ&feature=youtu.be.



Figure 8. Zoomed in waveform of the phrases "Made in America" by Wes and "This is America" by Gambino.

Figure 6 demonstrates that while the two waveforms line-up in the beginning, Gambino's the subsequent phrases "don't catch you slippin' now" and "look what I'm whippin' up" come in much later than Wes's phrases. Figure 7 demonstrates that by slowing down Wes's vocals to 120 BPM, the subsequent phrases are much closer together. However, Figure 8 demonstrates that despite the significant difference in tempo, the flows of each rapper line up almost exactly; there is only a .004 second difference. This is not discernable to the human ear in real time. In sum, the flow of each rapper is nearly identical despite a 20 BPM difference in tempo.

Another rhythmic device that is part of each rappers flow is the use of rhythmic "utterances," usually a "yeah," "uh," "ah," or "whoa" after each line. Figure 9 and 10 demonstrate these rhythmic utterances in waveform. The main difference between the two is pitch. Wes's is a lower pitch while Gambino's is a higher pitch and possibly performed by another artist.



Figure 9. Gambino rhythmic utterance.



Figure 10. Wes's rhythmic utterance.

In terms of melody, neither rapper is perfectly in-tune, but their melodic contour is very similar. Childish Gambino's "tonal center" is ambiguous for his verse,[9] as the only specific pitches in the accompaniment are in the synthesized bass, which alternates between a D and Eb. Kidd Wes's backing track is distinctly in the key of Cm, one whole-step down from Gambino's. Relatively speaking, the starting pitches begin a perfect fifth above the tonal center (A for Gambino and G for Wes). For the purposes of this report, the authors have transposed Wes's track up one whole-step for a better visual comparison. Figures 11 and 12 are spectrographic images of the melodic contour for "This is America" by Gambino and "Made in America" generated by the SPEAR program, while Figures 13 and 14 are colored spectrographic 2D images.

---

[9] The term verse here is used loosely, as there is no distinct "chorus" in this song. It is more of a sectional form (A B C D) with the "verse" being the B section.



Figure 11. Melodic contour of "Made in America" by Kidd Wes.



Figure 12. Melodic contour of "This is America" by Childish Gambino.



Figure 13. Colored spectrogram showing melodic contour of "Made in America" by Kidd Wes.



Figure 14. Colored spectrogram showing melodic contour of "This is America" by Childish Gambino.

In each of these spectrograms, the red line shows the general melodic contour for each respective song. In the colored spectrograms, the yellow and red points show the amplitude of each fundamental (outlined in red) and overtones. Because of the subtle timbral differences between Wes and Gambino, as well as the articulation of phonemes ("t" and "s" in "This is America" and "mm," "ih," and "nn" in Made in America), the density of the overtones fluctuates even if the fundamental frequencies are similar.

**DA-66**

The spectrograms uncover several important details. First, each rapper is never perfectly "on-pitch." For example, in Wes's song, the first three notes on "A," which in a typical Western scale should be 220 Hz, are preceded by a vocal scoop from the "m" of made (starting around 131 Hz) up to the first "A" (213 Hz – 7 Hz below an "on pitch" A). And even though I previously notated these first three notes as A in Figure 5, they vary in frequency from 203 to 221 Hz. Gambino's performance is not much different. While he doesn't have the long vocal scoop up to "This," his first "A" is at 230 Hz, almost a Bb. And in contrast to the transcription in Figure 5, his descending line is far less marked. In other words, specificity of pitch is an inadequate measurement in terms of detailing the contour of the melody. What these spectrograms do demonstrate is that the contours of each melody have much more in common than they do differences.

## Conclusion

This report has detailed the thematic, lyrical, visual, rhythmic, and melodic similarities between the music videos "Made in America," by Kidd Wes, and "This is America," by Childish Gambino. The videos and lyrics share the themes of gun violence, and oppression of African-Americans and People of Color by police, the political establishment, conservative organizations (in particular the NRA and the GOP), White nationalism (Charleston shooting), and racist structures in the U.S. They also use of imagery related to Blackface Minstrelsy (Jim Crow, Coon, and Uncle Tom), and deride stereotypical Black culture in an ironic way to poke fun at and bring attention to the aforementioned racist power structures in the U.S or Whiteness. There are distinct similarities in melodic contour, rhythmic *triplet flow* in each performance, and the lines "Made in America" and "This is America" line-up nearly perfectly in time despite being different tempos. They also both use rhythmic utterances in their performances. It is authors' opinion that these similarities are likely not coincidences.

## Works Cited

Duinker, Ben. 2019. "Good Things Come in Threes: Triplet Flow in Recent Hip-Hop Music." *Popular Music*. Vol.38(3), pp.423-456.

Glover, Donald. "This is America (Official Video)." https://www.youtube.com/watch?v=VYOjWnS4cMY. Last Accessed December, 30, 2019.

Krims, Adam. 2000. *Rap Music and the Poetics of Identity*. Cambridge University Press. Cambridge, UK.

Smithsonian Institute. "Coon Chicken Inn Records and Graham Family Papers." http://edan.si.edu/slideshow/viewer/?eadrefid=NMAH.AC.1153_ref272. Last Accessed December 30, 2019.

Wes, Kidd. "Kidd Wes-Made In America [Official Music Video] (Shot by Gfxkid Films)." https://www.youtube.com/watch?v=C7zL_OE7qnM. Last Accessed December 30, 2019.

Wikipedia Commons. "Picture from 1832 Playbill of Thomas D. Rice as 'Jim Crow'."
https://en.wikipedia.org/wiki/File:Thomas-D-Rice-1832.jpg. Last Accessed
December 30, 2019.

DA-68

# EXHIBIT E

Case 1:21-cv-00004-WM Document 94-5 Filed 09/06/22 Page 66 of 91

    VIEW ALL  HOT 100 SONGS  BILLBOARD 200 VIEW ALL

THREE SIXT

HIP-HOP

# This Is Earth: Watch 12 Global Remixes of Childish Gambino's 'This Is America'

By **Gil Kaufman**
8/2/2018



 **billboard**

Case 1:21-cv-00047-VM Document 94-5 Filed 09/06/22 Page 67 of 191

THREE SIXTY

TOP ARTISTS

VIEW ALL

TOP CHARTS

HOT 100 SONGS

BILLBOARD 200

VIEW ALL

ARTIST MENTIONED



**Childish Gambi...**

# From China to Iraq, Brazil and Nigeria, the world has given the tune its own spin.

When Donald Glover dropped the powerful "This Is America" video back in early May the surprise Childish Gambino track immediately racked up way more YouTube views than any of the rapper/actor's other videos. But in addition to making a stark, funky statement on the state of the nation, the unapologetically blunt images of gun violence and allusions to racial profiling also opened a Pandora's box of catharsis for budding rappers across the globe to use "America" as a template to dance through their own pain and strife.

On Wednesday's (Aug. 1) edition of PRI's *The World,* some of the most striking remixed versions of the song and video from Iraq, Sierra Leone, Nigeria and France were profiled as a doorway into how Gambino's mixture of elegant beats and in-your-face imagery has inspired artists around the world. From "This Is Nigeria," which weaves some traditional instruments over lyrics about political and police corruption to the violence against women in "This Is South Africa" and the war-torn chaos of "This Is Iraq," each video and song uses the song as a template to speak on national issues.

Donald Glover Doesn't Want to Say What 'This Is America' Is About



DA-71



like pointed parodies than political statements) speaks to the song's universal message, but the power of each remake is in the artist's inspiration to speak through the melody of Gambino's world-beat-infused track.

Check out 12 of the best "America" remixes below.

**This Is Sierra Leone**

**This Is Nigeria**



DA-72



Childish Gambino's 'This is America' is YouTube's Biggest First Week Debut This Year

## This Is Brazil

## This Is Iraq



# DA-73

Case 1:21-cv-00947-VM Document 94-5 Filed 09/06/22 Page 606 of 191



**This Is Malaysia**

**This Is South Africa**



DA-74



Childish Gambino's 'This Is America' Is A Stunning Statement on Brutality, Gun Control: Watch

## This Is Afghanistan

## This Is Uganda



billboard

DA-75



This Is Ghana

This Is France



DA-76



**This Is India**

By **Gil Kaufman**
8/2/2018

  https://www

## WATCH NOW



DA-77



## VIDEOS

## Pete Davidson Recalls His Talk With Eminem After Impersonating Him on 'SNL' | Billboard News

6 hours ago

## FOLLOW BILLBOARD

     

## THE DAILY
A daily briefing on what matters in the music industry

Enter Your Email

SUBMIT >





billboard

DA-78

THREE SIXTY

**TOP ARTISTS**

  

VIEW ALL

**TOP CHARTS**


HOT 100 SONGS


BILLBOARD 200

VIEW ALL

Subscribe

Billboard Events

Shop

Contact Us

Careers

FAQ

Accessibility Statement

Sitemap

Media Kit

Terms of Use

Privacy Policy

AdChoices

California Privacy Rights

Do Not Sell My Personal Information



© 2021 Billboard Media, LLC. All rights reserved. BILLBOARD is a registered trademark of Billboard IP Holdings, LLC

THE Hollywood REPORTER

VIBE

# EXHIBIT F

 **bandcamp**   Search and discover music      

**music**   **community**

# This Is Iraq

by I-NZ





**I-NZ**
Auckland, New Zealand

Follow

I-NZ is a New Zealand rap MC.
Born in Scotland to Iraqi parents, his cultural diversity shines throughout his... more

▶  00:00 / 03:16

**Digital Track**
Streaming + Download

**Free Download**

I-NZ - This Is Iraq (Remix to Childish Gambino - This Is America)

Disclaimer

All rights to the musical composition belong to Childish Gambino and the record label GlassNote Records.

This video is a representation of Iraq's reality over the past 12 years and does not support, promote, nor condone violence in any shape or form.

Credits

Written by I-NZ (@official_inz)

Vocal Support by Alicia Renee and Warren Young

Follow I-NZ on his social media accounts below:

Instagram - www.instagram.com/official_inz
Facebook - www.facebook.com/OfficialINZ
Twitter - twitter.com/Official_INZ
Soundcloud - soundcloud.com/officialinz

Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away

This is not a party
Party just for you
We just wanna live
Live for more than a few
We're the only terror
Label us the fame
We just want the freedom
Keep asking in vein
This is not a party
Party just for you
We just wanna live
Live for more than a few
We're the only terror
Label us the fame
We just want the freedom
Keep asking in vein

This is Iraq
Look at us blowin' up
Nobody showin' up
Nobody ownin' up
Hathal Iraq (woo) – This is Iraq (woo)

**discography**



I-NZ - Hey Trump (Russ Remix)
Feb 2020



Dollars & Dinars
Sep 2019



Let Me Love
Jan 2019

**more releases...**

**contact / help**

Contact I-NZ

**Share / Embed**

# EXHIBIT G



🔍 **06** ꜱᴍᴀʏ 2018          back to news

---

prev article

next article



   


Download Full
Press Release

# Childish Gambino Releases New Song And Video "This Is America"

**CLICK HERE TO LISTEN AND WATCH THE VIDEO DIRECTED BY HIRO MURAI**

[New York, NY – May 6, 2018] Today, Grammy, Golden Globe and Emmy Award winning recording artist, actor and producer **Childish Gambino** (né Donald Glover) releases a new song and video entitled **"This Is America."** Click here to listen and watch the captivating video directed by Hiro Murai.

Earlier this week, **Childish Gambino** announced new tour dates with **Vince Staples**, which will follow the first leg of his previously announced tour with **Rae Sremmurd**. Produced by Live Nation in partnership with Wolf + Rothstein, the tour will now visit 19 cities across North America, kicking off in Atlanta on September 6 and wrapping in Nashville, TN on October 12. See below for updated tour dates.

Gambino's successful live music production PHAROS, returns for its second installation this year in New Zealand on November 23, 24 and 25. More information and tickets are available now through the Pharos Earth mobile app https://pharos.earth.

Childish Gambino with special guests Rae Sremmurd and Vince Staples tour dates:

09-06 Atlanta, GA – Infinite Energy Arena $

09-08 Chicago, IL – United Center $

09-10 Toronto, Ontario – Air Canada Centre $

09-12 Boston, MA – TD Garden $

09-14 New York, NY – Madison Square Garden $

**DA-84**

09-15 New York, NY – Madison Square Garden $

09-18 Philadelphia, PA – Wells Fargo Center $

09-19 Washington, DC – Capital One Arena $

09-22 Houston, TX – Toyota Center $

09-23 Dallas, TX – American Airlines Center $

09-26 Inglewood, CA – The Forum $

09-27 Oakland, CA – Oracle Arena $

09-29 Seattle, WA – Key Arena $

09-30 Vancouver, British Columbia – Rogers Arena $

10-02 San Jose, CA – SAP Center at San Jose ^

10-03 Inglewood, CA – The Forum ^

10-05 Glendale, AZ – Gila River Arena ^

10-09 Denver, CO – Pepsi Center ^

10-12 Nashville, TN – Bridgestone Arena ^

S with Rae Sremmurd – with Vince Staples

**Stream/purchase "This Is America"** –
http://smarturl.it/TcIgA

*"This Is America" is <u>not</u> the first official single from Childish Gambino's upcoming album on Wolf + Rothstein/RCA Records.*

**<u>Keep up with Childish Gambino:</u>**

http://childishgambino.com

http://facebook.com/donaldglover

http://instagram.com/childishgambino

http://twitter.com/donaldglover

related articles

**DA-86**

# 22
MAR 2020 PDF



**Donald Glover Presents "3.15.20"**

# 07
DEC 2018 PDF



**Childish Gambino Receives 5 Grammy Nominations Including Record Of the Year, Song Of the Year And Best Music Video For "This Is America"**

# 11
JUL 2018 PDF



**Childish Gambino Releases A Summer Pack Of New Music: "Summertime Magic" And "Feels Like Summer"**

# 31
MAY 2018 PDF



**Childish Gambino's "This Is America" Certified Platinum By The RIAA**

# 14
MAY 2018 PDF



**Childish Gambino Debuts At #1 On The Billboard Hot 100 Chart With "This Is America"**

Pssst!

Get the latest news, updates & more, sign up for our newsletter

| Your email address | sign up |



artists    news    videos    releases    @rcarecords

Visit www.OnGuardOnline.gov for social networking safety tips for parents and youth. © 2021 Sony Music Entertainment. All Rights Reserved.

Send Us Feedback | Privacy Policy/Your Privacy Rights | Do Not Sell My Personal Information | Your California Privacy Rights | Terms and Conditions | Why Music Matters

   

For RCA Records Press Inquiries:
publicity@rcarecords.com

# EXHIBIT H

LAW OFFICES OF

*Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
ANDREA M. ARRIGO
DIANA FABI SAMSON

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

546 FIFTH AVENUE
NEW YORK, NY 10036

TELEPHONE (212) 486-0011

FACSIMILE: (212) 750-8297

WWW.AIDALALAW.COM

8118-13™ AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

December 7, 2020

<u>*Via Certified Mail*</u>

Sony Music Entertainment
c/o Business & Legal Affairs
25 Madison Avenue
New York, NY 10010

RCA Records
25 Madison Avenue
New York, NY 10010

Donald McKinley Glover, II
c/o Ziffren Brittenham LLP
1801 Century Park W.
Los Angeles, CA 90067

Jefferey Lamar Williams
c/o United Talent Agency
9336 Civic Center Drive
Beverly Hills, CA 90210

Ludwig Emil Tomas Göransson
c/o Amos Newman
William Morris Endeavor Entertainment
9601 Wilshire Blvd, 8th Fl
Beverly Hills, CA 90210

     **Re:    Infringement of Copyright Owned by Emelike Nwosuocha**

Dear Sir or Madam:

     Please be advised that our firm represents Emelike Nwosuocha, a professional recording artist who performs under the stage name "Kidd Wes." Mr. Nwosuocha has retained our firm to investigate and pursue a copyright infringement claim against you in regard to the unauthorized use of protected elements of Mr. Nwosuocha's copyrighted sound recording entitled "Made in America" for the purposes of composing and recording the 2018 Childish Gambino song entitled "This is America."

     Child Gambino's "This is America" contains certain distinct thematic, lyrical, rhythmic, and melodic central elements that are strikingly similar to those found in Mr. Nwosuocha's "Made in America," which was composed, recorded, widely publicly-distributed, and

copyrighted well-before "This is America." The glaring similarities between unique shared central elements of the two songs - especially, but not only, unmistakable in the songs' respective chorus sections - are blatant to a degree beyond coincidence; no listener comparing the two songs, whether layperson or musicologist, could reasonably conclude otherwise.

There is no question but that these materials are substantially similar to the copyright-protected work of Mr. Nwosuocha, and that you had access to Mr. Nwosuocha's work, which has been continually available for public access on YouTube, among other major streaming platforms, since as early as November 9th, 2016. Furthermore, Mr. Nwosuocha has reserved all of its rights in its works under copyright and has not authorized you to reproduce, publish, provide, distribute, transmit, display, publicly perform, or otherwise make any use of such works. Therefore, your use of these works is a clear infringement of Mr. Nwosuocha's copyrights in violation of Sections 106 and 501 of the federal Copyright Act.

As a result of your unauthorized use of Mr. Nwosuocha's copyright, Mr. Nwosuocha has suffered significant damages. Because Mr. Nwosuocha's copyrights were registered prior to your infringing activity, his damages also include those statutorily provided for under the Copyright Act.

Prior to commencing a court proceeding, we are herein affording you an opportunity to discuss a pre-suit resolution so that both parties may avoid the need for lengthy, and likely costly, litigation and public scrutiny.

Please contact our office to discuss further. Should we fail to hear from you or your legal representative within ten (10) business days of the date of this letter, we will assume that you are not interested in resolving this matter; we will proceed without further notice, and take all necessary measures to protect our client's rights and interests under the law.

The above is not an exhaustive statement of all the relevant facts and law, and Mr. Nwosuocha expressly reserves all of his equitable and legal rights and remedies, including the right to seek injunctive relief and recover monetary damages.

Very Truly Yours,

/s/ Imran H. Ansari
Imran H. Ansari, Esq.

# EXHIBIT I

**DA-92**

LAW OFFICES OF

*Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET'T)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
ANDREA M. ARRIGO
DIANA FABI SAMSON

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118-13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

February 16, 2021

**VIA EMAIL**

Jonathan D. Davis, P.C.
Jonathan Davis, Esq.
10 Rockefeller Plaza, Suite 1015
New York, New York 10020
jdd@jddavispc.com

   Re: **Cease and Desist - Infringement of Copyright Owned by Emelike Nwosuocha**

Dear Mr. Davis:

   I write as counsel for Emelike Nwosuocha, a professional recording artist who performs under the stage name "Kidd Wes," in follow-up to a letter I sent you, dated December 7, 2020, to put you on notice of Mr. Nwowsuocha's retention of this firm to investigate and pursue a copyright infringement claim against you regarding the unauthorized use of protected elements of Mr. Nwosuocha's copyrighted sound recording entitled "Made in America" for the purposes of composing and recording the 2018 Childish Gambino (Donald Glover) song entitled "This is America." That previous letter's stated purpose was to afford you an opportunity to discuss a pre-suit resolution in good-faith, enabling both parties to avoid the need for lengthy, and likely costly, litigation and public scrutiny. We look forward to discussing this with you, but we also would like to reiterate our client's position prior to our discussion.

