# No. 23-703

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

EMELIKE NWOSUOCHA,

*Plaintiff-Appellant*,

v.

DONALD MCKINLEY GLOVER, II, SONY MUSIC ENTERTAINMENT,
YOUNG STONER LIFE PUBLISHING LLC, KOBALT MUSIC PUBLISHING
AMERICA, INC., D/B/A SONGS OF KOBALT MUSIC PUBLISHING, THEORY
ENTERTAINMENT LLC, D/B/A 300 ENTERTAINMENT, ATLANTIC
RECORDING CORPORATION, ROC NATION PUBLISHING LLC, D/B/A
SONGS OF ROC NATION, SONGS OF UNIVERSAL, INC.,
WARNERTAMERLANE PUBLISHING CORP., LUDWIG EMIL TOMAS
GORANSSON, JEFFEREY LAMAR WILLIAMS,

*Defendant-Appellees*,

v.

RCA RECORDS LABEL, WARNER MUSIC GROUP CORP.,

*Defendants*,

On Appeal from the United States District Court
for the Southern District of New York
No. 1:21-cv-04047-VM
Hon. Victor Marrero, United States District Judge

## REPLY BRIEF OF APPELLANT

Imran H. Ansari
AIDALA, BERTUNA & KAMINS, P.C.
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 486-0011
IAnsari@AidalaLaw.com

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

La'Shawn Thomas
MIAMI ENTERTAINMENT LAW GROUP
261 North University Drive, Suite 500
Plantation, Florida 33324
(305) 417-6450
LThomas@MiamiEntertainmentLawGroup.com

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorneys for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................4

INTRODUCTION & SUMMARY OF ARGUMENT..............................................8

ARGUMENT ...................................................................9

    I.    THE ANSWERING BRIEF IS WRONG ON REGISTRATION..........................9

        A.    The Answering Brief is at odds with the plain text of Section 411(b). ....................................................9

        B.    The Answering Brief entirely ignores Section 408's effect on its classification arguments. ..................................13

        C.    The Answering Brief is at odds with *Muchnick*. ..................16

    II.    THE ANSWERING BRIEF IS WRONG ON THE MERITS. ..........................17

        A.    The Answering Brief ignores identical similarities of unique expression and makes arguments contrary to Second Circuit law...........................................................17

        B.    The Answering Brief's selection-and-arrangement points are incorrect and inapposite. .....................................28

        C.    The Answering Brief's access arguments are incomplete and overlook key doctrines (probative similarity) and key facts (uniqueness). ................................................33

    III.    ADDRESSING THE DISTRICT COURT'S HOLDINGS IS NOT WAIVED OR FORFEITED..................................................42

CONCLUSION ..................................................................43

CERTIFICATE OF COMPLIANCE....................................................44

CERTIFICATE OF SERVICE .....................................................45

# TABLE OF AUTHORITIES[1]

**Page(s)**

**Cases**

Adams v. Warner Bros. Pictures,
    289 F. App'x 456 (2d Cir. 2008)...................................................29

Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith,
    143 S. Ct. 1258 (2023)....................................................12

Arnstein v. Porter,
    158 F.3d 795 (2d Cir. 1946) ...........................................14

Attia v. Society of the N.Y. Hosp.,
    201 F.3d 50 (2d Cir. 1999) .............................................13

Boisson v. Banian, Ltd.,
    273 F.3d 262 (2d Cir. 2001) ................................ 13, 14, 21, 22, 25

Bonito Boats v. Thunder Craft Boats,
    489 U.S. 141 (1989)........................................................26

Cates v. Schlemovitz,
    2023 U.S. Dist. LEXIS 168889 (N.D.N.Y. Sept. 22, 2023) ........................31

Christian Music Grp., Inc. v. MP3tunes, LLC,
    844 F.3d 79 (2d Cir. 2016) .............................................26

Clanton v. UMG Recordings, Inc.,
    556 F. Supp. 3d 322 (S.D.N.Y. 2021) .........................................32

Compulife Software, Inc. v. Newman,
    959 F.3d 1288 (11th Cir. 2020) ......................................17

Enter. Mgmt. Ltd. v. Warrick,
    717 F.3d 1112 (10th Cir. 2013) ............................................ 14, 15

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
    499 U.S. 340 (1991).................................................. 22, 25

---

[1] App. citations are to the Appellant's Appendix. Throughout this Brief, all emphasis is added unless otherwise indicated. Internal quotation marks, citations, and brackets are frequently removed for ease of reading.

Hall v. Swift,
    782 F. App'x. 639 (9th Cir. 2019)........................................................ 16, 20

Harris v. Sentry Title Co.,
    806 F.2d 1278 (5th Cir. 1987) ......................................................27

Hunter v. McMahon,
    75 F.4th 62 (2d Cir. 2023) ...........................................................27

Johnson v. Copyright Royalty Bd.,
    969 F.3d 363 (D.C. Cir. 2020)........................................................4

Jorgensen v. Epic/Sony Records,
    351 F.3d 46 (2d Cir. 2003) ................................... 29, 30, 31, 32, 33

L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486 (2d Cir. 1976) ..................................7

McDonald v. West,
    138 F. Supp. 3d 448  (S.D.N.Y. Sept. 30, 2015) ..........................................18

Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,
    312 F.3d 94 (2d Cir. 2002) ...........................................................19

Monogram Models, Inc. v. Industro Motive Corp.,
    448 F.2d 284 (6th Cir. 1971) ..........................................................8

Muchnick v. Thomson Corp.,
    509 F.3d 116 (2d Cir. 2007) ..........................................................9

Newlight Eyewear, LLC v. Art-Optic, Ltd.,
    2014 U.S. Dist. LEXIS 14989 (S.D.N.Y. Feb. 5, 2014) ..............................14

Norton v. Sam's Club,
    145 F.3d 114 (2d Cir. 1998) ..........................................................35

O'Keefe v. Ogilvy & Mather Worldwide, Inc.,
    590 F. Supp. 2d 500 (S.D.N.Y. 2008) ..........................................................32

P&G v. Colgate-Palmolive Co.,
    199 F.3d 74 (2d Cir. 1999) ..........................................................26

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,
    602 F.3d 57 (2d Cir. 2010) ..........................................................15

Roth Greeting Cards v. United Card Co.,
    429 F.2d 1106 (9th Cir. 1970) ..........................................................14

Skidmore v. Led Zeppelin,
   952 F.3d 1051 (9th Cir. 2020) ............................................................. 24, 25

Skyline Design, Inc. v. McGrory Glass, Inc., 2014 U.S. Dist. LEXIS 8439
   (N.D. Ill. Jan. 23, 2014) .........................................................................8

Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.,
   490 F.2d 1092 (2d Cir. 1974) ...................................................................7

Spano v. Whole Foods, Inc.,
   65 F.4th 260 (5th Cir. 2023) ...................................................................27

Spinelli v. NFL,
   903 F.3d 185 (2d Cir. 2018) ....................................................................19

Steinbeck v. Steinbeck Heritage Found.,
   400 F. App'x 572 (2d Cir. 2010) .............................................................35

Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.,
   142 S. Ct. 941 (2022) ...............................................................................5

United States v. Velasquez,
   81 F.4th 583 (6th Cir. 2023) ...................................................................27

Wager v. Littell,
   549 F. App'x 32 (2d Cir. 2014) ...............................................................29

Walker v. Time Life Films, Inc.,
   784 F.2d 44 (2d Cir. 1986) ............................................................... 18, 20

Yee v. City of Escondido,
   503 U.S. 519 (1992).................................................................................35

Zalewski v. Cicero Builder Dev. Inc., 754 F.3d 95 (2d Cir. 2014) ........................26

**Statutes**

17 U.S.C. § 101 ...............................................................................................4, 24

17 U.S.C. § 102 ....................................................................................................6

17 U.S.C. § 102(a)(2) ...........................................................................................6

17 U.S.C. § 102(a)(7) ...........................................................................................6

17 U.S.C. § 103(b) ......................................................................................... 22, 24

17 U.S.C. § 408(b) ................................................................................................4

6

17 U.S.C. § 408(c)(1) ........................................................................ 6, 7, 8

17 U.S.C. § 410(a) ....................................................................................4

17 U.S.C. § 411 ......................................................................................2, 3

17 U.S.C. § 411(a) ....................................................................... 2, 3, 9, 27

17 U.S.C. § 411(b) ............................................................................ 2, 3, 4

17 U.S.C. § 411(b)(1) ........................................................................ 2, 3, 4

17 U.S.C. § 411(b)(1)(A) ................................................................... 2, 3, 5

17 U.S.C. § 411(b)(1)(B) ................................................................... 2, 3, 5

**Treatises**

NIMMER ON COPYRIGHT ................................................... 14, 15, 26, 28, 30

**Regulations**

37 C.F.R. §202.3(b)(iv) ..............................................................................6

## INTRODUCTION & SUMMARY OF ARGUMENT

This appeal raises important copyright issues and implicates several important copyright policies.

***First***, this appeal affords the Court an opportunity to reinforce, reaffirm, and reiterate longstanding principles of copyright's doctrine of substantial similarity not abided below.

***Second***, this appeal cries out for the Court to address and correct the District Court's sweeping holding that "flow" in rap songs is a categorically unprotectable type of expression—a holding that's both doctrinally unsupported and that yields undesirable policy consequences for an entire artistic culture and class of copyright creators.

***Third***, this appeal permits the Court to clarify the contours of 17 U.S.C. §411's registration requirement, and to reject the classification arguments made here, through fidelity to the Copyright Act's text and longstanding precedents of this Court.

## ARGUMENT

### I. THE ANSWERING BRIEF IS WRONG ON REGISTRATION.

#### A. The Answering Brief is at odds with the plain text of Section 411(b).

Below, Defendants argued, and the District Court held, that Nwosuocha's registration failed to satisfy §411(a). The Opening Brief explained, however, that the plain language of §411—both §411(a) and §411(b)—foreclosed that view. Opening.Br.35-37.

In response, the Answering Brief argues that §411(b) is "inapplicable" here. Answering.Br.12-16. It doubles down on the view that, because Nwosuocha's song was registered with the administrative classification of "SR," Nwosuocha somehow cannot "sue for copyright infringement of [his] composition." Answering.Br.11-12.

That's mistaken.

_**First**_, the registration suffices unless Section 411(b) is invoked.

The Answering Brief argues that §411(b) is "inapplicable" here. Yet, that's a non-starter for their §411(a) registration-based arguments because the plain text of §411 states that "a certificate of registration _**satisfies**_ the requirements of this section [...] _**unless**_" two express conditions are met, as listed in §411(b)(1)(A)-(B). §411(b)(1).

Here, Nwosuocha indisputably _has_ a registration certificate. App.160. By the plain text, that "certificate of registration _**satisfies**_ the requirements of" §411—

9

including §411(a)'s registration requirement—"***unless***" both §411(b)(1)(A)'s knowing-inaccuracy requirement and §411(b)(1)(B)'s materiality requirement are met.

Insofar as the Answering Brief concedes that Defendants have not made a showing of either (A) knowing inaccuracy or (B) materiality, Answering.Br.12-16, then the plain text says that Nwosuocha's "certificate of registration ***satisfies*** the requirements of this section"—*i.e.*, "***satisfies***" the requirements of §411(a). That warrants reversal.

Indeed, Section 411(a)'s registration requirement states that it is "***subject to the provisions of subsection (b)***"—which makes sense. §411(a). It makes sense because §411(b)(1) clarifies *when* a registration certificate fulfills the requirements of §411(a). Thus, insofar as Defendants invoked §411(a)'s requirement—which is "subject to the provisions of subsection (b)"—their arguments are "subject to" §411(b).

The statute sets forth only one basis for challenging a registration's satisfaction of §411(a)'s registration requirement. It's §411(b)(1). Yet that basis is "inapplicable" here—as the Answering Brief effectively concedes. Answering.Br.12-14.

And, Defendants identify no alternative statutory basis whatsoever other than §411(b)(1) for challenging the sufficiency of Nwosuocha's registration. There isn't

one.  Section 411(a) directs the courts to look to §411(b) to determine if a registration certificate suffices.

It does—it "*satisfies*" the requirements of §411(a)-(b)—"*unless*" two conditions are shown.  Because those conditions were not shown, this Court should reverse.

**_Second_**, Nwosuocha's deposit copy necessarily included *both* his musical work and sound recording.

When Nwosoucha submitted his deposit copy to the Copyright Office as a part of his application for copyright registration, see §408(b), §410(a), both his musical work and his sound recording were "intermingled" in that deposit copy.  See, e.g., Johnson v. Copyright Royalty Bd., 969 F.3d 363, 367 (D.C. Cir. 2020) (musical works and sound recordings are "almost always intermingled in a single song").

Logically, one cannot submit a copy of a sound recording of a song without also submitting a copy of the underlying musical work.  See §101 (defining "Sound recordings" as "works that result from the fixation of […] *musical* […] sounds"); see also id. (defining a "sound recording" as a "derivative work" of a musical work).