   Mr. Nwowsuocha herein demands that Donald Glover, et al, immediately cease the infringing activity with regard to his copyright, desist from such infringing activity in the future and comply with Mr. Nwowsuocha's other requirements set forth in this letter.

   As stated in my previous letter, Mr. Nwowsuocha composed, recorded, widely publicly-distributed, and copyrighted the infringed work, entitled "Made in America," well-before the infringing work, "This is America," was produced and/or publicly distributed. Mr. Nwowsuocha has exclusive rights per US copyright in the infringed work, which has been widely distributed by Mr. Nwowsuocha through YouTube, Apple Music, Spotify, Soundcloud, and Tidal, among other platforms, and is of substantial value to Mr. Nwowsuocha. Mr. Nwowsuocha has registered the copyright in the infringed work, "Made in America," with the US Copyright Office.

Mr. Glover, et al, have published, distributed, transmitted, disseminated, and publicly performed materials that incorporate substantial portions of Mr. Nwowsuocha copyright work. Specifically, as you know, the infringing work, "This is America," contains certain unique distinct thematic, lyrical, rhythmic, and melodic central elements that are strikingly and unmistakably similar to those found in Mr. Nwosuocha's "Made in America" to a degree clearly beyond coincidence. No listener comparing the two songs, whether layperson or musicologist, will reasonably conclude otherwise.

There is no question but that "This is America" is substantially similar to the copyright-protected works of Mr. Nwowsuocha, and that Mr. Glover, et al, had access to Mr. Nwowsuocha's infringed work that has been publicly accessible on all major music streaming platforms since significantly prior to production and/or wide public dissemination of infringing work "This is America." Furthermore, Mr. Nwowsuocha's has reserved all of its rights in his infringed work under copyright and has not authorized anyone to copyright, to reproduce, publish, provide, distribute, transmit, display, publicly perform, or otherwise make any use of such infringed work. Therefore, the continued use of Mr. Nwowsuocha's copyright work is a clear infringement of Mr. Nwowsuocha's copyrights in violation of Sections 106 and 501 of the Copyright Act.

Moreover, the extent of practically-identical copying from elements of Mr. Nwowsuocha's copyrighted work establishes that the infringement was knowing and intentional. Because Mr. Nwowsuocha's copyright was registered prior to Mr. Glover's infringing activity, he may be liable for significant statutory damages for each instance of infringement, in addition to attorneys' fees and other costs incurred by Mr. Nwowsuocha to enforce his rights.

Mr. Nwowsuocha treats copyright infringement as a very serious matter and fully enforces his rights against those who infringe. However, Mr. Nwowsuocha is currently still prepared to try to resolve this matter amicably – provided, however, that Mr. Glover, et al, cooperate fully with Mr. Nwowsuocha and establish to his satisfaction that this was an error of judgment and not a systematic effort by you, as a significant player in the music industry, to attempt to profit from infringing upon the intellectual property of Mr. Nwowsuocha as an independent artist.

Giving the foregoing, we demand that Mr. Glover, et al:

1.  Immediately cease and desist from all further production, reproduction, publishing, provision, distribution, transmission, display, performance, advertising, licensing, and sale of materials that infringe Mr. Nwowsuocha's works;

2.  Destroy all such materials in inventory or otherwise in its possession or control, including all copies in electronic or printed form; and

3.  Provide Mr. Nwowsuocha with a full accounting of all copies sold, licensed, or otherwise distributed and all proceeds therefrom.

Mr. Glover, et al, are specifically advised that any failure or delay in complying with these demands will likely compound the damages for which they may be liable. The above is not an exhaustive statement of all the relevant facts and law, and Mr. Nwowsuocha expressly reserves all of its equitable and legal rights and remedies, including the right to seek injunctive relief and recover monetary damages.

Very Truly Yours,

/s/ Imran H. Ansari
Imran H. Ansari, Esq.

**DA-95**

# EXHIBIT B



The Library has opened access to the reading rooms by appointment
only. **More**. The Jefferson Building has reopened to visitors via timed,
ticketed entry. **More**.

| Help | Search | History | Titles | Start Over |

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PAu000354788
Search Results: Displaying 1 of 1 entries

◄ previous    next ►

---

**Labeled View**

*Made in America.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PAu000354788 / 1981-11-30 |
| **Title:** | Made in America. |
| **Description:** | 1 sound cassette + lyrics (3 p.) |
| **Notes:** | Songs for musical play. |
| **Copyright Claimant:** | David Doyle & A. J. Loria |
| **Date of Creation:** | 1981 |
| **Authorship on Application:** | words: David Doyle; music: A. J. Loria. |
| **Names:** | Doyle, David, 1952- |
| | Loria, A. J., 1947- |

◄ previous    next ►

| Save, Print and Email (**Help Page**) |
|---|
| Select Download Format  Full Record ▾    Format for Print/Save |
| Enter your email address:    Email |

---

Help    Search    History    Titles    Start Over

---

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

**DA-97**

# EXHIBIT C

**DA-98**



**The Library has opened access to the reading rooms by appointment only. More. The Jefferson Building has reopened to visitors via timed, ticketed entry. More.**

| Help | Search | History | Titles | Start Over |

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PA0000890766
Search Results: Displaying 1 of 1 entries

◄ previous    next ►

---

Labeled View

*Made in America.*

**Type of Work:** Music
**Registration Number / Date:** PA0000890766 / 1998-03-26
**Title:** Made in America.
**Appears in:** [Undiscovered soul. Mercury 314 536 972-2, c1998. Compact disc](#)
**Publisher Number:** Mercury 314 536 972-2
**Performer:** Performed by Richie Sambora.
**Copyright Claimant:** Polygram International Publishing, Inc., Aggressive Music, EMI April Music, Inc.
**Date of Creation:** 1997
**Date of Publication:** 1998-02-24
**Authorship on Application:** words & music: Richie Sambora, Richie Supa.
**Names:** [Sambora, Richie](#)
[Supa, Richie](#)
[Polygram International Publishing, Inc.](#)
[Aggressive Music](#)
[EMI April Music, Inc.](#)

◄ previous    next ►

---

| Save, Print and Email (**Help Page**) | |
|---|---|
| Select Download Format  Full Record ▼ | Format for Print/Save |
| Enter your email address: | Email |

---

**DA-99**

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

**DA-100**

# EXHIBIT D

# DA-101



**The Library has opened access to the reading rooms by appointment only. More. The Jefferson Building has reopened to visitors via timed, ticketed entry. More.**

| Help | Search | History | Titles | Start Over |
|------|--------|---------|--------|------------|

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PA0001768256
Search Results: Displaying 1 of 1 entries

◄ previous    next ►

---



*"Made In America".*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0001768256 / 2011-09-12 |
| **Application Title:** | "Made In America" (as recorded by Jay-Z and Kanye West on CD titled "Watch The Throne" on Roc-A-Fella Records) |
| **Title:** | "Made In America". |
| **Description:** | Compact disk (CD) |
| **Copyright Claimant:** | Kanye West. Address: street Not Known, city Not Known. |
| | Shawn Carter. Address: street Not Known, city Not Known. |
| | Shama Joseph. Address: street Not Known, city Not Known. |
| | Mike Dean. Address: street Not Known, city Not Known. |
| | Bug Music, Transfer: By written agreement. Address: 6100 Wilshire Blvd. Suite 1600, Los Angeles, CA, 90048, United States. |
| | Heavens Research, Transfer: By written agreement. Address: street Not Known, city Not Known. |
| **Date of Creation:** | 2011 |
| **Date of Publication:** | 2011-08-12 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Frank Ocean, pseud. of Bug Music, Inc. as employer for hire of Christopher Breaux (author of pseudonymous work), employer for hire; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| | Kanye West; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| | Jay-Z, pseud. of Shawn Carter; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| | Sak Pase, pseud. of Shama Joseph; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| | Mike Dean; Domicile: United States; Citizenship: United States. Authorship: music, |

# DA-102

lyrics.

**Names:** Ocean, Frank, pseud.

West, Kanye

Carter, Shawn

Jay-Z, pseud.

Joseph, Shama

Sak Pase, pseud.

Dean, Mike

Bug Music, Inc. as employer for hire of Christopher Breaux

Bug Music

Heavens Research



**Save, Print and Email (Help Page)**

Select Download Format   Full Record ⌄    Format for Print/Save

Enter your email address:    Email

---

Help    Search    History    Titles    Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

# EXHIBIT E

# DA-104



## Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PA0001776533
Search Results: Displaying 1 of 1 entries



*Made In America.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0001776533 / 2011-12-09 |
| **Application Title:** | Made In America. |
| **Title:** | Made In America. |
| **Description:** | Compact disc. |
| **Copyright Claimant:** | Tokeco Tunes, Transfer: Written agreement. Address: 2303 21st Ave South, 3rd Floor, Nashville, TN, 37212, United States. |
| **Date of Creation:** | 2011 |
| **Date of Publication:** | 2011-06-09 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Toby Keith Covel, 1961- ; Citizenship: United States. Authorship: music, lyrics. |
| | Bobby Pinson; Citizenship: United States. Authorship: music, lyrics. |
| | Gregory Scott Reeves; Citizenship: United States. Authorship: music, lyrics. |
| **Names:** | Covel, Toby Keith, 1961- |
| | Pinson, Bobby |
| | Reeves, Gregory Scott |
| | Tokeco Tunes |





Help   Search   History   Titles   Start Over

# DA-105

[Contact Us](#)  |  [Request Copies](#)  |  [Get a Search Estimate](#)  |  [Frequently Asked Questions (FAQs) about Copyright](#)  |
[Copyright Office Home Page](#)  |  [Library of Congress Home Page](#)

**DA-106**

# EXHIBIT F



The Library has opened access to the reading rooms by appointment only. **More**. The Jefferson Building has reopened to visitors via timed, ticketed entry. **More**.

| Help | Search | History | Titles | Start Over |

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PA0001786233
Search Results: Displaying 1 of 1 entries



---

**Labeled View**

*Made in America.*

|  |  |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0001786233 / 2012-05-13 |
| **Application Title:** | Made in America. |
| **Title:** | Made in America. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | John Sembello, 1945- . Address: 2508 Chestnut Avenue, Ardmore, PA, 19003. |
| **Date of Creation:** | 2010 |
| **Date of Publication:** | 2010-01-01 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | John Sembello, 1945- ; Domicile: United States; Citizenship: United States. Authorship: music, lyrics, musical arrangement. |
| **Rights and Permissions:** | Expect Magic Music, 1314 E Las Olas Blvd, #1074, Fort Lauderdale, FL, 33301, United States |
| **Names:** | Sembello, John, 1945- |



---

| Save, Print and Email (**Help Page**) | |
|---|---|
| Select Download Format  Full Record ⌄ | Format for Print/Save |
| Enter your email address: | Email |

---

Help    Search    History    Titles    Start Over

---

# DA-108

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

# EXHIBIT G



The Library has opened access to the reading rooms by appointment only. **More**. The Jefferson Building has reopened to visitors via timed, ticketed entry. **More**.

| Help | Search | History | Titles | Start Over |
|------|--------|---------|--------|------------|

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PA0002119555
Search Results: Displaying 1 of 1 entries

◀ **previous**     **next** ▶

---



*Made In America.*

| | |
|---|---|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0002119555 / 2017-07-07 |
| **Application Title:** | Made In America. |
| **Title:** | Made In America. |
| **Appears in:** | "The Documentary 2" by The Game on E One Music Group, no. 9469, 10/9/2015 |
| **Description:** | Compact disk (CD) |
| **Copyright Claimant:** | Marcus Black, Transfer: By written agreement. Address: street not known, city not known. |
| | Warner-Tamerlane Publishing Corp., Transfer: By written agreement. Address: 10585 Santa Monica Blvd., Los Angeles, CA, 90025. |
| | Baby Game, Transfer: By written agreement. Address: street not known, city not known. |
| **Date of Creation:** | 2016 |
| **Date of Publication:** | 2016-10-09 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | The Game, pseud. of Jayceon Terrell Taylor (author of pseudonymous work); Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| | Marcus Black; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| **Previous Registration:** | 1990, V2560P469. |
| **Pre-existing Material:** | Sample "You Got Your Hooks In Me" by Sigler. |
| **Basis of Claim:** | music, lyrics, musical arrangement. |
| **Names:** | Taylor, Jayceon Terrell |
| | The Game, pseud. |
| | Black, Marcus |
| | Warner-Tamerlane Publishing Corp. |

# DA-111

[Baby Game](#)



**Save, Print and Email ([Help Page](#))**

Select Download Format  Full Record ⌄    Format for Print/Save

Enter your email address:    Email

---

[Help](#)    [Search](#)    [History](#)    [Titles](#)    [Start Over](#)

[Contact Us](#)  |  [Request Copies](#)  |  [Get a Search Estimate](#)  |  [Frequently Asked Questions (FAQs) about Copyright](#)  |
[Copyright Office Home Page](#)  |  [Library of Congress Home Page](#)

# EXHIBIT H

# DA-113



**The Library has opened access to the reading rooms by appointment only. More. The Jefferson Building has reopened to visitors via timed, ticketed entry. More.**

| Help | Search | History | Titles | Start Over |
|------|--------|---------|--------|------------|

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = PA0002119555
Search Results: Displaying 1 of 1 entries

◀ previous     next ▶

---



*Made In America.*

|  |  |
|--|--|
| **Type of Work:** | Music |
| **Registration Number / Date:** | PA0002119555 / 2017-07-07 |
| **Application Title:** | Made In America. |
| **Title:** | Made In America. |
| **Appears in:** | "The Documentary 2" by The Game on E One Music Group, no. 9469, 10/9/2015 |
| **Description:** | Compact disk (CD) |
| **Copyright Claimant:** | Marcus Black, Transfer: By written agreement. Address: street not known, city not known. |
| | Warner-Tamerlane Publishing Corp., Transfer: By written agreement. Address: 10585 Santa Monica Blvd., Los Angeles, CA, 90025. |
| | Baby Game, Transfer: By written agreement. Address: street not known, city not known. |
| **Date of Creation:** | 2016 |
| **Date of Publication:** | 2016-10-09 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | The Game, pseud. of Jayceon Terrell Taylor (author of pseudonymous work); Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| | Marcus Black; Domicile: United States; Citizenship: United States. Authorship: music, lyrics. |
| **Previous Registration:** | 1990, V2560P469. |
| **Pre-existing Material:** | Sample "You Got Your Hooks In Me" by Sigler. |
| **Basis of Claim:** | music, lyrics, musical arrangement. |
| **Names:** | Taylor, Jayceon Terrell |
| | The Game, pseud. |
| | Black, Marcus |
| | Warner-Tamerlane Publishing Corp. |

# DA-114

Web Voyage Record View 1

[Baby Game](#)



**Save, Print and Email ([Help Page](#))**

| | |
|---|---|
| Select Download Format  Full Record | Format for Print/Save |
| Enter your email address: | Email |

---

[Help](#)  [Search](#)  [History](#)  [Titles](#)  [Start Over](#)

[Contact Us](#)  |  [Request Copies](#)  |  [Get a Search Estimate](#)  |  [Frequently Asked Questions (FAQs) about Copyright](#)  |
[Copyright Office Home Page](#)  |  [Library of Congress Home Page](#)

**DA-115**

# EXHIBIT I



Lyrics.com

# Made in America

**By Kidd Wes**

I'm making a mission
Im made in america
Flex on the radio, it made me a terrorist
Pessimist niggas, you should just cherish this
2016 Rappers?
(Yeah) you should beware of this

Flex on a hater, finesse on your ex move (Yeah)
Black and white benz, Im making a chess move (Unh)
I'm running the city, I'm making my next move (Woah)
You don't gotta pass? I hope that they checked you (Unh)
I'm making a milestone, coming straight from the south
You hearing my name though? Well don't wear it out
Excellent, Excellent, Excellent Excellent
Your WCW probably on xans and looking for benefits
I'm killing the game
And got a tight grip and there won't be no evidence
How funny I OJ'ed the game and it seems to make
Oh what a relevance
Pessimist niggas, you should just cherish this
2016 Rappers?
(Yeah) you should beware of this

Aux-cord Steve Austin on any beat
I somersault the flow, pick up any hoe
On any street
There's been a lot of talk, There's been a lot of talk
Especially in the street
That's why the numbers count, I can always count
Especially on enemies
Rolling around in an S, feeling like Lex Luger
Mafia style, sorry Benny boy this how I do ya
One for the money, two for the snakes
Heads up for the bullets thats coming from the Jakes
Making America great again, baby that's all it takes

**DA-118**

# EXHIBIT J

# DA-119

## This Is America

Childish Gambino

8 Comments      0 Tags

Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away
Yeah, yeah, yeah, yeah, yeah
Yeah, yeah, yeah, go, go away

We just wanna party
Party just for you
We just want the money
Money just for you
I know you wanna party (yeah)
Party just for free
Girl, you got me dancin' (girl, you got me dancin')
Dance and shake the frame
We just wanna party (yeah)
Party just for you (yeah)
We just want the money (yeah)
Money just for you (ooh)
I know you wanna party (yeah)
Party just for free (yeah)
Girl, you got me dancin' (girl, you got me dancin')
Dance and shake the frame (ooh)

This is America
Don't catch you slippin' now
Don't catch you slippin' now
Look what I'm whippin' now
This is America (woo)
Don't catch you slippin' now
Don't catch you slippin' now
Look what I'm whippin' now

# DA-120

Childish Gambino - This Is America Lyrics | Song Meanings

This is America (skrrt, skrrt, woo)
Don't catch you slippin' now (ayy)
Look at how I'm livin' now
Police be trippin' now (woo)
Yeah, this is America (woo, ayy)
Guns in my area (word, my area)
I got the strap (ayy, ayy)
I gotta carry 'em
Yeah, yeah, I'ma go into this (ugh)
Yeah, yeah, this is guerilla, woo
Yeah, yeah, I'ma go get the bag
Yeah, yeah, or I'ma get the pad
Yeah, yeah, I'm so cold like yeah (yeah)
I'm so dope like yeah (woo)
We gon' blow like yeah (straight up, uh)

Ooh-ooh-ooh-ooh-ooh, tell somebody
You go tell somebody
Grandma told me
Get your money, black man (get your money)
Get your money, black man (get your money)
Get your money, black man (get your, black man)
Get your money, black man (get your, black man)
Black man

This is America (woo, ayy)
Don't catch you slippin' now (woo, woo, don't catch you slippin', now)
Don't catch you slippin' now (ayy, woah)
Look what I'm whippin' now (Slime!)
This is America (yeah, yeah)
Don't catch you slippin' now (woah, ayy)
Don't catch you slippin' now (ayy, woo)
Look what I'm whippin' now (ayy)

Look how I'm geekin' out (hey)
I'm so fitted (I'm so fitted, woo)
I'm on Gucci (I'm on Gucci)
I'm so pretty (yeah, yeah)
I'm gon' get it (ayy, I'm gon' get it)
Watch me move (blaow)

# DA-121

This a celly (ha)
That's a tool (yeah)
On my Kodak (woo, Black)
Ooh, know that (yeah, know that, hold on)
Get it (get it, get it)
Ooh, work it (21)
Hunnid bands, hunnid bands, hunnid bands (hunnid bands)
Contraband, contraband, contraband (contraband)
I got the plug on Oaxaca (woah)
They gonna find you like blocka (blaow)

Ooh-ooh-ooh-ooh-ooh, tell somebody
(America, I just checked my following list and)
You go tell somebody
(You mothafuckas owe me)
Grandma told me
Get your money, black man (black man)
Get your money, black man (black man)
Get your money, black man (black man)
Get your money, black man (black man)
Black man (one, two, three, get down)

Ooh-ooh-ooh-ooh-ooh, tell somebody
You go tell somebody
Grandma told me, "Get your money," black man
Get your money, black man (black man)
Get your money, black man (black man)
Get your money, black man (black man)
Black man

You just a black man in this world
You just a barcode, ayy
You just a black man in this world
Drivin' expensive foreigns, ayy
You just a big dawg, yeah
I kenneled him in the backyard
No proper life to a dog
For a big dog

Edit Lyrics

**DA-122**

---

Lyrics submitted by crazycrackah, edited by WGW

This Is America Lyrics as written by Ludwig Goransson Donald Glover

Lyrics © Universal Music Publishing Group, Kobalt Music Publishing Ltd., RESERVOIR MEDIA MANAGEMENT INC, Warner Chappell Music, Inc.