Here, nothing suggests the Copyright Office wouldn't have also registered the deposited copy as a musical work had Nwosousaka also checked the box indicating musical work on his application.  §411(b)(1)(B) ("would have caused the Register of Copyrights to refuse registration.").  Indeed, his song is plainly copyrightable.

11

This isn't like an extreme or fanciful scenario in which someone uses a registration to sue under a completely unrelated work. It's not as if J.K. Rowling received a registration for a Harry Potter *novel* and then started using that registration to sue people for use of a Star Trek *movie*. Nor is it akin to a case in which a person registered a photograph and then attempts to sue for infringement of an unrelated novel.

Of course, Section 411(b)(1) would readily handle such situations. See §411(b)(1)(A)-(B); Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., 142 S. Ct. 941, 948 (2022) (permitting "willful blindness").

When Nwosoucha submitted his deposit copy in his sound recording to the Copyright Office, he necessarily submitted a copy of his musical work too. The Office issued a certificate. Pursuant to §411, that certificate "***satisfies***" the Act's registration requirements.

**B.** **The Answering Brief entirely ignores Section 408's effect on its classification arguments.**

The Opening Brief explained that §408(c)(1) foreclosed Appellees' position that the administrative classification of Nwosoucha's work as an "S.R." somehow foreclosed registration of the musical work embodied in Nwosoucha's song. Opening.Br.32-33.

*First*, the Answering Brief just entirely ignores §408(c)(1). Answering.Br.x (T.O.A.).

The Opening Brief repeatedly cited §408(c)(1). Opening.Br.16, 25, 28, 30. Section 408(c)(1)'s plain text expressly states that a registration's "administrative classification of works has **no significance with respect to the subject matter of copyright** or the exclusive rights provided by this title." Opening.Br.33 (quoting §408(c)(1); §102 ("Subject matter of copyright"); §102(a)(2) ("musical works"); §102(a)(7) ("sound recordings").

Tellingly, the Answering Brief just ignores §408(c)(1). Answering.Br.x (T.O.A.).

The Answering Brief nowhere responds to the statute's command—*i.e.*, that a registration's "administrative classification" of a work (as SR or otherwise, see 37 C.F.R. §202.3(b)(iv)) simply has "no significance" regarding the subject matter of copyright (*i.e.*, musical work).

13

***Second***, Appellees' unsupported claim that Appellant's approach would create a "paradigm shift" simply ignores longstanding practice.  Answering.Br.15 ("paradigm shift").

Numerous courts, *including <u>this</u> Court*, have consistently rejected Appellees' strained classification argument when construing the analogous provision under the predecessor statute:

- "While appellant Snyder's copyright was obtained for a 'Work of Art,' ***it may be treated as one obtained for*** 'reproductions of a work of art,' since errors in classification do not invalidate or impair copyright protection under this express language of 17 U.S.C. § 5."  <u>L. Batlin & Son, Inc. v. Snyder</u>, 536 F.2d 486, 490 n.2 (2d Cir. 1976).  Nwosuocha's registration <u>*may be treated as one obtained for*</u> a musical work as well.  §408(c)(1).

- "[T]he Rampelberg painting-design ***could have been filed*** as a 'work of art' under § 5(g) of the Act, 17 U.S.C. § 5(g).  The filing here under § 5(h) as a reproduction of a work of art is at most an 'error in classification' which under § 5 does not 'invalidate or impair the copyright protection secured under this title.'"  <u>Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.</u>, 490 F.2d 1092, 1094 (2d Cir. 1974).  Nwosuocha's registration <u>*could have been filed*</u> as a musical work as well.  §408(c)(1).

14

- "The fact that these classifications are perhaps not accurate descriptions of the subject matter sought to be copyrighted apparently **is of no consequence**." Monogram Models, Inc. v. Industro Motive Corp., 448 F.2d 284, 287 (6th Cir. 1971) (citing 17 U.S.C. §5 of predecessor statue). The fact that Nwosuocha's registration has an SR administrative classification **is of no consequence**.

This position doesn't amount to a "paradigm shift." It's longstanding doctrine—as codified in §408(c)(1) of the present statute and under §5 of the predecessor statute. Thus, the Answering Brief's position is at odds not only with the §408(c)(1) but also with the caselaw.

\* \* \* \* \*

The Copyright Office's administrative classification—an "SR" as opposed to "PAu"—simply "***has no significance with respect to the subject matter of copyright***." §408(c)(1). Defendants cannot deploy an administrative "check-box" to foreclose Nwosoucha's rights. See Skyline Design, Inc. v. McGrory Glass, Inc., 2014 U.S. Dist. LEXIS 8439, \*13-14 (N.D. Ill. Jan. 23, 2014).

## C.     The Answering Brief is at odds with <u>Muchnick</u>.

The District Courts finding that §411(a)'s registration requirement wasn't satisfied should have precluded a merits determination.  Thus, if this Court affirms on the issue above, it should vacate the remainder of the decision below.

<u>*First*</u>, the plain language of §411(a) makes clear that it was error to proceed to a merits decision after holding that §411's registration requirement was not met. §411(a); Opening.Br.38-44.

<u>*Second*</u>, this Court's <u>Muchnick</u> decision remains persuasive authority; it remains instructive.  <u>See</u> <u>Muchnick v. Thomson Corp</u>., 509 F.3d 116, 128 (2d Cir. 2007).  There this Court explained that a district court couldn't even approve <u>*settlement*</u> of a copyright claim where §411(a)'s registration requirement wasn't met.  *A fortiori*, final resolution of the <u>*merits*</u> of a claim is likewise foreclosed by §411(a) where §411(a)'s registration requirement is invoked successfully by a party.

Although the Supreme Court has clarified that §411(a) is non-jurisdictional, Defendants themselves invoked §411(a).  Thus, the District Court's finding that §411(a)'s registration requirement wasn't satisfied should have foreclosed merits determinations.  §411(a) ("no civil action for infringement of the copyright in any United States work shall be instituted").

16

**II.    THE ANSWERING BRIEF IS WRONG ON THE MERITS.**

**A.    The Answering Brief ignores identical similarities of unique expression and makes arguments contrary to Second Circuit law.**

The Opening Brief identified and explained numerous similarities between Nwosuocha's song and Glover's song.   Opening.Br.62-68; id. at 66 (listing similarities).  Based on these objective similarities, the Opening Brief explained that the songs readily satisfy a properly applied substantial-similarity test. Opening.Br.44-69.

In response, Appellees suggest that the songs are somehow not even "remotely" similar.  Answering.Br.28-32.  Yet, their Brief never includes any audio. That's because once the songs are actually listened to, there are similarities. Consider the following excerpts:

- [Nwosuocha's song (0:15-0:35)](#);

- [Glover's song (0:45 – 1:10)](#); and

- [Nwosuocha's song (0:35-0:50)](#).