Lyrics powered by LyricFind

# EXHIBIT B



CIRCULAR
**56A**

## Copyright Registration of
# Musical Compositions and Sound Recordings

This circular explains the difference, for copyright purposes, between musical compositions and sound recordings and provides information on registering both types of works either separately or on one application.

For specific information about this topic, see **Chapter 800** of the *Compendium of U.S. Copyright Practices*, Third Edition.[1] For registration of sound recordings that do not contain musical compositions, or for registration of sound recordings on a separate application from musical compositions, see **Circular 56**.

Sound recordings and musical compositions are considered two separate works for copyright purposes. Even though a sound recording is a derivative work of the underlying musical composition, a copyright in a sound recording is not the same as, or a substitute for, copyright in the underlying musical composition. The chart that follows demonstrates the differences between these two types of works.

|  | *Musical Compositions* | *Sound Recordings* |
|---|---|---|
| *What is it?* | Music (melody, rhythm, and/or harmony expressed in a system of musical notation) and accompanying words (lyrics) | Fixation of a series of sounds (e.g., a particular performance) |
| *Who is the author?* | Composers Lyricists Songwriters | Performers Producers Sound Engineers |
| *How is it fixed?* | Copy (sheet music, either print or digital such as pdf) Phonorecord (mp3, CD, LP) | Phonorecord (mp3, CD, LP) |



United States Copyright Office

copyright.gov

**DA-125**

| Does the owner have the exclusive right to... | Musical Compositions | Sound Recordings |
|---|---|---|
| reproduce the work? | Yes | Yes |
| prepare derivative works? | Yes | Yes |
| distribute the copies or phonorecords of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending? | Yes | Yes |
| perform the work publicly? | Yes | Only by means of a digital audio transmission |
| display the work publicly? | Yes | No |

A registration for a musical composition covers the music and lyrics (if any) embodied in that composition, but it does not cover a recorded performance of that composition. Likewise, a registration for a sound recording of a performance does not cover the underlying musical composition. For example, the composition "Respect" and a recording of Aretha Franklin singing "Respect" are two distinct works. The composition itself (i.e., the music and lyrics) is a musical composition, and a recording of an artist performing that composition is a sound recording.

## Determining Whether a Musical Composition and a Sound Recording Can Be Registered with One Application

Since a musical composition and a sound recording are distinct works, separate registration applications generally should be submitted for each work. However, you may use one standard application to register a sound recording and an underlying musical composition when (1) the musical composition and sound recording are embodied in the same phonorecord and (2) the claimant for both the musical composition and sound recording are the same.

*Examples*

- When an artist performs and records a composition owned by someone else, the artist or artist's label (if appropriate) would submit an application for the recording only. For specific guidance, see *Copyright Registration of Sound Recordings* (**Circular 56**).

- When a songwriter creates a composition that someone else records, the songwriter or songwriter's publisher (if appropriate) would submit an application for the musical composition only. For specific guidance, see *Copyright Registration of Musical Compositions* (**Circular 50**).

- When a songwriter performs and records the songwriter's own composition, the songwriter may submit one application for both the composition and recording.

- When a record company owns both a composition and a recording of that composition, it may submit one application for both the composition and recording.

- When a record company owns both a composition and a recording of that composition,

# DA-126

and distributes the works to the public as both sheet music and an album at the time of registration, it should submit two separate applications, with a sheet music deposit for the music composition and a recording deposit for the sound recording.

Even though it is possible for some applicants described above to register the musical composition and sound recording on one application, it is very important to follow the instructions below in order to make sure both works are included on the application. Applicants may always choose to register sound recordings and musical compositions on separate applications.

**NOTE:** You may register one sound recording and the underlying musical composition using the Single Application, a streamlined version of the Standard Application, but only if you meet all three of the following conditions: (1) the composition and the sound recording are embodied in the same phonorecord, (2) the author is the only performer featured in the recording, and (3) the author is the only copyright owner of both works. For more information about these requirements and procedures, see *Using the Single Application* (**Circular 11**).

*Example:* Anne Smith submits a Single Application to register the sound recording and musical composition as the sole owner of copyright of both works. The deposit she submits is a recording of her solo performance of the composition.

## Completing the Online Application for Musical Compositions and Sound Recordings

Mistakes in applications lead to delays in registration, so it is important to complete the application accurately. Instructions for completing the Standard Application appear in the "help" text that accompanies the application. Here are some tips regarding common points of confusion when an application includes both a sound recording and a musical composition.

### Type of Work

At the beginning of the application, select the "Sound Recording" option on the "Type of Work" screen. The questions presented in the application are based on the type of work you select, and if you select the wrong option you will need to start over.



### Title

| All Titles | | | | | | 1 - 4 of 4 |
|---|---|---|---|---|---|---|
| **Title of Work** | **Volume** | **Number** | **Issue Date** | **Type** | **Edit** | **Delete** |
| Album Title | | | | Title of work being registered | ✎ | 🗑 |
| First Track Title | | | | Contents Title | ✎ | 🗑 |
| Next Track Title | | | | Contents Title | ✎ | 🗑 |
| Last Track Title | | | | Contents Title | ✎ | 🗑 |

Provide each title exactly as it appears on the work itself, identifying album and track titles using the title types as shown above. If you are registering one sound recording or one musical composition, enter one title as "Title of work being registered."

# DA-127

*Publication*

- Publication occurs when phonorecords of a work are distributed to the public by sale; transfer of ownership; or by rental, lease, or lending. Offering to distribute phonorecords to a group of persons for the purpose of further distribution or the purpose of publicly performing the work also constitutes publication. A public performance does not—in and of itself—constitute publication.

- If the work has not been published, answer "no" to the publication question.

- If the work has been published, answer "yes" to the publication question and give the date when and nation where the phonorecords were first distributed to the public or first offered to a group of persons for further distribution or public performance.

*Year of Creation*

- The year of creation is the year in which the version of the work to be registered was first fixed or recorded in any other tangible form. When a work is written or recorded over a period of time or constitutes a new version of an earlier work, give the year of completion of the final work or new version.

*Author*

- On the Author screen, name the author(s) of the sound recording(s) and musical composition(s) being registered. The author of a sound recording is the performer(s) featured in the recording and/or the producer(s) who captured and/or manipulated or edited the sounds that appear in the final recording. The author of a musical composition is the person who created the music and/or lyrics.

- There is also the possibility that the sound recording (and/or musical composition) were works made for hire. The applicant, not the U.S. Copyright Office, must determine whether a work meets the statutory definition of a work made for hire. The two types of works that can be considered a work made for hire are: (1) works prepared by an employee within the scope of his or her employment; or (2) certain types of specially commissioned works, outlined in the statute, where the parties signed a written agreement that the work was a "work made for hire." If the work was created as a work made for hire, give the name of the employer, not the person who actually created the music and/or lyrics and sound recording. For more information on works made for hire, see *Works Made for Hire* (**Circular 30**).

*Claimant*

- A sound recording and musical composition can only be registered together if the same person or entity is named as the copyright claimant for both works. For purposes of registration, the claimant may be the author of both the musical composition and the sound recording, or a party that owns the copyright in both works.

- If the claimant is not the author of either the musical composition or the sound recording, the applicant must also provide a transfer statement by checking one of the boxes (e.g., by written agreement, by inheritance, etc.) or by explaining how the claimant obtained the rights in the work in the space provided.

**DA-128**

*Type of Authorship*

| | |
|---|---|
| **\*** **Author Created:** ☐ Sound recording | Help  **Other:** [＿＿＿＿＿＿] |
| Check this box to describe your sound recording authorship. | Use this space to describe the musical composition authorship ("music," "lyrics," "musical arrangement," etc.) |

*Limitation of Claim*

• Complete this space if the work being registered contains an appreciable amount of material that

  » was previously published

  » was previously registered with the U.S. Copyright Office

  » is in the public domain

  » is not owned by the claimant named in the application

Leave this space blank if the work does not contain an appreciable amount of any of this kind of material.

## Submitting the Works to the Copyright Office

To register your sound recording and musical composition, you must send the works to the Copyright Office. Once a deposit has been submitted, it becomes part of the public record and cannot be returned.

When registering a sound recording and musical composition that are unpublished or published solely in a digital form, the Copyright Office strongly encourages you to upload the deposit as a digital file through the online registration system instead of submitting a physical phonorecord, such as a CD, flash drive, or other physical storage device. Each file must be uploaded in an acceptable file format, and each uploaded file must not exceed 500 MB in size. You may compress the files to fit within that size limit.

When registering a sound recording and musical composition published in a physical format, such as a compact disc or LP, you should submit two copies of the work in the physical format, even if there is a corresponding digital version. To submit physical copies of your work after completing an online application, you should print a shipping slip from the bottom of the "Submit Your Work" screen and send the shipping slip and deposits in the same package to the address given on the shipping slip. To submit a physical copy (or copies) of your work with a paper application, complete Form SR and submit the deposit in the same package with the application and the filing fee.

If the sound recording has been published in the United States in multiple physical formats at the time of registration, you will need to comply with the "best edition" requirement by sending the two copies of the "best" edition. The "best" edition generally will be the highest quality edition that has been publicly distributed in the United States. The Library of Congress has identified hierarchical criteria for what constitutes the highest quality edition for sound recordings:

1. Compact disc
2. Vinyl disc
3. Open-reel tape
4. Cartridge tape
5. Cassette tape

For example, if the work was published both on compact disc and vinyl disc before the date of the deposit, you should submit two CDs rather than vinyl discs.

### Registering Multiple Musical Compositions and Sound Recordings on One Application

To register multiple sound recordings and musical compositions together on one application, they must qualify for group registration, as a collective work, or unit of publication. This section provides specific guidance for registering musical compositions and sound recordings using these methods. For more general information regarding multiple work registration, see *Multiple Works* (**Circular 34**).

#### Group Registration of Unpublished Works

An applicant may register up to ten unpublished sound recordings and the underlying musical works using the online group registration option, provided that the musical compositions and sound recordings were created by the same author or authors and all of the authors are named as copyright claimants.

When registering multiple musical works and sound recordings using the group registration option, provide a title for each of the individual works within the collection.

*Example One*
Three unpublished compositions were written and performed by Jim, Pam, and Dwight. Assuming there was no transfer of ownership, the authors and owners of all three compositions and sound recordings are the same, and the compositions may be registered using the group registration option.

*Example Two*
Three unpublished compositions were written by Jim and Dwight: Composition 1 was performed by Jim; Composition 2 was performed by Jim; Composition 3 was performed by Dwight. Jim and Dwight may register the three unpublished compositions, but not the three sound recordings, on one group application. Jim may register the sound recordings for Composition 1 and Composition 2 on one group application, while Dwight registers the sound recording for Composition 3 on a separate application.

#### Collective Work

A collective work is a compilation in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole. The "authorship" in a collective work comes from the original selection, coordination, and arrangement of the independent works included in the collective work.

Under the Copyright Act, a collective work is considered one work for purposes of registration. A registration for a collective work covers the copyrightable authorship in the selection, coordination, or arrangement of the work. A registration for a collective work also covers the individual copyrightable works that are contained within the collective work if (1) the collective work and the individual works are owned by the same party, (2) the individual works have not been previously published or previously registered, and (3) the individual works are not in the public domain.

Accordingly, an applicant may use one application to register a number of musical compositions and sound recordings as a collective work if the applicant owns the musical compositions and sound recordings, selected and arranged the musical compositions and sound recordings into a collective whole, and the musical compositions and sound recordings have not been previously published or previously registered.

For example, a CD album with multiple tracks that embody musical compositions and sound recordings is considered a collective work. If the person or entity selecting, coordinating, or arranging the musical compositions and sound recordings on the album also owns the sound recordings, which were not previously published or registered, then the album and sound recordings may be registered with one application as a collective work. If that party also owns the musical compositions, which were not previously published or registered, then the collective work registration would also extend to the musical compositions.

By contrast, if the copyright owner of the musical composition is not the copyright owner of the sound recordings, the musical compositions and sound recordings must be registered separately. If an author only selects or arranges the songs on an album, but is not the copyright owner of the component sound recordings or the musical compositions, or if those recordings or compositions were previously published or registered, that author may still file an application for a collective work covering only the selection, coordination, and arrangement of the songs on the album. This might occur, for example, in the case of a "best of" album or a movie soundtrack album. But in this situation, the registration in the collective work would not extend to the individual sound recordings or the musical compositions on the album.

*Example*
An artist wrote and performed multiple tracks for a published album and determined how to arrange the compositions on the album. The artist can register this work on one application as a collective work. The claim may include the individual musical compositions and sound recordings as well as the selection, coordination, and arrangement of the tracks on the album.

### Unit of Publication

The Copyright Office has a narrow registration accommodation for units of publication. A unit of publication is a physical package that contains a number of separately fixed works that have been physically bundled together for distribution to the public as a single, integrated unit. The unit of publication accommodation is meant to solve a very particular problem: the burdens that would arise if applicants were required to submit, and the Office were required to process, multiple copies of the same product in order to register different copyrightable elements of that product.

An applicant may register a number of works as a unit of publication only if:

• All of the copyrightable elements are recognizable as self-contained works.

• All of the works claimed in the application are first published as a single unit on the same date.

• The copyright claimant for all of the works claimed in the unit is the same.

**DA-131**

- The unit and all of the works within the unit are distributed in a physical format.

- The unit contains an actual physical copy or phonorecord of all the works.

- The unit is distributed to the general public.

In the context of music albums, a registration relying on the unit of publication option may also extend to the copyrightable text, artwork, and photographs that appear in the liner notes for the unit. When registering these types of works, include a brief statement describing the works in the "Other" field on the Author screen using the specific terms, such as "artwork," "photographs," and "text of liner notes." Please note that names and titles of tracks are not copyrightable so the applicant should not assert a claim in "text of liner notes" if the names and titles of tracks are the only text present in the unit of publication.

All of the above-mentioned conditions must be met for an applicant to use the unit of publication option. If any of the compositions were published individually, and not within the unit of publication, then the unit of publication option cannot be used to register those works. Similarly, an applicant cannot use the unit of publication option if the tracks, cover art, and/or liner notes are owned by different parties, or if one or more of the works was published on a different date or in a different unit of publication.

*Example*

A CD album with two tracks that embody musical compositions and sound recordings along with an insert containing text and artwork is considered a unit of publication when they are distributed to the general public as a single, integrated unit. If the copyright owner of the text and artwork is the same as the copyright owner of the two musical compositions and sound recordings, the musical compositions, sound recordings, text and artwork may be registered together with one application.

**DA-132**

---

**NOTE**

1. This circular is intended as an overview of the distinction between musical compositions and sound recordings. The authoritative source for U.S. copyright law is the Copyright Act, codified in Title 17 of the *United States Code*. Copyright Office regulations are codified in Title 37 of the *Code of Federal Regulations*. Copyright Office practices and procedures are summarized in the third edition of the *Compendium of U.S. Copyright Office Practices*, cited as the *Compendium*. The copyright law, regulations, and the *Compendium* are available on the Copyright Office website at **www.copyright.gov**.

**DA-133**

**For Further Information**

### By Internet

The copyright law, the *Compendium*, electronic registration, application forms, regulations, and related materials are available on the Copyright Office website at **www.copyright.gov**.

### By Email

To send an email inquiry, click the *Contact Us* link on the Copyright Office website.

### By Telephone

For general information, call the Copyright Public Information Office at (202) 707-3000 or 1-877-476-0778 (toll free). Staff members are on duty from 8:30 am to 5:00 pm, eastern time, Monday through Friday, except federal holidays. To request application forms or circulars by postal mail, call (202) 707-9100 or 1-877-476-0778 and leave a recorded message.

### By Regular Mail

Write to

      Library of Congress
      U.S. Copyright Office
      Outreach and Education Section
      101 Independence Avenue, SE #6304
      Washington, DC 20559-6304

**DA-134**

# EXHIBIT C



UNITED STATES COPYRIGHT OFFICE

# COMPENDIUM OF
# U.S. COPYRIGHT OFFICE PRACTICES

THIRD EDITION



DECEMBER 22, 2014

The author of a compilation may claim copyright in an original selection, coordination, and/or arrangement of preexisting material, provided that the material has been used in a lawful manner. Section 103(a) of the Copyright Act states that the copyright in a compilation "does not extend to any part of the work" that "unlawfully" uses preexisting material. As discussed in Chapter 300, Section 313.6(B), this provision is intended to prevent "an infringer from benefiting, through copyright protection, from committing an unlawful act." H.R. REP. No. 94-1476, at 57, *reprinted in* 1976 U.S.C.C.A.N. at 5671.