Although the introductions *do* sound different, once the intros end, the similarities come into focus.  Perhaps, the most notable similarities are the identical "flows"—flows unique to these two songs.  App.67; App.55.  This shared flow is particularly noticeable in the choruses that are repeated over and over throughout each song.

17

Indeed, "the flows of each rapper line up almost exactly[.]" App.69.

There's also the use of identical lyrical structures, particularly in the hooks. Glover's hook is "This is America." Nwosuocha's hook is "Made in America." These hooks have an identical syllable structure and end with an identical, emphasized word. They're delivered with identical flows. And, they employ the same structural use of "phonemes." App.72. The "ih" sound in "*i*s Amer*i*ca" and "*i*n Amer*i*ca" creates shared alliteration and strikes the same rhythmic, percussive beat. Indeed, this is just one of the many identical "rhythmic utterances" between the songs. App.69. These highly similar hooks share identical "melodic contours." App.72.

Finally, the similarities in identical flow become all the more obvious once tempo is controlled and the different tempo is accounted for. After all, "despite being in different tempos" the "lines 'Made in America' and 'This is America' line-up nearly perfectly[.]" App.73. The Opening Brief explained all these similarities. Opening Br. 62-68. And, the above audio excerpts drive the point home: these songs share similarities, most notably identical flow. If this Court hears *any* similarities (or thinks that a juror *could* hear similarities) then it should reverse.

After all, only if no juror could reasonably hear similarity between these songs was dismissal proper below.

18

That's an audacious conclusion here, in the face of a record where both experts and lay listeners alike actually heard similarities. After all, it would be "a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of"—and similarities of—the two rap songs here. <u>Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith</u>, 143 S. Ct. 1258, 1283-1284 (2023) (quoting <u>Bleistein</u> (Holmes, J.)).

\* \* \* \* \*

The Answering Brief asks this Court to ignore numerous similarities. Answering.Br.28-32. It does so on the flawed theory that the copied portions of Nwosuocha's original song are somehow "unprotectable." Answering.Br.28. Yet, their Brief makes three key errors contrary to the law of this Circuit—and contrary to well-established copyright principles generally:

1. It improperly **<u>dissects</u>** Nwosoucha's original work, contrary to, *inter alia*, this Court's <u>Boisson</u> decision.

2. It improperly **<u>generalizes</u>** Nwosoucha's specific *expression* (that *is* copied verbatim) into unprotectible *ideas*.

3. It improperly **<u>recasts</u>** affirmative defenses—*i.e.*, merger and *scènes à faire*— as necessary elements to state a claim.

19

For each reason, Appellees are wrong that this Court should ignore the objective similarities between Nwosoucha's song and Glover's song. Answering.Br.28-32. When it comes to the substantial-similarity test "the key is the similarities rather than the differences." Attia v. Society of the N.Y. Hosp., 201 F.3d 50, 57-58 (2d Cir. 1999). And, the Answering Brief gives no *valid* reason to ignore the similarities here.

***First***, there's this Court's <u>Boisson</u> decision and Appellees' improper attempts to "dissect" Nwosoucha's protectable expression into its most elementary parts.

<u>Boisson</u> is clear: "a court is **not to dissect** the works at issue into separate components and compare only the copyrightable elements." <u>Boisson v. Banian, Ltd.</u>, 273 F.3d 262, 272 (2d Cir. 2001). The Opening Brief cited <u>Boisson</u> several times for this proposition. Opening.Br.18-19, 23, 61. Tellingly, the Answering Brief *never* cites <u>Boisson</u>. It just ignores it. Answering.Br.iii (T.O.A. not citing <u>Boisson</u>).

Rather than respond to the Opening Brief's point that the District Court's dissection was doctrinally improper, the Answering Brief reiterates the same methodologically improper dissection itself, breaking Nwosoucha's song down into its constituent parts and then arguing that each part standing alone is "unprotectable." Answering.Br.27-32.

20

For example, the Answering Brief argues that "***individual* notes**" are not protectable. Answering.Br.27. That's not how copyright works—and this trick could be done with any copyrightable work:

> Any copyrightable work can be sliced into elements unworthy of copyright protection. Books could be reduced to a collection of non-copyrightable words. **Music could be distilled into a series of non-copyrightable rhythmic tones**. A painting could be viewed as a composition of unprotectable colors.

Enter. Mgmt. Ltd. v. Warrick, 717 F.3d 1112, 1119 (10th Cir. 2013).

Yet, such dissection is improper. What's required is this Court's "**holistic** 'ordinary observer test[.]'" E.g., Newlight Eyewear, LLC v. Art-Optic, Ltd., 2014 U.S. Dist. LEXIS 14989, *8 (S.D.N.Y. Feb. 5, 2014). Indeed, a plethora of authorities cautions *against* Appellees' improper dissection here:

- "Arnstein would strictly apply the audience test and **preclude dissection**[.]" 4 NIMMER ON COPYRIGHT §13.03[E][3][a][i] (2023) (citing Arnstein v. Porter, 158 F.3d 795 (2d Cir. 1946)).

- "[A] court is **not to dissect** the works at issue into separate components[.]" Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir. 2001).

- A "proper analysis of the problem **requires** that **all elements** [...] **be considered as a whole**." E.g., Roth Greeting Cards v. United Card Co., 429 F.2d 1106, 1109 (9th Cir. 1970).

In short, the Answering Brief's attempt to dissect Nwosuocha's song into elementary parts is doctrinally improper and would have this Court miss "the forest for the trees[.]" Warrick, 717 F.3d at 1119. After all, a copyright defendant can't just slice a plaintiff's novel into words or dice a song into notes and then cry that nothing protectable was taken. That trick has been repeatedly rejected by numerous Courts of Appeals.

***Second***, Defendants abstract away from Nwosoucha's particular *expression*, and instead argue that abstract *ideas* such as rhythm, structure, lyrical themes, *etc.*, aren't protectable in the abstract. Answering.Br.28-30. In doing so, Defendants misconstrue Nwosuocha's claims and attack strawman assertions Nwosuocha hasn't made.

The Answering Brief simply misapplies the well-established idea-expression dichotomy. See, e.g., Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 67 (2d Cir. 2010) ("[T]he 'idea/expression dichotomy,' assures authors the right to their original expression, but encourages others to build freely upon the ideas[.]").

It's true that the *idea* of using rhythm in a rap song isn't copyrightable. Yet, a particular *expression*, *i.e.*, a particular rhythm would be. For example, a particular use of the phrase, "'uh-oh' in a distinctive rhythm" [would be] **copyrightable**." 1 NIMMER ON COPYRIGHT §2.05[2][b][B].