### 509   Collective Works and Contributions to Collective Works

This Section provides the definition and a general discussion of collective works and contributions to collective works. For information concerning the Office's practices and procedures for evaluating the copyrightability of collective works, see Chapter 300, Section 312. For guidance in preparing an application to register a collective work or a contribution to a collective work, see Chapter 600, Sections 610.4, 613.8, 618.7, 620.8, and 621.8(D).

### 509.1   What Is a Collective Work?

A collective work is a type of compilation. The Copyright Act defines a collective work as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101. The statute also states that "[t]he term 'compilation' includes collective works." 17 U.S.C. § 101 (definition of "compilation"). Thus, collective works are subject to the statutory requirements for compilations.

Creating a collective work requires the "assemblage or gathering of 'separate and independent works . . . into a collective whole.'" H.R. REP. No. 94-1476, at 120, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5736; S. REP. No. 94-473, at 104 (omission in original). In other words, collective works contain two distinct forms of authorship:

- The compilation authorship in creating the collective work, which involves selecting, coordinating, and/or arranging a number of separate and independent works and assembling them into a collective whole; and

- The authorship in the separate and independent works included within the collective work, such as an article that appears in a periodical issue or a poem that appears in an anthology.

Both forms of authorship may be registered with the U.S. Copyright Office, provided that they contain a sufficient amount of original authorship and provided that the claimant owns the copyright in that material.

By definition, a collective work must contain "a number of contributions." A work that contains "relatively few separate elements" does not satisfy this requirement, such as a work containing a single contribution, a composition that merely consists of words and music, a publication that merely combines a single work with illustrations or front matter, or a publication that merely contains three one-act plays. H.R. REP. No. 94-1476, at 122, *reprinted in* 1976 U.S.C.C.A.N. at 5737; S. REP. No. 94-473, at 105.

# DA-137

COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES, Third Edition

As a general rule, a contribution that is "incorporated in a 'collective work' must itself constitute a 'separate and independent' work." H.R. REP. No. 94-1476, at 122, *reprinted in* 1976 U.S.C.C.A.N. at 5737; S. REP. No. 94-473, at 105. In other words, a contribution must be an original work of authorship that is eligible for copyright protection under Section 102(a) of the Copyright Act, regardless of whether that contribution is currently protected or whether the copyright in that contribution has expired.

## 509.2   The Scope of the Copyright in a Collective Work

The "[c]opyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole." 17 U.S.C. § 201(c).

The "[c]opyright in the separate contribution 'vests initially in the author of the contribution.'" *New York Times Co. v. Tasini,* 533 U.S. 483, 494 (2001) (quoting 17 U.S.C. § 201(c)). The "[c]opyright in the collective work vests in the collective author" and it "extends only to the creative material contributed by that author, not to 'the preexisting material employed in the work.'" *Id.* at 494 (quoting 17 U.S.C. § 103(b)). Specifically, the copyright in the collective work "extend[s] to the elements of compilation and editing that went into [creating] the collective work as a whole." H.R. REP. No. 94-1476, at 122, *reprinted in* 1976 U.S.C.C.A.N. at 5738; S. REP. No. 94-473, at 106. In addition, it extends to "the contributions that were written for hire by employees of the owner of the collective work, and those copyrighted contributions that have been transferred in writing to the owner by their authors." H.R. REP. No. 94-1476, at 122. *reprinted in* 1976 U.S.C.C.A.N. at 5738; S. REP. No. 94-473, at 106.

An applicant may register a collective work together with the contributions contained therein (i) if the contributions and the collective work were created by the same author, or (ii) if the copyright in the contributions and the collective work are owned by the same claimant, (iii) provided that the contributions and the collective work have not been previously published or previously registered, and provided that they are not in the public domain. If the owner of the collective work does not own all rights in the copyright for a particular contribution, that party cannot register a claim to copyright in that contribution. Instead, the contribution must be registered individually by or on behalf of the author of the contribution or the party that owns the copyright in that work. *See Morris v. Business Concepts, Inc.,* 259 F.3d 65, 71 (2d Cir. 2001) ("Unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to the constituent part."), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 160 (2010).

Collective works often contain previously published material, previously registered material, public domain material, or material owned by a third party. If a collective work contains an appreciable amount of unclaimable material, the applicant generally should limit the claim to the new material that the author contributed to the work and the unclaimable material should be excluded from the claim. For guidance on this procedure, see Chapter 600, Section 621.8(D).

The author of a collective work may claim copyright in an original selection, coordination, and/or arrangement of preexisting material, provided that the material has been used in a lawful manner. Section 103(a) of the Copyright Act states that the

# EXHIBIT D



UNITED STATES COPYRIGHT OFFICE

# COMPENDIUM OF
# U.S. COPYRIGHT OFFICE PRACTICES

THIRD EDITION



JANUARY 2021

**DA-140**

509     **Collective Works and Contributions to Collective Works**

This Section provides the definition and a general discussion of collective works and contributions to collective works. For information concerning the Office's practices and procedures for evaluating the copyrightability of collective works, see Chapter 300, Section 312. For guidance in preparing an application to register a collective work or a contribution to a collective work, see Chapter 600, Sections 610.4, 613.8, 618.7, 620.8, and 621.8(D). For guidance in registering a catalog as a collective work, see Chapter 900, Section 915.

509.1     **What Is a Collective Work?**

A collective work is a type of compilation. The Copyright Act defines a collective work as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101. The statute also states that "[t]he term 'compilation' includes collective works." *Id.* (definition of "compilation"). Thus, collective works are subject to the statutory requirements for compilations: There must be a sufficiently creative selection, coordination, or arrangement of the component works to establish a collective work.

Creating a collective work requires the "assemblage or gathering of 'separate and independent works . . . into a collective whole.'" H.R. REP. No. 94-1476, at 120, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5736; S. REP. No. 94-473, at 104 (omission in original). In other words, collective works contain two distinct forms of authorship:

- The compilation authorship in creating the collective work, which involves selecting, coordinating, and/or arranging a number of separate and independent works and assembling them into a collective whole; and

- The authorship in the separate and independent works included within the collective work, such as an article that appears in a periodical issue or a poem that appears in an anthology.

An applicant may register a collective work together with the separate and independent works contained therein (i) if the copyright in the collective work and the component works are owned by the same claimant, and (ii) if the component works have not been previously published, previously registered, and are not in the public domain.

By definition, a collective work must contain "a number of contributions." A work that contains "relatively few separate elements" does not satisfy this requirement, such as a work containing a single contribution, a composition that merely consists of words and music, a publication that merely combines a single work with illustrations or front matter, or a publication that merely contains three one-act plays. H.R. REP. No. 94-1476, at 122, *reprinted in* 1976 U.S.C.C.A.N. at 5737; S. REP. No. 94-473, at 105.

As a general rule, a contribution that is "incorporated in a 'collective work' must itself constitute a 'separate and independent' work." H.R. REP. No. 94-1476, at 122, *reprinted in* 1976 U.S.C.C.A.N. at 5737; S. REP. No. 94-473, at 105. In other words, a contribution must be an original work of authorship that is eligible for copyright protection under Section

102(a) of the Copyright Act, regardless of whether that contribution is currently protected or whether the copyright in that contribution has expired.

### 509.2   The Scope of the Copyright in a Collective Work

The "[c]opyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole." 17 U.S.C. § 201(c).

The "[c]opyright in the separate contribution 'vests initially in the author of the contribution.'" *New York Times Co. v. Tasini,* 533 U.S. 483, 494 (2001) (quoting 17 U.S.C. § 201(c)). The "[c]opyright in the collective work vests in the collective author" and it "extends only to the creative material contributed by that author, not to 'the preexisting material employed in the work.'" *Id.* at 494 (quoting 17 U.S.C. § 103(b)). Specifically, the copyright in the collective work "extend[s] to the elements of compilation and editing that went into [creating] the collective work as a whole." H.R. REP. NO. 94-1476, at 122, *reprinted in* 1976 U.S.C.C.A.N. at 5738; S. REP. NO. 94-473, at 106. In addition, it extends to "the contributions that were written for hire by employees of the owner of the collective work, and those copyrighted contributions that have been transferred in writing to the owner by their authors." H.R. REP. NO. 94-1476, at 122, *reprinted in* 1976 U.S.C.C.A.N. at 5738; S. REP. NO. 94-473, at 106.

An applicant may register a collective work together with the contributions contained therein (i) if the contributions and the collective work were created by the same author, or (ii) if the copyright in the contributions and the collective work are owned by the same claimant, (iii) provided that the contributions and the collective work have not been previously published or previously registered, and provided that they are not in the public domain. If the owner of the collective work does not own all rights in the copyright for a particular contribution, that party cannot register a claim to copyright in that contribution. Instead, the contribution must be registered individually by or on behalf of the author of the contribution or the party that owns the copyright in that work. *See Morris v. Business Concepts, Inc.,* 259 F.3d 65, 71 (2d Cir. 2001) ("Unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to the constituent part."), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 160 (2010).

Collective works often contain previously published material, previously registered material, public domain material, or material owned by a third party. If a collective work contains an appreciable amount of unclaimable material, the applicant generally should limit the claim to the new material that the author contributed to the work and the unclaimable material should be excluded from the claim. For guidance on this procedure, see Chapter 600, Section 621.8(D).

The author of a collective work may claim copyright in an original selection, coordination, and/or arrangement of preexisting material, provided that the material has been used in a lawful manner. Section 103(a) of the Copyright Act states that the copyright in a compilation "does not extend to any part of the work" that "unlawfully" uses preexisting material, and as discussed above, the term "compilation" includes collective works. As discussed in Chapter 300, Section 313.6(B), this provision is intended to prevent "an infringer from benefiting, through copyright protection, from

# EXHIBIT E

## JONATHAN D. DAVIS, P.C.

### ATTORNEYS AT LAW

IO ROCKEFELLER PLAZA
SUITE IOI5
NEW YORK, NEW YORK IOO2O

TEL: (212) 687-5464
FAX: (212) 697-2521
WWW.JDDAVISPC.COM

December 22, 2021

**VIA FIRST-CLASS MAIL/EMAIL/PDF**

Imran H. Ansari, Esq.
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, New York 10036

Re: <u>Nwosuocha v. Glover, et al. (Civ. Action No. 21-cv-04047)</u>

Dear Mr. Ansari:

We write to you on behalf of our clients in the above-referenced action and pursuant to Paragraph II.B. of the Individual Practices of U.S. District Judge Victor Marrero to "set[] forth the specific … pleading deficiencies in the complaint and other reasons or controlling authorities" we contend "would warrant dismissal and that, if properly rectified, could avoid the filing of the motion."[1] This letter is in lieu of a filed response to the Complaint.

The Complaint has the following fatal deficiencies: (1) lack of standing to sue for copyright infringement of the musical composition "Made in America" ("<u>Plaintiff's Composition</u>");[2] (2) failure to plead access or "substantial similarity" between the works at issue; and (3) improperly including RCA Records ("<u>RCA</u>") and Warner Music Group Corp. ("<u>WMG</u>") as defendants.

**I.     Plaintiff Lacks Standing to Sue for Copyright Infringement**

A copyright registration is an indispensable prerequisite for standing to sue for copyright infringement. *See* 17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (stating "registration is akin to an administrative exhaustion requirement … before suing to enforce ownership rights"). Musical compositions, sound recordings, and audiovisual works each require registration.

Plaintiff cannot pursue infringement claims against Defendants without a valid registration. The Complaint identifies only one registration, which is limited to an *unpublished* collection of *sound recordings*. ECF No. 1, ¶ 5, Ex. B. That registration does not cover Plaintiff's Composition. *See* U.S. Copyright Circular 56A; *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc.*, 75 F. Supp. 2d 242, 247 (S.D.N.Y. 1999). Moreover, the sound recording embodying Plaintiff's

---

[1] We represent all Defendants except for Roc Nation Publishing LLC and Songs of Universal, Inc.

[2] The Complaint does not allege that the music *video* for "This is America" (the "<u>Challenged Composition</u>") infringes Plaintiff's music video. Nor can it be read to allege a sampling claim. Such claims would nonetheless be dismissed for lack of a valid registration.

**DA-144**

Imran H. Ansari, Esq.
December 22, 2021
Page 2

Composition is *excluded* from that registration because it was not an *unpublished* composition when the registration was filed or issued. *See Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 230 (S.D.N.Y. 2012); *see also Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016). The Complaint alleges that a recording of Plaintiff's Composition was uploaded to SoundCloud and YouTube before registration. ECF No. 1, ¶¶ 4, 40, 41 (alleging commercial exploitation on the Internet in 2016). This conduct constitutes publication. 17 U.S.C. § 101; *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398 (S.D.N.Y. 2002) (uploading content to Internet constitutes publication); *see also Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1364 (S.D. Fla. 2011) (music file published when posted on Internet).

## II.  **Plaintiff Has Not Alleged Access or Actionable Copying**

Copyright infringement requires copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Where no direct evidence of actual copying exists, a plaintiff must allege access with facts sufficient to allow an inference of copying. Here, Plaintiff's allegation that his song was available "on major streaming platforms for widespread public listening" fails to plead "access" as a matter of law. ECF No. 1, ¶ 40; *Clanton v. UMG Recordings, Inc.*, 20-cv-5841 (LJL), 2021 WL 3621784, at *3 (S.D.N.Y. Aug. 16, 2021) (dismissing claim because posting a song on the "internet is insufficient on its own to show [access through] 'wide dissemination'").

In addition, copying requires the works to be "substantially similar." But under the "ordinary observer" test – where a district court must compare the songs' "total concept and overall feel" without considering unprotectable expression the songs may share – the songs at issue lack "substantial similarity" as a matter of law. *Edwards v. Raymond*, 22 F. Supp. 3d 293, 297-301 (S.D.N.Y. 2014). In applying the test, a plaintiff's characterization of the songs is immaterial.

The minimal alleged similarities between the songs at issue lack the requisite protectability. The common proper noun "America" is unprotectable. *McDonald v. West*, 138 F. Supp. 3d 448, 456 (S.D.N.Y. 2015) ("Made in America" not protectible); 37 C.F.R. § 202.1(a). Likewise, any alleged similarity in the cadence/rhythm of the lyrical/rap delivery – such as the alleged use of "triplets" – is also unprotectable. *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018); *Rose v. Hewson,* No. 17cv1471 (DLC), 2018 WL 626350, at *7 (S.D.N.Y. Jan. 30, 2018). Aside from these unprotectable similarities, there is nothing to support Plaintiff's copyright claim.

Indeed, the music is different in each song at issue. As any lay listener will observe, the Challenged Composition's music is unlike Plaintiff's Composition. Plaintiff entirely raps his song in a C# minor key in a faster tempo. The Challenged Composition contains rapping *and* singing by multiple performers, is primarily in F major, and has a slower tempo. The differences in the production and instrumentals also reflect different concepts and overall feels.

In addition, the structure of each song is substantially different. Plaintiff's Composition has an intro, outro, and two verses that are sandwiched between choruses. The Challenged Composition has an intro, two verses that are preceded by both a pre-chorus and chorus, a final pre-chorus and an outro.

Imran H. Ansari, Esq.
December 22, 2021
Page 3

Furthermore, themes and ideas are not protectable as a matter of law, and here, other than a reference to the generic lyric "America," the themes of each song, and their lyrics, are entirely dissimilar. Plaintiff's Composition is a short, simple, self-aggrandizing proclamation, with Plaintiff stating repeatedly: "I'm made in America." His mantra alerts rappers of Plaintiff's arrival ("2016 rappers? (Yeah") You should beware of this"), and his success ("I'm running the city … I'm making a milestone … You hearing my name though? Well don't wear it out … I'm killing the game … I somersault the flow, pick up any ho / On any street).

In contrast, the Challenged Composition is not about a rapper's arrival/success, but is a complex clashing of the American landscape, anchored to the common phrase "This is America." It references facets of America, such as having fun and making money ("We just wanna party / Party just for you / We just want the money / Money just for you"); police misconduct ("Police be trippin' now"); gun culture ("Guns in my area … / I got the strap (ayy, ayy) / I gotta carry 'em"); materialism ("I'm so fitted … I'm on Gucci"); race and familial truth-telling ("Grandma told me / Get your money, Black man …"); and drugs ("Contraband, contraband, contraband … I got the plug in Oaxaca"). The works share no protectable expression and are not substantially similar.

### III.   The Contributory and Vicarious Infringement Claims Are Not Plausible

Because no plausible direct copyright infringement claim exists, Plaintiff's claims for contributory and vicarious infringement cannot survive a motion to dismiss. *Alexander v. Murdoch*, No. 10 Civ. 5613(PAC)(JCF), 2011 WL 2802899, at *17 (S.D.N.Y. May 27, 2011). Additionally, the allegations for those claims are conclusory and thus fail to state plausible claims. *Compare* ECF No. 1, ¶¶ 86-87 *with Hartmann v. Amazon.com, Inc.*, 20 Civ. 4928 (PAE), 2021 WL 3683510, at *9 (S.D.N.Y. Aug. 19, 2021) (dismissing conclusory vicarious liability claims).

### IV.   RCA and WMG Are Improper Parties

Plaintiff has improperly sued RCA, a business unit of Defendant Sony Music Entertainment ("SME"). RCA lacks a separate corporate existence and thus cannot be sued. Because claims against RCA are claims against SME, RCA is an improper party and should be dismissed. *See Currin v. Williams*, Case. No. 3:07-CV-1069(RNC), 2009 WL 10676977 (D. Conn. May 12, 2009) (sustaining dismissal of "RCA Records Label" because it is a business unit, not a separate corporate entity, finding "claims … against RCA are in fact claims against Sony BMG").

Plaintiff also improperly sued WMG, the indirect corporate parent of Defendants Atlantic Recording Corporation and Warner-Tamerlane Publishing Corp. WMG has no interest in the Challenged Composition. Also, the allegations against WMG are conclusory, mandating its dismissal. ECF No. 1, ¶ 27 (alleging WMG "has assisted in and/or directly facilitated" various acts and "caused copies" to be exploited). *Cohen v. Hertz Corp.*, No. 13 Civ. 1205(LTS)(AJP), 2013 WL 9450421, at *5 n.7 (S.D.N.Y. Nov. 26, 2013) (dismissing corporate parents which were not alleged to be "responsible for the wrongdoings that [plaintiff] suffered"); *see also Hartmann*, 2021 WL 3683510, at *9.