Such shared particular rhythms are present here. App.72 (shared "rhythmic utterances").

Likewise, Defendants are right that the *idea* of using a triplet flow is not copyrightable. But the *particular* expression, the particular and exact triplet flow specifically expressed ***is*** copyrightable.[2] Indeed, even particular short phrases such, "playas gonna play" can be copyrightable. Hall v. Swift, 782 F. App'x. 639, 640 (9th Cir. 2019).

The Answering Brief simply employs a labeling game that in written submissions it's easy to confuse the general *idea* of a triplet flow with a specific *expression* of one (and the dizzying multitudes of ways that a triplet flow could be expressed).

Here, Glover's song copied Mr. Nwosoucha's ***particular*** flow, lyrical structure, *etc.* So, when the Answering Brief simply attacks the *idea* of using flow in a rap song as not copyrightable, it's ignoring that these are not merely two triplet flows, but identical expressions. For example, one could not copy a Robert Frost poem, copying his *particular* rhyme scheme and *particular* meter with particular words, and then object that the *idea* of using rhyme in poem isn't copyrightable.

---

[2] For example, numerous artists from T.I. to Gucci Mane to 2 Chains to Migos, all employ their own specific expression of triple flow in their music. https://rockthebells.com/lists/triplet-rap-style-history/. The *idea* of triplet flow isn't copyrightable. *Specific* expressions of triplet flows are.

So too here: Nwosoucha is suing for Glover's copying of Nwosoucha's original, particular expressions—*his* song's particular original structure, *his* song's particular original flow, *his* songs original lyrical structure, *etc.* Nwosoucha is not alleging he owns a patent-like monopoly in the idea of using of triplet flow in a rap song. He's claiming that Glover stole his *particular* flow that was copied into Glover's song.

Defendants' elision of the idea-expression dichotomy simply misconstrues Nwosoucha's claims and responds to claims not made. The *ideas* of using rhythm, structure, and/or flow are not protectible as abstract ideas. Yet, specific *expressions* of rhythm, structure, and flow are protectable. Opening.Br.58-59. Defendants' arguments that entire categories of expression are somehow unprotectable misapprehends the idea-expression dichotomy.

**_Third_**, many of Defendants' arguments are truly *affirmative defenses*, such as merger and *scènes à faire*.

At this procedural posture and on this complaint, these *affirmative defenses* are non-starters. The Opening Brief explained that the District Court had "misplaced the burden regarding prior art." Opening.Br.44, 44-46. And, it cited appellate authority explaining that **_Defendants_** naturally bear the burden such defenses. Compulife Software, Inc. v. Newman, 959 F.3d 1288, 1304 (11th Cir. 2020); Opening.Br.44.

In response, Defendants simply insist that Nwosuocha's original "lyrics, lyrical themes, and 'flow' or 'cadence'" are all categorically unprotectable because of "prior art." Answering.Br.38; Answering.Br.29 (arguing flow is unprotectable as "scenes a faire").

In support of that position, Defendants cite a batch of cherry-picked district court cases, that are readily distinguishable, in support of their sweeping position that entire categories of Nwosuocha's original expression are somehow categorically unprotectable. Answering.Br.28-29.

For example, Defendants cite a <u>Mcdonald v. West</u> for the sweeping proposition that "themes" are *categorically* uncopyrightable. Answering.Br.30 ("Themes fall into the category of uncopyrightable ideas.") (quoting <u>McDonald v. West</u>, 138 F. Supp. 3d 448, 455 (S.D.N.Y. Sept. 30, 2015)). But *this* Court has been more nuanced and precise, explaining that "*<u>stock</u>* themes" are blocked by the affirmative defense of *scènes à faire*:

> **Neither does copyright protection extend to [...] '*stock*' themes commonly linked to a particular genre.**

<u>Walker v. Time Life Films, Inc.</u>, 784 F.2d 44, 50 (2d Cir. 1986) (discussing *scènes à faire*).

Here, Defendants' arguments that entire categories of musical expression are categorically unprotectable (such as flow) is in truth a host of tacit affirmative defenses not raised—*e.g.*, merger and *scènes à faire*.

Indeed, the Answering Brief tips its hand when it expressly relies on cases discussing the *affirmative* defense of scenes a faire to argue that flow is categorically uncopyrightable. <u>E.g.</u>, Answering.Br.29 ("constitute 'scenes a faire'—*<u>an affirmative defense not asserted below</u>*); App.142-150 (nowhere raising affirmative defense of *scènes à faire*).

That's why the Opening Brief explained that the District Court had misplaced the burden. Opening.Br.44-46. After all, a Defendant bears the burden on ***<u>its own affirmative defense</u>***.

Yet, Defendants made no showing of nor put forth any evidence supporting those affirmative defenses. After all, it's just not true that one couldn't make a rap song without using Nwosoucha's particular flow. Many have. Thus, because creating a flow "[i]nvolves choices among many possible means of expressing ideas [...] the merger argument is inapposite[.]" <u>Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.</u>, 312 F.3d 94, 99 (2d Cir. 2002).

And, because these are "affirmative defenses" to copyright infringement, they are "a permissible basis for dismissal only where the facts necessary to establish the defense are evident on the face of the complaint[.]" <u>Spinelli v. NFL, 903</u> F.3d 185, 199 (2d Cir. 2018). Yet, nothing in the complaint supports the affirmative defense that one couldn't make a rap song without copying Nwosoucha's flow.

26

To the contrary, the complaint alleges that these elements are not just original but also "distinct and **unique**" to <u>Nwosoucha</u>. App.28; <u>see</u> <u>Walker</u>, 784 F.2d at 50 (2d Cir. 1986) ("[T]hey are not copyrightable except to the extent they are given **unique—and therefore protectible—expression** in an original creation.").

At this posture, Defendants' resort to unsupported affirmative defenses regarding prior art is a non-starter. <u>Cf.</u> <u>Hall v. Swift</u>, 782 F. App'x 639, 640 (9th Cir. 2019) ("Because the absence of originality is not established either on the face of the complaint or through the judicially noticed matters, we reverse the district court's dismissal under Rule 12(b)(6).").

**B.     The Answering Brief's selection-and-arrangement points are incorrect and inapposite.**

The Opening Brief explained that "*even if*" all nine of the copied expressions were somehow categorically unprotectable, "the combination of these numerous elements could still be copyrightable when combined[.]"  Opening.Br.60.  In response, the Answering Brief posits that some supposed heightened "selection" test from the Ninth Circuit bars this argument.  Answering.Br.32-38.  It says that that this heightened test imposes "significant additional requirements." Answering.Br. 27.