Imran H. Ansari, Esq.
December 22, 2021
Page 4

Very truly yours,

*/s/ Jonathan D. Davis*

Jonathan D. Davis

JDD:hs

cc:  The Honorable Victor Marrero (Via Fax)
     Paul Maslo, Esq. (Via Email/PDF)
     Alex Spiro, Esq. (Via Email/PDF)
     Donald S. Zakarin, Esq. (Via Email/PDF)
     Ilene S. Farkas, Esq. (Via Email/PDF)



PRYOR CASHMAN LLP

New York | Los Angeles | Miami

7 Times Square, New York, NY 10036-6569  Tel: 212-421-4100  Fax: 212-326-0806          www.pryorcashman.com

**Ilene S. Farkas**
Partner

Direct Tel: 212-326-0188
Direct Fax: 212-798-6382
IFarkas@PRYORCASHMAN.com

December 22, 2021

**VIA E-MAIL**

Imran H. Ansari, Esq.
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, New York 10036

Re:   **Nwosuocha v. Glover, et al. (Civ. Action No. 21-cv-04047)**

Dear Mr. Ansari:

We represent Songs of Universal, Inc. in the above-referenced action.

We write to you on behalf of our client and pursuant to Paragraph II.B. of the Individual Practices of The Honorable U.S. District Judge Victor Marrero.  We have reviewed the letter of Jonathan Davis of today's date on behalf of the remaining defendants, and our client hereby incorporates by reference and joins in the reasons stated therein that "would warrant dismissal and that, if properly rectified, could avoid the filing of the motion." This letter is in lieu of a response to the Complaint at this time pursuant to the Judge's Rules.

Sincerely,

Ilene S. Farkas

cc:   The Honorable Victor Marrero *(via fax 212-805-6382)*
Paul Maslo, Esq. *(via email)*
Alex Spiro, Esq. *(via email)*
Donald S. Zakarin, Esq. *(via email)*
Jonathan D. Davis, Esq. *(via email)*

6088077

**quinn emanuel** trial lawyers | new york

711 Louisiana St., Suite 500, Houston, TX 77002 . Tel (713) 221-7000 . Fax (713) 221-7100

WRITER'S DIRECT DIAL NO.
**(214) 447-0066**

WRITER'S EMAIL ADDRESS
**paulmaslo@quinnemanuel.com**

December 22, 2021

**VIA EMAIL AND FEDEX**
Imran H. Ansari
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue, 6th Floor
New York, NY 10036

Re:     *Nwosuocha v. Glover, et al.*, No. 21-cv-04047-VM

Dear Mr. Ansari:

        We represent Roc Nation Publishing LLC ("Roc Nation"). Pursuant to Section II(B) of the
Individual Practices of United States District Judge Victor Marrero, we write to "set[] forth the
. . . pleading deficiencies in the complaint and other reasons or controlling authorities that
defendant contends would warrant dismissal[.]" Specifically, Roc Nation adopts and incorporates
by reference the arguments made in the December 22, 2021 pre-motion letter of Jonathan D. Davis,
submitted on behalf of other Defendants.

Sincerely,

*/s/ Paul B. Maslo*

Paul B. Maslo


cc:     The Honorable Victor Marrero (via fax)
        Counsel for all parties (via email)

**quinn emanuel urquhart & sullivan, llp**
AUSTIN | BOSTON | BRUSSELS | CHICAGO | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MUNICH |
NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY |
STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

LAW OFFICES OF

*Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
HON. JOHN LEVENTHAL (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
DIANA FABI SAMSON
ANDREA M. ARRIGO
MICHAEL DIBENEDETTO
TAYLOR FRIEDMAN

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL. (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

January 12, 2022

*VIA EMAIL*
Jonathan D. Davis, Esq.
Jonathan D. Davis, P.C.
10 Rockefeller Plaza, Suite 1015
New York, New York 10020

      **Re:**    *Nwosuocha v. Glover II et al.*, No. 1:21-cv-04047-VM

Dear Mr. Davis:

      I write on behalf of my client in response to your December 22, 2021, pre-motion letter served in lieu of a filed response to the Complaint pursuant to paragraph II.B of Judge Marrero's Individual Rules ("Pre-Motion Letter"), which was joined by all Defendants to this action.

      The Pre-Motion letter asserts the following as "fatal deficiencies" in the Complaint: (1) a lack of standing to sue for copyright infringement of the musical composition "Made in America" ("Plaintiff's Composition"); (2) failure to plead access or "substantial similarity" between the works at issue; and (3) improperly including RCA Records ("RCA") and Warner Music Group Corp. ("WMG") as defendants. For the reasons that follow, Plaintiff disagrees with your characterization of these as deficiencies in the Complaint, much less "fatal" deficiencies that "would warrant dismissal."

**I.**    **Plaintiff Has Standing to Sue for Copyright Infringement**

      The Pre-Motion Letter's first erroneously alleged "fatal deficiency" in the Complaint is the Plaintiff's purported lack of standing to sue for copyright infringement. The flawed premise of this point is that Plaintiff's copyright registration does not cover Plaintiff's Composition due to the registration's designation as pertaining to a "sound recording" that is "unpublished." Defendants' reasoning appears to neglect that the U.S. Copyright Office allows compositional registrations to subsume into "sound recording" registrations, and that the mere act of uploading a song to SoundCloud or YouTube prior to registration does not fall within the U.S. Copyright Office's definition of "publication" for the purposes of registration.

      The U.S. Copyright Office permits unpublished sound recordings *and* their underlying compositions to be registered simultaneously under the "Sound Recording" designation, pursuant to Copyright Office Circular 56A. Per official Copyright Office guidance, one can accomplish such simultaneous registration where: (a) the claimant is the author of both the sound recording and the work embodied in the recording, or the owner of the copyright in both; (b) the claimant

checks "Sound Recording" under the "Author Created" section of the registration, or uses the Form SR (as in "Sound Recording") if submitting a paper application; and (c) the claimant submits a phonorecord containing both the sound recording and the musical composition embodied in that recording. *See* Copyright Office Circular 56A. Plaintiff's registration satisfied all three of these criteria, and thus represents a correctly submitted simultaneous registration of both the sound recordings in the collection and their respective underlying musical compositions, including Plaintiff's Composition.

Furthermore, Plaintiff's Composition was not "published" for the purposes of copyright registration by sheer virtue of having been uploaded to SoundCloud and YouTube prior to registration. Copyright Office Circular 66 instructs that streaming is a performance that, in and of itself, does not constitute publication "because, as a practical matter, the end user does not retain a copy of the work when the performance ends." *See* Copyright Office Circular 66. Defendants fail to raise a "fatal deficiency" in this regard by citing authority standing precisely for the proposition that digital publication of a work requires offering end users a retainable copy of the work. *See Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002) (holding webpage's source code published where, "by merely accessing a webpage, an Internet user acquires the ability to make a copy of that webpage . . . that is, in fact, indistinguishable in every part from the original."); *Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355 (holding a song published where creator admitted uploading the song to an internet magazine and making it available for download).

## II.   Plaintiff Has Alleged Access and Actionable Copying

The Pre-Motion Letter erroneously alleges that Plaintiff has failed to plead the element of access as a matter of law. The premise of the Pre-Motion Letter's mistaken point in this regard is that the Complaint's assertion of widespread public access to Plaintiff's Composition on major streaming platforms is insufficient to make out access. However, this argument neglects that the Second Circuit permits a showing of striking similarity as a substitute for proof of access. *See Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 56 (2d Cir. 2003)("We have held that where the works in question are 'so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access.'")(quoting *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir.1995)).

Plaintiff has plead the striking similarity between the subject songs with requisite specificity, offering a musicological scientific analysis of such similarity by Dr. Brent Swanson of the University of Miami. On the basis of scientifically recognized methods of musicological analysis including, but not limited to, spectral analysis of both songs, Dr. Swanson concludes that the songs are similar to an extent unlikely to be coincidence. *See* Swanson Report (ECF No. 1-4) at 10-17. Plaintiff asserts that these objectively measurable similarities are readily presentable to and audible by lay persons. Defendants do not, as a matter of law, defeat Plaintiff's well-plead, specific allegations of scientifically-corroborated striking similarities between the songs simply by making conclusory allegations that "any lay listeners will *observe*" to the contrary.

- 2 -

### III.    WMG Is a Proper Party

Defendants concede in the Pre-Motion Letter that Defendant WMG is the corporate parent of Defendants Atlantic Recording Corporation and Warner-Tamerlane Publishing Corp., but allege that WMG nonetheless has no interest in the Challenged Composition. Defendants further allege that Plaintiff's pleading as against WMG is conclusory, and do so by selectively citing only the extent of Plaintiff's Complaint alleging that WMG "has assisted in and/or directly facilitated" the infringement. In this regard, Defendants omit the extent of the Complaint alleging that WMG is vicariously liable because, as the parent corporation to entities directly responsible for distributing the infringing Challenged Composition, "Defendant WMG has derived substantial revenues and/or profits from the exploitation of the Infringing Work" and "had the right and ability to control other infringers." ECF. No. 1 ¶ 27, 87. This Circuit has long recognized that vicarious copyright infringement liability may be premised on a party's status as a beneficiary of an infringing act and its ability to control an infringer, and Plaintiff has accordingly sufficiently plead WMG's vicarious liability on the basis of its ability to control its infringing subsidiaries and the benefits it has derived from the Challenged Composition. *See Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)("When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright [] is being impaired—the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation.")(internal citations omitted).

Furthermore, RCA is the record label entity to which Defendant Glover is signed and through which the Challenged Composition was produced, distributed, marketed, and promoted, amongst other things. Despite Defendants assertions concerning the nature of RCA's corporate existence, RCA has interposed answers on its own behalf alongside Sony Music Entertainment ("SME") in copyright infringement suits naming both entities as defendants and postdating RCA's reported merger with SME, including in *Yours, Mine and Ours Music v. Sony Music Entertainment, et al*., No. 2:16-cv-08056 (C.D. Cal. 2016). As such, Defendant RCA is a properly named party at this stage of the action in addition to Defendant WMG.

Very Truly Yours,

**AIDALA, BERTUNA & KAMINS, P.C.**

By:     /s/ Imran H. Ansari
        Imran H. Ansari, Esq.
        546 Fifth Avenue, 6th Floor
        New York, NY 10036
        T: (212) 486-0011
        F: (212) 750-8297
        iansari@aidalalaw.com

cc:     The Honorable Victor Marrero (Fax)
        Paul Maslo, Esq. (Email)
        Alex Spiro, Esq. (Email)
        Donald S. Zakarin, Esq. (Email)
        Ilene S. Farkas, Esq. (Email)

## JONATHAN D. DAVIS, P.C.

ATTORNEYS AT LAW

10 ROCKEFELLER PLAZA
SUITE 1015
NEW YORK, NEW YORK 10020

TEL: (212) 687-5464
FAX: (212) 697-2521
WWW.JDDAVISPC.COM

January 18, 2022

**VIA FIRST-CLASS MAIL/EMAIL/PDF**

Imran H. Ansari, Esq.
Aidala, Bertuna & Kamins, P.C.
546 Fifth Avenue
New York, New York 10036

Re: <u>Nwosuocha v. Glover, et al. (Civ. Action No. 21-cv-04047)</u>

Dear Mr. Ansari:

We write on behalf of all Defendants in response to your January 12, 2022 letter and in furtherance of the procedures described in Paragraph II.B. of Judge Marrero's Individual Practices. For the reasons set out below, and in our prior letter, we urge your client to reconsider pursuing his baseless copyright infringement claims, as continuing to pursue them will likely subject him to the payment of Defendants' reasonable attorney's fees and costs under 17 U.S.C. § 505.

Addressing your client's technical standing problem, your response to Plaintiff's lack of standing, including your argument that his registration for a collection of purportedly unpublished sound recordings also covers his purported copyright in the composition at issue misunderstands copyright registration requirements. While Form SR may be used to register copyright claims in both a sound recording and an underlying musical work, obtaining coverage for both works requires a description of the "Nature of Authorship" that *explicitly* covers each separate work.

Indeed, Form SR explains in its "LINE-BY-LINE INSTRUCTIONS" the descriptions needed to encompass both works in a sound recording registration:

> **Nature of Authorship**: Sound recording authorship is the performance, sound production, or both, that is fixed in the recording deposited for registration. Describe this authorship in space 2 as "sound recording." *If the claim also covers the underlying work(s), include the appropriate authorship terms for each author, for example, "words," "music," "arrangement of music," or "text."*

Form SR (rev. 05/2019) (the current version) (emphasis added); *see also* Form SR (rev.12/2016) (same); and Form SR (rev. 05/2012) (same). Copies are attached. U.S. Copyright Circular 56A also makes this point clear by using a chart and showing that if the application seeks to register the musical composition *and* the sound recording, then the description of what the author created *must*

Imran H. Ansari, Esq.
January 18, 2022
Page 2

*reflect both works.* U.S. COPYRIGHT OFFICE, CIRCULAR NO. 56A. *Copyright Registration of Musical Compositions and Sound Recordings* (2021), *available at* https://www.copyright.gov/circs/circ56a.pdf, at 2. In addition, Circular 56A explains that "[c]opyright in a sound recording is not the same as, or a substitute for, copyright in the underlying musical composition" and that "[t]o register a single claim in both works, [an applicant must] give information about the author(s) of both the musical composition and the sound recording." *Id.* at 1.

Because Plaintiff's Certificate of Registration limits his authorship to "sound recording" without the additional description needed to claim a copyright in the musical composition, such as "words," "music," or "words and music", the registration, at most, can only protect the sound recording for "Made in America." To pursue an infringement claim concerning a "composition," the registration must reflect, in accordance with the above requirements, that it specifically covers the composition. Here, the registration is silent regarding that particular work.

But the sound recording for "Made in America" is not at issue in this case because your client has not alleged – and cannot allege – a sampling claim. The claim here is not that the sound recording of Plaintiff's work was duplicated by the sound recording of "This is America." There is no dispute that it is not. What purportedly is at issue is Plaintiff's composition – a work that is not currently protected by a copyright registration. You may be under the misimpression that one can register a copyright in a musical composition by submitting a sound recording to the Copyright Office as the deposit copy for a sound recording application. But that is incorrect and it does not satisfy the requirements of the Copyright Office.

Because there is no copyright claim regarding your client's "sound recording," the issue of whether the "Made in America" sound recording has been published is immaterial to your client's purported infringement claims. Nevertheless, and purely to address here a non-relevant issue of copyright law, we disagree with your contention that a work is only published if a copy can be retained by the user. The Copyright Act's definition of publication is not circumscribed in the manner you contend in your letter. *See* 17 U.S.C. § 101 (stating publication includes "offering to distribute … phonorecords to a group of persons for purposes of further distribution,  public performance, or public display").

The example you cite from Circular 66, titled "Copyright Registration of Websites and Website Content," addresses a work "made available only by streaming" and provides that streaming "in and of itself" does not constitute publication. U.S. COPYRIGHT OFFICE, CIRCULAR NO. 66. *Copyright Registration of Website and Website Content* (2021), *available at* https://www.copyright.gov/circs/circ66.pdf, at 5. But the Complaint alleges more than just streaming "in and of itself." It alleges that phonorecords were offered to multiple on-line services for public display/performance, which acts "constitute[] publication." 17 U.S.C. § 101; *see also*

Imran H. Ansari, Esq.
January 18, 2022
Page 3

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices §1906.1 (3d ed. 2021) (explaining publication occurs when, for example, a movie is offered to groups of theaters or TV networks for exhibition or broadcasting, *or phonorecords are offered to radio stations for purpose of broadcasting songs and sound recordings embodied therein*). In any event, when Plaintiff uploaded his recording of "Made in America" to SoundCloud, the service permitted users to copy and download songs for use offline. *See Introducing SoundCloud Go,* SoundCloud, https://blog.soundcloud.com/2016/03/29/introducing-soundcloud-go/ (last visited Jan. 18, 2022) (introducing SoundCloud Go on March 29, 2016, a service that provides users the ability to "**listen offline** … without a cell signal or internet connection" so that "[w]hether you're down in the subway, 30-thousand feet overhead or completely off the grid, with SoundCloud Go, **you'll have access to all your favorites offline**") (emphasis in original). So even if publication under the Copyright Act requires a user's ability to copy and retain a recording – *which it does not* – any such requirement has been satisfied here.

Turning to the substance of your infringement claim, your response to Plaintiff's failure to allege access misses the point. Plaintiff cannot simply rely on his allegations that the works at issue are "strikingly similar," when any lay listener could readily determine they are neither "strikingly similar" nor "substantially similar." Perhaps you believe that offering a conclusory assertion of striking similarity will enable Plaintiff to avoid a dismissal at the outset of a case. That is a mistaken view. Plaintiff has made no showing that the works at issue share any actionable similarity – let alone a striking similarity – and the copyright law does not forgive establishing "access" merely by alleging striking similarity. There still must be a reasonable basis for access and, as a matter of law, there is none here. In any event, any characterization of the works by counsel, or a purported expert, cannot change what is observable by a lay person who listens to the works. The works control the analysis, not a description by Plaintiff, his counsel, or anyone else. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (stating "[i]n copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings").

Your response to our argument for dismissal of WMG is unavailing. WMG is the indirect corporate parent of Defendants Atlantic Recording Corporation and Warner-Tamerlane Publishing Corp. WMG has no ownership in the challenged composition. Moreover, Plaintiff's allegations against WMG are conclusory and do not support any copyright infringement claim against an indirect parent company.

Finally, we do not understand your refusal to drop RCA from the case. RCA is not an entity, but an unincorporated business unit owned directly by SME, *i.e.*, there are no intervening layers of ownership between RCA and SME. In the case identified in your letter, *Yours, Mine and Ours Music v. Sony Music Entertainment*, 16-cv-08056-RSWL-SK (C.D. Cal. filed Oct. 28, 2016),

Imran H. Ansari, Esq.
January 18, 2022
Page 4

RCA Records was incorrectly sued as "RCA Records, Inc." The lawsuit was voluntarily dismissed. So, the mere filing of that Answer is not indicative of whether RCA is a proper party here, which it is not.

      Because your client has no standing or meritorious claims against Defendants, we urge Plaintiff to promptly withdraw this lawsuit before Defendants incur additional attorney's fees and costs that will be pursued against him.

                              Very truly yours,

                              */s/ Jonathan D. Davis*

                              Jonathan D. Davis

JDD:hs

cc:  Paul Maslo, Esq.
     Alex Spiro, Esq.
     Donald S. Zakarin, Esq.
     Ilene S. Farkas, Esq.
     (All Via Email/PDF)

# DA-156

# Form SR

*Detach and read these instructions before completing this form.*
*Make sure all applicable spaces have been filled in before you return this form.*

═══════════════════════ BASIC INFORMATION ═══════════════════════

**When to Use This Form:** Use Form SR for registration of published or unpublished sound recordings. Form SR should be used when the copyright claim is limited to the sound recording itself, and it may also be used where the same copyright claimant is seeking simultaneous registration of the underlying musical, dramatic, or literary work embodied in the phonorecord.