This argument has many errors.

***First***, the reliance on some special "selection" test overlooks that Nowsouaka's song is **not** made from pre-existing material.  Rather his expression is original: an original song made from scratch.  Boisson, 273 F.3d at 268 ("Original "simply means a work independently created by its author, one **not copied from pre-existing works**[.]").

Only Nwosuocha's looped sample of the movie "Carlito's Way" was pre-existing material.  Every other element of Nwosoucha's song is original to Nwosuocha—and not copied.  And, because the Carlito's Way sample wasn't incorporated in Glover's song, every aspect Nwosoucha's song that Glover's song copies is original to Nwosuocha personally—*i.e.*, isn't pre-existing material.

28

Thus, the fundamental flaw in Defendants' heightened selection test is that, even if it were an accurate statement of the law, it wouldn't apply here because Nwosoucha did not "select" anything in making his song other than the sample of Carlito's Way, but rather _created_ the expressions at issue. In copyright lingo, his song is __not__ a "compilation" or "derivative work that employs "preexisting material." §103(b).

Thus, his work stands in stark contrast to "compilation or derivative works" comprised of pre-existing materials such as a collage made of pre-existing photos or cut-up technique[3] literature made from selecting, clipping and rearranging prior written works. Nwosoucha did not create his song via a "selection of [preexisting] listings" at issue in <u>Feist</u>. <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 362 (1991).

Indeed, this Court itself has drawn a distinction between original, non-copied works (like Nwosoucha's song) and works composed by making selections of pre-existing materials. A more "discerning" test is limited to cases of works made by copying pre-existing materials—_i.e._, where there was "**evidence**" that plaintiff had "**copied**" pre-existing material in making his work. <u>Boisson</u>, 273 F.3d at 272.

That's not the case here.

---

[3] See <u>https://en.wikipedia.org/wiki/Cut-up_technique</u>

Nwosoucha's song is his original creation.  For that reason alone, Defendants'
heightened "selection" test should not apply.

**<u>Second</u>**, it's worth noting that the Answering Brief is **<u>not</u>** defending the order
below insofar as the order nowhere relied upon some supposed out-of-Circuit
heightened test.  Nonetheless, the Answering Brief now asks this Court to adopt
"additional requirements" from a heightened test supposedly employed by the Ninth
Circuit.

**<u>Third</u>**, *even if* this heightened "selection" test were employed here, it would
be met.  Defendants argues that there are additional requirements under this
purported heightened "selection" test.  Answering.Br.33 ("additional
requirements").

According to Defendants, this test requires that **(1)** the copied parts must be
"virtually identical" in both works, Answering.Br.33; that **(2)** there must be
"numerous" copied parts, Answering.Br.34; and that **(3)** those copied parts must be
must be "new" and "novel[,]" Answering.Br.34.

Even if that were the test, it would be met:  **(1)** The copied combinations *are*
"identical[.]"  App.18 ("**identical"** ); App.29 ("**identical**"); App.67 ("**identical**");
Opening.Br.66 ("**identical**").

(**2**) The copied combinations *are* "numerous." Opening.Br.59 ("these **ten** elements "*combined*").

(**3**) They *are* new and novel. App.18 ("unique"); App.28 ("unique").

So, even if this Court were to import and adopt what Defendants' think is the Ninth Circuit's test, that test would be met here.

*__Fourth__*, that's not the Ninth Circuit's test.

In <u>Skidmore</u>, the Ninth Circuit is merely stating that a work based upon pre-existing material is infringed upon only if the new/novel ***use*** of pre-existing material is itself copied, rejecting the idea that the law would "deem substantially similar vastly dissimilar musical compositions, novels, and paintings for sharing some of the same notes, words, or colors." <u>Skidmore v. Led Zeppelin</u>, 952 F.3d 1051, 1075-1076 (9th Cir. 2020) (en banc).

For example, suppose two composers copy from Beethoven's Ninth Symphony (which is in the public domain). One composer couldn't sue another for also copying Beethoven's pre-existing material, but can only sue for "material contributed by the [new] author of such work, as distinguished from the preexisting material employed" from Beethoven. §103(b). Yet, if one second composer copied not just Beethoven's notes, but also what the other composer has "selected, coordinated, or arranged[,]" then that would still constitute infringement. <u>See</u> §101 (defining "compilation").

That's <u>Skidmore</u>'s point.  952 F.3d at 1075-1076.

***Fifth***, Defendants' reading of <u>Skidmore</u> would put it at odds with this Court's reading of <u>Feist</u>.

Defendants' reading of <u>Skidmore</u> is that it demands novelty.  Answer.Br.34 ("novel").  <u>Feist</u> was clear that copyrightability does *not* require novelty.  <u>Feist</u>, 499 U.S. at 345 ("Originality does *not* signify novelty[.]"); <u>Boisson</u>, 273 F.3d at 268 ("**[O]riginality** is 'the *sine qua non* of copyright.'" (quoting <u>Feist</u>)).  There are no "additional requirements" for copyrightability.  Answering.Br.27 ("significant additional requirements").

* * * * *

Defendants' heightened "selection" test with "additional elements" is (1) incompatible with <u>Feist</u>; (2) not the law of this Circuit; (3) an inaccurate statement of Ninth Circuit law; and (4) would be satisfied on this complaint anyway.  This supposed heightened selection test poses no barrier to Nwosuocha's copyright claims here.

**C.      The Answering Brief's access arguments are incomplete and overlook key doctrines (probative similarity) and key facts (uniqueness).**

Unlike patents, which confer "rights against the world," <u>Bonito Boats v. Thunder Craft Boats</u>, 489 U.S. 141, 158 (1989), <u>copy</u>rights protect against those who <u>*copy*</u> expression from another, giving rise to what's called copyright's "<u>*actual copying*</u>" requirement.  E.g., <u>Zalewski v. Cicero Builder Dev. Inc.</u>, 754 F.3d 95, 101 (2d Cir. 2014).

A leading treatise calls this requirement "*factual* copying" to emphasize that it's a question of whether, *in fact*, we can infer that a defendant viewed the plaintiff-copyright-holder's work when searching for source material (or received copied expression from someone who did).[4]  4 NIMMER ON COPYRIGHT §13D.03 (2023) (italics in treatise).

The Answering Brief raises a subpart of one of three ways to demonstrate actual copying, called "access."  Answering.Br.23-24 (Section II.A).  The Brief acknowledges this issue was "<u>*not*</u> addressed" below.  Answering.Br.23.