With one exception, "sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds. The exception is for the audio portions of audiovisual works, such as a motion picture soundtrack or an audio cassette accompanying a filmstrip. These are considered a part of the audiovisual work as a whole.

**Unpublished works:** This form may be used to register one unpublished work. This form cannot be used to register a "collection" of two or more unpublished works. Any paper application submitted with more than one unpublished work may be refused. To register multiple unpublished works, you must use the online application for "A Group of Unpublished Works." For information about the online application, see *Multiple Works* (Circular 34).

**Deposit to Accompany Application:** An application for copyright registration must be accompanied by a deposit consisting of phonorecords representing the entire work for which registration is to be made.

**Unpublished Work:** Deposit one complete phonorecord.

**Published Work:** Deposit two complete phonorecords of the best edition, together with "any printed or other visually perceptible material" published with the phonorecords.

**Work First Published Outside the United States:** Deposit one complete phonorecord of the first foreign edition.

**Contribution to a Collective Work:** Deposit one complete phonorecord of the best edition of the collective work.

**The Copyright Notice:** Before March 1, 1989, the use of copyright notice was mandatory on all published works, and any work first published before that date should have carried a notice. For works first published on and after March 1, 1989, use of the copyright notice is optional. For more information about copyright notice, see *Copyright Notice* (Circular 3).

**For Further Information:** To speak to a Copyright Office staff member, call (202) 707-3000 or 1-877-476-0778. Recorded information is available 24 hours a day. Order forms and other publications from Library of Congress, Copyright Office-COPUBS, 101 Independence Avenue SE, Washington, DC 20559 or call (202) 707-9100 or 1-877-476-0778 (toll free). Access and download circulars and other information from the Copyright Office website at *www.copyright.gov*.

**PRIVACY ACT ADVISORY STATEMENT Required by the Privacy Act o  1974 (P.L. 93-579)**

the  authority  or requesting this in ormation is  title 17 U S C  §409 and §410   urnishing the requested in ormation is voluntary But i  the in ormation is not  urnished, it may be necessary to delay or re use registration and you may not be entitled to certain relie , remedies, and benefits provided in chapters 4 and 5 o  title 17 U S C

the principal uses o  the requested in ormation are the establishment and maintenance o  a public record and the examination o  the application  or compliance with the registration requirements o  the copyright code

Other routine uses include public inspection and copying, preparation o  public indexes, preparation o  public catalogs o  copyright registrations, and preparation o  search reports upon request
NO  E  No other advisory statement will be given in connection with this application  Please keep this statement and re er to it i  we communicate with you regarding this application

═══════════════════════ LINE-BY-LINE INSTRUCTIONS ═══════════════════════

*Please type or print using black ink. The form is used to produce the certificate.*

## 1 SPACE 1: Title

**Title of This Work:** Every work submitted for copyright registration must be given a title to identify that particular work. If the phonorecords or any accompanying printed material bears a title (or an identifying phrase that could serve as a title), transcribe that wording completely and exactly on the application. Indexing of the registration and future identification of the work may depend on the information you give here.

**Previous, Alternative, or Contents Titles:** Complete this space if there are any previous or alternative titles for the work under which someone searching for the registration might be likely to look, or under which a document pertaining to the work might be recorded. You may also give the individual contents titles, if any, in this space or you may use a Continuation Sheet (Form CON). Circle the term that describes the titles given.

## 2 SPACE 2: Author(s)

**General Instructions:** After reading these instructions, decide who are the "authors" of this work for copyright purposes. Then, unless the work is a "collective work," give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to this version of the work. If you need further space, use additional Continuation Sheets. In the case of a collective work such as a collection of previously published or registered sound recordings, give information about the author of the collective work as a whole. If you are submitting this Form SR to cover the recorded musical, dramatic, or literary work as well as the sound recording itself, it is important for space 2 to include full information about the various authors of all of the material covered by the copyright claim, making clear the nature of each author's contribution.

**Name of Author:** The fullest form of the author's name should be given. Unless the work was "made for hire," the individual who actually created the work is its "author." In the case of a work made for hire, the statute provides that "the employer or other person for whom the work was prepared is considered the author."

**What Is a "Work Made for Hire"?** A "work made for hire" is defined as: (1) "a work prepared by an employee within the scope of his or her employment"; or (2) "a work

specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." If you have checked "Yes" to indicate that the work was "made for hire," you must give the full legal name of the employer (or other person for whom the work was prepared). You may also include the name of the employee along with the name of the employer (for example: "Elster Record Co., employer for hire of John Ferguson").

**"Anonymous" or "Pseudonymous" Work:** An author's contribution to a work is "anonymous" if that author is not identified on the copies or phonorecords of the work. An author's contribution to a work is "pseudonymous" if that author is identified on the copies or phonorecords under a fictitious name. If the work is "anonymous" you may: (1) leave the line blank; or (2) state "anonymous" on the line; or (3) reveal the author's identity. If the work is "pseudonymous" you may: (1) leave the line blank; or (2) give the pseudonym and identify it as such (for example: "Huntley Haverstock, pseudonym"); or (3) reveal the author's name, making clear which is the real name and which is the pseudonym (for example: "Judith Barton, whose real name is Madeline Elster"). However, the citizenship or domicile of the author *must* be given in all cases.

**Dates of Birth and Death:** If the author is dead, the statute requires that the year of death be included in the application unless the work is anonymous or pseudonymous. The author's birth date is optional, but is useful as a form of identification. Leave this space blank if the author's contribution was a "work made for hire."

**Author's Nationality or Domicile:** Give the country in which the author is a citizen, or the country in which the author is domiciled. Nationality or domicile *must* be given in all cases.

**Nature of Authorship:** Sound recording authorship is the performance, sound production, or both, that is fixed in the recording deposited for registration. Describe this authorship in space 2 as "sound recording." If the claim also covers the underlying work(s), include the appropriate authorship terms for each author, for example, "words," "music," "arrangement of music," or "text."

Generally, for the claim to cover both the sound recording and the underlying work(s), every author should have contributed to both the sound recording *and* the underlying work(s). If the claim includes artwork or photographs, include the appropriate term in the statement of authorship.

# DA-157

## 3 SPACE 3: Creation and Publication

**General Instructions:** Do not confuse "creation" with "publication." Every application for copyright registration must state "the year in which creation of the work was completed." Give the date and nation of first publication only if the work has been published.

**Creation:** Under the statute, a work is "created" when it is fixed in a copy or phonorecord for the first time. If a work has been prepared over a period of time, the part of the work existing in fixed form on a particular date constitutes the created work on that date. The date you give here should be the year in which the author completed the particular version for which registration is now being sought, even if other versions exist or if further changes or additions are planned.

**Publication:** The statute defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; a work is also "published" if there has been an "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display. Give the full date (month, date, year) when, and the country where, publication first occurred. If first publication took place simultaneously in the United States and other countries, it is sufficient to state "U.S.A."

## 4 SPACE 4: Claimant(s)

**Name(s) and Address(es) of Copyright Claimant(s):** Give the name(s) and address(es) of the copyright claimant(s) in the work even if the claimant is the same as the author. Copyright in a work belongs initially to the author of the work (including, in the case of a work made for hire, the employer or other person for whom the work was prepared). The copyright claimant is either the author of the work or a person or organization to whom the copyright initially belonging to the author has been transferred.

**Transfer:** The statute provides that, if the copyright claimant is not the author, the application for registration must contain "a brief statement of how the claimant obtained ownership of the copyright." If any copyright claimant named in space 4a is not an author named in space 2, give a brief statement explaining how the claimant(s) obtained ownership of the copyright. Examples: "By written contract"; "Transfer of all rights by author"; "Assignment"; "By will." Do not attach transfer documents or other attachments or riders.

## 5 SPACE 5: Previous Registration

**General Instructions:** The questions in space 5 are intended to show whether an earlier registration has been made for this work and, if so, whether there is any basis for a new registration. As a rule, only one basic copyright registration can be made for the same version of a particular work.

**Same Version:** If this version is substantially the same as the work covered by a previous registration, a second registration is not generally possible unless: (1) the work has been registered in unpublished form and a second registration is now being sought to cover this first published edition; or (2) someone other than the author is identified as copyright claimant in the earlier registration and the author is now seeking registration in his or her own name. If either of these two exceptions applies, check the appropriate box and give the earlier registration number and date. Otherwise, do not submit Form SR. Instead, write the Copyright Office for information about supplementary registration or recordation of transfers of copyright ownership.

**Changed Version:** If the work has been changed and you are now seeking registration to cover the additions or revisions, check the last box in space 5, give the earlier registration number and date, and complete both parts of space 6 in accordance with the instructions below.

**Previous Registration Number and Date:** If more than one previous registration has been made for the work, give the number and date of the latest registration.

## 6 SPACE 6: Derivative Work or Compilation

**General Instructions:** Complete space 6 if this work is a "changed version," "compilation," or "derivative work," and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain, or sound recordings that were fixed before February 15, 1972. A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." A "derivative work" is "a work based on one or more preexisting works." Examples of derivative works include recordings reissued with substantial editorial revisions or abridgments of the recorded sounds, and recordings republished with new recorded material, or "any other form in which a work may be recast, transformed, or adapted." Derivative works also include works "consisting of editorial revisions, annotations, or other modifications" if these changes, as a whole, represent an original work of authorship.

**Preexisting Material (space 6a):** Complete this space *and* space 6b for derivative works. In this space identify the preexisting work that has been recast, transformed, or adapted. The preexisting work may be material that has been previously published, previously registered, or that is in the public domain. For example, the preexisting material might be: "1970 recording by Sperryville Symphony of Bach Double Concerto."

**Material Added to This Work (space 6b):** Give a brief, general statement of the *additional* new material covered by the copyright claim for which registration is sought. In the case of a derivative work, identify this new material. Examples: "Recorded performances on bands 1 and 3"; "Remixed sounds from original multitrack sound sources"; "New words, arrangement, and additional sounds." If the work is a compilation, give a brief, general statement describing both the material that has been compiled *and* the compilation itself. Example: "Compilation of 1938 recordings by various swing bands."

## 7,8,9 SPACE 7, 8, 9: Fee, Correspondence, Certification, Return Address

**Deposit Account:** If you maintain a deposit account in the Copyright Office, identify it in space 7a. Otherwise, leave the space blank and send the filing fee with your application and deposit. (See space 8 on form.) **Note:** Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

**Correspondence (space 7b):** Give the name, address, area code, telephone number, fax number, and email address (if available) of the person to be consulted if correspondence about this application becomes necessary.

**Certification (space 8):** This application cannot be accepted unless it bears the date and the *signature* of the author or other copyright claimant, or the owner of exclusive right(s), or the duly authorized agent of the author, claimant, or owner of exclusive right(s).

**Address for Return of Certificate (space 9):** The address box must be completed legibly since the certificate will be returned in a window envelope.

---

### MORE INFORMATION

**"Works":** "Works" are the basic subject matter of copyright; they are what authors create and copyright protects. The statute draws a sharp distinction between the "work" and "any material object in which the work is embodied."

**"Copies" and "Phonorecords":** These are the two types of material objects in which "works" are embodied. In general, "copies" are objects from which a work can be read or visually perceived, directly or with the aid of a machine or device, such as manuscripts, books, sheet music, film, and videotape. "Phonorecords" are objects embodying fixations of sounds, such as audio tapes and phonograph disks. For example, a song (the "work") can be reproduced in sheet music ("copies") or phonograph disks ("phonorecords"), or both.

**"Sound Recordings":** These are "works," not "copies" or "phonorecords." "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work." Example: When a record company issues a new release, the release will typically involve two distinct "works": the "musical work" that has been recorded, and the "sound recording" as a separate work in itself. The material objects that the record company sends out are "phonorecords": physical reproductions of both the "musical work" and the "sound recording."

### Should You File More Than One Application?

If your work consists of a recorded musical, dramatic, or literary work and if both that "work" and the sound recording as a separate "work" are eligible for registration, the application form you should file depends on the following:

**File Only Form SR if:** The copyright claimant is the same for both the musical, dramatic, or literary work and for the sound recording, and you are seeking a single registration to cover both of these "works."

**File Only Form PA (or Form TX) if:** You are seeking to register only the musical, dramatic, or literary work, not the sound recording. Form PA is appropriate for works of the performing arts; Form TX is for nondramatic literary works.

**Separate Applications Should Be Filed on Form PA (or Form TX) and on Form SR if:** (1) The copyright claimant for the musical, dramatic, or literary work is different from the copyright claimant for the sound recording; or (2) you prefer to have separate registrations for the musical, dramatic, or literary work and for the sound recording.

# DA-158

Clear Form

**Form SR**
For a Sound Recording
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

SR          SRU

EFFECT VE DATE OF REG STRAT ON

_____ _____ _____
Month          Day          Year

**Privacy Act Notice:** Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

**PREVIOUS, ALTERNATIVE, OR CONTENTS TITLES (CIRCLE ONE) ▼**

## 2

**a**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❑ Yes
❑ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name o  Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ❑ Yes  ❑ No
Pseudonymous?  ❑ Yes  ❑ No

the answer to either o these questions is "Yes, see detailed instructions

**NATURE OF AUTHORSHIP**  Briefly describe nature of material created by this author in which copyright is claimed.

**NOTE**
Under the law, the "author o a "work made o hire is generally the employer, not the employee (see instructions)  or any part o  this work that was "made  or hire, check "Yes in the space provided, give the employer (or other person  or whom the work was prepared) as "Author o  that part, and leave the space  or dates o  birth and death blank

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❑ Yes
❑ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name o  Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ❑ Yes  ❑ No
Pseudonymous?  ❑ Yes  ❑ No

the answer to either o these questions is "Yes, see detailed instructions

**NATURE OF AUTHORSHIP**  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❑ Yes
❑ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name o  Country
OR { Citizen of ▶ _____
Domiciled in ▶ _____

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?    ❑ Yes  ❑ No
Pseudonymous?  ❑ Yes  ❑ No

the answer to either o these questions is "Yes, see detailed instructions

**NATURE OF AUTHORSHIP**  Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a**  **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
Year ▶                 This in ormation must be given in all cases.

**b**  **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this in ormation ONLY i  this work has been published.
Month ▶ _____ Day ▶ _____ Year ▶ _____
Nation ▶ _____

## 4

**a**  **COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

See instructions be ore completing this space

**b**  **TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPL CAT ON RECE VED

ONE DEPOS T RECE VED

TWO DEPOS TS RECE VED

FUNDS RECE VED

DO NOT WRITE HERE OFFICE USE ONLY

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side o  this page
• See detailed instructions   • Sign the  orm at line 8

DO NOT WRITE HERE
Page 1 o _____ pages

# DA-159

|  | |
|---|---|
| EXAMINED BY | FORM SR |
| CHECKED BY | |
| CORRESPONDENCE<br>❏ Yes | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

❏ **Yes** ❏ **No** If your answer is "Yes," why is another registration being sought? (Check appropriate box)▼

**a.** ❏ This work was previously registered in unpublished form and now has been published for the first time.

**b.** ❏ This is the first application submitted by this author as copyright claimant.

**c.** ❏ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼        **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**6**

See instructions be ore completing this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.

**Name** ▼        **Account Number** ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

**b**

Area code and daytime telephone number        (        )        Fax number        (        )

Email

**7**

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▼

❏ author

❏ owner of exclusive right(s)

❏ other copyright claimant

❏ authorized agent of

Name o  author or other copyright claimant, or owner o  exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Date

Signature ▼

**8**

| | |
|---|---|
| **Certificate will be mailed in window envelope to this address:** | Name ▼ |
| | Number/Street/Apt ▼ |
| | City/State/Zip ▼ |

**YOU MUST:**
· Complete all necessary spaces
· Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
**1.** Application  orm
**2.** Nonrefundable filing fee in check or mon-ey order payable to *U S  Copyright Office*
**3.** Deposit material

**MAIL TO:**
Library o  Congress
U S  Copyright O fice-SR
101  ndependence Avenue SE
Washington, DC 20559-6000

**9**

*\*17 U S C  §506(e)  Any person who knowingly makes a  alse representation o  a material  act in the application  or copyright registration provided  or by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500*

orm SR- ull  Rev  05/2019  Printed on recycled paper

**DA-160**

# Form SR

*Detach and read these instructions before completing this form.*
*Make sure all applicable spaces have been filled in before you return this form.*

## BASIC INFORMATION

**When to Use This Form:** Use Form SR for registration of published or unpublished sound recordings. Form SR should be used when the copyright claim is limited to the sound recording itself, and it may also be used where the same copyright claimant is seeking simultaneous registration of the underlying musical, dramatic, or literary work embodied in the phonorecord.

With one exception, "sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds. The exception is for the audio portions of audiovisual works, such as a motion picture soundtrack or an audio cassette accompanying a filmstrip. These are considered a part of the audiovisual work as a whole.

**Deposit to Accompany Application:** An application for copyright registration must be accompanied by a deposit consisting of phonorecords representing the entire work for which registration is to be made.

**Unpublished Work:** Deposit one complete phonorecord.

**Published Work:** Deposit two complete phonorecords of the best edition, together with "any printed or other visually perceptible material" published with the phonorecords.

**Work First Published Outside the United States:** Deposit one complete phonorecord of the first foreign edition.

**Contribution to a Collective Work:** Deposit one complete phonorecord of the best edition of the collective work.

**The Copyright Notice:** Before March 1, 1989, the use of copyright notice was mandatory on all published works, and any work first published before that date should have carried a notice. For works first published on and after March 1, 1989, use of the copyright notice is optional. For more information about copyright notice, see Circular 3, *Copyright Notices.*

**For Further Information:** To speak to a Copyright Office staff member, call (202) 707-3000 or 1-877-476-0778. Recorded information is available 24 hours a day. Order forms and other publications from Library of Congress, Copyright Office-COPUBS, 101 Independence Avenue SE, Washington, DC 20559 or call (202) 707-9100 or 1-877-476-0778 (toll free). Access and download circulars and other information from the Copyright Office website at *www.copyright.gov.*

PRIVACY ACT ADVISORY STATEMENT Required by the Privacy Act o 1974 (P.L. 93-579)
he authority or requesting this in ormation is title 17 U S C §409 and §410 urnishing the requested in ormation is voluntary But i the in ormation is not urnished, it may be necessary to delay or re use registration and you may not be entitled to certain relie , remedies, and benefits provided in chapters 4 and 5 o title 17 U S C
he principal uses o the requested in ormation are the establishment and maintenance o a public record and the examination o the application or compliance with the registration requirements o the copyright code
Other routine uses include public inspection and copying, preparation o public indexes, preparation o public catalogs o copyright registrations, and preparation o search reports upon request
NO E No other advisory statement will be given in connection with this application Please keep this statement and re er to it i we communicate with you regarding this application

## LINE-BY-LINE INSTRUCTIONS

*Please type or print neatly using black ink. The form is used to produce the certificate.*

### 1 SPACE 1: Title

**Title of This Work:** Every work submitted for copyright registration must be given a title to identify that particular work. If the phonorecords or any accompanying printed material bears a title (or an identifying phrase that could serve as a title), transcribe that wording completely and exactly on the application. Indexing of the registration and future identification of the work may depend on the information you give here.