---

[4] Here, one doesn't need to infer that Donald Glover <u>*himself*</u> copied Emelike Nwosuocha's flows, cadences, *etc.*  It'd be just as infringing if one of Glover's songwriters/producers did—without telling Glover.  It'd even be infringing if they heard Nwosuocha's song and copied it unintentionally—*i.e.*, without realizing it. E.g., <u>P&G v. Colgate-Palmolive Co.</u>, 199 F.3d 74, 77 (2d Cir. 1999) ("'[S]ubconscious' or 'innocent' copying is still copying."); <u>EMI Christian Music Grp., Inc. v. MP3tunes, LLC</u>, 844 F.3d 79, 89 (2d Cir. 2016) ("Copyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability[.]").

Thus, this Court doesn't need to address it, and can leave it for the District Court to decide in the "first instance." E.g., Hunter v. McMahon, 75 F.4th 62, 73 n.15 (2d Cir. 2023) ("The defendants ask us to affirm the judgment of the district court on alternative grounds on which the district court did not rely. Mindful that we are a court of review, not of first view, we decline to consider those arguments for the first time on appeal."); Spano v. Whole Foods, Inc., 65 F.4th 260, 265 n.7 (5th Cir. 2023) (declining "to reach the merits of the other issues raised in the motion to dismiss").

Likewise, if this Court affirms on the registration dispute, then it should *not* proceed to this merits question for the same reason that the District Court shouldn't have waded into similarity below once it decided that administrative exhaustion of a registration decision hadn't been achieved. §411(a); see Section I.A-B, *supra*, Opening.Br.30-37 (I.A).

Should this Court be inclined to address the actual-copying doctrine, Appellant respectfully requests that the Court **order supplemental briefing on it**. **(1)** It's an alternative ground. E.g., United States v. Velasquez, 81 F.4th 583, 590 (6th Cir. 2023) (noting party was given "the opportunity to provide supplemental briefing after oral argument" on "alternative ground"); Harris v. Sentry Title Co., 806 F.2d 1278, 1280 n.1 (5th Cir. 1987) (noting courts will "[o]ften" ask for supplemental briefing when alternative grounds raised).

34

(**2**) The Answering Brief overlooks that access cannot be meaningfully addressed without first examining the substance and similarities of the works—and in this sense, access is the opposite of a threshold issue. See 4 NIMMER ON COPYRIGHT §13D.08[B][1] ("**On the Interrelationship of Factors**"—discussing how similarities probative of copying affect the required extent of a showing of access). Thus, the Answering Brief doesn't fully brief this issue. For example, it wholly ignores an alternative ground to *reject* their alternative ground—*i.e.*, the doctrines of probative/striking similarity for which a lesser / no showing of access is required. See Answering.Br.23-24 (no mention of probative/striking similarity); App.158 (briefing it below).

* * * * *

Even if the Court does turn to the merits of access, the Answering Brief is incorrect for three reasons:

1. It relies upon *inapposite* appellate authority that applied to *unpublished* works—not works that were publicly accessible online, as here.

2. It ignores that, under Circuit law, whether access is shown must be construed in light of the strength of *probative similarities*.

3. It misstates the record because Nwosuocha did *not* rest upon *mere online accessibility*, but also relied upon striking/probative similarities.

35

***First***, the Answering Brief's appellate authorities are inapposite. Critically, its cases are *factually* inapposite because they considered whether an infringer had access to copyrighted works that were **unpublished**:

- In <u>Jorgensen</u>, the dispute concerned an "**unpublished** song." <u>Jorgensen v. Epic/Sony Records</u>, 351 F.3d 46, 48 (2d Cir. 2003). The song wasn't publicly accessible. <u>Id.</u> Nwosuocha's song was indisputably publicly accessible here.

- In <u>Adams</u>, the plaintiff did "**not** allege that he ***published***, *displayed*, **or** *distributed* his work prior to registering it," so "no inference of access can be drawn from his pleadings." <u>Adams v. Warner Bros. Pictures</u>, 289 F. App'x 456, 457 (2d Cir. 2008). That work wasn't publicly accessible. <u>Id.</u> Here, Nwosuocha's *was*.

-  In <u>Wager</u>, the plaintiff's "manuscript was stored on-line," but *not* publicly accessible, so the only way "defendants could have gained access [was] by ***hacking*** his account." <u>Wager v. Littell</u>, 549 F. App'x 32, 33-34 (2d Cir. 2014). Hacking isn't a reasonable inference. <u>Id.</u> Here, Nwosuocha's work was *on YouTube*. No hacking required.

Nwosuocha's song was indisputably published and publicly accessible online well before Glover's song was created. App.27¶33 ("[O]n May 24th, 2017,

Nwosuocha made the first publication[.]"); App.57 (published on SoundCloud); Kidd Wes-Made In America [Official Music Video], YouTube (posted **Nov. 9, 2016**).

Thus, the Answering Brief's appellate cases on access are factually inapposite insofar as those cases involved ***unpublished*** works. Nwosuocha's song was online, publicly accessible, and published.

***Second***, access is not treated in a vacuum.

As Jorgensen clarifies, a showing of accessibility is enough if there are also similarities that are "probative of copying" (often called "probative similarities" as shorthand):

> Because direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially by demonstrating that the person who composed the defendant's work had **[1]** ***access*** to the copyrighted material, and that there are **[2]** ***similarities between the two works that are probative of copying***.

351 F.3d at 51. In turn, these two subparts are related, as a stronger showing of probative similarities reduces the needed showing on access:

> There is an inverse relationship between access and probative similarity such that "**the stronger the proof of similarity, the less the proof of access is required.**"

Id. at 56 (quoting NIMMER ON COPYRIGHT §13.03[D]).

At the extreme, there's an extent of similarity—called "striking similarity"—where the inference of copying becomes so strong that no showing of accessibility whatsoever is needed:

> We have held that **where the works in question are "so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access**."

<u>Id.</u>

Critically, the Answering Brief simply ignores the copying doctrines of probative/striking similarity.  <u>See</u> Answering.Br.23-24.  In this sense, its access section is not fully or adequately briefed.  Moreover, its doctrinally flawed insofar as it considers access in a vacuum from the probative (even striking) similarities here.

The Answering Brief's district-court authorities on access are also inapposite and do not support its implicit appellate position that access should be decided by <u>*ignoring*</u> probative similarities:

- In <u>Cates</u>, the court simply "assume[d], without deciding" that access had been shown.  <u>Cates v. Schlemovitz</u>, 2023 U.S. Dist. LEXIS 168889, *18 (N.D.N.Y. Sept. 22, 2023).