**Previous, Alternative, or Contents Titles:** Complete this space if there are any previous or alternative titles for the work under which someone searching for the registration might be likely to look, or under which a document pertaining to the work might be recorded. You may also give the individual contents titles, if any, in this space or you may use a Continuation Sheet (Form CON). Circle the term that describes the titles given.

### 2 SPACE 2: Author(s)

**General Instructions:** After reading these instructions, decide who are the "authors" of this work for copyright purposes. Then, unless the work is a "collective work," give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to this version of the work. If you need further space, use additional Continuation Sheets. In the case of a collective work such as a collection of previously published or registered sound recordings, give information about the author of the collective work as a whole. If you are submitting this Form SR to cover the recorded musical, dramatic, or literary work as well as the sound recording itself, it is important for space 2 to include full information about the various authors of all of the material covered by the copyright claim, making clear the nature of each author's contribution.

**Name of Author:** The fullest form of the author's name should be given. Unless the work was "made for hire," the individual who actually created the work is its "author." In the case of a work made for hire, the statute provides that "the employer or other person for whom the work was prepared is considered the author."

**What Is a "Work Made for Hire"?** A "work made for hire" is defined as: (1) "a work prepared by an employee within the scope of his or her employment"; or (2) "a

work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." If you have checked "Yes" to indicate that the work was "made for hire," you must give the full legal name of the employer (or other person for whom the work was prepared). You may also include the name of the employee along with the name of the employer (for example: "Elster Record Co., employer for hire of John Ferguson").

**"Anonymous" or "Pseudonymous" Work:** An author's contribution to a work is "anonymous" if that author is not identified on the copies or phonorecords of the work. An author's contribution to a work is "pseudonymous" if that author is identified on the copies or phonorecords under a fictitious name. If the work is "anonymous" you may: (1) leave the line blank; or (2) state "anonymous" on the line; or (3) reveal the author's identity. If the work is "pseudonymous" you may: (1) leave the line blank; or (2) give the pseudonym and identify it as such (for example: "Huntley Haverstock, pseudonym"); or (3) reveal the author's name, making clear which is the real name and which is the pseudonym (for example: "Judith Barton, whose pseudonym is Madeline Elster"). However, the citizenship or domicile of the author *must* be given in all cases.

**Dates of Birth and Death:** If the author is dead, the statute requires that the year of death be included in the application unless the work is anonymous or pseudonymous. The author's birth date is optional, but is useful as a form of identification. Leave this space blank if the author's contribution was a "work made for hire."

**Author's Nationality or Domicile:** Give the country in which the author is a citizen, or the country in which the author is domiciled. Nationality or domicile *must* be given in all cases.

**Nature of Authorship:** Sound recording authorship is the performance, sound production, or both, that is fixed in the recording deposited for registration. Describe this authorship in space 2 as "sound recording." If the claim also covers the underlying work(s), include the appropriate authorship terms for each author, for example, "words," "music," "arrangement of music," or "text."

Generally, for the claim to cover both the sound recording and the underlying work(s), every author should have contributed to both the sound recording *and* the underlying work(s). If the claim includes artwork or photographs, include the appropriate term in the statement of authorship.

# DA-161

## 3 SPACE 3: Creation and Publication

**General Instructions:** Do not confuse "creation" with "publication." Every application for copyright registration must state "the year in which creation of the work was completed." Give the date and nation of first publication only if the work has been published.

**Creation:** Under the statute, a work is "created" when it is fixed in a copy or phonorecord for the first time. If a work has been prepared over a period of time, the part of the work existing in fixed form on a particular date constitutes the created work on that date. The date you give here should be the year in which the author completed the particular version for which registration is now being sought, even if other versions exist or if further changes or additions are planned.

**Publication:** The statute defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; a work is also "published" if there has been an "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." Give the full date (month, date, year) when, and the country where, publication first occurred. If first publication took place simultaneously in the United States and other countries, it is sufficient to state "U.S.A."

## 4 SPACE 4: Claimant(s)

**Name(s) and Address(es) of Copyright Claimant(s):** Give the name(s) and address(es) of the copyright claimant(s) in the work even if the claimant is the same as the author. Copyright in a work belongs initially to the author of the work (including, in the case of a work made for hire, the employer or other person for whom the work was prepared). The copyright claimant is either the author of the work or a person or organization to whom the copyright initially belonging to the author has been transferred.

**Transfer:** The statute provides that, if the copyright claimant is not the author, the application for registration must contain "a brief statement of how the claimant obtained ownership of the copyright." If any copyright claimant named in space 4a is not an author named in space 2, give a brief statement explaining how the claimant(s) obtained ownership of the copyright. Examples: "By written contract"; "Transfer of all rights by author"; "Assignment"; "By will." Do not attach transfer documents or other attachments or riders.

## 5 SPACE 5: Previous Registration

**General Instructions:** The questions in space 5 are intended to show whether an earlier registration has been made for this work and, if so, whether there is any basis for a new registration. As a rule, only one basic copyright registration can be made for the same version of a particular work.

**Same Version:** If this version is substantially the same as the work covered by a previous registration, a second registration is not generally possible unless: (1) the work has been registered in unpublished form and a second registration is now being sought to cover this first published edition; or (2) someone other than the author is identified as copyright claimant in the earlier registration and the author is now seeking registration in his or her own name. If either of these two exceptions applies, check the appropriate box and give the earlier registration number and date. Otherwise, do not submit Form SR. Instead, write the Copyright Office for information about supplementary registration or recordation of transfers of copyright ownership.

**Changed Version:** If the work has been changed and you are now seeking registration to cover the additions or revisions, check the last box in space 5, give the earlier registration number and date, and complete both parts of space 6 in accordance with the instructions below.

**Previous Registration Number and Date:** If more than one previous registration has been made for the work, give the number and date of the latest registration.

## 6 SPACE 6: Derivative Work or Compilation

**General Instructions:** Complete space 6 if this work is a "changed version," "compilation," or "derivative work," and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain, or sound recordings that were fixed before February 15, 1972. A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." A "derivative work" is "a work based on one or more preexisting works." Examples of derivative works include recordings reissued with substantial editorial revisions or abridgments of the recorded sounds, and recordings republished with new recorded material, or "any other form in which a work may be recast, transformed, or adapted." Derivative works also include works "consisting of editorial revisions, annotations, or other modifications" if these changes, as a whole, represent an original work of authorship.

**Preexisting Material (space 6a):** Complete this space *and* space 6b for derivative works. In this space identify the preexisting work that has been recast, transformed, or adapted. The preexisting work may be material that has been previously published, previously registered, or that is in the public domain. For example, the preexisting material might be: "1970 recording by Sperryville Symphony of Bach Double Concerto."

**Material Added to This Work (space 6b):** Give a brief, general statement of the *additional* new material covered by the copyright claim for which registration is sought. In the case of a derivative work, identify this new material. Examples: "Recorded performances on bands 1 and 3"; "Remixed sounds from original multitrack sound sources"; "New words, arrangement, and additional sounds." If the work is a compilation, give a brief, general statement describing both the material that has been compiled *and* the compilation itself. Example: "Compilation of 1938 recordings by various swing bands."

## 7,8,9 SPACE 7, 8, 9: Fee, Correspondence, Certification, Return Address

**Deposit Account:** If you maintain a deposit account in the Copyright Office, identify it in space 7a. Otherwise, leave the space blank and send the filing fee with your application and deposit. (See space 8 on form.) **Note:** Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

**Correspondence (space 7b):** Give the name, address, area code, telephone number, fax number, and email address (if available) of the person to be consulted if correspondence about this application becomes necessary.

**Certification (space 8):** This application cannot be accepted unless it bears the date and the *handwritten signature* of the author or other copyright claimant, or of the owner of exclusive right(s), or of the duly authorized agent of the author, claimant, or owner of exclusive right(s).

**Address for Return of Certificate (space 9):** The address box must be completed legibly since the certificate will be returned in a window envelope.

## MORE INFORMATION

**"Works":** "Works" are the basic subject matter of copyright; they are what authors create and copyright protects. The statute draws a sharp distinction between the "work" and "any material object in which the work is embodied."

**"Copies" and "Phonorecords":** These are the two types of material objects in which "works" are embodied. In general, "copies" are objects from which a work can be read or visually perceived, directly or with the aid of a machine or device, such as manuscripts, books, sheet music, film, and videotape. "Phonorecords" are objects embodying fixations of sounds, such as audio tapes and phonograph disks. For example, a song (the "work") can be reproduced in sheet music ("copies") or phonograph disks ("phonorecords"), or both.

**"Sound Recordings":** These are "works," not "copies" or "phonorecords." "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work." Example: When a record company issues a new release, the release will typically involve two distinct "works": the "musical work" that has been recorded, and the "sound recording" as a separate work in itself. The material objects that the record company sends out are "phonorecords": physical reproductions of both the "musical work" and the "sound recording."

**Should You File More Than One Application?** If your work consists of a recorded musical, dramatic, or literary work and if both the "work" and the sound recording as a separate "work" are eligible for registration, the application form you should file depends on the following:

**File Only Form SR if:** The copyright claimant is the same for both the musical, dramatic, or literary work and for the sound recording, and you are seeking a single registration to cover both of these "works."

**File Only Form PA (or Form TX) if:** You are seeking to register only the musical, dramatic, or literary work, not the sound recording. Form PA is appropriate for works of the performing arts; Form TX is for nondramatic literary works.

**Separate Applications Should Be Filed on Form PA (or Form TX) and on Form SR if:** (1) The copyright claimant for the musical, dramatic, or literary work is different from the copyright claimant for the sound recording; or (2) you prefer to have separate registrations for the musical, dramatic, or literary work and for the sound recording.

# DA-162

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000 or 1-877-476-0778 (toll free).

**Clear Form**

**Form SR**
For a Sound Recording
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

SR          SRU

EFFECT VE DATE OF REG STRAT ON

Month          Day          Year

**Privacy Act Notice:** Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**

**PREVIOUS, ALTERNATIVE, OR CONTENTS TITLES (CIRCLE ONE) ▼**

## 2

**a**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❏ Yes
❏ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name o  Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?          ❏ Yes   ❏ No
Pseudonymous?     ❏ Yes   ❏ No
the answer to either o these questions is "Yes, see detailed instructions

**NATURE OF AUTHORSHIP**  Briefly describe nature of material created by this author in which copyright is claimed.

**NOTE**
Under the law, the "author o a "work made or hire is generally the employer, not the employee (see instructions)  or any part o  this work that was "made or hire, check "Yes in the space provided, give the employer (or other person or whom the work was prepared) as "Author o  that part, and leave the space or dates o birth and death blank

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❏ Yes
❏ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name o  Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?          ❏ Yes   ❏ No
Pseudonymous?     ❏ Yes   ❏ No
the answer to either o these questions is "Yes, see detailed instructions

**NATURE OF AUTHORSHIP**  Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼          Year Died ▼

Was this contribution to the work a "work made for hire"?
❏ Yes
❏ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name o  Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?          ❏ Yes   ❏ No
Pseudonymous?     ❏ Yes   ❏ No
the answer to either o these questions is "Yes, see detailed instructions

**NATURE OF AUTHORSHIP**  Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a**  **YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED**
Year ▶
This in ormation must be given in all cases.

**b**  **DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this in ormation ONLY i  this work has been published.
Month ▶          Day ▶          Year ▶
Nation ▶

## 4

**a**  **COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

**b**  **TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions be ore completing this space

APPL CAT ON RECE VED

ONE DEPOS T RECE VED

TWO DEPOS TS RECE VED

FUNDS RECE VED

DO NOT WRITE HERE OFF CE USE ONLY

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse side o  this page
• See detailed instructions          • Sign the  orm at line 8

DO NOT WRITE HERE
Page 1 o ___ pages

# DA-163

| EXAMINED BY | FORM SR |
|---|---|
| CHECKED BY | |
| CORRESPONDENCE<br>❏ Yes | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

❏ Yes   ❏ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box)▼

**a.** ❏ This work was previously registered in unpublished form and now has been published for the first time.

**b.** ❏ This is the first application submitted by this author as copyright claimant.

**c.** ❏ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION**

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**6**

See instructions
be ore completing
this space

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.

**Name** ▼          **Account Number** ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

**b**

Area code and daytime telephone number    (      )          Fax number    (      )

Email

**7**

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

Check only one ▼

❏ author

❏ other copyright claimant

❏ owner of exclusive right(s)

❏ authorized agent of _____ Name o author or other copyright claimant, or owner o exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

_____          Date _____

Handwritten signature ▼

**8**

| **Certificate**<br>**will be**<br>**mailed in**<br>**window**<br>**envelope**<br>**to this**<br>**address:** | Name ▼<br><br>Number/Street/Apt ▼<br><br>City/State/Zip ▼ | **YOU MUST:**<br>• Complete all necessary spaces<br>• Sign your application in space 8<br>**SEND ALL 3 ELEMENTS**<br>**IN THE SAME PACKAGE:**<br>**1.** Application orm<br>**2.** Nonrefundable filing fee in check or mon-<br>ey order payable to Register of Copyrights<br>**3.** Deposit material<br>**MAIL TO:**<br>Library o Congress<br>Copyright O fice-SR<br>101 ndependence Avenue SE<br>Washington, DC 20559 | **9** |

\*17 U S C §506(e) Any person who knowingly makes a alse representation o a material act in the application or copyright registration provided or by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500

orm SR- ull   Rev 12/2016   Printed on recycled paper

# DA-164

# Form SR

*Detach and read these instructions before completing this form.*
*Make sure all applicable spaces have been filled in before you return this form.*

## BASIC INFORMATION

**When to Use This Form:** Use Form SR for registration of published or unpublished sound recordings. Form SR should be used when the copyright claim is limited to the sound recording itself, and it may also be used where the same copyright claimant is seeking simultaneous registration of the underlying musical, dramatic, or literary work embodied in the phonorecord.

With one exception, "sound recordings" are works that result from the fixation of a series of musical, spoken, or other sounds. The exception is for the audio portions of audiovisual works, such as a motion picture soundtrack or an audio cassette accompanying a filmstrip. These are considered a part of the audiovisual work as a whole.

**Deposit to Accompany Application:** An application for copyright registration must be accompanied by a deposit consisting of phonorecords representing the entire work for which registration is to be made.

**Unpublished Work:** Deposit one complete phonorecord.

**Published Work:** Deposit two complete phonorecords of the best edition, together with "any printed or other visually perceptible material" published with the phonorecords.

**Work First Published Outside the United States:** Deposit one complete phonorecord of the first foreign edition.

**Contribution to a Collective Work:** Deposit one complete phonorecord of the best edition of the collective work.

**The Copyright Notice:** Before March 1, 1989, the use of copyright notice was mandatory on all published works, and any work first published before that date should have carried a notice. For works first published on and after March 1, 1989, use of the copyright notice is optional. For more information about copyright notice, see Circular 3, *Copyright Notices.*

**For Further Information:** To speak to a Copyright Office staff member, call (202) 707-3000 or 1-877-476-0778. Recorded information is available 24 hours a day. Order forms and other publications from Library of Congress, Copyright Office-COPUBS, 101 Independence Avenue SE, Washington, DC 20559 or call the Forms and Publications Hotline at (202) 707-9100. Access and download circulars and other information from the Copyright Office website at *www.copyright.gov.*

**PRIVACY ACT ADVISORY STATEMENT Required by the Privacy Act of 1974 (P.L. 93-579)**

The authority or requesting this in ormation is title 17 U S C §409 and §410 urnishing the requested in ormation is voluntary But i the in ormation is not urnished, it may be necessary to delay or re use registration and you may not be entitled to certain relie , remedies, and benefits provided in chapters 4 and 5 o title 17 U S C

The principal uses o the requested in ormation are the establishment and maintenance o a public record and the examination o the application or compliance with the registration requirements o the copyright code

Other routine uses include public inspection and copying, preparation o public indexes, preparation o public catalogs o copyright registrations, and preparation o search reports upon request

NO E No other advisory statement will be given in connection with this application Please keep this statement and re er to it i we communicate with you regarding this application

## LINE-BY-LINE INSTRUCTIONS

*Please type or print neatly using black ink. The form is used to produce the certificate.*

### 1 SPACE 1: Title

**Title of This Work:** Every work submitted for copyright registration must be given a title to identify that particular work. If the phonorecords or any accompanying printed material bears a title (or an identifying phrase that could serve as a title), transcribe that wording completely and exactly on the application. Indexing of the registration and future identification of the work may depend on the information you give here.

**Previous, Alternative, or Contents Titles:** Complete this space if there are any previous or alternative titles for the work under which someone searching for the registration might be likely to look, or under which a document pertaining to the work might be recorded. You may also give the individual contents titles, if any, in this space or you may use a Continuation Sheet (Form CON). Circle the term that describes the titles given.

### 2 SPACE 2: Author(s)

**General Instructions:** After reading these instructions, decide who are the "authors" of this work for copyright purposes. Then, unless the work is a "collective work," give the requested information about every "author" who contributed any appreciable amount of copyrightable matter to this version of the work. If you need further space, use additional Continuation Sheets. In the case of a collective work such as a collection of previously published or registered sound recordings, give information about the author of the collective work as a whole. If you are submitting this Form SR to cover the recorded musical, dramatic, or literary work as well as the sound recording itself, it is important for space 2 to include full information about the various authors of all of the material covered by the copyright claim, making clear the nature of each author's contribution.

**Name of Author:** The fullest form of the author's name should be given. Unless the work was "made for hire," the individual who actually created the work is its "author." In the case of a work made for hire, the statute provides that "the employer or other person for whom the work was prepared is considered the author."

**What Is a "Work Made for Hire"?** A "work made for hire" is defined as: (1) "a work prepared by an employee within the scope of his or her employment"; or (2) "a

work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." If you have checked "Yes" to indicate that the work was "made for hire," you must give the full legal name of the employer (or other person for whom the work was prepared). You may also include the name of the employee along with the name of the employer (for example: "Elster Record Co., employer for hire of John Ferguson").