38

- In O'Keefe, there were "***No Probative Similarities*** *Between the Subject Works*"—so there was nothing to reduce the proof of access required. O'Keefe v. Ogilvy & Mather Worldwide, Inc., 590 F. Supp. 2d 500, 517 (S.D.N.Y. 2008) (italics in original); cf. Jorgensen, 351 F.3d at 56 ("**[T]he stronger the proof of similarity, the less the proof of access is required.**").

- In Clanton, the court held that the plaintiff "ha[d] not alleged enough for the [c]ourt to infer access on the basis of **widespread dissemination**." Clanton v. UMG Recordings, Inc., 556 F. Supp. 3d 322, 329 (S.D.N.Y. 2021). Again, there were no probative similarities to reduce the proof of access required. See id. And, by contrast, Nwosuocha isn't alleging widespread dissemination to show access but rather probative/striking similarities to lessen the proof of access required.

None of these cases address Nwosuocha's theory of copying—*i.e.*, public accessibility *plus* probative/striking similarities through unique, near-identical features in the two songs.

 ***Third***, the Answering Brief misstates the law and facts here.

 It says that "*merely* alleging that the work at issue is available on the Internet is insufficient to allege access as a matter of law." Answering.Br.24.

Yet, the complaint is not "merely" resting on mere online accessibility. Again, their own cited <u>Jorgensen</u> makes the point: "**the stronger the proof of similarity, the less the proof of access is required.**"  351 F.3d at 56.  Here, there are three critical showings in support of access:

1. Nwosuocha's song has been **publicly accessible** since November 9, 2016. [Kidd Wes-Made In America [Official Music Video]](), YouTube (published Nov. 9, 2016).[5]

2. The similarities between the works are "**unique**" to them, such that you will <u>*not*</u> find another song that has these "**unique**" compositional elements.  <u>E.g.</u>, App.18¶2 ("nearly-identical **unique** rhythmic, lyrical and thematic composition" elements); App.29¶39 ("distinct and **unique** flow" employed by Nwosuocha); App.33¶49 ("**unique** lyrical/thematic/vocal elements").  These unique similarities, *with their uniqueness taken as true at the pleading stage*,[6] are strongly probative and bolster the inference that the infringing work found

---

[5] That's why, although Nwosuocha contends there are striking similarities here, App.158, he doesn't need to show striking similarities, just probative ones.

[6] Regardless, Defendants haven't pointed to any other work that shares these traits anywhere in world or, more importantly, any work that did so at the time of initial infringement.

its unique qualities by *underline: copying* from the infringed work—as a factfinder could reasonably infer from this uniqueness.

3. There are additional probative similarities beyond those that make this copying infringement, such as the shared high-level thematic elements of the songs, the cadence of the specific words (Made in America vs. This is America), *etc.*[7] These shared similarities are probative of copying even if they're not a basis for substantial similarity.  4 Nimmer on Copyright §13D.06[C][2] ("Most courts have ruled that the probative similarity inquiry ought to extend to both protected and unprotected parts of plaintiff's work. Their understanding is that defendant's copying of non-protectable parts of plaintiff's work can nevertheless be probative of whether protected elements were copied.").

Simply put, the Answering Brief ignores that probative similarities here mean that the showing of copying did *not* rest upon mere online accessibility alone.  Rather, it rested upon truly unique qualities shared between these works—that no other work shares.

That's profoundly probative.

---

[7] These include broad thematic similarities, beyond the specific ones.  App.65-66, App.73.  These broad thematic similarities are probative of copying as well.

41

## III.  ADDRESSING THE DISTRICT COURT'S HOLDINGS IS NOT WAIVED OR FORFEITED.

The Answering Brief hints at appellate waiver/forfeiture in a *footnote*. Answering.Br.12.n.3.

This waiver/forfeiture issue is itself waived/forfeited.  E.g., Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("[A]n argument made ***only in a footnote*** was inadequately raised for appellate review."); Steinbeck v. Steinbeck Heritage Found., 400 F. App'x 572, 574 (2d Cir. 2010) ("Generally, we deem an argument raised ***only in a footnote*** as waived.").

Moreover, their waiver/forfeiture point is plainly mistaken.

The ***issue*** whether Nwosuocha's registration is sufficient is plainly before this Court.  And, it's issues, not authorities, that can be waived/forfeited.  E.g., Yee v. City of Escondido, 503 U.S. 519, 534 (1992) (noting "parties are not limited to the precise arguments they made below"); Soo Line R.R. Co. v. Conrail, 965 F.3d 596, 601 (7th Cir. 2020) (A "party may elaborate in its appellate briefs[.]"); Templeton v. Jarmillo, 28 F.4th 618, 622 (5th Cir. 2022) ("Whether or not an issue is preserved in the trial court does not depend on what authorities the arguing party cites to that court.") (collecting cases); cf. Conboy v. United States SBA, 992 F.3d 153, 158 (3d Cir. 2021) (sanctioning "copy-and-paste appeal" under FRAP 38 that didn't cite new authorities).

42

## CONCLUSION

The Court should reverse on both the copyright-registration and substantial-similarity issues.

Date: December 8, 2023          Respectfully submitted,

                                **DIGITAL JUSTICE FOUNDATION**
                                A NONPROFIT, PUBLIC-INTEREST LAW FIRM

                                By   */s/ Gregory Keenan*
                                    Gregory Keenan
                                    DIGITAL JUSTICE FOUNDATION
                                    81 Stewart Street
                                    Floral Park, New York 11001
                                    (516) 633-2633
                                    Gregory@DigitalJusticeFoundation.org

                                    Andrew Grimm
                                    DIGITAL JUSTICE FOUNDATION
                                    15287 Pepperwood Drive
                                    Omaha, Nebraska 68154
                                    (531) 210-2381
                                    Andrew@DigitalJusticeFoundation.org

                                    Imran H. Ansari
                                    AIDALA, BERTUNA & KAMINS, P.C.
                                    546 Fifth Avenue, 6th Floor
                                    New York, New York 10036
                                    (212) 486-0011
                                    IAnsari@AidalaLaw.com

                                    *Attorneys for Appellant*

43

## CERTIFICATE OF COMPLIANCE

This Brief contains **6,492** words, excluding the portions exempt from the wordcount.

This Brief was prepared in Microsoft Word using Times New Roman 14-point font.

Date: December 8, 2023          Respectfully submitted,

                                */s/ Gregory Keenan*
                                Gregory Keenan

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit via the appellate CM/ECF system.

Participants in this case who are registered CM/ECF users have been served via the appellate CM/ECF system.

Date: December 8, 2023                    Respectfully submitted,

                                          */s/ Gregory Keenan*          
                                          Gregory Keenan