**"Anonymous" or "Pseudonymous" Work:** An author's contribution to a work is "anonymous" if that author is not identified on the copies or phonorecords of the work. An author's contribution to a work is "pseudonymous" if that author is identified on the copies or phonorecords under a fictitious name. If the work is "anonymous" you may: (1) leave the line blank; or (2) state "anonymous" on the line; or (3) reveal the author's identity. If the work is "pseudonymous" you may: (1) leave the line blank; or (2) give the pseudonym and identify it as such (for example: "Huntley Haverstock, pseudonym"); or (3) reveal the author's name, making clear which is the real name and which is the pseudonym (for example: "Judith Barton, whose pseudonym is Madeline Elster"). However, the citizenship or domicile of the author *must* be given in all cases.

**Dates of Birth and Death:** If the author is dead, the statute requires that the year of death be included in the application unless the work is anonymous or pseudonymous. The author's birth date is optional, but is useful as a form of identification. Leave this space blank if the author's contribution was a "work made for hire."

**Author's Nationality or Domicile:** Give the country in which the author is a citizen, or the country in which the author is domiciled. Nationality or domicile *must* be given in all cases.

**Nature of Authorship:** Sound recording authorship is the performance, sound production, or both, that is fixed in the recording deposited for registration. Describe this authorship in space 2 as "sound recording." If the claim also covers the underlying work(s), include the appropriate authorship terms for each author, for example, "words," "music," "arrangement of music," or "text."

Generally, for the claim to cover both the sound recording and the underlying work(s), every author should have contributed to both the sound recording *and* the underlying work(s). If the claim includes artwork or photographs, include the appropriate term in the statement of authorship.

# DA-165

## 3 SPACE 3: Creation and Publication

**General Instructions:** Do not confuse "creation" with "publication." Every application for copyright registration must state "the year in which creation of the work was completed." Give the date and nation of first publication only if the work has been published.

**Creation:** Under the statute, a work is "created" when it is fixed in a copy or phonorecord for the first time. If a work has been prepared over a period of time, the part of the work existing in fixed form on a particular date constitutes the created work on that date. The date you give here should be the year in which the author completed the particular version for which registration is now being sought, even if other versions exist or if further changes or additions are planned.

**Publication:** The statute defines "publication" as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; a work is also "published" if there has been an "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." Give the full date (month, date, year) when, and the country where, publication first occurred. If first publication took place simultaneously in the United States and other countries, it is sufficient to state "U.S.A."

## 4 SPACE 4: Claimant(s)

**Name(s) and Address(es) of Copyright Claimant(s):** Give the name(s) and address(es) of the copyright claimant(s) in the work even if the claimant is the same as the author. Copyright in a work belongs initially to the author of the work (including, in the case of a work made for hire, the employer or other person for whom the work was prepared). The copyright claimant is either the author of the work or a person or organization to whom the copyright initially belonging to the author has been transferred.

**Transfer:** The statute provides that, if the copyright claimant is not the author, the application for registration must contain "a brief statement of how the claimant obtained ownership of the copyright." If any copyright claimant named in space 4a is not an author named in space 2, give a brief statement explaining how the claimant(s) obtained ownership of the copyright. Examples: "By written contract"; "Transfer of all rights by author"; "Assignment"; "By will". Do not attach transfer documents or other attachments or riders.

## 5 SPACE 5: Previous Registration

**General Instructions:** The questions in space 5 are intended to show whether an earlier registration has been made for this work and, if so, whether there is any basis for a new registration. As a rule, only one basic copyright registration can be made for the same version of a particular work.

**Same Version:** If this version is substantially the same as the work covered by a previous registration, a second registration is not generally possible unless: (1) the work has been registered in unpublished form and a second registration is now being sought to cover this first published edition; or (2) someone other than the author is identified as copyright claimant in the earlier registration and the author is now seeking registration in his or her own name. If either of these two exceptions applies, check the appropriate box and give the earlier registration number and date. Otherwise, do not submit Form SR. Instead, write the Copyright Office for information about supplementary registration or recordation of transfers of copyright ownership.

**Changed Version:** If the work has been changed and you are now seeking registration to cover the additions or revisions, check the last box in space 5, give the earlier registration number and date, and complete both parts of space 6 in accordance with the instructions below.

**Previous Registration Number and Date:** If more than one previous registration has been made for the work, give the number and date of the latest registration.

## 6 SPACE 6: Derivative Work or Compilation

**General Instructions:** Complete space 6 if this work is a "changed version," "compilation," or "derivative work," and if it incorporates one or more earlier works that have already been published or registered for copyright, or that have fallen into the public domain, or sound recordings that were fixed before February 15, 1972. A "compilation" is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." A "derivative work" is "a work based on one or more preexisting works." Examples of derivative works include recordings reissued with substantial editorial revisions or abridgments of the recorded sounds, and recordings republished with new recorded material, or "any other form in which a work may be recast, transformed, or adapted." Derivative works also include works "consisting of editorial revisions, annotations, or other modifications" if these changes, as a whole, represent an original work of authorship.

**Preexisting Material (space 6a):** Complete this space *and* space 6b for derivative works. In this space identify the preexisting work that has been recast, transformed, or adapted. The preexisting work may be material that has been previously published, previously registered, or that is in the public domain. For example, the preexisting material might be: "1970 recording by Sperryville Symphony of Bach Double Concerto."

**Material Added to This Work (space 6b):** Give a brief, general statement of the **additional** new material covered by the copyright claim for which registration is sought. In the case of a derivative work, identify this new material. Examples: "Recorded performances on bands 1 and 3"; "Remixed sounds from original multitrack sound sources"; "New words, arrangement, and additional sounds." If the work is a compilation, give a brief, general statement describing both the material that has been compiled and the compilation itself. Example: "Compilation of 1938 recordings by various swing bands."

## 7, 8, 9 SPACE 7, 8, 9: Fee, Correspondence, Certification, Return Address

**Deposit Account:** If you maintain a deposit account in the Copyright Office, identify it in space 7a. Otherwise, leave the space blank and send the filing fee with your application and deposit. (See space 8 on form.) **Note:** Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

**Correspondence (space 7b):** Give the name, address, area code, telephone number, fax number, and email address (if available) of the person to be consulted if correspondence about this application becomes necessary.

**Certification (space 8):** This application cannot be accepted unless it bears the date and the *handwritten signature* of the author or other copyright claimant, or of the owner of exclusive right(s), or of the duly authorized agent of the author, claimant, or owner of exclusive right(s).

**Address for Return of Certificate (space 9):** The address box must be completed legibly since the certificate will be returned in a window envelope.

## MORE INFORMATION

**"Works":** "Works" are the basic subject matter of copyright; they are what authors create and copyright protects. The statute draws a sharp distinction between the "work" and "any material object in which the work is embodied."

**"Copies" and "Phonorecords":** These are the two types of material objects in which "works" are embodied. In general, "copies" are objects from which a work can be read or visually perceived, directly or with the aid of a machine or device, such as manuscripts, books, sheet music, film, and videotape. "Phonorecords" are objects embodying fixations of sounds, such as audio tapes and phonograph disks. For example, a song (the "work") can be reproduced in sheet music ("copies") or phonograph disks ("phonorecords"), or both.

**"Sound Recordings":** These are "works," not "copies" or "phonorecords." "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work." Example: When a record company issues a new release, the release will typically involve two distinct "works": the "musical work" that has been recorded, and the "sound recording" as a separate work in itself. The material objects that the record company sends out are "phonorecords": physical reproductions of both the "musical work" and the "sound recording."

**Should You File More Than One Application?** If your work consists of a recorded musical, dramatic, or literary work and if both the "work" and the sound recording as a separate "work" are eligible for registration, the application form you should file depends on the following:

**File Only Form SR if:** The copyright claimant is the same for both the musical, dramatic, or literary work and for the sound recording, and you are seeking a single registration to cover both of these "works."

**File Only Form PA (or Form TX) if:** You are seeking to register only the musical, dramatic, or literary work, not the sound recording. Form PA is appropriate for works of the performing arts; Form TX is for nondramatic literary works.

**Separate Applications Should Be Filed on Form PA (or Form TX) and on Form SR if:** (1) The copyright claimant for the musical, dramatic, or literary work is different from the copyright claimant for the sound recording; or (2) you prefer to have separate registrations for the musical, dramatic, or literary work and for the sound recording.

# DA-166

Copyright Office fees are subject to change. For current fees, check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

**Form SR**
For a Sound Recording
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**Privacy Act Notice:** Sections 408-410 of title 17 of the *United States Code* authorize the Copyright Office to collect the personally identifying information requested on this form in order to process the application for copyright registration. By providing this information you are agreeing to routine uses of the information that include publication to give legal notice of your copyright claim as required by 17 U.S.C. §705. It will appear in the Office's online catalog. If you do not provide the information requested, registration may be refused or delayed, and you may not be entitled to certain relief, remedies, and benefits under the copyright law.

SR                SRU

EFFECTIVE DATE OF REG STRAT ON

Month        Day        Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

TITLE OF THIS WORK ▼

PREVIOUS, ALTERNATIVE, OR CONTENTS TITLES (CIRCLE ONE) ▼

## 2

**a**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
❏ Yes
❏ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ❏ Yes  ❏ No
Pseudonymous?  ❏ Yes  ❏ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP   Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NOTE**
Under the law, the "author o a "work made o hire is generally the employer, not the employee (see instructions) or any part o this work that was "made or was prepared) as "Author o that part, and leave the space or dates o birth and death blank

**b**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
❏ Yes
❏ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ❏ Yes  ❏ No
Pseudonymous?  ❏ Yes  ❏ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP   Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
❏ Yes
❏ No

AUTHOR'S NATIONALITY OR DOMICILE
Name o Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?     ❏ Yes  ❏ No
Pseudonymous?  ❏ Yes  ❏ No
the answer to either o these questions is "Yes, see detailed instructions

NATURE OF AUTHORSHIP   Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
Year ▶
This in ormation must be given in all cases.

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this in ormation ONLY i this work has been published.
Month ▶     Day ▶     Year ▶
Nation ▶

## 4

**a**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

APPL CAT ON RECE VED

ONE DEPOS T RECE VED

TWO DEPOS TS RECE VED

FUNDS RECE VED

See instructions be ore completing this space

**b**

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE
OFFICE USE ONLY

**MORE ON BACK** ▶  • Complete all applicable spaces (numbers 5-9) on the reverse side o  this page
• See detailed instructions          • Sign the orm at line 8

DO NOT WRITE HERE
Page 1 o _____ pages

# DA-167

| EXAMINED BY | | FORM SR |
|---|---|---|
| CHECKED BY | | |
| CORRESPONDENCE<br>❏ Yes | | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

**5**

❏ **Yes** ❏ **No** If your answer is "Yes," why is another registration being sought? (Check appropriate box)▼

**a.** ❏ This work was previously registered in unpublished form and now has been published for the first time.

**b.** ❏ This is the first application submitted by this author as copyright claimant.

**c.** ❏ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼     **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION**

**6**

**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

See instructions
be ore completing
this space

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a deposit account established in the Copyright Office, give name and number of account.

**7**

**Name** ▼     **Account Number** ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼

**b**

Area code and daytime telephone number     (     )     Fax number     (     )

Email

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the

**8**

Check only one ▼

❏ author

❏ owner of exclusive right(s)

❏ other copyright claimant

❏ authorized agent of

Name o  author or other copyright claimant, or owner o  exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Date

Handwritten signature ▼

| Certificate<br>will be<br>mailed in<br>window<br>envelope<br>to this<br>address: | Name ▼ | **YOU MUST:**<br>• Complete all necessary spaces<br>• Sign your application in space 8 | **9** |
|---|---|---|---|
| | Number/Street/Apt ▼ | **SEND ALL 3 ELEMENTS<br>IN THE SAME PACKAGE:**<br>**1.** Application  orm<br>**2.** Nonrefundable filing fee in check or mon-<br>ey order payable to Register of Copyrights<br>**3.** Deposit material | |
| | City/State/Zip ▼ | **MAIL TO:**<br>Library o  Congress<br>Copyright O fice-SR<br>101  ndependence Avenue SE<br>Washington, DC 20559 | |

\*17 U S C  §506(e)  Any person who knowingly makes a  alse representation o  a material  act in the application  or copyright registration provided  or by section 409, or in any written statement filed in connection
with the application, shall be fined not more than $2,500

**DA-168**

LAW OFFICES OF

*Aidala, Bertuna & Kamins, P.C.*

ARTHUR L. AIDALA
MARIANNE E. BERTUNA
HON. BARRY KAMINS (RET.)
HON. JOHN LEVENTHAL (RET.)
JOHN S. ESPOSITO
MICHAEL T. JACCARINO
IMRAN H. ANSARI
DIANA FABI SAMSON
ANDREA M. ARRIGO
MICHAEL DIBENEDETTO
TAYLOR FRIEDMAN

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE: (212) 486-0011
FACSIMILE: (212) 750-8297
WWW.AIDALALAW.COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL: (718) 238-9898
FAX: (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S. THOMAS
LAWRENCE SPASOJEVICH

SENIOR COUNSEL
LOUIS R. AIDALA
JOSEPH P. BARATTA

February 8, 2022

**VIA EMAIL**

Jonathan D. Davis, Esq.
Jonathan D. Davis, P.C.
1 Rockefeller Plaza, Suite 1712
New York, New York 10020

Re:     *Nwosuocha v. Glover II et al.*, No. 1:21-cv-04047-VM

Dear Mr. Davis:

I write on behalf of the Plaintiff in response to Defendants' January 18, 2022 supplemental letter ("Supplemental Letter") in furtherance of the procedures described in Paragraph II.B of Judge Marrero's Individual Practices. For the reasons set forth below, Plaintiff disagrees with Defendants' characterization of his claims in the Supplemental Letter as "baseless," and intends to pursue those claims.

**I.     Plaintiff Has Standing to Sue for Copyright Infringement.**

The Supplemental Letter repeats Defendants' point from their initial letter that Plaintiff lacks "technical standing" to bring this action due to an alleged failure to register his copyright in the composition underlying "Made in America." Defendants maintain their position that Plaintiff has only registered a copyright in the sound recording for "Made in America." Defendants remain mistaken in this regard.

Defendants concede the point made in Plaintiff's January 12, 2022 reply letter ("Reply Letter") that sound recordings and compositions may be registered simultaneously on a Form SR (or its electronic equivalent), pursuant to U.S. Copyright Circular 56A. Defendants, however, argue that the registration applicable to "Made in America" failed to simultaneously register the underlying composition, allegedly because the registration's authorship description fails to include "words," "music," or "words and music." Assuming, *arguendo*, that Plaintiff's registration omitted a descriptor clarifying the full extent of his authorship, Defendants are nonetheless erroneous in their assertion that such an oversight by Plaintiff would be fatal to his standing. However, the nature of Plaintiff's registration is such that no further descriptors were required to register both the "Made in America" sound recording and its underlying composition.

- 1 -

Plaintiff's registration is for an unpublished collective work of sound recordings including "Made in America." In the registration, Plaintiff claims sole rights and permissions in the collective work, which necessarily subsumes every creative contribution appearing in the entire collective work, including every compositional element. *See* U.S. Copyright Office Compendium 509. Plaintiff's registration, on its face, therefore claims the composition underlying "Made in America," because "Made in America" is one of the sound recordings appearing in the collective work for which the registration claims sole rights and permissions. In this context, neither the additional descriptors suggested by Defendants nor any other descriptors were required for Plaintiff to validly register the sound recording and composition "Made in America" simultaneously.

## II.   Uploading "Made in America" to SoundCloud was not publication.

The Supplemental Letter argues that, "[b]ecause there is no copyright claim regarding your client's 'sound recording,' the issue of whether the 'Made in America' sound recording has been published is immaterial to your client's purported infringement claims." Defendants then nonetheless go on to address the "non-relevant issue" of publication by, once again, inaccurately characterizing Plaintiff's upload of "Made in America" to SoundCloud as publication for the purposes of copyright law. In fact, in their in their initial letter Defendants failed to cite authority in favor of this erroneous contention, as pointed out in the Reply Letter. Now, unable to deny the plain language in Circular 66 stating that streaming is not publication, Defendants vaguely assert that Plaintiff's Complaint alleges "more than just streaming." Defendants contend that the Complaint alleges "phonorecords were offered to multiple on-line services for public display/performance, which constitute publication," but Defendants do not and cannot cite a single allegation in the Complaint supporting this contention.

The only specific act of publication that Defendants will commit to alleging is Plaintiff's upload of "Made in America" to SoundCloud. Defendants' SoundCloud theory is that Plaintiff published "Made in America" because SoundCloud Go, a paid subscription tier of the otherwise free SoundCloud, offered users the ability to stream songs offline. Defendants contend that this was publication because, in enabling offline listening, SoundCloud Go allowed users to "copy and download songs" for offline use. Defendants appear to misunderstand the nature of offline streaming in general. SoundCloud Go's offline streaming feature did not enable users to "copy and download songs." For offline streaming, SoundCloud Go users retain no copy of the song file and are required to stream the song through SoundCloud's platform. A user is nonetheless unable to access the song independent of SoundCloud. Indeed, if users retained their own copy of the file, it would have been redundant to refer to listening to songs on SoundCloud Go as "offline" listening, because listening to a personally retained song file does not require cellular data or internet access. In sum, Defendants' SoundCloud theory fails to evince that Plaintiff offered the public retainable copies of "Made in America" pre-registration.

## III.   Plaintiff Has Alleged Access and Actionable Copying.

The Supplemental Letter attempts to rebut the substantial similarity shown in Dr. Swanson's report with the conclusory statement that "any lay listener could readily determine [the songs at issue] are neither 'strikingly similar' nor 'substantially similar.'" As such, Defendants

- 2 -

raise a question for a trier-of-fact. Defendants' conclusory argumentation about whether lay listeners would agree with Dr. Swanson's scientific conclusion does not merit response. Furthermore, Defendants' assertion that Plaintiff has plead "conclusory" assertions of striking similarity in the report of Dr. Swanson is devoid of merit.

**IV.    Plaintiff Will Consider Withdrawing Claims Against WMG and RCA.**

Should the Defendants provide evidentiary proof and an affidavit in support of its contention that WMG and RCA are improper Defendants then Plaintiff will consider withdrawing the claims.

Very Truly Yours,

**AIDALA, BERTUNA & KAMINS, P.C.**

By:    /s/ Imran H. Ansari
Imran H. Ansari, Esq.
546 Fifth Avenue, 6th Floor
New York, NY 10036
T: (212) 486-0011
F: (212) 750-8297
iansari@aidalalaw.com

cc:    The Honorable Victor Marrero (Fax)
Paul Maslo, Esq. (Email)
Alex Spiro, Esq. (Email)
Donald S. Zakarin, Esq. (Email)
Ilene S. Farkas, Esq. (Email)

AIDALA, BERTUNA & KAMINS, P.C. • 546 FIFTH AVENUE, NEW YORK, NY, 10036 • T: 212-486-0011 • F: 212-750-8297 • WWW.AIDALALAW.COM